The Honorable

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Jane Doe and John Doe, individually, and on behalf of all others similarly situated; and the Episcopal Diocese of Olympia,<br><br>        Plaintiffs,<br><br> v.<br><br>Donald Trump, President of The United States; U.S. Department of State; Rex Tillerson, Secretary of State; U.S. Department of Homeland Security; John Kelly, Secretary of Homeland Security; U.S. Customs and Border Protection; Kevin McAleenan, Acting Commissioner of U.S. Customs and Border Protection; and Michele James, Field Director of the Seattle Field Office of U.S. Customs and Border Protection,<br><br>        Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

CLASS ACTION COMPLAINT

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

## I.      INTRODUCTION

1.      One week after taking office as President of the United States, Defendant Donald Trump carried out his call for "a total and complete shutdown of Muslims entering the United States" that he had made throughout his campaign for the presidency. With the stroke of a pen, he threw into chaotic uncertainty the lives of tens of thousands of individuals who had been granted valid student and work visas through an exhaustive and thorough screening by the United States government.

2.      Individual Plaintiffs, and the class they seek to represent, are people with non-immigrant visas who were residents of the State of Washington when the Executive Order was issued. They are now either trapped inside the United States—unable to return to visit their families, or carry out work- or education-related travel—or stuck outside the United States, unable to continue with their studies and jobs, and unable to return to their homes and communities here.

3.      Plaintiff, the Episcopal Diocese of Olympia (the "Episcopal Diocese" or "Diocese")—a religious organization incorporated in the State of Washington to do charitable works, including to support the resettlement of refugees in Washington—has had its refugee resettlement activities completely upended as a result of the Executive Order.  Nearly two dozen refugee families whom the Episcopal Diocese was supporting in resettlement, including families from Syria, Iraq, and Somalia, were already approved for travel to the United States when the Executive Order issued and their trips were canceled, wasting precious resources and frustrating the activities of the Diocese.

4.      On January 27, 2017, Defendant Trump issued Executive Order 13769 "Protecting the Nation From Foreign Terrorist Entry Into the United Sates" (the "Executive Order"), completely prohibiting for at least 90 days the entry or re-entry of all persons who are nationals of seven predominantly Muslim countries—Iran, Iraq, Libya, Somalia, Sudan, Syria

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (`206) 623-1900
FACSIMILE: (`206) 623-3384

and Yemen (the "Designated Countries")—regardless of whether such persons hold valid visas and regardless of whether their visas are immigration or non-immigration related.

5.      As one of Defendant Trump's senior advisors confirmed the next day, the Executive Order is an attempt by Defendant Trump to institute his repeatedly and emphatically promised "Muslim ban."

6.      Also on January 27, 2017, the Deputy Assistant Secretary for Visa Services at the Bureau of Consular Affairs of the Department of State, relying on the authority of the Executive Order, summarily and provisionally revoked all valid nonimmigrant and immigrant visas of nationals of the seven Muslim-majority countries, subject to exceptions not relevant here. This revocation ("the Provisional Revocation Letter") threatens countless nationals of the Designated Countries who are currently in the United States or who reside in the United States but were traveling abroad when the letter was issued.

7.      Although other actions seeking class certification have been filed on behalf of affected individuals in Washington State, this suit is different. The Individual Plaintiffs seek to represent a class of similarly situated persons in Washington State who hold a non-immigrant visa to work or study in the United States (the "Non-Immigrant Visa Class"). Although these visas may have been provisionally reinstated in light of this Court's temporary restraining order issued on February 3, 2017 in *State of Washington, et al. v. Donald J. Trump, et al.*, No. 2:17-cv-00141 (W.D. Wash.), Defendants in that action have already filed for expedited appeal of that order.

8.      As long as the status of their visas is unclear, the Individual Plaintiffs and members of the class cannot leave the country for fear they will not be permitted to return under their current valid visa, or will not be able to apply for another visa to return to complete their education, research, and other work-related functions. In addition, Plaintiff the Episcopal Diocese brings its claims based on the Executive Order's harm to its own mission activities, as well as the Order's harm to the refugees served by the Diocese, thereby shielding those

CLASS ACTION COMPLAINT
PAGE 3

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (`206) 623-1900
FACSIMILE: (`206) 623-3384

1  vulnerable refugee individuals from the retaliation they reasonably fear if they were to assert

2  their claims directly.

3        9.      Defendants' Executive Order imposes immediate, undue hardship.

4        10.     Defendants' Executive Order is in addition illegal and unconstitutional.  The fact

5  that it is facially neutral as to religion neither shields it from this Court's scrutiny nor masks the

6  discriminatory animus that drives it. And the distinctions the Order does draw on its face are so

7  arbitrary and irrational as to fail even the most minimal level of judicial scrutiny.

8        11.     Defendants' Executive Order is precisely what Defendant Trump promised,

9  repeatedly and openly: a Muslim ban. It is moreover, on admission of Defendant Trump himself,

10 a ban that favors Christians over Muslims, in contravention of "[t]he clearest command of the

11 Establishment Clause . . . that one religious denomination cannot be officially preferred over

12 another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

13       12.     Both the Episcopal Diocese of Olympia and Individual Plaintiffs—on behalf of

14 themselves and a class of similarly situated people in Washington State—bring this suit to

15 challenge the provisions and implementation of the Executive Order that violate the First

16 Amendment, the Fifth Amendment, the Religious Freedom Restoration Act ("RFRA"), 42

17 U.S.C. § 2000bb *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

18       13.     The Individual Plaintiffs, the class they seek to represent, and the Episcopal

19 Diocese (collectively, "Plaintiffs"), currently suffer serious harm and will continue to suffer such

20 harm until and unless this Court preliminarily and permanently enjoins the Executive Order.

21 Plaintiffs have no adequate remedy at law.

22                        **II.      JURISDICTION AND VENUE**

23       14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiffs'

24 claims under the U.S. Constitution and federal statutes, as well as under the Administrative

25 Procedure Act, 5 U.S.C. § 706.

26

CLASS ACTION COMPLAINT
PAGE 4

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
T E L E P H O N E : (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
T E L E P H O N E : (206) 623-1900
F A C S I M I L E : (`206) 623-3384

15.     The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

16.     Venue is proper under 28 U.S.C. §1391(b)(2) and (e)(1).  A substantial part of the events or omissions giving rise to the claims occurred in this district, and Plaintiffs Jane Doe and John Doe reside in this District.  Further, Defendants are officers or employees of the United States acting in their official capacities, and agencies of the United States.

17.     Plaintiff the Episcopal Diocese, also known as the Episcopal Church in Western Washington, is a diocese of the Episcopal Church in Washington State west of the Cascade Range.  The Episcopal Diocese is headquartered in Seattle and is a registered 501(c)(3) corporation.

### III.     PARTIES

**A.     Plaintiffs**

**1.     Plaintiff John Doe**

18.     Plaintiff John Doe is an Iranian national who resides in Seattle, Washington.  Mr. Doe is a fourth year PhD candidate in Aeronautic and Astronautic Engineering at the University of Washington.  Mr. Doe is simultaneously studying for a master's degree in applied mathematics at the University of Washington.  Mr. Doe has a provisional patent, "patent pending," in the United States pertaining to battery function.  He is also a graduate fellow with the Clean Energy Institute in Seattle.

19.     Mr. Doe holds a multiple entry F1 student visa.  This is his second such visa that allows him to pursue full-time educational study in the United States.  Mr. Doe received both of his F1 visas after an intensive vetting and screening process abroad that included an in-person interview and proof of his admission status at the University of Washington as a full-time doctoral student.

20.     Mr. Doe first arrived in the United States in 2012.  Before that he studied for a master's degree in civil engineering in the Netherlands, and then worked for a year in the

CLASS ACTION COMPLAINT
PAGE 5

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

Netherlands for an international offshore oil and gas company.  Mr. Doe has also served as a visiting researcher at ETH Zurich in Switzerland studying nonlinear solitary waves, and at the University of South Carolina studying nonlinear wave propagation.  Mr. Doe received his undergraduate bachelors of science degree in civil engineering in Iran.

21.      Mr. Doe's immediate and extended family, including maternal grandparents, all live in Iran.

22.      Mr. Doe is engaged in collaborative research with the Chinese Academy of Science.  He co-authors publications with Chinese researchers and is actively advising and directing joint research with students in the United States and China on these projects.  As part of this collaboration, Mr. Doe conducted research in China for three months in 2016.  Mr. Doe was planning to return to China for further research and collaboration in April of 2017 but now, as a result of the Executive Order, he is unable to travel outside the United States because he fears he would not be able to return to his complete his doctorate.

23.      As part of his doctorate studies, it is anticipated and expected that Mr. Doe will participate in international conferences, because such endeavors are essential to his training and his ability to be fully active in the scientific and research community.  There are numerous upcoming academic conferences that Mr. Doe was planning to attend, but that he will no longer be able to attend as a result of the Executive Order.  Mr. Doe believes that notwithstanding his multiple entry F1 visa, the Executive Order can prevent him from re-entering the United States if he leaves to attend any international conferences.

24.      Because of the Executive Order, Mr. Doe will be unable to attend the International Renewable Energy Storage Conference in Dusseldorf, Germany in March 2017.  He will also have to miss the International Conference on Hybrid and Organic Photovoltaics in Lausanne, Switzerland in May 2017.  And if his visa situation remains uncertain, he may be unable to attend the Third International Conference on Perovskite Solar Cells and Optoelectronics in Oxford, England in September 2017.

CLASS ACTION COMPLAINT
PAGE 6

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (`206) 623-1900
FACSIMILE: (`206) 623-3384

25.     Mr. Doe's research and career have suffered and will continue to suffer as long as the Executive Order is in place.

26.     Mr. Doe is pursuing his claims anonymously because he is afraid of retaliation from the United States government or others for asserting his rights.

**2.      Plaintiff Jane Doe**

27.     Plaintiff Jane Doe is an Iranian national who resides in Seattle, Washington.  Ms. Doe holds a multiple entry F1 student visa and is lawfully in the United States, studying to complete a master's degree at the University of Washington.

28.     Ms. Doe received her F1 visa after an intensive vetting and screening process abroad that included an in-person interview at the Vancouver consulate, and proof of her admission status at the University of Washington as a full-time student.  Ms. Doe first came to the United States in September 2016 to pursue her graduate studies.  Ms. Doe's dream in pursuing her graduate degree was to work in international public policy, including to perhaps work one day for the United Nations.

29.     As part of her academic and professional training, Ms. Doe was pursuing summer internships outside of the United States when the Executive Order issued.  However, because of the Executive Order, Ms. Doe's plans have changed dramatically.  Ms. Doe may now not be able to return to the United States to complete her studies if she leaves for a summer internship—or even an interview for such an internship—notwithstanding the fact that holds a multiple entry student visa.  As a direct result of the Executive Order, Ms. Doe has canceled all of her upcoming interviews for summer internships outside the United States for fear she would not be able to return.

30.     The Executive Order has arrested Ms. Doe's international plans for the summer, and has also disrupted her longer-term plans of international work.  Without an international summer internship, Ms. Doe's dreams of a career in international work may be permanently on

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

hold.  In addition, Ms. Doe fears that she will not be able to leave the United States to see her family—all of whom live overseas, including her elderly grandparents—and that they will not be able to come to the United States to visit her either for the duration of her studies.

31.     Further, although Ms. Doe receives some funding from UW and works as a teaching assistant, she still relies on financial support from her parents in Iran.  Sanctions imposed by the United States on Iran make money transfers from her parents to her extremely difficult, if not impossible, without in person contact.  The Executive Order has thus also harmed and will continue to harm Ms. Doe's ability to pursue her studies.

32.     The Executive Order has disrupted Jane Doe's work, study, and goals.  It has isolated her from her family, forcing her to cancel a visit she had planned with her brother (who lives in Paris, France) to celebrate the Persian New Year, Nowruz, in March.  She now feels that the work and resources, including tuition, that she has put into her degree to date have been wasted.  Ms. Doe is strongly considering abandoning her graduate studies as a result of the Executive Order.

33.     Ms. Doe is pursuing her claims anonymously because she is afraid of retaliation from the United States government or others for asserting her rights.

**3.     Plaintiff The Episcopal Diocese of Olympia**

34.     The Episcopal Diocese of Olympia, also known as the Episcopal Church in Western Washington, is a diocese of the Episcopal Church in western Washington.  It is headquartered in Seattle's Capitol Hill neighborhood.

35.     The Episcopal Diocese is a local affiliate of the Episcopal Migration Ministries, a voluntary agency that welcomes refugees through a Cooperative Agreement with the Department of State.  The Episcopal Diocese has operated a refugee resettlement program since 1978 and has sponsored more than 15,000 refugees of all religions and nationalities to resettle in the Seattle area.  The Episcopal Diocese's Refugee Resettlement Office ("RRO") is located in South Seattle

CLASS ACTION COMPLAINT
PAGE 8

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

and receives and assists refugees from all over the world, including from each of the 7 countries targeted by the Executive Order, without regard to race, religion, or country of origin.  The RRO is one of eleven ministries offered and provided for by the Episcopal Diocese.  The Episcopal Diocese's refugee resettlement program stems from the moral obligation of the Episcopal faith to welcome and assist strangers, especially those who are poor, sick, and most in need of help.

36.     The RRO provides a multitude of services to refugees, including coordinating the arrival of refugees to the United States, housing assistance, job training, providing for basic household needs, advocacy, language tutoring, business training and microenterprise loans, and a savings program to help refugees purchase homes, vehicles, education, or businesses. The RRO has 9.5 full time employees, with 4 full-time equivalent staff working directly to support new arrivals and their survival needs during their first 90 days in the United States.  Approximately two dozen volunteers assist the RRO in providing these services.

37.     Before a refugee arrives in the United States, the RRO is notified by the Department of State that a family has been approved for refugee status and that the RRO should "assure" the case.  The RRO is required to make contact with friends or relatives of the arriving refugees living in the U.S. (known as the "U.S. ties") who were listed on the refugee's application.  The RRO expends significant time making phone calls, sending mail, and making in-person visits to meet with the U.S. tie to evaluate his or her capacity to help the RRO during the resettlement process.  The evaluation process includes a home visit to view and evaluate the living space.  If there is no possibility that the arriving refugee can live with a U.S. tie, the RRO further interviews the U.S. tie to determine if the relative or friend can assist with transportation, job search, enrollment of kids in school, or any of the other daily tasks with which newly-arriving refugees need assistance.

38.     If the U.S. tie cannot perform these tasks, the RRO invests its own resources to perform this pre-arrival legwork for the incoming refugees.  These tasks include, among other things, searching for and obtaining safe housing, furnishing the residence, and stocking it with

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

food and household items prior to the arrival of the refugees.  If the refugee family or U.S. tie

rejects the apartment or house, RRO staff begin a process of evaluating alternative locations. The

RRO undertakes housing inspections that consume significant RRO staff time to ensure that the

neighborhood is safe, that there is no bare wiring visible in the living space, no peeling or flaking

interior paint or plaster, no visible mold or unsanitary odors, that all windows and doors have

working locks, that heat, ventilation, lighting, and running water are adequate, that kitchen

appliances and bathroom fixtures are in good repair, and that there are easily accessible storage

or disposal facilities for garbage.

39.     The RRO's pre-arrival services can also involve cultivation of community groups

or churches to help refugees during the first months of their adjustment to life in America.  The

RRO staff spend time visiting churches and community groups to describe the refugee

resettlement process, ask for assistance with specific families that are still en route, and organize

committees to help refugee newcomers with specific tasks like searching for employment.

40.     When the Executive Order was issued on January 27, 2017, the RRO was

expecting to receive over 20 refugee families, including families from Syria, Iraq, and Somalia,

into the community in the coming days, weeks, and months, and had been actively preparing for

their arrival and resettlement in the greater Seattle area by carrying out on their behalves the

activities described above.  In fact, five of these families had already been booked on scheduled

flights to the U.S. when the Executive Order was issued. As a result of the RRO's efforts, these

refugee families already had domestic arrangements supporting their arrival in the United States

and were approved for travel.  Yet, these families had their dreams dashed when they had to

abruptly cancel their travel plans as a result of the Executive Order.

41.     Since the Executive Order, the RRO's work has been completely disrupted.  Not

only have families in transit or on the verge of transit been placed in additional crisis and stress,

but the chaos surrounding the implementation of the Executive Order has also required the RRO

to expend additional, unplanned-for resources.  RRO staff are working around-the-clock to

CLASS ACTION COMPLAINT
PAGE 10

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

address the immediate needs of these families in crisis and to respond to questions and concerns from their families and loved ones already in the United States who had been planning for the arrival of these already-approved refugees. In addition, many of the RRO's resources devoted to these 20 refugee families over the past months have now been wasted.

42.     The Executive Order has caused significant additional harm to the most vulnerable population that the RRO and Episcopal Diocese are focused on serving.  These refugees are fleeing persecution in their country of origin, and are now facing persecution in the safe haven they had been promised in the United States.  The mission and efficacy of the RRO, and through it the Episcopal Diocese, has been thwarted by the Executive Order.

## B.     Defendants

43.     Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

44.     Defendant U.S. Department of State ("DOS") is a cabinet department of the United States federal government that is responsible for issuing visas.

45.     Defendant Rex W. Tillerson is the Secretary of State and has responsibility for overseeing enforcement and implementation of the Executive Order by all DOS staff. He is sued in his official capacity.

46.     Defendant U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States.  Its sub-agencies include U.S. Citizenship and Immigration Services ("USCIS"), Customs and Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE").

47.     Defendant John Kelly is the Secretary of DHS and has responsibility for overseeing enforcement and implementation of the Executive Order by all DHS staff. He is sued in his official capacity.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (`206) 623-1900
FACSIMILE: (`206) 623-3384

48.     Defendant U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

49.     Defendant Kevin K. McAleenan is the Acting Commissioner of CBP has responsibility for overseeing enforcement and implementation of the Executive Order by all CBP staff. He is sued in his official capacity.

50.     Defendant Michele James is the Field Director of the Seattle Field Office of CBP and has responsibility for overseeing enforcement and implementation of the Executive Order by all DHS staff in her area, which covers Washington State. She is sued in her official capacity.

## IV.     FACTUAL BACKGROUND

### A.     President Trump's January 27, 2017 Executive Order

51.     On January 27, 2017, Defendant Trump signed the Executive Order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States." A copy of this Executive Order is attached to this Complaint as Exhibit A.

52.     The Executive Order cites the threat of domestic terrorism committed by foreign nationals and purports to direct a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States.

53.     Section 3(c) of the Order suspends immigrant and nonimmigrant entry into the country for 90 days for all people from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. § 1187(a)(12), with narrow exceptions not relevant here.  The Executive Order applies only to nationals of Syria, Sudan, Iraq, Iran, Libya, Somalia, and Yemen.[1]

54.     Section 5(a) suspends the U.S. Refugee Admissions Program for 120 days.

---

[1] *Fact Sheet: Protecting The Nation From Foreign Terrorist Entry To The United States*, Dep't of Homeland Security (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/protecting-nation-foreign-terrorist-entry-united-states (last accessed Feb. 6, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

55.     Section 5(b) states that "refugee claims made by individuals on the basis of religious-based persecution, provided that the religion of the individual is a minority religion in the individual's country of nationality" will be prioritized.

56.     Section 5(c) contains as its statement of government interest a proclamation "that "the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and suspends the entry of Syrian refugees into the country.

57.     Section 5(e) provides for nearly unfettered individual discretion by the Secretaries of State and Homeland Security to "jointly determine to admit individuals … as refugees on a case-by-case basis, "in their discretion, but only so long as they determine that the admission of such individuals as refugees is in the national interest—including when the person is a religious minority in his country of nationality facing religious persecution."

1.      **The Arbitrariness of the Executive Order**

58.     Section 1 of the Executive Order, entitled "Purpose," states that at the time of the September 11, 2001 ("9/11") terrorist attacks, "State Department policy prevented consular officers from properly scrutinizing the visa applications of several of the 19 foreign nationals" involved in those attacks. Further, DHS's Fact Sheet on the Executive Order stated that "[t]he Executive Order protects the United States from countries compromised by terrorism . . . ."[2]

59.     Yet, the Executive Order does not impose any restrictions on nationals of Egypt, Lebanon, Saudi Arabia, and the United Arab Emirates—the countries of which the 9/11 attackers were citizens.

60.     According to an article published on CNN, "[i]n financial disclosure forms during the presidential campaign, [Defendant Trump] listed two companies with dealings in Egypt and

---

[2] *Supra* n.1.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (`206) 623-1900
FACSIMILE: (`206) 623-3384

eight with business in Saudi Arabia. And in the UAE, the Trump Organization is partnering with a local billionaire to develop two golf courses in Dubai."[3]

61.     According to a September 2016 report from the Cato Institute, "[i]ncluding those murdered in the terrorist attacks of September 11, 2001 (9/11), the chance of an American perishing in a terrorist attack on U.S. soil that was committed by a foreigner over the 41-year period studied here is 1 in 3.6 million per year."[4]  Similarly, *The Boston Globe* reported in 2016 that "a person living in the United States is more than over 100 times more likely to be killed by falling objects than by a jihadi terrorist."[5]

62.     Ten former national security, foreign policy, and intelligence officials at the highest levels of the United States government, including Madeleine K. Albright, Michael V. Hayden, John F. Kerry, Janet A. Napolitano, and Leon E. Panetta, recently filed a joint declaration in *State of Washington, et al. v. Donald J. Trump et al.*, No. 17-35105 (9th Cir.) (Dkt. 28-2) (Feb. 6, 2017) ("Joint Declaration"), stating that they are "unaware of any specific threat that would justify the travel ban established by the Executive Order" and that "[t]here is no national security purpose for a total bar on entry for aliens from the seven named countries. *See* Exhibit B, ¶ 3.

63.     These respected civil servants, who have collectively "devoted decades to combatting the various terrorist threats that the United States faces in a dynamic and dangerous world" declared, in their professional opinions, that the Order "does not perform its declared task" of "protecting the nation from foreign terrorist entry into the United States," and instead

---

[3] Kyle Blaine & Julia Horowitz, *How the Trump administration chose the 7 countries in the immigration executive order*, CNN (Jan. 30, 2017), *available at* http://www.cnn.com/2017/01/29/politics/how-the-trump-administration-chose-the-7-countries/ (last accessed Feb. 6, 2017).

[4] Alex Nowrasteh, *Terrorism and Immigration: A Risk Analysis*, 798 CATO INSTITUTE POL'Y ANALYSIS 1 (Sept. 13, 2016), *available at* https://object.cato.org/sites/cato.org/files/pubs/pdf/pa798_1_1.pdf (last accessed Feb. 6, 2017).

[5] Graham Allison, *Fear death from tree limbs, not tourists*, BOSTON GLOBE (Feb. 1, 2016), *available at* https://www.bostonglobe.com/opinion/editorials/2016/02/19/fear-death-from-tree-limbs-not-terrorists/2ZrHzpP54GBHwbv2AVD6aM/story.html (last accessed Feb. 6, 2017).

CLASS ACTION COMPLAINT
PAGE 14

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

actually undermines the national security of the United States. *Id.* ¶¶ 2-3.  Specifically, the Joint Declaration states that the Executive Order: 1) will endanger U.S. troops in the field; 2) will disrupt key counterterrorism, foreign policy, and national security partnerships that are critical to addressing the threat posed by terrorist groups such as ISIL; 3) will endanger intelligence sources in the field; 4) will likely feed the recruitment narrative of ISIL and other extremists that portray the United States as at war with Islam; 5) will disrupt ongoing law enforcement efforts; 6) will have a devastating humanitarian impact; and 7) will cause economic damage to American citizens and residents.  *Id.* ¶ 5.

64.     The Joint Declaration also describes pre-existing national security-based immigration restrictions as "consistently tailored to respond to: (1) specific, credible threats based on individualized information, (2) the best available intelligence and (3) thorough interagency legal and policy review."  *Id.* ¶ 6.  The document further describes the rigorous system of security vetting that the United States has had in place since the 9/11 attacks, and which is applied to travelers not once, but multiple times.  Refugees in particular are subjected to vetting that takes on average more than a year.  *Id.*

65.     The Executive Order states that "the United States should not admit those who engage in acts of bigotry or hatred (including . . . the persecution of those who practice religions different from their own)" and yet it singles out practitioners of a single religion for exclusion. Exhibit A Sec. 1.

66.     The Executive Order effectively traps members of the Non-Immigrant Visa Class in the United States, interfering with their relationships with family members in their home countries, and imposing burdens that do not serve any valid governmental interest.  Faced with a rapidly shifting and highly unpredictable legal landscape, the individual named plaintiffs and class members have chosen and will continue to choose to stay inside the United States for fear that any provisional reinstatement of their visas will no longer be in effect by the time they might wish to return.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

### 2. Visa Revocations Pursuant to the Executive Order

67. The same day the Executive Order issued, the Deputy Assistant Secretary for Visa Services at the Bureau of Consular Affairs of the Department of State, relying on the Executive Order, issued a letter purporting to provisionally revoke all valid nonimmigrant and immigrant visas of nationals of the Designated Countries, subject to exceptions not relevant here.

68. The Provisional Revocation Letter was not publicized; to the contrary, it was withheld from the public until it was filed four days later under a "Notice of Supplemental Authority" in court cases challenging the Executive Order.

69. Neither notice nor opportunity to be heard was provided to the Episcopal Diocese, members of the Non-Immigrant Visa Class, Plaintiffs, or indeed anyone else prior to the mass revocation of these visas.

70. The Provisional Revocation Letter compounded the chaos caused by the Executive Order. The federal government has issued no public and legally binding guidance regarding the meaning or proper interpretation of the Provisional Revocation Letter. A copy of this letter is attached to this Complaint as Exhibit C.

71. The Provisional Revocation Letter also appears to expand the scope of the Executive Order's application: it applies on its face to persons who are present inside the United States as well as persons outside the United States, rather than being limited to persons seeking to enter the United States. Under section 221(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(i)(B), "[a]ny alien . . . whose nonimmigrant visa . . . has been revoked under section 1201(i) of this title" INA § 221(i), referenced in the Provisional Revocation Letter "is deportable."

72. The State Department estimates that it revoked up to 60,000 visas.[6]

---

[6] Mary Emily O'Hara, *Over 100,000 Visas Have Been Revoked by Immigration Ban, Justice Dept. Reveals*, NBC (Feb. 3, 1027), *available at* http://www.nbcnews.com/news/us-news/over-100-000-visas-have-been-revoked-immigration-ban-justice-n716121 (last accessed Feb. 6, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

73.     The CBP states on its website that all F1, J1, and M1 visas belonging to persons from the affected countries were provisionally revoked.[7]

74.     Upon information and belief, all H1B visas belonging to persons from the affected countries were also provisionally revoked.

### 3.     Implementation of the Executive Order and Visa Revocations

75.     The disastrous effects of the Executive Order were immediately apparent. Countless news reports document the chaotic scene at airports across the country as those who were legally entitled to entry when they boarded airplanes heading to the United States—refugees, immigrants, and those traveling on non-immigrant visas alike—were designated deportable by the time they landed. For example, 109 travelers from the Designated Countries on non-immigrant visas were in transit to the country at the time the Executive order was signed.[8] Up to 13 people were detained at the Seattle-Tacoma International Airport on January 28, 2017 pursuant to the Executive Order.[9]

76.     Application of the Executive Order has been, moreover, inconsistent and confusing, with contradictory official statements issued within days of one another—further heightening Plaintiffs reasonable and on-going fear that if they leave the country they will not be permitted to return to their work and studies.

77.     For example, DHS's position on the application of the Executive Order to lawful permanent residents, or green card holders, changed three times over the course of six days following the issuance of the order:

---

[7] *Q&A for Executive Order: Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. Customs and Border Protection (Feb. 2, 2017), *available at* https://www.cbp.gov/document/faqs/questions-and-answers-protecting-nation-foreign-terrorist-entry-united-states (last accessed  Feb.  6, 2017).

[8] Jeremy Diamond & Steve Almasy, *Trump's immigration ban sends shockwaves*, CNN (Jan. 30, 2017), *available at* http://www.cnn.com/2017/01/28/politics/donald-trump-executive-order-immigration-reaction/ (last accessed Feb. 6, 2017).

[9] Liz Jones & Isolde Raftery, *Roller coaster of heartbreak and fury at Sea-Tac in wake of Trump order*, KUOW.org (Jan. 28, 2017), *available at* http://kuow.org/post/roller-coaster-heartbreak-and-fury-sea-tac-wake-trump-order (last accessed Feb. 6, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

- On January 28, 2017, a spokesperson for DHS stated that lawful permanent residents, or green card holders, would be barred from entry pursuant to the Executive Order.

- Secretary Kelly reversed course the next day on January 29th, issuing a statement that: "In applying the provisions of the president's executive order, I hereby deem the entry of lawful permanent residents to be in the national interest. Accordingly, absent the receipt of significant derogatory information indicating a serious threat to public safety and welfare, lawful permanent resident status will be a dispositive factor in our case-by-case determinations."

- Two days later on January 31, 2017, U.S. Customs and Border Protection, a DHS sub-agency, issued a statement that, while repeating Secretary Kelly's January 29th statement, then stated in the "Questions and Answers" Section that the entry of lawful permanent residents would depend on receipt of a "national interest waiver[] consistent with the provisions of the Executive Order."

- DHS changed its position yet again two days later. This time, the February 2, 2017 version of the "Questions and Answers" stated that "[u]nder recent guidance from the White House…the Executive Order issued January 27, 2017, does not apply to their [lawful permanent residents] entry to the United States." As of February 2, 2017, DHS had processed 1,610 waivers for legal permanent residents to re-enter the United States.

78. Provisions of the Executive Order relating to refugees have also been inconsistently interpreted and applied by Defendants, further heightening the need for judicial intervention.

79. For example, although Section 5(a) of the Executive Order unequivocally states that "[t]he Secretary of State shall suspend the U.S. Refugee Admissions Program (USRAP) for 120 days," four business days later on February 2, 2017, and in a reversal of the clear mandate in the Executive Order, the Acting Director of the U.S. Immigration and Citizenship Services ("USCIS"), a division of DHS, issued a guidance to all USCIS employees that "USCIS will adjudicate Refugee/Asylee Relative Petitions [ ] for all beneficiaries, from any country of nationality, currently in the United States…". A copy of this guidance is attached as Exhibit D.

80. In further contradiction of the clear language of unequivocal suspension of USRAP, DHS instructed that "[a]dditionally, USCIS will continue refugee interviews in

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

jurisdictions where there is a preexisting international agreement related to refugee processing." Exhibit D.

81.     The February 2, 2017 guidance to USCIS employees also stated that "USCIS will *continue* refugee interviews when the person is a religious minority in his or her country of nationality facing religious persecution." Exhibit D (emphasis added).

### 4.     Court Orders and President Trump's Defiance Thereof

82.     Although both this Court and other courts around the country have granted writs of habeas and temporary restraining orders, some nationwide, Plaintiffs are compelled to file this action to ensure their rights are protected.  Many, if not all, of the existing litigation and court orders do not help members of the Non-Immigrant Visa Class, most of whom are stuck inside the country, rather than outside of it.

83.     Further, Defendants' repeated actions and statements, as well as the temporary nature of the restraining orders issued thus far further underscore Plaintiffs' plight: until there is some legal certainty as to the status of their non-immigrant visas, they cannot leave the country now—no matter how urgently they wish to do so—should they want to be guaranteed the ability to return at a later date to resume their work and studies.

84.     Immediately after the first nationwide stay was granted, *see Darweesh v. Trump*, No. 17 CIV. 480 (AMD), 2017 WL 388504, at *1 (E.D.N.Y. Jan. 28, 2017), Defendant DHS issued a statement that "President Trump's Executive Orders remain in place—prohibited travel will remain prohibited, and the U.S. government retains its right to revoke visas at any time if required for national security or public safety."[10]

85.     On January 31, 2017, acting United States Attorney General Sally Yates issued a memorandum to Department of Justice employees instructing them to not act to enforce the

---

[10] *Department Of Homeland Security Response To Recent Litigation*, Dep't Homeland Security (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/department-homeland-security-response-recent-litigation (last accessed Feb. 6, 2017).

CLASS ACTION COMPLAINT
PAGE 19

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

Executive Order because she was "not convinced . . . that the Executive Order is lawful."[11]  Ms.

Yates wrote:

> My responsibility is to ensure that the position of the Department of Justice is not only legally defensible, but is informed by our best view of what the law is after consideration of all the facts.  In addition, I am responsible for ensuring that the positons we take in court remain consistent with this institution's solemn obligation to always seek justice and stand for what is right.  At present, I am not convinced that the defense of the Executive Order is consistent with these responsibilities, nor am I convinced that the Executive Order is lawful.[12]

86.     Within hours of her issuance of this statement, and its hand-delivery to Defendant

Trump, Defendant Trump fired Ms. Yates, calling her statement a "betrayal."

87.     After this Court issued a TRO on February 3, 2017, Defendants vowed an

immediate appeal.  Even more unusual were Defendant Trump's statements that followed the

District Court's Order:

- @realDonaldTrump: "The opinion of this so-called judge, which essentially takes law-enforcement away from our country, is ridiculous and will be overturned!" -- 5:12 AM - 4 Feb 2017[13]

- @realDonaldTrump: "What is our country coming to when a judge can halt a Homeland Security travel ban and anyone, even with bad intentions, can come into U.S.?" -- 12:44 PM - 4 Feb 2017[14]

- @realDonaldTrump: "Because the ban was lifted by a judge, many very bad and dangerous people may be pouring into our country. A terrible decision" -- 1:44 PM - 4 Feb 2017[15]

---

[11] Letter from Sally Yates to Dep't of Justice (Jan. 30, 2017), *available at* https://www.nytimes.com/interactive/2017/01/30/us/document-Letter-From-Sally-Yates.html?_r=1 (last accessed Feb. 6, 2017).

[12] *See supra* n.13.

[13] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 5:12 PM), https://twitter.com/realdonaldtrump/status/827867311054974976.

[14] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 12:44 PM), https://twitter.com/realDonaldTrump/status/827981079042805761.

[15] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 1:44 PM), https://twitter.com/realDonaldTrump/status/827996357252243456.

CLASS ACTION COMPLAINT
PAGE 20

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

- @realDonaldTrump: "Why aren't the lawyers looking at and using the Federal Court decision in Boston, which is at conflict with ridiculous lift ban decision?" -- 3:37 PM - 4 Feb 2017[16]

- @realDonaldTrump: "The judge opens up our country to potential terrorists and others that do not have our best interests at heart. Bad people are very happy!" -- 4:48 PM - 4 Feb 2017[17]

- @realDonaldTrump: "Just cannot believe a judge would put our country in such peril. If something happens blame him and court system. People pouring in. Bad!" -- 12:39 PM - 5 Feb 2017[18]

- @realDonaldTrump: "I have instructed Homeland Security to check people coming into our country VERY CAREFULLY. The courts are making the job very difficult!" -- 12:42 PM - 5 Feb 2017[19]

88.     These statements appear to be designed to inflame and incite further animus against persons affected by the ban, and grossly distort and misrepresent the actual process through which Plaintiffs were screened and reviewed before their admittance to the United States was allowed.

89.     Unless and until this Court preliminarily and permanently enjoins the Executive Order, any provisional reinstatement of the previously provisionally revoked visas does not provide Plaintiffs adequate and full relief.

**B.     The Discriminatory Intent Behind the Executive Order**

90.     The Executive Order and the Provisional Revocation Letter currently apply only to nationals of seven countries, all of which are majority—Muslim: Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.

---

[16] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 3:37 PM), https://twitter.com/realDonaldTrump/status/828024835670413312.

[17] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 4:48 PM), https://twitter.com/realDonaldTrump/status/828042506851934209.

[18] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 5, 2017, 12:39 PM), https://twitter.com/realDonaldTrump/status/828342202174668800.

[19] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 5, 2017, 12:42 PM), https://twitter.com/realDonaldTrump/status/828343072840900610.

CLASS ACTION COMPLAINT
PAGE 21

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

91.    The Executive Order, by its express terms, suspends immigrant and nonimmigrant entry into the United States based on nationality, place of birth or place of residence.

92.    The Provisional Revocation Letter similarly revokes "all valid nonimmigrant and immigrant visas of nationals" based on nationality, place of birth, or place of residence.

93.    The Executive Order is Defendant Trump's fulfillment of a clearly stated campaign promise to ban Muslims from entering the United States. In a December 7, 2015 written statement, "Donald J. Trump Statement on Preventing Muslim Immigration," then-candidate Trump said that he was "calling for a total and complete shutdown of Muslims entering the United States." This statement is still displayed on the official Trump-Pence website as of the filing of this Complaint.[20]

94.    Defendant Trump repeatedly referred to a ban on Muslim immigration on the campaign trail.[21]

95.    After the election, on December 22, 2016, a reporter asked Defendant Trump whether his "plans to create a Muslim register or ban Muslim immigration to the United States" had changed. Defendant Trump responded "you've known my plans all along" and that he was "100% correct" in his position.[22]

96.    On the day Defendant Trump issued the Executive Order, he gave an interview to the Christian Broadcasting Network during which he confirmed his intent to prioritize non-Muslims nationals of the Designated Countries over Muslim nationals of those countries:

---

[20] Press Release, *Donald J. Trump Statement on Preventing Muslim Immigration* (Dec. 7, 2015), *available at* https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration (last accessed Feb. 6, 2017).

[21] *See, e.g.*, Donald J. Trump (@realDonaldTrump), Twitter (Dec. 7, 2015, 2:32 PM), https://twitter.com/realDonaldTrump/status/673993417429524480 (last accessed  Feb. 6, 2017); Jenna Johnson, *Trump calls for 'total and complete shutdown of Muslims entering the United States'*, The Washington Post (Dec. 7, 2015), *available at* http://wpo.st/O0uY2 (last accessed Feb. 6, 2017).

[22] Katie Reilly, *Donald Trump on Proposed Muslim Ban: 'You Know My Plains'*, Time (Dec. 21, 2016), *available at* http://time.com/4611229/donald-trump-berlin-attack (last accessed Feb. 6, 2017).

CLASS ACTION COMPLAINT
PAGE 22

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

They've been horribly treated. Do you know if you were a Christian in Syria it was impossible, at least very tough to get into the United States? If you were a Muslim you could come in, but if you were a Christian, it was almost impossible and the reason that was so unfair, everybody was persecuted in all fairness, but they were chopping off the heads of everybody but more so the Christians. And I thought it was very, very unfair.[23]

97.     Consistent with Defendant Trump's expressed intent to favor Christians, Section 5(e) of the Executive Order authorizes the Secretaries of the Departments of State and Homeland Security to admit individuals who are members of "a religious minority in [their] count[ries] of nationality facing religious persecution." Exhibit A. This provision directly grants Christians preference over Muslim refugees.

98.     During a signing ceremony for the Executive Order on January 27, 2017, Defendant Trump stated that the purpose of the Executive Order was to "establish[] new vetting measures to keep radical Islamic terrorists out of the United States of America."[24]

99.     Senior advisors to Defendant Trump have engaged in anti-Muslim rhetoric that provide additional support for the notion that the Executive Order was prompted by animus toward Islam and Muslims.

100.     In an interview on January 28, 2017, one of Defendant Trump's senior advisors, Rudolph Giuliani, left no doubt that the ban on entry from nationals of the Designated Countries was intended to carry out a ban on Muslims, and that the Executive Order was crafted to create a pretextual cover for a Muslim ban. Mr. Giuliani stated: "I'll tell you the whole history of it. . . .

---

[23] David Brody, *Brody File Exclusive: President Trump Says Persecuted Christians Will Be Given Priority As Refugees*, CBN News (Jan. 27, 2017), *available at* http://www1.cbn.com/thebrodyfile/archive/2017/01/27/brody-file-exclusive-president-trump-says-persecuted-christians-will-be-given-priority-as-refugees (last accessed Feb. 6, 2017).

[24] Dan Merica, *Trump signs executive order to keep out 'radical Islamic terrorists'*, CNN (Jan. 30, 2017), *available at* http://www.cnn.com/2017/01/27/politics/trump-plans-to-sign-executive-action-on-refugees-extreme-vetting/ (last accessed Feb. 6, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

So, when [Defendant Trump] first announced it, he said, 'Muslim ban.' He called me up. He said, 'Put a commission together. Show me the right way to do it legally.'"[25]

101.     On January 29, an anonymous "senior administration official" briefed a staffer of Breitbart.com on the intended purpose of the Executive Order: "The reality, though, is that the situation [of large Islamic populations] that exists today in parts of France, in parts of Germany, in Belgium, etcetera, is not a situation we want replicated inside the United States."[26]

102.     While Defendant Trump has subsequently tried to deny that his Executive Order was "a Muslim ban, as the media [was] falsely reporting."[27] His own prior conflicting, recorded statements as well as those of his senior advisors make clear the rationale for the Executive Order is in fact to ban Muslims from entering the United States[.]

103.     Individual Plaintiffs Jane Doe and John Doe, and members of the class—non-immigrants with valid visas—are among the targets of the Executive Order. The Executive Order and the manner in which it is being implemented is causing these Individual Plaintiffs and members of the proposed class direct, ongoing, and immediate harm because they are suffering "[t]he indignity of being singled out [by a government] for special burdens'" on the basis of religion or assumed religion. *Hassan v. City of New York*, 804 F.3d 277, 289 (3d. Cir. 2015), *as amended* (Feb. 2, 2016) (quoting *Locke v. Davey*, 540 U.S. 712, 731, (2004) (Scalia, J., dissenting)).

---

[25] Amy B. Wang, *Trump asked for a 'Muslim ban,' Giuliani says — and ordered a commission to do it 'legally'*, The Washington Post (Jan. 29, 2017), *available at* http://wpo.st/xzuY2 (last accessed Feb. 6, 2017).

[26] Neil Munro, *Left Protests While Trump Junks Obama's Global Immigration Plan*, Brietbart.com (Jan. 30, 2017), *available at* http://www.breitbart.com/big-government/2017/01/30/trump-changes-immigration-favor-american-values/ (parenthetical in original) (last accessed Feb. 6, 2017).

[27] Press Release, *President Donald J. Trump Statement Regarding Recent Executive Order Concerning Extreme Vetting*, The White House (Jan. 29, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/01/29/president-donald-j-trump-statement-regarding-recent-executive-order (last accessed Feb. 6, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

1

2

**C.      Facts Common to all Members of the Plaintiff Class**

104.    Since the Executive Order was announced on January 27, 2017, its implementation by Defendants and their agents has been marked by chaos and confusion.

105.    Individual Plaintiffs and members of the Plaintiff Class reasonably fear that, if they attempt to enter or re-enter the United States, they will be denied permission to do so, notwithstanding their previously established lawful presence in the United States and the fact that they have otherwise been deemed appropriate by the U.S. government for admission.

106.    The suspension of entry for class members with valid, pre-screened, pre-approved student visas has left vast numbers of foreign students in Washington, and in the United States more generally, trapped and stripped of their ability to travel home to see their families or, if they had the misfortune of being out of the country at the time the Executive Order was issued, stranded and unable to continue with their otherwise lawful education and research endeavors in the United States.

107.    The suspension of entry for class members with valid, pre-screened, pre-approved work visas has left vast numbers of hardworking people who happen to be foreign nationals trapped and stripped of their ability to travel home to see their families and significantly affects their ability to work and earn a living, as well as their well-being.  If these individuals had the misfortune of being out of the country at the time the Executive Order was issued, they are now stranded and unable to return to their jobs and at risk of losing their livelihood.

**V.      CLASS ACTION ALLEGATIONS**

108.    The Individual Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2), on their own behalf and on behalf of all other persons with non-immigrant visas who are nationals of Iran, Iraq, Libya, Somalia, Sudan, Syria or Yemen (the "Designated Countries") who reside, or recently had been residing, lawfully in Washington when the Executive Order issued.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (`206) 623-1900
FACSIMILE: (`206) 623-3384

109.    The Plaintiff Class is so numerous that joinder is impracticable. According to the Annual Report of the Visa Office of the U.S. Department of State, in 2015, the last year for which data are available, the United States issued over 72,162 non-immigrant visas to nationals from the seven Designated Countries.[28] On information and belief, a large number of such persons reside, or have recently resided, in Washington.

110.    The claims of the Plaintiff Class members share common issues of law, including but not limited to whether the Executive Order violates their associational, religious exercise and due process rights under the First and Fifth Amendments, the Religious Freedom Restoration Act, and the Administrative Procedure Act.

111.    The claims of the Plaintiff Class members share common issues of fact, including but not limited to whether the Executive Order is being or will be enforced so as to prevent them from entering the United States from abroad or from re-entering the United States should they choose to leave the United States briefly, even though they would otherwise be admissible.

112.    The claims or defenses of the named Plaintiffs are typical of the claims or defenses of members of the Plaintiff Class.

113.    The named Plaintiffs will fairly and adequately protect the interests of the Plaintiff class. The named Plaintiffs have no interest that is now or may be potentially antagonistic to the interests of the Plaintiff class. The attorneys representing the named Plaintiffs include experienced civil rights attorneys and are considered able practitioners in federal constitutional litigation. These attorneys should be appointed as class counsel.

114.    Defendants have acted, have threatened to act, and will act on grounds generally applicable to the Plaintiff Class, thereby making final injunctive and declaratory relief

---

[28] Report of the Visa Office 2015, Table XVIII: Nonimmigrant Visas Issued By Nationality, U.S. Dep't of State – Bureau of Consular Affairs (2015), *available at* https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2015AnnualReport/FY15AnnualReport-TableXVIII.pdf (last accessed Feb. 6, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

appropriate to the class as a whole. The Plaintiff Class may therefore be properly certified under Fed. R. Civ. P. 23(b) (2).

115.    Prosecution of separate actions by individual members of the Plaintiff Class would create the risk of inconsistent or varying adjudications and would establish incompatible standards of conduct for individual members of the Plaintiff Class. The Plaintiff Class may therefore be properly certified under Fed. R. Civ. P. 23(b) (1).

## VI.    CAUSES OF ACTION

### COUNT ONE
### FIRST AMENDMENT – ESTABLISHMENT, FREE EXERCISE, SPEECH AND ASSEMBLY CLAUSES
### (Against All Defendants, Asserted by All Plaintiffs)

116.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    The First Amendment prohibits the establishment of a religion or the prohibition of the free exercise of religion.

118.    The Executive Order constitutes an unlawful attempt to discriminate against Muslims and to establish a preference for one religion over another. References in the Executive Order to the seven Designated Countries are transparently a pretext to establish this preference. Singling out Muslims for disfavored treatment and granting special preferences to non-Muslims is neither justified by, nor closely fitted to, any compelling governmental interest.

119.    The Executive Order also violates the rights of Plaintiff the Episcopal Diocese to receive information and speech from, and to associate freely with, refugees.

### COUNT TWO
### RELIGIOUS FREEDOM RESTORATION ACT
### (Against All Defendants, Asserted by All Plaintiffs)

120.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

121.     Pursuant to the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 et seq., the government "shall not substantially burden a person's exercise of religion" unless it "(1) is in furtherance of a compelling government interest; *and* (2) is the least restrictive means of furthering that compelling governmental interest." *Id*. (emphasis added).

122.     The Executive Order has the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing important immigration benefits principally from Muslims on account of their religion. In doing so, the Executive Order places a substantial burden on Muslims' exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

123.     Defendants' actions therefore constitute a violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 *et seq*.

## COUNT THREE
## FIFTH AMENDMENT – EQUAL PROTECTION
### (Against All Defendants, Asserted by All Plaintiffs)

124.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

125.     The Executive Order discriminates against Plaintiffs on the basis of their country of origin without sufficient justification and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

126.     Additionally, the Executive Order was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment.

127.     The Executive Order expressly prioritizes certain religious groups over others, in further violation of the equal protection component of the Due Process Clause of the Fifth Amendment.

128.     The Executive Order bars altogether Syrian refugees in violation of the equal protection component of the Due Process Clause of the Fifth Amendment.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

## COUNT FOUR
## FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
### (Against All Defendants, Asserted by All Plaintiffs)

129.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

130.    Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty or property interests protected under the Due Process Clause of the Fifth Amendment.

131.    Defendants' actions, as described above, have deprived Plaintiffs of their liberty and/or property interests without notice or opportunity to be heard.

## COUNT FIVE
## FIFTH AMENDMENT – SUBSTANTIVE DUE PROCESS
### (Against All Defendants, Asserted by Individual Plaintiffs and the
### Non-Immigrant Visa Class)

132.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

133.    The Due Process Clause of the Fifth Amendment provides that "[n]o person shall…be deprived of life, liberty, or property, without due process of law."

134.    Plaintiffs Jane Doe and John Doe have a constitutionally protected liberty interest in freedom of movement that encompasses their right to travel abroad.

135.    Defendants' actions, as described above, have denied Plaintiffs the opportunity to travel outside the United States, for fear that they will be denied re-entry. Such actions, taken pursuant to the Executive Order, violate the substantive due process rights guaranteed by the Fifth Amendment to Plaintiffs.

CLASS ACTION COMPLAINT
PAGE 29

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

**COUNT SIX**
**ADMINISTRATIVE PROCEDURE ACT—PROCEDURAL VIOLATION**
**(Against all Defendants except Defendant Trump, Asserted by All Plaintiffs)**

136.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

137.    Sections 553 and 706 of the Administrative Procedure Act, 5 U. S. C. §§ 553 and 706 (2), require that federal agencies conduct formal rule making before engaging in action that impacts substantive rights.

138.    In implementing Sections 3 and 5 of the Executive Order, Defendants federal agencies and Defendant secretaries and/or directors of those agencies have changed the substantive criteria by which individuals from the Designated Countries may enter the United States.  Such Defendants did not follow the procedures required by the Administrative Procedure Act before taking action impacting the substantive rights of the Plaintiffs.

139.    In addition, the Administrative Procedure Act, 5 U. S. C. § 706 (2), places clear limits on the exercise of discretion to revoke a visa under 8 U.S.C. § 1201(i). Specifically, the Secretary of State must comply with statutory procedures for the revocation of a visa; the Secretary's action must not exceed his or her statutory authority; and the Secretary must respect the constitutional rights enjoyed by visa holders. *See* 5 U.S.C. § 706(2).

140.    By failing to follow the procedures required of them prior to changing the substantive criteria by which individuals from the Designated Countries may enter the United States, Defendants federal agencies and Defendant secretaries and/or directors of those agencies violated the Administrative Procedure Act.

141.    These violations continue to cause ongoing harm to Plaintiffs.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

**COUNT SEVEN**
**ADMINISTRATIVE PROCEDURE ACT—SUBSTANTIVE VIOLATION**
**(Against all Defendants except Defendant Trump, Asserted by all Plaintiffs)**

142.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

143.    The Administrative Procedure Act, 5 U. S. C. § 706(2), prohibits federal agency action that is arbitrary, unconstitutional, or contrary to statute.

144.    In implementing Sections 3 and 5 of the Executive Order, Defendants federal agencies and Defendant secretaries and/or directors of those agencies have taken unconstitutional and unlawful action, as alleged in this Complaint, in violation of the Administrative Procedures Act.

145.    In implementing Sections 3 and 5 of the Executive Order, Defendants federal agencies and Defendant secretaries and/or directors of those agencies have applied provisions of the Executive Order arbitrarily, in violation of the Administrative Procedures Act.

146.    Defendants' actions as set forth above were (A) arbitrary, capricious, discriminatory, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and (D) without observance of procedure required by law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A)-(D).

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioners pray that this Court grant the following relief:

1.    A determination that the Individual Plaintiffs' claims may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2);

2.    A declaration that the Executive Order and the manner in which it has been implemented are in violation of the rights of Plaintiffs and Plaintiff Class members for the reasons set forth above.

CLASS ACTION COMPLAINT
PAGE 31

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

3.      An injunction that the Executive Order may not be enforced as against Plaintiffs and Plaintiff Class members in connection with their entry or re-entry into the United States;

4.       A permanent injunction of the Executive Order as contrary to the Constitution;

5.      An award to the organizational Plaintiff and to the Plaintiff Class of reasonable costs and attorneys' fees; and,

6.      Such other and further relief that this Court may deem fit and proper.

DATED this 7th day of February, 2017.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

1

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION

KELLER ROHRBACK L.L.P.

2

3

By: /s/ Emily Chiang

By: /s/ Lynn Lincoln Sarko
By: /s/ Tana Lin
By: /s/ Amy Williams-Derry
By: /s/ Derek W. Loeser

4

Emily Chiang, WSBA # 50517
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184
Email: echiang@aclu-wa.org

5

6

**Attorneys for Plaintiffs**

7

Lynn Lincoln Sarko, WSBA # 16569
Tana Lin, WSBA # 35271
Amy Williams-Derry, WSBA #28711
Derek W. Loeser, WSBA # 24274
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email: lsarko@kellerrohrback.com
            dloeser@kellerrohrbak.com
            tlin@kellerrohrback.com
            awilliams-derry@kellerrohrback.com

8

9

10

11

12

By: /s/ Laurie B. Ashton

13

Laurie B. Ashton*
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012-2600
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
Email: lashton@kellerrohrback.com

14

15

16

17

By: /s/ Alison Chase

18

Alison Chase*
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012-2600
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
Email: lashton@kellerrohrback.com
            achase@kellerrohrback.com

19

20

21

22

**Cooperating Attorneys for the American
Civil Liberties Union Of Washington
Foundation**

23

24

*Pro hac vice* applications forthcoming

25

26

CLASS ACTION COMPLAINT
PAGE 33

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384