The Honorable James L. Robart

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8
9

| | |
|---|---|
| John Doe, Jane Doe, Jack Doe, Jason Doe, Julia Doe, Joseph Doe and James Doe, individually, and on behalf of all others similarly situated; the Episcopal Diocese of Olympia, and the Council on American Islamic Relations-Washington, <br><br> Plaintiffs, <br><br> v. <br><br> Donald Trump, President of The United States; U.S. Department of State; Rex Tillerson, Secretary of State; U.S. Department of Homeland Security; John Kelly, Secretary of Homeland Security; U.S. Customs and Border Protection; Kevin McAleenan, Acting Commissioner of U.S. Customs and Border Protection; and Michele James, Field Director of the Seattle Field Office of U.S. Customs and Border Protection <br><br> Defendants. | No. 2:17-cv-00178-JLR <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

FIRST AMENDED CLASS
ACTION COMPLAINT

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     JURISDICTION AND VENUE .......................................................... 5

III.    PARTIES ........................................................................................... 6

        A.      Plaintiffs ................................................................................ 6

                1.      Plaintiff John Doe ...................................................... 6

                2.      Plaintiff Jane Doe ....................................................... 8

                3.      Plaintiff Jack Doe ....................................................... 9

                4.      Plaintiff Jason Doe ................................................... 10

                5.      Plaintiff Julia Doe .................................................... 12

                6.      Plaintiff Joseph Doe ................................................. 13

                7.      Plaintiff James Doe .................................................. 15

                8.      Plaintiff The Episcopal Diocese of Olympia .......... 17

                9.      Plaintiff The Council on American-Islamic Relations-
                        Washington .............................................................. 20

        B.      Defendants ........................................................................... 23

IV.     FACTUAL BACKGROUND ............................................................ 24

        A.      President Trump's January 27, 2017 Original Executive Order ...................... 24

                1.      Visa Revocations Pursuant to the Original Executive Order ................ 25

                2.      Chaos, Confusion, and Whiplash in the Implementation of
                        the Original Executive Order ................................. 27

                3.      The Discriminatory Intent Behind the Original Executive
                        Order ........................................................................ 30

        B.      President Trump's March 6, 2017 Revised Executive Order ........................... 34

        C.      The Arbitrariness of the Executive Orders ..................................... 39

1           1.     Arbitrariness of the Travel Ban........................................................ 40

2           2.     Arbitrariness of the Suspension of the Refugee Admissions
Program................................................................................... 48

D.     Court Orders and President Trump's Continuing Defiance Thereof................. 57

V.     CLASS ACTION ALLEGATIONS ........................................................ 63

VI.    CAUSES OF ACTION ..................................................................... 65

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

## I.    INTRODUCTION

1.    Just as "the world is not made brand new every morning," *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 866 (2005), "a person is not made brand new simply by taking the oath of office." *Aziz v. Trump*, No. 117CV116LMBTCB, 2017 WL 580855, at \*8 (E.D. Va. Feb. 13, 2017). Impermissible animus cannot be cleansed with a few "mostly minor technical differences":[1] a Muslim ban is a Muslim ban.

2.    One week after taking the oath of office as President of the United States, Defendant Trump carried out a promise he made repeatedly and explicitly on the campaign trail, launching "a total and complete shutdown of Muslims entering the United States" with his signature on Executive Order 13769 "Protecting the Nation from Foreign Terrorist Entry into the United States" (the "Original Executive Order" or "Original Order"). A senior advisor confirmed the next day that the Original Executive Order was, in fact, Defendant Trump's attempt to institute his "Muslim ban."[2]

3.    With the stroke of a pen, he threw into chaotic uncertainty the lives of tens of thousands of individuals who had been granted valid student and work visas and disrupted the passage to safety for refugees and their families, including women and children who had been victimized by actual terrorists, all of whom had already been subjected to an exhaustive and thorough screening by the United States government.

4.    Multiple courts—including this Court and the Ninth Circuit Court of Appeals— recognized the ban for the affront to our Constitution it was and promptly stayed it. While continuing to insist there was "nothing wrong" with the original Order, Defendants openly advertised that the Revised Order would have "mostly minor technical differences" from the Original Order and "fundamentally" would be "the same basic policy outcome for the country."[3]

---

[1] *See infra*, n. 79.

[2] *See infra*, n. 28.

[3] *See infra*, n. 79.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

Defendants then spent more than a month publicly struggling to figure out how to do exactly what they repeatedly said they wanted to do: ban Muslims.

5.      In the meantime, Defendant Trump continued to stoke fear and sow misinformation, claiming "our country [is] in such peril… People pouring in. Bad!"[4], "THE SECURITY OF OUR NATION IS AT STAKE!",[5] -and "'77% of refugees allowed into U.S. since travel reprieve hail from seven suspect countries.' (WT) [sic] SO DANGEROUS!"[6]

6.      Defendant Trump was supposed to issue the new order on March 1, 2017, the day after he addressed Congress.[7]  But despite his public statements regarding the urgent national security need for the ban, Defendant Trump delayed signing a new order for five days more to maximize the favorable press coverage of his first address to Congress and to allow the executive order "to have its own 'moment.'"[8]

7.      On March 6, 2017, Defendant Trump signed Executive Order 13769, also titled "Protecting the Nation from Foreign Terrorist Entry into the United Sates" ("Revised Executive Order" or "Revised Order"). Despite the fact that Defendant Trump had originally claimed that "[i]f the ban were announced with a one week notice, the 'bad' would rush into our country during that week,"[9] the Revised Order was set to go into effect ten days after its signing, on March 16, 2017.

---

[4] *See infra* n. 72.

[5] *See infra* n. 74.

[6] *See infra* n. 75.

[7] *See infra* n. 34.

[8] Laura Jarrett, Ariane de Vogue & Jeremy Diamond, *Trump Delays New Travel Ban After Well-Reviewed Speech*, CNN (Mar. 1, 2017), *available at* http://www.cnn.com/2017/02/28/politics/trump-travel-ban-visa-holders (last accessed Mar. 13, 2017). and Marina Feng, *Pence Says Trump's Revised Immigration and Travel Ban Coming 'In a Few Days'*, Huffington Post (Mar. 1, 2017), *available at* http://www.huffingtonpost.com/entry/trump-revised-immigration-ban_us_58b6cc57e4b0a8a9b787b1f0 (last accessed Mar. 13, 2017).

[9] *See infra* n. 64.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 2

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

8.      The Revised Order is every bit as much of a Muslim ban as the Original Order and every bit as unconstitutional. It reflects Defendant Trump's explicit vow to "follow[ ] through on what I pledged to do"[10] and "keep my campaign promises."[11] True to his promise, Defendants made a few cosmetic changes to address some of the most obvious facial legal deficiencies with the Original Order.

9.      But the Constitution is not so easily fooled. Cosmetic changes made openly and explicitly to evade judicial scrutiny fail to mask the discriminatory animus that continues to pervade the Order. Even if not as plain on its face as the Original Order, the Revised Order remains in contravention of "[t]he clearest command of the Establishment Clause . . . that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

10.      Just like the Original Order, the Revised Order bans the entry into this country of nationals from the Muslim-majority countries of Iran, Libya, Somalia, Sudan, Syria, and Yemen (the "Designated Countries") and completely halts refugee entries for 120 days. And although Iraqis are no longer banned under the Revised Order, it targets no new countries.

11.      Far from eliminating the need for judicial scrutiny, the combined Orders underscore the need for it. The secret revocation of tens of thousands of valid visas pursuant to the Original Order, the subsequent post hoc attempt to exempt green card holders—but not other valid visa holders—from the Original Order, the implication by Defendant Trump that he would not abide by court orders staying the Original Order, and the eventual issuance of a Revised Order with an arcane waiver scheme dependent solely upon the discretion of individual consular officers has created an unstable, unpredictable, and uncertain situation for all Plaintiffs.

12.      Plaintiffs are Washington residents from the Designated Countries with expired (e.g. expired and used multiple entry or used single entry) non-immigrant visas who are trapped

_____

[10] *See infra*, n. 31.

[11] *See infra*, n. 31.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

inside the United States—unable to visit their families in their home countries or carry out education-related travel for fear they will be unable to return to their lives here ("the Non-Immigrant Visa Class"). Unlike similarly situated people from the non-Designated Countries, once members of the Non-Immigrant Visa class leave the country, they know they will be singled out: the default for them is denial of a new visa unless they are fortunate enough to procure a waiver from the general ban.

13.    Plaintiffs are also refugees and asylees who reside in Washington and have filed applications to reunify with their family members who have completed and cleared their final security screenings ("the Refugee Class"). They have fled war-torn countries, survived brutal conditions in refugee camps, and finally made it into the United States—some, after years of uncertainty and fear. They anxiously await reunification with dearly loved family members who were cleared for travel prior to the signing of the Original Order and now reasonably fear those family members will never make it into the United States. Plaintiffs seek to directly represent themselves and others similarly situated.

14.    Also harmed by the Revised Order is Plaintiff the Episcopal Diocese of Olympia (the "Episcopal Diocese" or "Diocese"), a religious entity organized in the State of Washington to do charitable works, including to support the resettlement of refugees in Washington. The Diocese has had its refugee resettlement activities completely upended as a result of the Original and Revised Executive Orders which barred the arrival of persons granted refugee status by an administrative judge. As of the filing of the Amended Complaint, nearly 20 families from the Designated Countries and nearly 17 families from other countries whom the Episcopal Diocese was supporting in resettlement were granted refugee status and approved for travel to the United States but had their trips canceled as a result of the Orders, wasting precious resources and frustrating the activities of the Diocese.

15.    The Council on American-Islamic Relations-Washington ("CAIR-WA") is harmed by the Revised Order. CAIR-WA is a non-profit organization based in Seattle that works

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 4

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to promote an understanding of Islam through dialogue, education, protection of civil liberties, and coalition-building. As a result of the Orders, CAIR-WA has received numerous inquiries from its constituent about American-Muslim travelers who have become the target of unconstitutional ideological questioning by Transportation Security Administration and Customs and Border Protection agents about their personal beliefs. CAIR-WA has had to devote substantial, unplanned-for resources to respond.

16.    The Episcopal Diocese of Olympia, CAIR-WA, and the individual Plaintiffs—on behalf of themselves and two classes of similarly situated people in Washington State—bring this suit to challenge the provisions and implementation of the Revised Executive Order that violate the First Amendment, the Fifth Amendment, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

17.    The individual Plaintiffs, the classes they seek to represent, the Episcopal Diocese, and CAIR-WA (collectively, "Plaintiffs"), currently suffer serious harm and will continue to suffer such harm until and unless this Court preliminarily and permanently enjoins the Revised Executive Order. Plaintiffs have no adequate remedy at law.

## II.    JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims under the U.S. Constitution and federal statutes, as well as under the Administrative Procedure Act, 5 U.S.C. § 706.

19.    The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

20.    Venue is proper under 28 U.S.C. §1391(b)(2) and (e)(1). A substantial part of the events or omissions giving rise to the claims occurred in this district, and all individual Plaintiffs reside in this District. Further, Defendants are officers or employees of the United States acting in their official capacities, and agencies of the United States.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 5

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

21.    Plaintiff the Episcopal Diocese, also known as the Episcopal Church in Western Washington, is a diocese of the Episcopal Church in Washington State west of the Cascade Range. The Episcopal Diocese is headquartered in Seattle and is a registered 501(c)(3) corporation.

## III.    PARTIES

### A.    Plaintiffs

### 1.    Plaintiff John Doe

22.    Plaintiff John Doe is an Iranian national who resides in Seattle, Washington. John Doe is a fourth year Ph.D candidate in Aeronautic and Astronautic Engineering at the University of Washington. John Doe is simultaneously studying for a master's degree in applied mathematics at the University of Washington. John Doe has a provisional patent, "patent pending," in the United States pertaining to battery function. He is also a graduate fellow with the Clean Energy Institute in Seattle.

23.    John Doe holds a multiple entry F1 student visa that will expire in August 2017. This is his second such visa that allows him to pursue full-time educational study in the United States. John Doe received both of his F1 visas after an intensive vetting and screening process abroad that included an in-person interview and proof of his admission status at the University of Washington as a full-time doctoral student.

24.    John Doe first arrived in the United States in 2012. Before that he studied for a master's degree in civil engineering in the Netherlands, and then worked for a year in the Netherlands for an international offshore oil and gas company. John Doe has also served as a visiting researcher at ETH Zurich in Switzerland studying nonlinear solitary waves, and at the University of South Carolina studying nonlinear wave propagation. John Doe received his undergraduate bachelors of science degree in civil engineering in Iran.

25.    John Doe's immediate and extended family, including maternal grandparents, all live in Iran.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

26.     John Doe is engaged in collaborative research with the Chinese Academy of Science. He co-authors publications with Chinese researchers and is actively advising and directing joint research with students in the United States and China on these projects. As part of this collaboration, John Doe conducted research in China for three months in 2016. John Doe was planning to return to China for further research and collaboration in April of 2017 but canceled that trip because of the travel ban. John Doe hopes to be able to go to China this summer but remains fearful of what position Defendants may take next that might potentially leave him stranded outside the country if he makes the trip.

27.     As part of his doctorate studies, it is anticipated and expected that John Doe will participate in international conferences, because such endeavors are essential to his training and his ability to be fully active in the scientific and research community. There are numerous upcoming academic conferences that John Doe was planning to attend such as the International Renewable Energy Storage Conference in Dusseldorf, Germany on March 14-16, 2017, the International Conference on Hybrid and Organic Photovoltaics in Lausanne, Switzerland in May 2017, and the Third International Conference on Perovskite Solar Cells and Optoelectronics in Oxford, England in September 2017. However, as the submission deadline for the conferences are often several months before the event, and given the multiple times Defendants changed their mind while implementing the Original Order, John Doe either decided not to submit proposals for several of the conferences to which he otherwise would have applied to make presentations or canceled his travel plans to attend as a result of Defendants' actions. In addition, given the uncertainty that remains with the Revised Order, he continues to fear that if he leaves the United States to attend an academic conference, he may be prevented from re-entering the United States. John Doe's inability to reenter the United States would prevent him from completing his doctorate.

28.     John Doe's research and career have suffered and will continue to suffer as long as the Revised Executive Order is in place.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 7

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
T E L E P H O N E : (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
T E L E P H O N E : (206) 623-1900
F A C S I M I L E : (`206) 623-3384

29.    John Doe is pursuing his claims anonymously because he is afraid of retaliation from the United States government or others for asserting his rights.

**2.    Plaintiff Jane Doe**

30.    Plaintiff Jane Doe is an Iranian national who resides in Seattle, Washington. Ms. Doe holds a multiple entry F1 student visa and is lawfully in the United States, studying to complete a master's degree at the University of Washington.

31.    Jane Doe received her F1 visa after an intensive vetting and screening process abroad that included an in-person interview at the Vancouver consulate, and proof of her admission status at the University of Washington as a full-time student. Jane Doe first came to the United States in September 2016 to pursue her graduate studies. Jane Doe's dream in pursuing her graduate degree was to work in international public policy, including to perhaps work one day for the United Nations.

32.    As part of her academic and professional training, Jane Doe was pursuing summer internships outside of the United States when the Original Executive Order issued. However, because of the Original Executive Order, Jane Doe's plans changed dramatically. As a direct result of the Original Executive Order, Jane Doe canceled all of her upcoming interviews for summer internships outside the United States for fear she would not be able to return. The Original Executive Order arrested Jane Doe's international plans for the summer and also disrupted her longer-term plans of international work. Without an international summer internship, Jane Doe's dreams of a career in international work may be permanently on hold.

33.    In addition, Jane Doe fears that she will not be able to leave the United States to see her family—all of whom live overseas, including her elderly grandparents—and that they will not be able to come to the United States to visit her either for the duration of her studies.

34.    Further, although Jane Doe receives some funding from UW and works as a teaching assistant, she still relies on financial support from her parents in Iran. Sanctions

imposed by the United States on Iran make money transfers from her parents to her extremely difficult, if not impossible, without in-person contact.

35.     The Original Executive Order disrupted Jane Doe's work, study, and goals. It isolated her from her family, most of whom live in Iran, and forced her to cancel a visit she had planned with her brother (who lives in Paris, France) to celebrate the Persian New Year, Nowruz, in March. She now feels that the work and resources, including tuition, that she has put into her degree to date have been wasted. Jane Doe is strongly considering abandoning her graduate studies as a result of the Original Executive Order.

36.     Given the multiple times Defendants changed their minds while implementing the Original Order and the uncertainty that remains with the Revised Order, Jane Doe continues to fear that she may be prevented from re-entering the United States if she leaves, which would prevent her from completing her graduate studies.

37.     The Revised Executive Order thus also harms and will continue to harm Jane Doe's ability to pursue her studies.

38.     Jane Doe is pursuing her claims anonymously because she is afraid of retaliation from the United States government or others for asserting her rights.

### 3.     Plaintiff Jack Doe

39.     Plaintiff Jack Doe Jack Doe is an Iranian national who resides in Seattle.

40.     Jack Doe is a post-doctorate researcher at the University of Washington in a joint appointment that includes Electrical Engineering. He is working under his F1 visa Optional Practical Training ("OPT") status, and subsequent extension for STEM students ("STEM OPT"), which together allow him, after completing his degree, to work for 3 years in academia. OPT is temporary employment that is directly related to an F-1 student's major area of study, and the STEM OPT extension allows certain F-1 students who receive science, technology, engineering, and mathematics (STEM) degrees, and who meet other specified requirements, to apply for a 24-

month extension of their post-completion OPT. Application for both OPT and STEM OPT requires endorsement by the student's "designated school official" at the student's U.S. academic institution.

41. Jack Doe's OPT status will expire on May 31, 2017, and with it, his student visa.

42. Jack Doe has an undergraduate degree in Electrical Engineering from Sharif University in Tehran.

43. Jack Doe first came to the United States in 2006 with an F1 visa to work on a Ph.D at the University of Maryland. He obtained his first F1 student visa from the United States embassy in Cypress.

44. In 2008, Jack Doe returned briefly to Iran to visit his family. Most of his family lives in Iran. He also traveled to Dubai to obtain another F1 single entry student visa that allowed him to return to the United States to continue his educational training.

45. Since completing his Ph.D in 2014, Jack Doe has been operating under the OPT provision of his visa to do post-doc research at the University of Washington.

46. Although Jack Doe is in the United States and working legally, his status will change during the 90-day ban set out in Section 2(c) of the Revised Order. Jack Doe will lose his ability to work after May 31, 2017. Prior to the issuance of the Executive Orders, Jack Doe had been interviewing with employers. His future employment prospects are now in complete jeopardy because he is at a significant disadvantage compared to other foreign nationals who are not from one of the Designated Countries and who can therefore travel freely both for the duration of the 90-day ban and in the future.

47. Jack Doe is pursuing his claims anonymously because he is afraid of retaliation from the United States government or others for asserting his rights.

### 4.   Plaintiff Jason Doe

48. Plaintiff Jason Doe is a resident of Seattle.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 10

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

49.     Jason Doe is an Iranian national. He first came to the United States in 2013 with his wife, who was enrolled in a doctorate program at the University of Washington. His wife held an F1 visa, and he held an F2 visa.

50.     In 2014, Jason Doe was accepted into a 5-year doctorate program at the Business School of the University of Washington to study Information Systems. He is halfway through his program and anticipates graduating in 2019. Jason Doe would like to stay in academia, as a researcher, writer, and professor in his field.

51.     After he was admitted to the University of Washington, Jason Doe left the United States to obtain a multiple entry F1 visa. He obtained one in 2014 and returned to the University of Washington to work on his Ph.D. Jason Doe's visa expired in August 2016, but he is in the United States lawfully because his F1 status is valid until 2019 pursuant to his Form I-20. His F1 status may also be extended if it takes him longer to finish his degree.

52.     Jason Doe's wife currently holds an F2 visa and associated I-20. Her F2 status will also expire in 2019.

53.     The majority of his and his wife's families are in Iran.

54.     Given Jason Doe's time horizon on graduation and the fact that he is halfway through his program, he should be starting to attend conferences to present papers, expand his contacts, and develop his expertise. Most of the conferences that would be appropriate for him to attend are international conferences, which would require travel outside of the United States in the coming months.

55.     However, as a result of the travel ban, Jason Doe cannot leave the country for fear he will not be permitted to return. He is particularly reluctant to leave without his wife for fear that they will be separated. His research and career will suffer as long as the Revised Executive Order is in place.

56.     Jason Doe is pursuing his claims anonymously because he is afraid of retaliation from the United States government or others for asserting his rights.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

5. **Plaintiff Julia Doe**

57.     Plaintiff Julia Doe is an Iranian national who resides in Seattle, Washington. Julia Doe is a second-year Ph.D candidate at the University of Washington. Julia Doe has three or four years left of her studies before she completes her degree.

58.     Julia Doe holds a single entry F1 student visa. Julia Doe received her F1 visa after engaging in an extensive vetting and screening process abroad that included an in-person interview and proof of her admission to the University of Washington as a full-time doctoral student.

59.     Julia Doe first arrived in the United States in September 2015. Before that she received a Bachelor's degree from a university in Iran. Ms. Doe has done research and internships at prestigious academic and corporate institutions in Europe.

60.     Julia Doe's immediate and extended family, including grandparents, all live in Iran. Julia Doe has not seen her family in two years. She had planned on returning to Iran for a visit later this year after she finished her qualifications for her Master's degree. The visit is important to her because she is very close to her family, her grandmother is ailing, and close family members have had children.

61.     As part of her academic work, Julia Doe anticipated and expected that she will participate in international conferences. Julia Doe already has identified four international conferences that are all taking place outside of the United States that she would like to attend but cannot because of the travel ban and the uncertainty regarding her ability to return to the United States. One of these conference is in Vancouver, Canada, later this year. All of her colleagues are planning to drive to the conference. However, she cannot attend. The limitations on her ability to participate in international conferences negatively impact her academic growth and her professional development.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

62.     Given the multiple times Defendants changed their minds while implementing the Original Order and the uncertainty that remains with the Revised Order, Julia Doe continues to fear that she may be prevented from re-entering the United States if she leaves, which would prevent her from completing her graduate studies.

63.     The Revised Executive Order thus also harms and will continue to harm Julia Doe's ability to pursue her studies.

64.     Julia Doe is pursuing his claims anonymously because she is afraid of retaliation from the United States government or others for asserting her rights.

**6.    Plaintiff Joseph Doe**

65.     Plaintiff Joseph Doe is a Somalian national who currently resides in Des Moines, Washington.

66.     Joseph Doe is married with three children.

67.     Prior to arriving in the United States, Joseph Doe had lived in refugee camps in Kenya since 1992—for nearly 22 years. Joseph Doe's family fled Somalia during that country's violent civil war to escape persecution and the risk of being killed because of their clan membership. While trying to reach safety, Joseph Doe's family spent weeks in the forest without food. Fighters from one of the warring factions found them in the forest and raped Joseph Doe's older sister. His mother tried to stop the rape of her daughter, but the men clubbed her in the head with the butt of their guns. His sister, who was pregnant, bled to death following the rape. Joseph Doe was approximately ten years old at the time and witnessed all of these events. He struggles with these memories to this day.

68.     Joseph Doe's family eventually reached Kenya and began living in a refugee camp. Joseph Doe had his initial interview with the United Nations High Commissioner for Refugees ("UNHCR") in 2000 with his mother, two brothers, and three surviving sisters.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 13

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

69.    In 2004, Joseph Doe left the camp one morning as he often did to try to earn some money for his family. But when he returned, he found out that the local Turkana people had raided the camp, and in the subsequent fighting and upheaval, his family was nowhere to be found. To this day, Joseph Doe does not know where his mother or siblings are or what happened to them. He still hopes to find them someday.

70.    When he was finally called for an interview with DHS/USCIS in 2011, Joseph Doe had just gotten married. He went through the screening process with DHS/USCIS starting in 2011 and completed it in December 2013.

71.    Joseph Doe finally arrived in the United States on January 28, 2014, as a refugee. He only had refugee status for himself as the refugee process was begun for him with his mother and siblings when he was a child.

72.    Joseph Doe became a legal permanent resident in 2016. Joseph Doe is currently working, sending money to his family in Kenya, and preparing for their arrival.

73.    When he came to the United States, Joseph Doe had to leave behind in Kenya his wife and children, the youngest of whom was just about six months old at the time. His children are now 3, 4, and 9 years old.

74.    Joseph Doe filed a Refugee/Asylee Relative Petition, Form I-730, for his wife and three children in June 2015. His wife and children had their final interviews in November 2016, which they successfully passed; they have completed the security clearance; they completed their medical clearance on January 31, 2017; and they received their final required injections on March 1, 2017. They are only waiting to be scheduled for travel to the United States.

75.    Joseph Doe was told that the only thing left before his family would travel to the United States was for their travel arrangements to be finalized. However, as of the date of this filing, Joseph Doe's family members have not received their tickets for travel, and they have not been permitted to come to the United States.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

76.      Joseph Doe has been unable to learn why his family's travel has not been arranged or why they have not been able to travel to the United States.

77.      Because of the Revised Order, Joseph Doe now understands that his family's travel to the United States will be delayed for at least 120 days, and possibly indefinitely if the refugee cap is met before they are admitted. With this delay, it is likely that his family's medical clearance will expire and they will be required to repeat that part of the process.

78.      The Revised Order has interfered with and delayed the arrival to the United States of the only family Joseph Doe has left. Joseph Doe is injured by that interference and delay.

79.      Joseph Doe is pursuing his claims anonymously because he is afraid of retaliation from the United States government or others for asserting his rights.

**7.      Plaintiff James Doe**

80.      James Doe is an Eritrean national who resides in Seattle, Washington.

81.      James Doe fled Eritrea in 2009 after being imprisoned because of his political beliefs. In 2009, he was working at Sawa Military Training Camp ("Sawa") as part of his mandatory national service, which is required of every Eritrean for 18 months by law, but in practice is a system of indefinite conscription. The Eritrean government requires all Eritrean students to spend their last year of high school at Sawa, and James Doe was working as an instructor there, teaching accounting, which was his focus of study at university. While he was forced to work at Sawa, he was only able to go home to see his wife and children every three or four months. At that time, his oldest child was about a year old, and his wife was expecting their second child.

82.      In or around March 2009, the Eritrean government called a meeting to ask people at Sawa what changes they would like to see implemented, and James Doe participated in this meeting and voiced his opinions. Two or three days later, government officers came to his room at Sawa and arrested him.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

83.     They took him to an underground prison and kept him there for approximately five months. The prisoners were not given enough food to eat, and they had no water for washing. Many prisoners were tortured with beatings and by being tied up for long periods of time, including one technique well known in Eritrean prisons called the "helicopter," in which the hands and feet of a prisoner are tied behind his back and he is made to lie on the ground, face down, or suspended in the air. Sometimes the guards would remove prisoners and not bring them back, and the other prisoners did not know what became of them. James Doe knew not to speak out to the prison guards and was able to avoid being tortured, and eventually, he escaped the prison.

84.     He fled first to Sudan, then through Egypt, and made it to Israel. Once he had made it to Israel, he was finally able to contact his wife and let her know what had happened to him.

85.     James Doe stayed in Israel for a significant time, but he could not get permanent status in Israel as a refugee. He was able to get a visa for travel to Sri Lanka as a refugee, but after he arrived there, the Sri Lankan government began detaining Eritrean refugees. He was detained and kept in prison for almost two years.

86.     The United Nations, investigating the Sri Lankan detention centers, became aware of him and worked with him to help him obtain refugee status in the United States. In April 2015, nearly six years after he escaped prison in Eritrea, he made it to the United States.

87.     In July 2015, James Doe filed a Refugee/Asylee Relative Petition, Form I-730, for his wife and children. His family is currently living in Ethiopia, and his children, including the daughter whom he has never met, are now 8 and 9 years old.

88.     James Doe became a lawful permanent resident in 2016. He currently works two jobs, one full-time and one part-time, and provides financial support for his wife and children.

89.     In late September 2016, James Doe's I-730 petition for his wife and children was approved. At that time, James Doe learned that his family would come to the United States

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

within the next 4-5 months. His family had been interviewed at the US Embassy in Addis Ababa and had passed their security clearance. They also went through the required medical examinations and immunizations.

90.    James Doe was told that the only thing left before his family would travel to the United States was for their travel arrangements to be finalized. However, as of the date of this filing, James Doe's family has not received their tickets for travel, and they have not come to the United States.

91.    James Doe has been unable to learn why his family's travel has not been arranged or why they have not been able to travel to the United States.

92.    Because of the Revised Order, James Doe now understands that his family's travel to the United States will be delayed for at least 120 days. With this delay, it is likely that his family's medical clearance will expire and they will be required to repeat that part of the process.

93.    The Revised Order has interfered with and delayed James Doe's family's travel to the United States. James Doe is injured by that interference and delay.

94.    James Doe is pursuing his claims anonymously because he is afraid of retaliation from the United States government or others for asserting his rights.

**8.    Plaintiff The Episcopal Diocese of Olympia**

95.    The Episcopal Diocese of Olympia, also known as the Episcopal Church in Western Washington, is a diocese of The Episcopal Church located in western Washington. It is headquartered in Seattle's Capitol Hill neighborhood.

96.    The Episcopal Diocese is a local affiliate of the Episcopal Migration Ministries, a voluntary agency that welcomes refugees through a Cooperative Agreement with the Department of State. The Episcopal Diocese has operated a refugee resettlement program since 1978 and has sponsored more than 15,000 refugees of all religions and nationalities to resettle in the Seattle

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

area. The Episcopal Diocese's Refugee Resettlement Office ("RRO") is located in South Seattle and receives and assists refugees from all over the world, including from each of the 7 countries targeted by the Original Executive Order, without regard to race, religion, or country of origin. The RRO is one of eleven ministries offered and provided for by the Episcopal Diocese. The Episcopal Diocese's refugee resettlement program stems from the moral obligation of the Episcopal faith to welcome and assist strangers, especially those who are poor, sick, and most in need of help.

97.     The RRO provides a multitude of services to refugees, including coordinating the arrival of refugees to the United States, housing assistance, job training, providing for basic household needs, advocacy, language tutoring, business training and microenterprise loans, and a savings program to help refugees purchase homes, vehicles, education, or businesses. The RRO has 9.5 full time employees, with 4 full-time equivalent staff working directly to support new arrivals and their survival needs during their first 90 days in the United States. Approximately two dozen volunteers assist the RRO in providing these services.

98.     Before a refugee arrives in the United States, the RRO is notified by the Department of State that a family has been approved for refugee status and that the RRO should "assure" the case. The RRO is required to make contact with friends or relatives of the arriving refugees living in the U.S. (known as the "U.S. ties") who were listed on the refugee's application. The RRO expends significant time making phone calls, sending mail, and making in-person visits to meet with the U.S. tie to evaluate his or her capacity to help the RRO during the resettlement process. The evaluation process includes a home visit to view and evaluate the living space. If there is no possibility that the arriving refugee can live with a U.S. tie, the RRO further interviews the U.S. tie to determine if the relative or friend can assist with transportation, job search, enrollment of kids in school, or any of the other daily tasks with which newly arriving refugees need assistance.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
T E L E P H O N E : (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
T E L E P H O N E : (206) 623-1900
F A C S I M I L E : (`206) 623-3384

99.     If the U.S. tie cannot perform these tasks, the RRO invests its own resources to perform this pre-arrival legwork for the incoming refugees. These tasks include, among other things, searching for and obtaining safe housing, furnishing the residence, and stocking it with food and household items prior to the arrival of the refugees. If the refugee family or U.S. tie rejects the apartment or house, RRO staff begin a process of evaluating alternative locations. The RRO undertakes housing inspections that consume significant RRO staff time to ensure that the neighborhood is safe, that there is no bare wiring visible in the living space, no peeling or flaking interior paint or plaster, no visible mold or unsanitary odors, that all windows and doors have working locks, that heat, ventilation, lighting, and running water are adequate, that kitchen appliances and bathroom fixtures are in good repair, and that there are easily accessible storage or disposal facilities for garbage.

100.     The RRO's pre-arrival services can also involve cultivation of community groups or churches to help refugees during the first months of their adjustment to life in America. The RRO staff spend time visiting churches and community groups to describe the refugee resettlement process, ask for assistance with specific families that are still en route, and organize committees to help refugee newcomers with specific tasks like searching for employment.

101.     When the Original Executive Order was issued on January 27, 2017, the RRO was expecting to welcome over 20 refugee families—including families from Syria, Iraq, and Somalia—into the community in the coming days, weeks, and months, and had been actively preparing for their arrival and resettlement in the greater Seattle area by carrying out on their behalves the activities described above. As a result of the RRO's efforts, these refugee families already had domestic arrangements supporting their arrival in the United States and were approved for travel. Yet, these families had their dreams dashed when they had to abruptly cancel their travel plans as a result of the Original Executive Order.

102.     Since the Original Executive Order, the RRO's work has been completely disrupted. The chaos surrounding the implementation of the Original and Revised Executive

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 19

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (ˉ206) 623-3384

Orders has also required the RRO to expend additional, unplanned-for resources. RRO staff are working around-the-clock to address the immediate needs of these families in crisis and to respond to questions and concerns from their families and loved ones already in the United States who had been planning for the arrival of these already-approved refugees. In addition, many of the RRO's resources devoted to these refugee families over the past months have now been wasted.

103.    The Revised Executive Order only exacerbates the harm to the Diocese and the population it serves. A few of the refugees the Diocese was expecting have arrived between the time the Original Order was halted by court orders and the effective date of the Revised Order. However as of the filing of this Amended Complaint, nearly 20 families from the Designated Countries and nearly 17 families from other countries the Diocese was expecting have not arrived and certainly will not be able to complete their trips once the Revised Order goes into effect.

104.    Both the Original and Revised Executive Orders have caused and continue to cause significant additional harm to the most vulnerable population that the RRO and Episcopal Diocese are focused on serving. These refugees are fleeing persecution in their country of origin, and are now facing persecution in the safe haven they had been promised in the United States. The dramatic reduction in the overall number of refugees allowed this year will not only rob families of hope and a future but may also cost some of them their lives. The mission and efficacy of the RRO, and through it the Episcopal Diocese, has been thwarted by the Original Executive Order.

### 9.    Plaintiff The Council on American-Islamic Relations-Washington

105.    The Council on American-Islamic Relations-Washington (CAIR-WA) is a grassroots civil rights and advocacy group. CAIR-WA is a 501 (c) (3) non-profit organization that was incorporated in 2004 and operates from its offices in downtown Seattle.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

106.    The mission of CAIR-WA is to enhance the understanding of Islam in Washington state and throughout the United States by encouraging dialogue, protecting civil liberties, empowering American Muslims, and building coalitions that promote justice and mutual understanding. CAIR-WA also provides direct service to its Muslim constituents in the form of information, training, and access to a network of over 50 pro bono attorneys.

107.    Since January 27, 2017, and the issuance of the first Executive Order, CAIR-WA has received several inquiries from American-Muslim travelers in Washington who have become the target of unconstitutional and systematic ideological questioning by Transportation Security Administration and Customs and Border Patrol agents about their religious values and political views. The number of such inquiries has increased dramatically since January 27, 2016, and CAIR-WA has devoted and continues to devote considerable unplanned-for resources to respond to these inquiries and to educate the community about its rights in the face of the Executive Orders.

108.    Since January 27, 2017, CAIR-WA has also been flooded with inquiries from affected persons about the impact of the Executive Orders on their ability or the ability of their families to travel, cross borders, or with respect to visa or immigration status. CAIR-WA has received over 70 such requests for help from US citizens and others since January 27, 2017.

109.    In addition to its direct staff, CAIR-WA also works with a network of over 20 pro bono attorneys in Washington who provide direct services to its constituents on civil rights, immigration, and visa issues.

110.    CAIR-WA has provided referrals and advice to many United States citizens originally from the Affected Countries who are trying to reunite with their immediate families. For example, a Somali national has contacted CAIR-WA regarding his petition to be reunited with his wife and two children who remain in Djibouti.  On January 23, 2017, the US Embassy in Djibouti scheduled screening interviews for his family.  The Embassy canceled these interviews on January 29, 2017.  Despite the injunction preventing the implementation of the

Original Order, the US Embassy has refused to reschedule the interviews, and his family is now subject to the restrictions and delays of the Revised Order.

111.    Another United States citizen originally from Sudan has contacted CAIR-WA regarding her petition for her Sudanese father to receive an IR-5 visa.  Her father was scheduled for a screening interview at the US Embassy in the United Arab Emirates on February 15, 2017. The Embassy canceled the interview when the Original Order issued.  The interview was rescheduled after the Original Order was enjoined, and her father received his visa on February 20, 2017.  Unfortunately, however, her father's efforts to book travel to the United States have been thwarted, due to the issuance of the Revised Order. The airlines have required him to return to the US Embassy to ensure that his recently issued visa is still valid. Her father is now afraid to book his airline travel only to be detained or deported at the border when he tries to enter the United States.

112.    CAIR-WA assists and advises American Muslims such as those described above and provides education, advocacy, and referrals so they may navigate both the stated and implied ramifications of the Defendants' Orders.

113.    CAIR-WA has also experienced a dramatic increase in the number of inquiries from the Muslim community regarding the signed Executive Orders since January 27, 2017; in addition to inquiries about bullying, hate crimes, and other injuries suffered by those it serves as a direct result of Defendants' open antipathy for those observing the Muslim faith.

114.    CAIR-WA has had to hire a part-time civil rights team member to handle the extra work. This additional part-time position was not in CAIR's 2017 budget, but was deemed a necessary expenditure as part of CAIR-WA's commitment to providing a rapid response to the number of questions and reports of disruption in travel experienced by CAIR-WA constituents.

115.    In direct response to the original and revised Executive Orders, CAIR-WA has also organized several informational presentations for the Washington Muslim community to address the confusion, concern, and fear the Orders have stimulated.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 22

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

116.    In 2015 and prior years, at least 98 percent of CAIR-WA's funding was from individual donors, almost all of whom reside in the state of Washington, or from matching funds from companies that employ its individual donors and volunteers. The remaining 2 percent of CAIR-WA's funding comes from sponsorship from locally-based non-profits, mosques, and businesses that serve Washington communities.

**B.    Defendants**

117.    Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

118.    Defendant U.S. Department of State ("DOS") is a cabinet department of the United States federal government that is responsible for issuing visas.

119.    Defendant Rex W. Tillerson is the Secretary of State and has responsibility for overseeing enforcement and implementation of the Original Executive Order by all DOS staff. He is sued in his official capacity.

120.    Defendant U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States. Its sub-agencies include U.S. Citizenship and Immigration Services ("USCIS"), Customs and Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE").

121.    Defendant John Kelly is the Secretary of DHS and has responsibility for overseeing enforcement and implementation of the Original Executive Order by all DHS staff. He is sued in his official capacity.

122.    Defendant U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 23

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

123.    Defendant Kevin K. McAleenan is the Acting Commissioner of CBP has responsibility for overseeing enforcement and implementation of the Original Executive Order by all CBP staff. He is sued in his official capacity.

124.    Defendant Michele James is the Field Director of the Seattle Field Office of CBP and has responsibility for overseeing enforcement and implementation of the Original Executive Order by all DHS staff in her area, which covers Washington State. She is sued in her official capacity.

## IV.    FACTUAL BACKGROUND

### A.    President Trump's January 27, 2017 Original Executive Order

125.    On January 27, 2017, Defendant Trump signed the Original Executive Order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States." A copy of this Original Executive Order is attached to this Complaint as Exhibit A.

126.    The Original Executive Order cited the threat of domestic terrorism committed by foreign nationals and purported to direct a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States.

127.    Section 3(c) of the Original Executive Order suspended immigrant and nonimmigrant entry into the country for 90 days for all people from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. § 1187(a)(12), with narrow exceptions not relevant here. The Original Executive Order applied only to nationals of Syria, Sudan, Iraq, Iran, Libya, Somalia, and Yemen (the "Original Targeted Countries").[12] The ban applied regardless of whether such persons held valid visas and regardless of whether their visas were immigration or non-immigration related.

128.    Section 5(a) suspended the U.S. Refugee Admissions Program for 120 days.

---

[12] *Fact Sheet: Protecting The Nation from Foreign Terrorist Entry to The United States*, Dep't of Homeland Security (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/protecting-nation-foreign-terrorist-entry-united-states (last accessed Mar. 13, 2017).

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 24

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

129.    Section 5(b) stated that "refugee claims made by individuals on the basis of religious-based persecution, provided that the religion of the individual is a minority religion in the individual's country of nationality" will be prioritized.

130.    Section 5(c) contained as its statement of government interest a proclamation "that "the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and suspends the entry of Syrian refugees into the country.

131.    Section 5(e) provided for nearly unfettered individual discretion by the Secretaries of State and Homeland Security to "jointly determine to admit individuals … as refugees on a case-by-case basis, "in their discretion, but only so long as they determine that the admission of such individuals as refugees is in the national interest—including when the person is a religious minority in his country of nationality facing religious persecution."

132.    The Original Executive Order stated that "the United States should not admit those who engage in acts of bigotry or hatred (including . . . the persecution of those who practice religions different from their own)" and yet it singled out practitioners of a single religion for exclusion. *See* Exhibit A, Sec. 1.

### 1.    Visa Revocations Pursuant to the Original Executive Order

133.    The same day the Original Executive Order issued, the Deputy Assistant Secretary for Visa Services at the Bureau of Consular Affairs of the Department of State, relying on the Original Executive Order, issued a letter purporting to provisionally revoke all valid nonimmigrant and immigrant visas of nationals of the Original Targeted Countries, subject to exceptions not relevant here.

134.    The Provisional Revocation Letter was not publicized; to the contrary, it was withheld from the public until it was filed four days later under a "Notice of Supplemental Authority" in court cases challenging the Original Executive Order.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 25

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

135.    Neither notice nor opportunity to be heard was provided to the Episcopal Diocese, members of the Non-Immigrant Visa Class, Plaintiffs, or indeed anyone else prior to the mass revocation of these visas.

136.    The Provisional Revocation Letter compounded the chaos caused by the Original Executive Order. The federal government issued no public and legally binding guidance regarding the meaning or proper interpretation of the Provisional Revocation Letter. A copy of this letter is attached to this Complaint as Exhibit B.

137.    The Provisional Revocation Letter also appeared to expand the scope of the Original Executive Order's application: it applied on its face to persons who were present inside the United States as well as persons outside the United States, rather than being limited to persons seeking to enter the United States. Under section 221(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(i)(B), "[a]ny alien . . . whose nonimmigrant visa . . . has been revoked under section 1201(i) of this title" INA § 221(i), referenced in the Provisional Revocation Letter "is deportable."

138.    The State Department estimated that it revoked up to 60,000 visas.[13]

139.    The CBP stated on its website that all F1, J1, and M1 visas belonging to persons from the affected countries were provisionally revoked.[14]

140.    Upon information and belief, all H1B visas belonging to persons from the affected countries were also provisionally revoked.

---

[13] Mary Emily O'Hara, *Over 100,000 Visas Have Been Revoked by Immigration Ban, Justice Dept. Reveals*, NBC (Feb. 3, 1027), *available at* http://www.nbcnews.com/news/us-news/over-100-000-visas-have-been-revoked-immigration-ban-justice-n716121 (last accessed Mar. 13, 2017).

[14] *Q&A for Original Executive Order: Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. Customs and Border Protection (Feb. 2, 2017), *available at* https://www.cbp.gov/document/faqs/questions-and-answers-protecting-nation-foreign-terrorist-entry-united-states (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

1

2

### 2. Chaos, Confusion, and Whiplash in the Implementation of the Original Executive Order

3

4

141.    The disastrous effects of the Original Executive Order were immediately

apparent. Countless news reports document the chaotic scene at airports across the country as

those who were legally entitled to entry when they boarded airplanes heading to the United

States—refugees, immigrants, and those traveling on non-immigrant visas alike—were

designated deportable by the time they landed. For example, 109 travelers from the Original

Targeted Countries on non-immigrant visas were in transit to the country at the time the Original

Executive Order was signed.[15]  Up to 13 people were detained at the Seattle-Tacoma

International Airport on January 28, 2017 pursuant to the Original Executive Order.[16]

142.    Application of the Original Executive Order was inconsistent and confusing, with

contradictory official statements issued within days of one another—further heightening

Plaintiffs' reasonable and on-going fear that if they left the country, they would not be permitted

to return to their work and studies.

143.    For example, DHS's position on the application of the Original Executive Order

to lawful permanent residents, or green card holders, changed three times over the course of six

days following the issuance of the Original Executive Order:

- On January 28, 2017, a spokesperson for DHS stated that lawful permanent residents, or green card holders, would be barred from entry pursuant to the Original Executive Order.

- Secretary Kelly reversed course the next day on January 29th, issuing a statement that: "In applying the provisions of the president's Original Executive Order, I hereby deem the entry of lawful permanent residents to be in the national interest. Accordingly, absent the receipt of significant derogatory information indicating a

---

[15] Jeremy Diamond & Steve Almasy, *Trump's immigration ban sends shockwaves*, CNN (Jan. 30, 2017), *available at* http://www.cnn.com/2017/01/28/politics/donald-trump-executive-order-immigration-reaction/ (last accessed Mar. 13, 2017).

[16] Liz Jones & Isolde Raftery, *Roller coaster of heartbreak and fury at Sea-Tac in wake of Trump order*, KUOW.org (Jan. 28, 2017), *available at* http://kuow.org/post/roller-coaster-heartbreak-and-fury-sea-tac-wake-trump-order (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

serious threat to public safety and welfare, lawful permanent resident status will be a dispositive factor in our case-by-case determinations."

- Two days later on January 31, 2017, U.S. Customs and Border Protection, a DHS sub-agency, issued a statement that, while repeating Secretary Kelly's January 29th statement, then stated in the "Questions and Answers" Section that the entry of lawful permanent residents would depend on receipt of a "national interest waiver[] consistent with the provisions of the Original Executive Order."

- DHS changed its position yet again two days later. This time, the February 2, 2017 version of the "Questions and Answers" stated that "[u]nder recent guidance from the White House…the Original Executive Order issued January 27, 2017, does not apply to their [lawful permanent residents] entry to the United States." As of February 2, 2017, DHS had processed 1,610 waivers for legal permanent residents to re-enter the United States.

144.    In addition, on the day Defendant Trump issued the Original Order, Deputy Assistant Secretary for Visa Services at the U.S. Department of State, Edward J. Ramotowski, issued a letter that [17] "provisionally revoke[d] all valid nonimmigrant and immigrant visas of nationals of Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen." But then on February 1, 2017, White House Counsel Donald F. McGahn II—who is not in the chain of command for any of the Executive Departments—issued "Authoritative Guidance," admitting there was "reasonable uncertainty" surrounding provisions of the Original Order such that he needed to clarify that sections 3(c) and 3(e) of the Executive Order did not apply to lawful permanent residents.[18]

145.    Provisions of the Original Executive Order relating to refugees also were inconsistently interpreted and applied by Defendants, further heightening the need for judicial intervention.

---

[17] *Letter from Edward J. Ramotowski*, Deputy Assistant Secretary for Visa Services at the U.S. Dep't of State (Jan. 27, 2017), available at http://www.politico.com/f/?id=00000159-f6bd-d173-a959-ffff671a0001 (last accessed Mar. 14, 2017).

[18] *Emergency Motion Under Circuit Rule 27-3 for Administrative Stay & Motion for Stay Pending Appeal* at 72, *Washington v. Trump*, No. 17-35105 (9th Cir. Feb. 4, 2017), ECF No. 14.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

146.    For example, although Section 5(a) of the Original Executive Order unequivocally stated that "[t]he Secretary of State shall suspend the U.S. Refugee Admissions Program (USRAP) for 120 days," four business days later on February 2, 2017, and in a reversal of the clear mandate in the Original Executive Order, the Acting Director of the U.S. Immigration and Citizenship Services ("USCIS"), a division of DHS, issued a guidance to all USCIS employees that "USCIS will adjudicate Refugee/Asylee Relative Petitions [ ] for all beneficiaries, from any country of nationality, currently in the United States…". A copy of this guidance is attached as Exhibit C.

147.    In further contradiction of the clear language of unequivocal suspension of USRAP, DHS instructed that "[a]dditionally, USCIS will continue refugee interviews in jurisdictions where there is a preexisting international agreement related to refugee processing." Exhibit C.

148.    The February 2, 2017 guidance to USCIS employees also stated that "USCIS will *continue* refugee interviews when the person is a religious minority in his or her country of nationality facing religious persecution." Exhibit C (emphasis added).

149.    As summed up by the Ten National Security Experts:

the repeated need for the Administration to clarify confusion after the Order issued suggest that that Order received little, if any advance scrutiny by the Departments of State, Justice, Homeland Security or the Intelligence Community. Nor have we seen any evidence that the Order resulted from experienced intelligence and security professionals recommending changes in response to identified threats."

Joint Declaration at ¶7.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 29

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

### 3. The Discriminatory Intent Behind the Original Executive Order

150. The Original Executive Order and the Provisional Revocation Letter applied only to nationals of seven countries, all of which are majority-Muslim: Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.

151. The Original Executive Order, by its express terms, suspended immigrant and nonimmigrant entry into the United States based on nationality, place of birth or place of residence.

152. The Provisional Revocation Letter similarly revoked "all valid nonimmigrant and immigrant visas of nationals" based on nationality, place of birth, or place of residence.

153. The Original Executive Order was Defendant Trump's fulfillment of a clearly stated campaign promise to ban Muslims from entering the United States. In a December 7, 2015 written statement, "Donald J. Trump Statement on Preventing Muslim Immigration," then-candidate Trump said that he was "calling for a total and complete shutdown of Muslims entering the United States." This statement is still displayed on the official Trump-Pence website as of the filing of this Complaint.[19]

154. When questioned about the "shutdown," and asked whether a customs agent would ask a person his or her religion, then candidate Trump responded, "They would say, 'Are you Muslim?'" The interviewer then asked, "And if they said, 'yes,' they would not be allowed in the country?" "That's correct," Mr. Trump responded.[20]

155. Defendant Trump repeatedly referred to a ban on Muslim immigration on the campaign trail.[21]

---

[19] Press Release, *Donald J. Trump Statement on Preventing Muslim Immigration* (Dec. 7, 2015), *available at* https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration (last accessed Mar. 13, 2017).

[20] Nick Gass, *Trump Not Bothered by Comparisons to Hitler*, Politico (Dec. 8, 2015), *available at* http://www.politico.com/trump-muslims-shutdown-hitler-comparison (last accessed Mar. 13, 2017).

[21] Donald J. Trump (@realDonaldTrump), Twitter (Dec. 7, 2015, 2:32 PM), https://twitter.com/realDonaldTrump/status/673993417429524480 (last accessed Mar. 13, 2017);

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

156.     Defendant Trump also indicated that he knew that he would need to find an alternative way to describe the Muslim ban. In response to a question on the July 17, 2016 episode of 60 Minutes about the evolution of his earlier rhetoric of an outright ban on Muslim immigration to a ban on persons from territories that have a Muslim majority, the following exchange took place:

> Stahl: [I]n December, you [i.e., Pence] tweeted, and I quote you, "Calls to ban Muslims from entering the U.S. are offensive and unconstitutional."
>
> Trump: So you call it territories. OK? We're gonna do territories. We're not gonna let people come in from Syria that nobody knows who they are.
>
> ...
>
> Stahl: [S]o you're changing... your position.
>
> Trump: —No, I—call it whatever you want. We'll call it territories, OK?
>
> Stahl: So not Muslims?
>
> Trump: You know—the Constitution—there's nothing like it. But it doesn't necessarily give us the right to commit suicide, as a country, OK? And I'll tell you this. Call it whatever you want, change territories [sic], but there are territories and terror states and terror nations that we're not gonna allow the people to come into our country.[22]

157.     Seven days later in response to a question on NBC's Meet the Press about whether his acceptance speech at the Republican National Convention was a rollback on his position, Defendant Trump reiterated the point when he replied:

> I don't think so. I actually don't think it's a rollback. In fact, you could say it's an expansion. I'm looking now at territory. People were so upset when I used the

---

and Jenna Johnson, *Trump calls for 'total and complete shutdown of Muslims entering the United States'*, The Washington Post (Dec. 7, 2015), *available at* http://wpo.st/O0uY2 (last accessed Mar. 13, 2017).

[22] Lesley Stahl, *The Republican Ticket: Trump and Pence*, CBS (Jul. 17, 2016), *available at* http://www.cbsnews.com/news/60-minutes-trump-pence-republican-ticket/ (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

word Muslim. Oh, you can't use the word 'Muslim.' Remember this. And I'm okay with that, because I'm talking territory instead of Muslim.[23]

158.    After the election, on December 22, 2016, a reporter asked Defendant Trump whether his "plans to create a Muslim register or ban Muslim immigration to the United States" had changed. Defendant Trump responded "you've known my plans all along" and that he was "100% correct" in his position.[24]

159.    After reading the title of the Original Order when signing it, Defendant Trump said, "We all know what that means."[25]

160.    On the day Defendant Trump issued the Original Executive Order, he gave an interview to the Christian Broadcasting Network during which he confirmed his intent to prioritize non-Muslims nationals over Muslim nationals of those countries:

> They've been horribly treated. Do you know if you were a Christian in Syria it was impossible, at least very tough to get into the United States? If you were a Muslim you could come in, but if you were a Christian, it was almost impossible and the reason that was so unfair, everybody was persecuted in all fairness, but they were chopping off the heads of everybody but more so the Christians. And I thought it was very, very unfair.[26]

161.    Consistent with Defendant Trump's expressed intent to favor Christians, Section 5(e) of the Original Executive Order authorized the Secretaries of the Departments of State and Homeland Security to admit individuals who are members of "a religious minority in [their]

---

[23] Rebecca Shabad, *Donald Trump says he's expanding his Muslim ban,* CBS (July 24, 2016)*, available at* http://www.cbsnews.com/news/donald-trump-says-hes-expanding-muslim-ban/ (last accessed Mar. 13, 2017).

[24] Katie Reilly, *Donald Trump on Proposed Muslim Ban: 'You Know My Plans'*, Time (Dec. 21, 2016), *available at* http://time.com/4611229/donald-trump-berlin-attack (last accessed Mar. 13, 2017).

[25] *Transcript of Ceremonial Swearing in of the Secretary of Defense*, CNN (Jan. 27, 2017), *available at* http://transcripts.cnn.com/TRANSCRIPTS/1701/27/cg.02.html (last accessed Mar. 13, 2017).

[26] David Brody, *Brody File Exclusive: President Trump Says Persecuted Christians Will Be Given Priority As Refugees*, CBN News (Jan. 27, 2017), *available at* http://www1.cbn.com/thebrodyfile/archive/2017/01/27/brody-file-exclusive-president-trump-says-persecuted-christians-will-be-given-priority-as-refugees (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

count[ries] of nationality facing religious persecution." Exhibit A. This provision directly grants Christians preference over Muslim refugees.

162.     During a signing ceremony for the Original Executive Order on January 27, 2017, Defendant Trump stated that the purpose of the Original Executive Order was to "establish[] new vetting measures to keep radical Islamic terrorists out of the United States of America."[27]

163.     Senior advisors to Defendant Trump have engaged in anti-Muslim rhetoric that provide additional support for the notion that the Original Executive Order was prompted by animus toward Islam and Muslims.

164.     In an interview on January 28, 2017, one of Defendant Trump's senior advisors, Rudolph Giuliani, left no doubt that the ban on entry from nationals of the Original Targeted Countries was intended to carry out a ban on Muslims, and that the Original Executive Order was crafted to create a pretextual cover for a Muslim ban. Mr. Giuliani stated: "I'll tell you the whole history of it. . . . So, when [Defendant Trump] first announced it, he said, 'Muslim ban.' He called me up. He said, 'Put a commission together. Show me the right way to do it legally.'"[28]

165.     On January 29, an anonymous "senior administration official" briefed a staffer of Breitbart.com on the intended purpose of the Original Executive Order: "The reality, though, is that the situation [of large Islamic populations] that exists today in parts of France, in parts of Germany, in Belgium, etcetera, is not a situation we want replicated inside the United States."[29]

---

[27] Dan Merica, *Trump signs Original Executive Order to keep out 'radical Islamic terrorists'*, CNN (Jan. 30, 2017), *available at* http://www.cnn.com/2017/01/27/politics/trump-plans-to-sign-executive-action-on-refugees-extreme-vetting/ (last accessed Mar. 13, 2017).

[28] Amy B. Wang, *Trump asked for a 'Muslim ban,' Giuliani says — and ordered a commission to do it 'legally'*, The Washington Post (Jan. 29, 2017), *available at* http://wpo.st/xzuY2 (last accessed Mar. 13, 2017).

[29] Neil Munro, *Left Protests While Trump Junks Obama's Global Immigration Plan*, Brietbart.com (Jan. 30, 2017), *available at* http://www.breitbart.com/big-government/2017/01/30/trump-changes-immigration-favor-american-values/ (parenthetical in original) (last accessed Mar. 13, 2017).

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

166.    While Defendant Trump has subsequently tried to deny that his Original Executive Order was "a Muslim ban, as the media [was] falsely reporting."[30] His own prior conflicting, recorded statements as well as those of his senior advisors make clear the rationale for the Original Executive Order is in fact to ban Muslims from entering the United States[.]

167.    The Original Executive Order and the manner in which it was implemented caused individual Plaintiffs and members of the proposed classes direct, ongoing, and immediate harm by causing them to suffer "[t]he indignity of being singled out [by a government] for special burdens'" on the basis of religion or assumed religion. *Hassan v. City of New York*, 804 F.3d 277, 289 (3d. Cir. 2015), *as amended* (Feb. 2, 2016) (quoting *Locke v. Davey*, 540 U.S. 712, 731, (2004) (Scalia, J., dissenting)).

## B.    President Trump's March 6, 2017 Revised Executive Order

168.    During a February 16, 2017 news conference, Donald Trump twice declared that he would follow through on his campaign promise of a Muslim ban, albeit changing his terminology to "radical Islamic terrorists":

- "Some of the things I'm doing probably aren't popular but they're necessary for security and for other reasons…I'm here following through on what I pledged to do."

- "We have taken decisive action to keep radical Islamic terrorists out of our country. No parts are necessary and constitutional actions were blocked by judges, in my opinion, incorrect, and unsafe ruling. [sic]…I got elected on defense of our country. I keep my campaign promises, and our citizens will be very happy when they see the result. They already are, I can tell you that. Extreme vetting will be put in place and it already is in place in many places.[31]

---

[30] Press Release, *President Donald J. Trump Statement Regarding Recent Original Executive Order Concerning Extreme Vetting*, The White House (Jan. 29, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/01/29/president-donald-j-trump-statement-regarding-recent-executive-order (last accessed Mar. 13, 2017).

[31] *Full Transcript: President Donald Trump's News Conference*, CNN (Feb. 16, 2017), *available at* http://www.cnn.com/2017/02/16/politics/donald-trump-news-conference-transcript/ (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

169.    Defendant Trump also announced during the February 16th news conference that he would be "issuing a new executive action next week that will comprehensively protect our country… That will be done sometime next week, toward the beginning or middle at the latest part."[32] Defendant Trump did not issue a new order that following week.

170.    On February 21, 2017, Stephen Miller, Senior Advisor to the President, described the administration's plans with regard to the Revised Order: "Fundamentally, you're still going to have the same basic policy outcome for the country, but you're going to be responsive to a lot of very technical issues that were brought up by the court and those will be addressed. But in terms of protecting the country, those basic policies are still going to be in effect."[33]

171.    While the White House indicated that the new order would be signed on March 1, 2017—the day after Defendant Trump's first address to Congress on February 28th,[34] the signing of the new order was delayed yet again.

172.    On February 28th, an administration official told a news outlet that the delay was due to the busy news cycle, that Defendant Trump wanted it to get plenty of attention, and "[w]e need [the executive order] to have its own time to breathe."[35]

173.    On March 1, 2017, another senior Administration official told a different news outlet that Defendant Trump delayed plans to sign a reworked travel ban in the wake of positive reaction to his first address to Congress, explaining that "We want the (executive order) to have its own 'moment.'"[36]

---

[32] *See supra,* n. 31.

[33] *See infra,* n. 79.

[34] Justin Fishel, *New Trump Order on Travel and Immigration Expected Wednesday,* ABC News (Feb. 2, 2017), *available at* http://abcnews.go.com/Politics/trump-order-travel-immigration-expected-wednesday/story?id=45814211 (last accessed on Mar. 13, 2017).

[35] Shane Goldmacher & Nahal Toosi, *Trump Delays Signing New Travel Ban Order, Officials Say,* Politico (Feb. 28, 2017), *available at* http://www.politico.com/story/2017/02/trump-delays-travel-ban-order-235548 (last accessed Mar. 13, 2017).

[36] *See supra,* n. 34.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 35

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

174.    Five days later on March 6, 2017, Defendant Trump signed the Revised Executive Order that has the exact same title as the Original Order, "Protecting the Nation from Foreign Terrorist Entry into the United States." A copy of this Revised Executive Order is attached to this Complaint as Exhibit D.

175.    Although the Revised Order was designed to appear facially neutral, Defendants cannot erase the history or facts preceding its issuance, *see supra* Section IV.2., the taint of the discriminatory motivation behind it, *supra* Section IV.3., or the complete arbitrariness of its requirements. *See infra* Section IV.C.

176.    Indeed, Defendant Trump has openly promoted that the Revised Order was his continued fulfillment of his campaign promises. For example, on the day Defendant Trump signed the Revised Order, he sent a fundraising email requesting support for the Revised Order because he was "implement[ing] the policies you—and millions of American like you—voted for."[37] And at a press conference the next day on March 7, 2017, White House Press Secretary Sean Spicer confirmed that with the issuance of the Revised Order, Defendant Trump was "deliver[ing]" on one of his "most significant campaign promises: protecting the country against radical Islamic terrorism…"[38]

177.    Pursuant to Section 13 of the Revised Order, the Original Order will be revoked as of the effective date of the Revised Order.

178.    Pursuant to Section 14 of the Revised Order, it will take effect on March 16, 2017.

---

[37] Matt Zapotosky, David Nakamura, & Abigail Hauslohner, *Revised Executive Order Bans Travelers from Six Muslim-Majority Countries from Getting New Visas*, Washington Post (Mar. 6, 2017), *available at* https://www.washingtonpost.com/world/national-security/new-executive-order-bans-travelers-from-six-muslim-majority-countries-applying-for-visas/2017/03/06/3012a42a-0277-11e7-ad5b-d22680e18d10_story.html?utm_term=.c2b939d5bb80 (last accessed Mar. 13, 2017).

[38] *Press Briefing by Secretary Sean Spicer, No. 18*, The White House (Mar. 7, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/03/07/press-briefing-press-secretary-sean-spicer-372017-18 (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

179.    The Revised Order shares two fundamental features with the Original Order: it continues to violate the rights of non-immigrants who need to renew their visas, and it continues to violate the rights of refugees and asylees seeking to reunite with family members who have already cleared all security hurdles.

180.    Six of the seven countries targeted in the Original Order are still targeted by the Revised Order. Section 2(c) of the Revised Order suspends entry into the United States by the nationals of Iran, Libya, Somalia, Sudan, Syria, and Yemen for ninety days from the effective date of the Revised Order.

181.    All six banned countries have overwhelmingly Muslim populations.

182.    Pursuant to Section 2(e) of the Revised Order, at the end of the ninety-day ban, the Secretary of Homeland Security shall submit to the President a list of countries recommended for inclusion in a Presidential proclamation that would prohibit the entry of categories of foreign nationals of countries that have not provided the requested information until they do so or until the Secretary of Homeland Security certifies that the country has an adequate plan to do so, or has adequately shared information through other means. The names of additional countries may also be submitted to the President.

183.    Pursuant to Section 3(a) of the Revised Order, the Order shall apply only to foreign nationals of the designated countries who: (i) are outside the United States on the effective date of this order; (ii) did not have a valid visa at 5:00 p.m., eastern standard time on January 27, 2017; and (iii) do not have a valid visa on the effective date of the Revised Order.

184.    Section 3 of the Revised Order provides for certain "exceptions" and potential "waivers" to the travel ban.

185.    Section 3(b) states that the Revised Order will not apply to: (i) any lawful permanent resident of the United States; (ii) any foreign national who is admitted to or paroled into the United States on or after the effective date of this order; (iii) any foreign national who has a document other than a visa, valid on the effective date of this order or issued on any date

thereafter, that permits him or her to travel to the United States and seek entry or admission, such as an advance parole document; (iv) any dual national of a country designated under section 2 of this order when the individual is traveling on a passport issued by a non-designated country; (v) any foreign national traveling on a diplomatic or diplomatic-type visa, North Atlantic Treaty Organization visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; or (vi) any foreign national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granted withholding of removal, advance parole, or protection under the Convention Against Torture.

186.    Section 3(c) allows a consular officer, or, as appropriate, the Commissioner, U.S. Customs and Border Protection (CBP), or the Commissioner's delegee, to decide on a case-by-case basis to authorize the issuance of a visa to, or to permit the entry of, a foreign national for whom entry is otherwise suspended if the foreign national has demonstrated to the officer's satisfaction that denying entry during the suspension period would cause undue hardship, and that his or her entry would not pose a threat to national security and would be in the national interest.

187.    This waiver provision is of little solace in light of statements and actions taken by Defendants in support of a Muslim ban, such as Defendant Trump's prior statement that a person who admitted being a Muslim should be denied entry into the country. *See supra* ¶ 154.

188.    Neither the Original nor Revised Order single out any countries for disfavored treatment that are not majority-Muslim.

189.    Section 6(a) of the Revised Order suspends all decisions on applications for refugee status as well as travel of refugees into the United States for 120 days. The suspension required in Section 6 does not apply to refugee applicants who, before the effective date of the Revised Order, have been formally scheduled for transit by the Department of State.

190.    Section 6(c) allows the Secretary of State and the Secretary of Homeland Security to jointly determine to admit individuals to the United States as refugees on a case-by-case basis,

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

in their discretion, but only so long as they determine that the entry of such individuals as

refugees is in the national interest and does not pose a threat to the security or welfare of the

United States, including in circumstances such as the following: the individual'

s entry would enable the United States to conform its conduct to a preexisting international

agreement or arrangement, or the denial of entry would cause undue hardship.

191.    Refugees or asylees who seek to have a family member(s) join them in the United

States must file Refugee/Asylee Relative Petitions (Form I-730). However, the Revised Order

will suspend all decisions on applications as well as travel for these family members.

192.    On March 6, 2017, the Department of Homeland Security issued a Q&A:

Protecting the Nation from Foreign Terrorist Entry to The United States. A copy of the Q&A is

attached as Exhibit E. The Q&A provides:

> Q27. Can the exception for refugee admission be used for Refugee/Asylee
> Relative Petitions (Form I-730) cases where a family member is requesting a
> beneficiary follow to join?
>
> No. Individuals who already have valid visas or travel documents that permit
> them to travel to the United States are exempt from the Executive Order. To the
> extent that an individual does not yet have such documents, please contact the
> Department of State.

## C.    The Arbitrariness of the Executive Orders

193.    Despite repeated claims by Defendants regarding the immediate national security

need for the Orders, Defendant Trump took thirty-one days after the time this Court issued the

first injunction against the Original Order on February 3, 2017 to issue the Revised Order. At

least five of those days were due purely to timing of press coverage desired by Defendant Trump

and had nothing to do with national security.[39]

---

[39] *See supra,* n. 34.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 39

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 1.    Arbitrariness of the Travel Ban

194.    Section 1 of the Original Executive Order, entitled "Purpose," stated that at the time of the September 11, 2001 ("9/11") terrorist attacks, "State Department policy prevented consular officers from properly scrutinizing the visa applications of several of the 19 foreign nationals" involved in those attacks. Further, DHS's Fact Sheet on the Original Executive Order stated that "[t]he Original Executive Order protects the United States from countries compromised by terrorism . . . ."[40]  The Revised Order continues to justify the actions of Defendants based on events from 2001. *See* Revised Order, Section (1)(h).

195.    Yet, neither the Original nor the Revised Executive Order impose any restrictions on nationals of Egypt, Lebanon, Saudi Arabia, or the United Arab Emirates—the countries of which the 9/11 attackers were citizens. A March 9, 2017 Breitbart article stated that ISIS boasted that Saudi Arabia is the top provider of terrorists for its group, citing a high-ranking Iraqi intelligence officer as saying, "The Saudi presence in ISIS is very large. What we have left are mainly Iraqis and Saudis."[41]

196.    According to an article published on CNN, "[i]n financial disclosure forms during the presidential campaign, [Defendant Trump] listed two companies with dealings in Egypt and eight with business in Saudi Arabia. And in the UAE, the Trump Organization is partnering with a local billionaire to develop two golf courses in Dubai."[42]

197.    The Original Order failed to cite a scintilla of evidence supporting the need for the travel ban of nationals from the seven originally banned countries. Nor did or could Defendants provide any such support in any of their briefings in the numerous courts where the Original

---

[40] *See supra*, n.12.

[41] Edwin Mora, Report: *More Citizens of Saudi Arabia Have Joined Islamic State Than Any Other Country*, Breitbart (Mar. 9, 2017), *available at* http://www.breitbart.com/national-security/2017/03/09/report-key-u-s-ally-saudi-arabia-no-1-jihadist-supplier-for-islamic-state/ (last accessed Mar. 13, 2017).

[42] Kyle Blaine & Julia Horowitz, *How the Trump administration chose the 7 countries in the immigration Original Executive Order*, CNN (Jan. 30, 2017), *available at* http://www.cnn.com/2017/01/29/politics/how-the-trump-administration-chose-the-7-countries/ (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

Order was challenged in the weeks following its signing or the time leading up to the issuance of the Revised Order. This is because Defendants simply do not have the facts to do so. And the best Defendants could do in the Revised Order was to cite to a June 2016 Department of State *Country Report on Terrorism 2015*. In relying on information for data from two years ago, Defendants ignore more recent data from not only respected research organizations sources but also the United States government's own national security experts.

198.    According to a September 2016 report from the Cato Institute, "[i]ncluding those murdered in the terrorist attacks of September 11, 2001 (9/11), the chance of an American perishing in a terrorist attack on U.S. soil that was committed by a foreigner over the 41-year period studied here is 1 in 3.6 million per year."[43]  Similarly, *The Boston Globe* reported in 2016 that "a person living in the United States is more than over 100 times more likely to be killed by falling objects than by a jihadi terrorist."[44] Indeed, it appears that in 2016, Americans were less likely to be killed by Muslim extremists (1 in six million) than for being Muslim (1 in one million).[45]

199.    Ten former national security, foreign policy, and intelligence officials at the highest levels of the United States government, including John F. Kerry (former Secretary of State), Avril D. Haines (former Deputy National Security Advisor ), Lisa O. Monaco (former Assistant to the President for Homeland Security and Counterterrorism and Deputy National Security Advisor), and Susan E. Rice (former National Security Advisor)—all of whom were serving in their official capacities and "were current on active intelligence regarding all credible

---

[43] Alex Nowrasteh, *Terrorism and Immigration: A Risk Analysis*, 798 Cato Institute Pol'y Analysis 1 (Sept. 13, 2016), *available at* https://object.cato.org/sites/cato.org/files/pubs/pdf/pa798_1_1.pdf (last accessed Mar. 13 2017).

[44] Graham Allison, *Fear death from tree limbs, not tourists*, Boston Globe (Feb. 1, 2016), *available at* https://www.bostonglobe.com/opinion/editorials/2016/02/19/fear-death-from-tree-limbs-not-terrorists/2ZrHzpP54GBHwbv2AVD6aM/story.html (last accessed Mar. 13, 2017).

[45] Charles Kurzman; *Muslim-American Terrorism: Muslim-American Involvement with Violent Extremism*, *available at* http://kurzman.unc.edu/muslim-american-terrorism/ (last accessed Mar. 13, 2017).

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 41

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

terrorist threat streams directed against the U.S" up until January 20, 2017,  just seven days prior to the issuance of the Original Executive Order ("Ten National Security Experts")—filed a joint , sworn declaration in *State of Washington, et al. v. Donald J. Trump et al.*, No. 17-35105 (9th Cir.) (Dkt. 28-2) (Feb. 6, 2017) ("Joint Declaration"), attached as Exhibit B, stating that they were "unaware of any specific threat that would justify the travel ban established by the Original Executive Order" and that "[t]here is no national security purpose for a total bar on entry for aliens from the seven named countries. *See* Exhibit F, Sec. 3-4.

200.    These officials who were in office a mere seven days before the Original Order issued "kn[e]w of no interagency process underway before January 20, 2017 to change current vetting procedures, and the repeated need for the Administration to clarify confusion after the Order issued suggest that that Order received little, if any advance scrutiny by the Departments of State, Justice, Homeland Security or the Intelligence Community." *Id.* at ¶ 7. Nor had the officials seen "any evidence that the Order resulted from experienced intelligence and security professionals recommending changes in response to identified threats." *Id.*

201.    Therefore, in their opinion, the Original Executive Order "c[ould] not be justified on national security or foreign policy grounds." *Id.* They explained that:

> [s]ince September 11, 2001, not a single terrorist attack in the United States has been perpetrated by aliens from the countries named in the Order. Very few attacks on U.S. soil since September 11, 2001 have been traced to foreign nationals at all. The overwhelming majority of attacks have been committed by U.S. citizens. The Administration has identified no information or basis for believing there is now a heightened or particularized future threat from the seven named countries. Nor is there any rational basis for exempting from the ban particular religious minorities (e.g., Christians), suggesting that the real target of the ban remains one religious group (Muslims). In short, *the Administration offers no reason why it abruptly shifted to group-based bans when we have a tested individualized vetting system developed and implemented by national security professionals across the government to guard the homeland, which is continually re-evaluated to ensure that it is effective.*

*Id.* at ¶ 4 (emphasis added).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

202.    These respected civil servants, who have collectively "devoted decades to combatting the various terrorist threats that the United States faces in a dynamic and dangerous world" declared, in their professional opinions, that the Original Executive Order "does not perform its declared task" of "protecting the nation from foreign terrorist entry into the United States," and instead actually undermined the national security of the United States. *Id.* ¶¶ 2-3.

203.    Specifically, the Joint Declaration stated that the Original Executive Order: (1) will endanger U.S. troops in the field; (2) will disrupt key counterterrorism, foreign policy, and national security partnerships that are critical to addressing the threat posed by terrorist groups such as ISIL; (3) will endanger intelligence sources in the field; (4) will likely feed the recruitment narrative of ISIL and other extremists that portray the United States as at war with Islam; (5) will disrupt ongoing law enforcement efforts; (6) will have a devastating humanitarian impact; and 7) will cause economic damage to American citizens and residents. *Id.* ¶ 5.

204.    The Joint Declaration also described pre-existing national security-based immigration restrictions as "consistently tailored to respond to: (1) specific, credible threats based on individualized information, (2) the best available intelligence and (3) thorough interagency legal and policy review." *Id.* ¶ 6. The document further described:

> Since the 9/11 attacks, the United States has developed a rigorous system of security vetting, leveraging the full capabilities of the law enforcement and intelligence communities. This vetting is applied to travelers not once, but multiple times. Refugees receive the most thorough vetting of any traveler to the United States, taking on the average more than a year. Successive administrations have continually worked to improve this vetting through robust information sharing and data integration to identify potential terrorists without resorting to a blanket ban on all aliens and refugees. Because various threat streams are constantly mutating, as government officials, we sought continually to improve that vetting, as was done in response to particular threats identified by U.S. intelligence in 2011 and 2015. Placing additional restrictions on individuals from certain countries in the visa waiver program –as has been done on occasion in the past – merely allows for more individualized vettings before individuals with particular passports are permitted to travel to the United States.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

*Id.* at ¶ 6.

205.    While the Original Order allowed for the Secretaries of State and Homeland Security to agree to admit travelers from these countries on a case-by-case basis, these experts concluded that "in our experience it would be unrealistic for these overburdened agencies to apply such procedures to every one of the thousands of affected individuals with urgent and compelling needs to travel." *Id.* at ¶ 5.f.

206.    On the unprecedented scope of the Original Order, these experts wrote:

> We know of no case where a President has invoked his statutory authority to suspend admission for such a broad class of people. Even after 9/11, the U.S. Government did not invoke the provisions of law cited by the Administration to broadly bar entrants based on nationality, national origin, or religious affiliation. In past cases, suspensions were limited to particular individuals or subclasses of nationals who posed a specific, articulable threat based on their known actions and affiliations. In adopting this Order, the Administration alleges no specific derogatory factual information about any particular recipient of a visa or green card or any vetting step omitted by current procedures.

*Id.* at ¶ 8.

207.    Nearly 1000 current State Department officials formally registered their dissent to the Original Order.[46] These career diplomats explained:

> A policy which closes our doors to over 200 million legitimate travelers in the hopes of preventing a small number of travelers who intend to harm Americans from using the visa system to enter the United States will not achieve its aim of making our country safer. Moreover, such a policy runs counter to core American values of nondiscrimination, fair play, and extending a warm welcome to foreign visitors and immigrants. Alternative solutions are available to address the risk of terror attacks which are both more effective and in line with Department of State and American values…

---

[46] Steve Herman & Nike Ching, *Sources: Nearly 1,000 at State Department Officially Dissent on Immigration Order*, VOA News (Jan. 31, 2017), *available at* http://www.voanews.com/a/over-a-thousand-state-dept-personnel-officially-dissent-to-immigration-order/3700399.html (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

[ ] This ban, which can only be lifted under conditions which will be difficult or impossible for countries to meet, will not achieve its stated aim of to protect the American people from terrorist attacks by foreign nationals admitted to the United States. Despite the Executive Order's focus on them, a vanishingly small number of terror attacks on U.S. soil have been committed by foreign nationals who recently entered the United States on an immigrant or nonimmigrant visa. Rather, the overwhelming majority of attacks have been committed by native-born or naturalized U.S. citizens--individuals who have been living in the United States for decades, if not since birth. In the isolated incidents of foreign nationals entering the U.S. on a visa to commit acts of terror, the nationals have come from a range of countries, including many (such as Pakistan or Saudi Arabia) which are not covered by the Executive Order.

[ ] Given the near-absence of terror attacks committed in recent years by Syrian, Iraqi, Irani, Libyan, Somalia, Sudanese, and Yemeni citizens who are in the U.S. in after entering on a visa, this ban will have little practical effect in improving public safety…

The end result of this ban will not be a drop in terror attacks in the United States; rather, it will be a drop in international good will towards Americans and a threat towards our economy.

A copy of this letter is attached to this Amended Complaint as Exhibit G.[47]

208.    In the process of creating the Revised Order, the Office of Intelligence and Analysis within the Department of Homeland Security that is charged with equipping the Homeland Security Enterprise with timely intelligence and information,[48] developed a paper assessing the international terrorist threat to the United States and worldwide posed by citizens of the seven Original Targeted Countries. Although the paper did not assess the risk of domestic terrorism, included in the key findings were:

- citizens of the seven Original Targeted Countries were rarely implicated in US-based terrorism;

- "country of citizenship is unlikely to be a reliable indicator of potential terrorist activity"; and

[47] Document available at https://assets.documentcloud.org/documents/3438487/Dissent-Memo.pdf.

[48] *Leadership and Organization,* Office of Intelligence and Analysis, Dep't of Homeland Security (last published Jan. 30, 2017), *available at* https://www.dhs.gov/office-intelligence-and-analysis (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

- Of the at least 82 primarily US-based individuals who died in the pursuit of or were convicted of any terrorism-related federal offense inspired by a foreign terrorist organization since the beginning of the Syrian conflict in March 2011, of the seven Original Targeted Countries, Iran, Sudan, and Yemen had 1 each, and there were no individuals from Syria.

*Citizenship Likely an Unreliable Indicator of Terrorist Threat to the United States*, Office of Intelligence and Analysis, Dep't of Homeland Security (2017), Exhibit H.[49]

209.    A second, March 1, 2017 Intelligence Assessment announced in its title that "Most Foreign-born, US-based Violent Extremists Radicalized after Entering Homeland…" ("March 1 Intelligence Assessment")[50] also negates the necessity of the Revised Order's travel ban. A copy of this report is as it appeared in the MSNBC article attached as Exhibit I.

210.    The March 1 Intelligence Assessment was based on information available as of December 31, 2016. One of the key judgments of the March 1 Intelligence Assessment was that:

> most foreign-born, US-based violent extremists likely radicalized several years after their entry to the United States, limiting the ability of screening and vetting officials to prevent their entry because of national security concerns. We base this assessment on our findings that nearly half of the foreign-born, US-based violent extremists examined in our dataset were less than 16 years old when they entered the country and that the majority of foreign-born individuals resided in the United States for more than 10 years before their indictment or death. A separate DHS study that found recent foreign-born US violent extremists began radicalizing, on average, 13 years after their entry to the United States further supports our assessment.

211.    The examples of terrorist activity cited in Section 1(h) of the Revised Order only underscore the points raised in all of these reports and statements by national security experts that the travel ban is unnecessary and will be ineffective. The first example cited relates to two

---

[49] *Citizenship Likely an Unreliable Indicator of Terrorist Threat to the United States, U.S.,* Dep't of Homeland Security (Feb. 2017), *available at* https://assets.documentcloud.org/documents/3474730/DHS-intelligence-document-on-President-Donald.pdf (last accessed Mar. 13, 2017).

[50] Rachel Maddow, *TRMS Exclusive: DHS Document Undermines Trump Case for Travel Ban*, MSNBC (Mar. 2, 2017), *available at* http://www.msnbc.com/rachel-maddow-show/trms-exclusive-dhs-document-undermines-trump-case-travel-ban (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Iraqi nationals; yet, the Revised Order removed Iraq from the list of targeted countries. The second example was of a native of Somali who had been brought to the United States as a child but then committed the act in question after he had been naturalized as a United States citizen and when he was an adult.

212.     On March 10, 2017, more than 130 foreign policy and national security experts wrote an open letter to President Trump ("Open Letter") concluding that the Revised Order "suffers from the same core substantive defects as the previous version." The experts raise the concern that the Revised Order will "weaken U.S. national security" because it "jeopardize[s] our relationships with allies and partners on whom we rely for vital counterterrorism cooperation and information sharing. To Muslims— including those victimized by or fighting against ISIS— it will send a message that reinforces the propaganda of ISIS and other extremist groups, that falsely claim the United States is at war with Islam." The Open Letter is attached as Exhibit J.[51]

213.     The experts explain in the Open Letter: "Following the 9/11 attacks, the United States developed a rigorous system of security vetting for travelers to our homeland, leveraging the full capabilities of the intelligence and law enforcement communities. Since then, the U.S. has added enhanced vetting procedures for travelers and has revised them continuously. Our government applies this process to travelers not once, but multiple times."[52]

214.     In addition, the Revised Order now allows automatic entry for nationals of the Designated Countries with valid visas, an admission by Defendants that the current screening and vetting process for the admission of non-immigrant visa holders is adequate and effective to protect this country's national security interests.

215.     Rather than wasting the resources of our security agencies banning millions of individuals who are already being thoroughly analyzed through current procedures put in place

---

[51] Document available at https://assets.documentcloud.org/documents/3515708/LetterFormerOfficialsonMarch6EO-Pdf.pdf.

[52] *See supra,* n. 51.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 47

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

by national security experts, Defendants should be focusing on the small but very dangerous individuals for whom they have specific information that will lead to actually stopping attacks in this country.

### 2.    Arbitrariness of the Suspension of the Refugee Admissions Program

216.    In priming the country for the Revised Order, Defendant Trump relies upon arbitrary and irrational animus towards refugees with no factual basis. For example, in discussing refugees at a February 18, 2017 rally in Melbourne, Florida, he claimed: "We've allowed thousands and thousands of people into our country and there was no way to vet those people. There was no documentation. There was no nothing. So we're going to keep our country safe."[53]

217.    However, according to the State Department's January 20, 2017 Bureau of Population, Refugees, and Migration Fact Sheet:

> All refugees undergo the most intensive security screening of any traveler to the United States. This screening includes multiple federal intelligence, security, and law enforcement agencies, including the National Counterterrorism Center, the FBI Terrorist Screening Center, and the Departments of Homeland Security, State, and Defense. Syrian refugees go through yet additional forms of security screening. A refugee applicant cannot be approved for travel until all required security checks have been completed and cleared.[54]

218.    The U.S. Government has a great deal of experience screening and admitting large numbers of refugees from chaotic environments, including where intelligence holdings are limited.

---

[53] Jacob Gardenswartz, *Transcript: President Donald Trump's rally in Melborne, Florida*, Vox (Feb. 18, 2017), *available at* http://www.vox.com/2017/2/18/14659952/trump-transcript-rally-melbourne-florida (last accessed Mar. 13, 2017).

[54] U.S. Dep't of State Diplomacy in Action, *U.S. Refugee Admissions Program FAQ's*, Bureau of Population, Refugees, and Migration (Jan. 20, 2017), *available at* https://www.state.gov/j/prm/releases/factsheets/2017/266447.htm (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

219.    According to the U.S. Citizenship and Immigration Services ("USCIS"), the government agency that oversees lawful immigration to the United States:

> Refugee applicants are subject to intensive biographic and biometric security checks. Through close coordination with the federal law enforcement and intelligence communities, these checks are continually reviewed and enhanced to address specific populations that may pose particular threats.

> The United Nations High Commissioner for Refugees (UNHCR) identifies and refers many refugees to the U.S. Refugee Admissions Program ("USRAP") for resettlement consideration. UNHCR also provides important information about the worldwide refugee situation.

> The Department of State (State) coordinates and manages the USRAP. Resettlement Support Centers (RSCs) work with State to carry out administrative and processing functions, such as file preparation, data collection, and out-processing activities during the refugee admissions process.

> USCIS conducts interviews with applicants to determine their eligibility for refugee status, including whether they are credible, meet the refugee definition, and are otherwise admissible to the United States under U.S. law.[55]

220.    The general refugee process encompasses the following: [56]

---

[55] *U.S. Citizenship and Immigration Services: Refugee Processing and Security Screening*, U.S. Department of Homeland Security (last updated Dec. 3, 2015), *available at* https://www.uscis.gov/refugeescreening (last acessed on Mar. 2, 2017).

[56] *Refugee Processing and Security Screening*, U.S. Citizenship and Immigration Services (last reviewed/updated Dec. 3, 2015), *available at* https://www.uscis.gov/refugeescreening (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

| UNHCR registration and resettlement referral, based on vulnerability and eligibility assessment |
| RSC conducts prescreening interview and initiates biographic checks |
| USCIS reviews biographic check results; conducts the eligibility interview; collects biometrics and initiates biometric checks; requests additional biographic checks, if needed |
| USCIS adjudicates Form I-590, no case is approved until security check results are received and cleared |
| RSC processes approved cases for travel, including medical exams and sponsorship by a domestic resettlement agency |
| All refugee travel information collected on flight manifests is screened prior to boarding via CBP/TSA (NTC-P and Secure Flight) |
| CBP determines if the applicant is admissible to the United States and admits applicant to the U.S. as a refugee |

17    221.    The non-existent vetting process claimed by Defendant Trump actually consists of

18  the following numerous steps:

19

20  **USRAP Screening**

21  USRAP screening is a shared responsibility. It includes both biometric and
    biographic checks at multiple stages during the process, including immediately
22  before a refugee's departure to the United States and upon his or her arrival in the
    United States.
23
    The screening of refugee applicants involves numerous biographic checks that are
24  initiated by the RSCs and reviewed and/or resolved by USCIS. These include:

25  The Department of State's Consular Lookout and Support System (CLASS)

26  State initiates CLASS name checks for all refugee applicants when they are
    being prescreened by an RSC. Name checks are conducted on the applicant's

primary names as well as any variations used by the applicant. Responses are received before the USCIS interview, and possible matches are reviewed and adjudicated by USCIS headquarters. Evidence of the response is included in the case file. If a new name or variation is identified at the interview, USCIS requests another CLASS name check on the new name and places the case on hold until that response is received.

CLASS is owned by State. The name-check database provides access to critical information for adjudicating immigration applications. The system contains records provided by numerous agencies and includes information on individuals who have been denied visas, immigration violations, criminal histories, and terrorism concerns, as well as intelligence information and child support enforcement data.

In addition to containing information from State sources, CLASS also includes information from:

o   National Counterterrorism Center/Terrorist Screening Center (terrorist watch lists),
o   TECS,
o   Interpol,
o   Drug Enforcement Administration,
o   Health and Human Services, and
o   FBI (extracts of the National Crime Information Center's Wanted Persons File, Immigration Violator File, Foreign Fugitive File, Violent Gang and Terrorist Organization File (and the Interstate Identification Index)).

Security Advisory Opinion (SAO)

State initiates SAO name checks for certain refugee applicants when they are being prescreened by an RSC. The SAO biographic check is conducted by the FBI and intelligence community partners. SAOs are conducted for an applicant who is a member of a group or nationality that the U.S. government has designated as requiring this higher level check. SAOs are processed, and a response must be received before finalizing the decision. If there is a new name or variation identified at the interview, USCIS requests another SAO for the new name and places the case on hold until that response is received.

The SAO process was implemented after Sept. 11, 2001, to provide an additional security mechanism to screen individuals in certain higher-risk categories who are seeking to enter the United States through a variety of means, including refugee applicants.

Interagency Check (IAC)

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 51

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

The IAC screens biographic data, including names, dates of birth, and other additional data of all refugee applicants within designated age ranges. This information is captured at the time the applicant is prescreened and is provided to intelligence community partners. This screening procedure began in 2008 and has expanded over time to include a broader range of applicants and records. These checks occur throughout the process.

At the time of USCIS interview, USCIS staff collects fingerprints and begins biometric checks. These checks include:

- **FBI Fingerprint Check through Next Generation Identification (NGI):** Recurring biometric record checks pertaining to criminal history and previous immigration data.

- **DHS Automated Biometric Identification System (IDENT - f/n/a US-VISIT):** A biometric record check related to travel and immigration history as well as immigration violations, and law enforcement and national security concerns. Enrollment in IDENT also allows U.S. Customs and Border Protection (CBP) to confirm the applicant's identity at U.S. ports of entry.

- **DOD Defense Forensics and Biometrics Agency (DFBA)'s Automated Biometric Identification System (ABIS):** A biometric record check of the Department of Defense's (DOD) records collected in areas of conflict (predominantly Iraq and Afghanistan). DOD screening began in 2007 for Iraqi applicants and has now been expanded to all nationalities. CBP's National Targeting Center-Passenger (NTC-P) conducts biographic vetting of all ABIS biometric matches against various classified and unclassified U.S. government databases.

## USCIS Interview

The USCIS refugee interview is an important part of the refugee screening process. Highly trained USCIS officers conduct extensive interviews with each refugee applicant to learn more about the applicant's claim for refugee status and admissibility. These officers have undergone specialized and extensive training on:

- Refugee law,
- Grounds of inadmissibility,
- Fraud detection and prevention,
- Security protocols,
- Interviewing techniques,
- Credibility analysis, and
- Country conditions research.

Before deploying overseas, officers also receive additional training on the specific population that they will be interviewing, detailed country of origin information, and updates on any fraud trends or security issues that have been identified.

Officers conducting interviews of Syrian applicants undergo an expanded 1-week training focusing on Syria-specific topics, including a classified intelligence briefing. During the interview, the officer develops lines of questioning to obtain information on whether the applicant has been involved in terrorist activity, criminal activity, or the persecution/torture of others. The officer will also conduct a credibility assessment on each applicant.

### Controlled Application Review and Resolution Process (CARRP)

During the process of adjudicating any USCIS benefit, if any national security concerns are raised, either based on security and background checks or personal interviews or testimony, USCIS conducts an additional review through the internal CARRP process. CARRP is an internal USCIS process that a case can go through to ensure that immigration benefits or services are not granted to individuals who pose a threat to national security and/or public safety, or who seek to defraud our immigration system.

### Enhanced Review for Syrian Applicants

USCIS' Refugee, Asylum, and International Operations Directorate and Fraud Detection and National Security Directorate (FDNS) work together to provide enhanced review of certain Syrian cases. This review involves FDNS providing intelligence-driven support to refugee adjudicators, including identifying threats and suggesting topics for questioning. FDNS also monitors terrorist watch lists and disseminates intelligence information reports on any applicants who are determined to present a national security threat.

### CBP Vetting

CBP inspects all applicants who are approved for refugee resettlement to the United States to determine their admissibility before they are admitted as refugees. CBP receives a manifest of all approved individuals who have been booked for travel to the United States. CBP receives this manifest 8 days before the scheduled travel. CBP begins vetting the individuals before they arrive at a U.S. airport and then conducts an inspection and additional background checks of these individuals upon their arrival at a U.S. airport.[57]

---

[57] *See supra*, n. 56.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 53

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

222.    Defendant Trump has misrepresented that "there was no way to vet those people" in an attempt to justify his arbitrary and unjustified suspension of the refugee admissions program. However, USCIS Director León Rodriguez's explained in his September 28, 2016 written testimony for a Senate Committee on the Judiciary, Subcommittee on Immigration and the National Interest hearing that "[a]ll refugees entering our country are subject to the highest level of security check of any category of any traveler to the United States and admitted only after successfully completing a stringent security screening process."[58] He further detailed:

> Recognizing that a well-trained cadre of officers is critical to protecting the integrity of the refugee process, we have focused our efforts on providing the highest quality training to our officers. In addition to the basic training required of all USCIS officers, refugee officers receive nine weeks of specialized training that includes comprehensive instruction on all aspects of the job, including refugee law, grounds of inadmissibility, fraud detection and prevention, security protocols, interviewing techniques, credibility analysis, and country conditions research. Before deploying overseas, officers also receive pre-departure training, which focuses on the specific population that they will be interviewing. This includes information on the types of refugee claims that they are likely to encounter, detailed country of origin information, and updates on any fraud trends or security issues that have been identified. With the advent of large-scale processing of Iraqi applicants in 2007, USCIS officers who adjudicate Iraqi refugee applications began receiving an additional two-day training on country-specific issues, including briefings from outside experts from the law enforcement, intelligence, policy, and academic communities. This training has since expanded to a one-week training in order to include Syria-specific topics in addition to Iraqi ones.
>
> In order to fully explore refugee claims and to identify any possible grounds of ineligibility, specially-trained USCIS officers conduct an in-person, in-depth interview of every principal refugee applicant. The officer assesses the credibility of the applicant and evaluates whether the applicant's testimony is consistent with known country conditions. These officers also interview each accompanying family member age 14 and older. All applicants must establish admissibility to the United States before the case (i.e., the collection of applicants) is approved. In addition, refugee applicants are subject to robust security screening protocols to

---

[58] *Written Testimony of USCIS Director Leon Rodriguez for a Senate Committee on Immigration and the National Interest Hearing: Oversight of the Administration's FY 2017 Refugee Resettlement Program*, Dep't of Homeland Security (Sep. 28, 2016) *available at* https://www.dhs.gov/news/2016/09/28/written-testimony-uscis-director-senate-judiciary-subcommittee-immigration-and (last accessed Mar. 13, 2017).

identify potential fraud, criminal or national security issues. All refugee status determinations made by interviewing officers undergo supervisory review before a final decision is made. Refugee Affairs Division policy requires officers to submit certain categories of sensitive cases – including certain national security-related cases – to Refugee Affairs Division Headquarters to obtain concurrence prior to the issuance of a decision. This allows for Headquarters staff to conduct additional research, liaise with law enforcement or intelligence agencies, or consult with an outside expert before finalizing the decision.[59]

223.    In addition, as recently as January 20, 2017, the U.S. Department of State issued a Fact Sheet that makes clear that the reality of the refugee screening process was, is, and continues to be the complete opposite of what Defendant Trump has claimed:

> *No traveler to the United States is subject to more rigorous security screening than the refugees the U.S. Government considers for admission.* Only after the U.S. Government's rigorous and lengthy security screening process has been completed and an applicant is not found to pose a threat does the U.S. Government grant that individual refugee admission to the U.S. Security screening of all refugees involves multiple U.S. agencies, including the Departments of State, Homeland Security (DHS), and Defense, the Federal Bureau of Investigation, The National Counterterrorism Center, the Terrorist Screening Center, and two federal intelligence agencies.[60]

Emphasis added.

224.    Finally, the Open Letter from the foreign policy and national security experts affirms:

> [r]efugees are vetted more intensively than any other category of traveler. They are screened by national intelligence agencies and INTERPOL, their fingerprints and other biometric data are checked against terrorist and criminal databases, and they are interviewed several times. These processes undergo review on an ongoing basis to ensure that the most updated and rigorous measures are applied,

---

[59] *See supra*, n. 58.

[60] *See supra*, n. 54.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

1
2
and any additional enhancements can be added without halting refugee resettlement or banning people from certain countries.[61]

3
4
225.    The actual facts are that the already existing refugee admissions process is stringent, robust, lengthy, and rigorous. Extreme vetting is already in place.

5
6
226.    Defendant Trump repeatedly demonized Syrian refugees,[62] and made clear his intention to ban them from the country:

7
8
9
10
11
12
13
14
15
16
17
18
19


20
21
22
23
227.    In line with his rhetoric, the Original Order indefinitely suspended the admission of Syrian refugees because the "entry of nationals of Syria as refugees is detrimental to the interests of the United States." Original Order Section 5(c).

24
[61] *See supra,* n. 51.

25
26
[62] Jesselyn Cook, *7 Lies Donald Trump Has Spread About Syrian Refugees Entering the U.S.*, Huffington Post (Oct. 20, 2016), *available at* http://www.huffingtonpost.com/entry/donald-trump-refugee-crisis_us_5807809ae4b0180a36e7ac14 (last accessed Mar. 13, 2017), and Donald J. Trump @realDonaldTrump, Twitter (Apr. 7, 2016, 7:22 PM), https://twitter.com/realDonaldTrump/status/718269255872081922

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 56

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

228.     The Revised Order removed the provision suspending the admission of Syrian refugees indefinitely, demonstrating the farce behind the assertion in the Original Order that their entry was detrimental to the national interests of the country and highlighting the arbitrary nature in which Defendants have gone about developing and implementing both the Original and Revised Executive Orders.

**D.     Court Orders and President Trump's Continuing Defiance Thereof**

229.     Although both this Court and other courts around the country have granted writs of habeas, temporary restraining orders and preliminary injunctions (some nationwide) and the Original Order has been rescinded, Plaintiffs are compelled to continue this action to ensure their rights are protected. Many, if not all, of the existing litigation and court orders do not help Washington residents who entered the country on single entry or now expired multiple entry non-immigrant visas. They are now stuck inside the country. In addition, numerous Washington residents who are asylees still await the arrival of their families who have completed the rigorous refugee security clearance process.

230.     In addition, despite the fact that he revoked the Original Executive Order, Defendants' repeated actions and statements make it far from clear that Defendant Trump will not revert to his original position.

231.     Immediately after the first nationwide stay was granted, *see Darweesh v. Trump*, No. 17 CIV. 480 (AMD), 2017 WL 388504, at *1 (E.D.N.Y. Jan. 28, 2017), Defendant DHS issued a statement that "President Trump's Original Executive Orders remain in place— prohibited travel will remain prohibited, and the U.S. government retains its right to revoke visas at any time if required for national security or public safety."[63] And Defendant Trump claimed,

---

[63] *Department of Homeland Security Response To Recent Litigation*, Dep't Homeland Security (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/department-homeland-security-response-recent-litigation (last accessed Mar. 13, 2017).

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 57

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

"If the ban were announced with a one week notice, the 'bad' would rush into our country during that week. A lot of bad 'dudes' out there!"[64]

232.    On January 31, 2017, acting United States Attorney General Sally Yates issued a memorandum to Department of Justice employees instructing them to not act to enforce the Original Executive Order because she was "not convinced . . . that the Original Executive Order is lawful."[65] Ms. Yates wrote:

> My responsibility is to ensure that the position of the Department of Justice is not only legally defensible, but is informed by our best view of what the law is after consideration of all the facts. In addition, I am responsible for ensuring that the positons we take in court remain consistent with this institution's solemn obligation to always seek justice and stand for what is right. At present, I am not convinced that the defense of the Original Executive Order is consistent with these responsibilities, nor am I convinced that the Original Executive Order is lawful.[66]

233.    Within hours of her issuance of this statement, and its hand-delivery to Defendant Trump, Defendant Trump fired Ms. Yates, calling her statement a "betrayal."

234.    After this Court issued a Temporary Restraining Order ("TRO") on February 3, 2017 and the Ninth Circuit issued a unanimous decision upholding the TRO on February 9, 2017, Defendants vowed to keep fighting the court orders.

235.    Even more unusual were Defendant Trump's statements that followed the District Court and Ninth Circuit's Orders:

---

[64] Donald J. Trump (@realDonaldTrump, Twitter (Jan. 30, 2017 5:31 AM), https://twitter.com/realdonaldtrump/status/826060143825666051

[65] Letter from Sally Yates to Dep't of Justice (Jan. 30, 2017), *available at* https://www.nytimes.com/interactive/2017/01/30/us/document-Letter-From-Sally-Yates.html?_r=1 (last accessed Mar. 13, 2017).

[66] *See supra,* n. 65.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 58

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

- @realDonaldTrump: "The opinion of this so-called judge, which essentially takes law-enforcement away from our country, is ridiculous and will be overturned!" -- 5:12 AM - 4 Feb 2017[67]

- @realDonaldTrump: "What is our country coming to when a judge can halt a Homeland Security travel ban and anyone, even with bad intentions, can come into U.S.?" -- 12:44 PM - 4 Feb 2017[68]

- @realDonaldTrump: "Because the ban was lifted by a judge, many very bad and dangerous people may be pouring into our country. A terrible decision" -- 1:44 PM - 4 Feb 2017[69]

- @realDonaldTrump: "Why aren't the lawyers looking at and using the Federal Court decision in Boston, which is at conflict with ridiculous lift ban decision?" -- 3:37 PM - 4 Feb 2017[70]

- @realDonaldTrump: "The judge opens up our country to potential terrorists and others that do not have our best interests at heart. Bad people are very happy!" -- 4:48 PM - 4 Feb 2017[71]

- @realDonaldTrump: "Just cannot believe a judge would put our country in such peril. If something happens blame him and court system. People pouring in. Bad!" -- 12:39 PM - 5 Feb 2017[72]

- @realDonaldTrump: "I have instructed Homeland Security to check people coming into our country VERY CAREFULLY. The courts are making the job very difficult!" -- 3:35 PM - 9 Feb 2017[73]

---

[67] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 5:12 PM), https://twitter.com/realdonaldtrump/status/827867311054974976.

[68] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 12:44 PM), https://twitter.com/realDonaldTrump/status/827981079042805761.

[69] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 1:44 PM), https://twitter.com/realDonaldTrump/status/827996357252243456.

[70] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 3:37 PM), https://twitter.com/realDonaldTrump/status/828024835670413312.

[71] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 4, 2017, 4:48 PM), https://twitter.com/realDonaldTrump/status/828042506851934209.

[72] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 5, 2017, 12:39 PM), https://twitter.com/realDonaldTrump/status/828342202174668800

[73] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 5, 2017, 12:42 PM), https://twitter.com/realDonaldTrump/status/828343072840900610.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

- @realDonaldTrump: "SEE YOU IN COURT, THE SECURITY OF OUR NATION IS AT STAKE!" -- 12:42 PM - 5 Feb 2017[74]

- @realDonaldTrump" "Our legal system is broken! '77% of refugees allowed into U.S. since travel reprieve hail from seven suspect countries.' (WT) [sic] SO DANGEROUS!" – 4:12 AM - 11 Feb 2017[75]

236.    The day before the Ninth Circuit issued its ruling, Defendant Trump declared that the Original Order was "so simple and so beautifully written and so perfectly written"[76] and cast further aspersions this country's judicial system, stating, "I don't ever want to call a court biased, so I won't call it biased. And we haven't had a decision yet. But courts seem to be so political and it would be so great for our justice system if they would be able to read a statement and do what's right."

237.    In their February 16, 2017 supplemental brief regarding review of the Ninth Circuit's decision to deny Defendant's request for a stay of the TRO by the entire panel, Defendants represented that "[r]ather than continuing this litigation, the President intends in the near future to rescind the Order and replace it with a new, substantially revised Executive Order…"[77]

238.    Yet on that very same day, Defendant Trump directly contradicted the representations made to the Ninth Circuit in the supplemental briefing filed by the United States government on his behalf. During a news conference, Defendant Trump stated: "We're issuing a new executive action next week that will comprehensively protect our country. So we'll be going

---

[74] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 9, 2017, 3:35 PM), https://twitter.com/realDonaldTrump/status/829836231802515457.

[75] Donald J. Trump (@realDonaldTrump), Twitter (Feb. 11, 2017, 4:12 AM), https://twitter.com/realDonaldTrump/status/830389130311921667.

[76] Matt Zapotosky & Robert Barnes, *As Judges weigh travel ban, Trump Asserts that Courts are "so political"*, Washington Post (Feb. 8, 2017), *available at* http://www.chicagotribune.com/news/nationworld/politics/ct-trump-defends-travel-ban-20170208-story.html (last accessed Mar. 13, 2017).

[77] Supplemental Brief at 154, *State of Washington, et al. v. Donald J. Trump, et al.*, No. 2:17-cv-00141, Dkt. No. 154 (W.D. Wash.)*, see also* Motion for Stay at 14, *State of Washington, et al. v. Donald J. Trump, et al.*, No. 2:17-cv-00141, (W.D. Wash.).

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 60

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

along the one path and hopefully winning that, at the same time we will be issuing a new and very comprehensive order to protect our people."[78]

239.    Further, on February 21, 2017, senior policy adviser Stephen Miller not only claimed "[n]othing was wrong with the first executive order" but also revealed that the revised travel ban will have "mostly minor technical differences" from the Original Order and "fundamentally" would be "the same basic policy outcome for the country."[79]

240.    In addition, during White House press briefings on February 21, 22, and 23, 2017, Press Secretary Sean Spicer stated that the Defendant Trump will continue to pursue the case in the Ninth Circuit. In particular, Mr. Spicer stated:

- On February 21, 2017: The President has "made very clear" that there will be a "dual-track system" and is [80]"confident that we're still going to prevail on the case—the merits of the case."

- On February 22, 2017: The President is "fighting this on both fronts, making sure that we keep evolving through the [81]court system on the existing EO," while drafting an additional executive order.

- On February 23, 2017: "So with respect to the executive order [on immigration], there are several courts that this is being fought in—10 or so—and we continue to deal with that in all of those venues. And then again, I guess, the only way to say this is, then obviously on the dual-track side we have the additional executive order that we've talked about earlier that will come out and further address the problems. We continue to believe that the

---

[78] *Presidential News Conference* (Feb. 16, 2017), transcript and video is available at https://www.nytimes.com/video/us/politics/100000004937194/trump-labor-secretary.html (last accessed on Mar. 13, 2017).

[79] Martha McCallum, *Miller: New Order Will Be Responsive to the Judicial Ruling; Rep. Ron DeSantis: Congress has Gotten Off to a Slow Start*, Fox (Feb. 21, 2017) *available at* http://www.foxnews.com/transcript/2017/02/21/miller-new-order-will-be-responsive-to-judicial-ruling-rep-ron-desantis/ (last accessed Mar. 13, 2017).

[80] *Press Briefing by Secretary Sean Spicer, #13*, The White House (Feb. 21, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/02/21/press-briefing-press-secretary-sean-spicer-2212017-13 (last accessed Mar. 13, 2017).

[81] *Press Briefing by Secretary Sean Spicer, #14*, The White House (Feb. 22, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/02/22/press-briefing-press-secretary-sean-spicer-2222017-14 (last accessed Feb. 27, 2017).

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 61

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

issues that we face specifically in the 9th district—9th Circuit, rather, that we will prevail on, on the merits of that. But on the other challenges that have come and the other venues and the others—that we feel equally confident, as we did in Massachusetts and other venues. So it's not a single-track system."[82]

241.    On February 27, 2017, Press Secretary Spicer reiterated that as to the Revised Order, "the goal is obviously to maintain the way that we did it the first time."[83]

242.    Defendants' statements appear to be designed to inflame and incite further animus against persons affected by the ban, and grossly distort and misrepresent the actual process through which Plaintiffs were screened and reviewed before their admittance to the United States was allowed.

243.    Defendants' statements underscore the continued discriminatory motive behind the Revised Order. And Defendants' statements make it abundantly clear that there is no guarantee that Defendants will not revert to the Original Order at some point in time.

244.    Indeed, as recently as on March 1, 2017, Vice President Pence stated during an interview on CBS This Morning that "[t]he president is just determined to not only defend the first executive order in the courts, which we continue to believe is fully within his purview and in his presidential authority, but also to take that authority that is undisputed in the law within the executive order."[84]

245.    Given the numerous, inconsistent positions Defendants have taken with regard to the Original and Revised Orders over time, individual Plaintiffs and members of the Non-Immigrant Visa Class reasonably fear that, if they attempt to enter or re-enter the United States, they will be denied permission to do so, notwithstanding their previously established lawful

---

[82] *Press Briefing by Secretary Sean Spicer, #15*, The White House (Feb. 23, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/02/23/press-briefing-press-secretary-sean-spicer-2232017-15 (last accessed Feb. 27, 2017).

[83] *Press Briefing by Secretary Sean Spicer, #17*, The White House (Feb 27, 2017) available at https://www.whitehouse.gov/the-press-office/2017/02/27/press-briefing-press-secretary-sean-spicer-2272017-17 (last accessed Mar. 13, 2017).

[84] *See supra*, n.8.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

presence in the United States and the fact that they have otherwise been deemed appropriate by the U.S. government for admission.

246.    Because the Revised Order continues to suspend the refugee admissions program, Joseph Doe and others similarly situated are left in the exact same purgatory they were in with the Original Order.

247.    The Revised Order effectively traps members of the Non-Immigrant Visa Class in the United States, interferes with the relationships of the Non-Immigrant Visa Class as well as the I-730 Class and their family members, and imposes arbitrary and irrational burdens on them that do not serve any valid governmental interest.

## V.    CLASS ACTION ALLEGATIONS

248.    Plaintiffs Jack Doe, Jason Doe, and Julia Doe bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2), on their own behalf and on behalf of all other Washington residents who are nationals of the Designated Countries with non-immigrant visas and who do not have unexpired multiple-entry visas ("the Non-Immigrant Visa Class").

249.    Plaintiffs Joseph Doe and James Doe bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2), on their own behalf and on behalf of all other refugees and asylees, including those who have since adjusted their status to Lawful Permanent Resident, who now reside in Washington, and who have filed I-730 applications for and await the arrival of their family members who have completed and cleared their final security screenings as of the effective date of the Revised Order ("the Refugee Class").

250.    Upon information and belief, both Plaintiff Classes are so numerous that joinder is impracticable. According to the Annual Report of the Visa Office of the U.S. Department of State, in 2015, the last year for which data are available, the United States issued over 58,663 non-immigrant visas to nationals from the Designated Countries.[85] 59% of all Muslim refugees

---

[85] Report of the Visa Office 2015, *Table XVIII: Nonimmigrant Visas Issued by Nationality*, U.S. Dep't of State – Bureau of Consular Affairs (2015), *available at*

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

who entered the United States in FY 2016 hailed from the six countries to which Section 2(c) of the new Executive Order applies. On information and belief, a large number of such persons reside in Washington.

251.    The claims of the Non-Immigrant Visa Class as well as the Refugee Class members share common issues of law, including but not limited to whether the Revised Executive Order violates their associational, religious exercise, and due process rights under the First and Fifth Amendments; the Religious Freedom Restoration Act; and the Administrative Procedure Act.

252.    The claims of the Plaintiff Class members share common issues of fact, including but not limited to whether the Revised Executive Order is being or will be enforced so as to prevent them or their family members from entering the United States from abroad or from re-entering the United States should they choose to leave the United States briefly, even though they would otherwise be admissible.

253.    The claims or defenses of the named Plaintiffs are typical of the claims or defenses of members of each of the Plaintiff Classes.

254.    Jack Doe, Jason Doe, and Julia Doe will fairly and adequately protect the interests of the Non-Immigrant Visa Class, and Joseph Doe and James Doe will fairly and adequately protect the interests of the Refugee Class. None of the named Plaintiffs have any interest that is now or may be potentially antagonistic to the interests of the Plaintiff class they seek to represent. The attorneys representing the named Plaintiffs include experienced civil rights attorneys and are considered able practitioners in federal constitutional litigation. These attorneys should be appointed as class counsel.

255.    Defendants have acted, have threatened to act, and will act on grounds generally applicable to both Plaintiff Classes, thereby making final injunctive and declaratory relief

---

https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2015AnnualReport/FY15AnnualReport-TableXVIII.pdf (last accessed Mar. 13, 2017).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

appropriate to the class as a whole. Both Plaintiff Classes may therefore be properly certified under Fed. R. Civ. P. 23(b)(2).

256.    Prosecution of separate actions by individual members of either of the Plaintiff Classes would create the risk of inconsistent or varying adjudications and would establish incompatible standards of conduct for individual members of each Plaintiff Class. Both Plaintiff Classes may therefore be properly certified under Fed. R. Civ. P. 23(b)(1).

## VI.    CAUSES OF ACTION

### COUNT ONE
### FIRST AMENDMENT – ESTABLISHMENT, FREE EXERCISE, SPEECH AND ASSEMBLY CLAUSES
### (Against All Defendants, Asserted by All Plaintiffs)

257.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

258.    The First Amendment prohibits the establishment of a religion or the prohibition of the free exercise of religion.

259.    The Revised Executive Order constitutes an unlawful attempt to discriminate against Muslims and to establish a preference for one religion over another. References in the Revised Executive Order to the Designated Countries are transparently a pretext to establish this preference. Singling out Muslims for disfavored treatment and granting special preferences to non-Muslims is neither justified by, nor closely fitted to, any compelling governmental interest.

260.    The Revised Executive Order also violates the rights of Plaintiff the Episcopal Diocese to receive information and speech from, and to associate freely with, refugees.

### COUNT TWO
### RELIGIOUS FREEDOM RESTORATION ACT
### (Against All Defendants, Asserted by All Plaintiffs)

261.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 65

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

262.    Pursuant to the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 et seq., the government "shall not substantially burden a person's exercise of religion" unless it "(1) is in furtherance of a compelling government interest; *and* (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* (emphasis added).

263.    The Revised Executive Order has the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing important immigration benefits principally from Muslims on account of their religion. In doing so, the Revised Executive Order places a substantial burden on Muslims' exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

264.    Defendants' actions therefore constitute a violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 *et seq.*

**COUNT THREE**
**FIFTH AMENDMENT – EQUAL PROTECTION**
**(Against All Defendants, Asserted by Jack Doe, Jason Doe, Julia Doe, and the Non-Immigrant Visa Class)**

265.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

266.    The Revised Executive Order discriminates against Plaintiffs Jack Doe, Jason Doe, Julia Doe, and the members of the Non-Immigrant Visa Class on the basis of their country of origin without sufficient justification and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

267.    The Revised Order bars them from traveling and imposes additional burdens such as requiring them to seek a waiver.

268.    Additionally, the Revised Executive Order was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 66

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
T E L E P H O N E : (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
T E L E P H O N E : (206) 623-1900
F A C S I M I L E : (´206) 623-3384

## COUNT FOUR
### FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
**(Against All Defendants, Asserted by All Plaintiffs except John and Jane Doe)**

269.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

270.    The Due Process Clause of the Fifth Amendment provides that "[n]o person shall…be deprived of life, liberty, or property, without due process of law."

271.    Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty or property interests protected under the Due Process Clause of the Fifth Amendment.

272.    Defendants' actions, as described above, have deprived Plaintiffs of their liberty and/or property interests without notice or opportunity to be heard.

## COUNT FIVE
### FIFTH AMENDMENT – SUBSTANTIVE DUE PROCESS
**(Against All Defendants, Asserted by Jack Doe, Jason Doe, Julia Doe, and the Non-Immigrant Visa Class)**

273.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

274.    Plaintiffs Jack Doe, Jason Doe, Julia Doe, and members of the Non-Immigrant Visa Class have a constitutionally protected, fundamental liberty interest in freedom of movement that encompasses their right to travel abroad.

275.    Defendants' actions, as described above, have denied Plaintiffs Jack Doe, Jason Doe, Julia Doe, and members of the Non-Immigrant Visa Class the opportunity to travel outside the United States for fear that they will be denied re-entry. Such actions, taken pursuant to the Revised Executive Order, are not justified by a compelling government interest and therefore violate the substantive due process rights guaranteed by the Fifth Amendment to Plaintiffs Jack Doe, Jason Doe, and members of the Non-Immigrant Visa Class.

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 67

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

**COUNT SIX**
**FIFTH AMENDMENT – SUBSTANTIVE DUE PROCESS**
**(Against All Defendants, Asserted by Joseph Doe, James Doe, and the Refugee Class)**

276.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

277.    Plaintiffs Joseph Doe, James Doe, and members of the Refugee Class have a constitutionally protected, fundamental liberty interest in their marriage and their family lives.

278.    Defendants' arbitrary suspension of the travel of refugees into the United States and the decision on applications for refugee status, including follow-to-join Refugee/Asylee Relative Petitions, violate the substantive due process rights guaranteed by the Fifth Amendment to them. Defendants' arbitrary suspension of the refugee program has deprived Plaintiffs Joseph Doe, James Doe, and members of the Refugee Class of their fundamental right to be with their families and is not justified by a compelling government interest.

**COUNT SEVEN**
**VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT**
**(Against all Defendants, Asserted by Jack Doe, Jason Doe, Julia Doe, and the Non-Immigrant Visa Class)**

279.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

280.    The formulation of policies pertaining to the entry of aliens is entrusted exclusively to Congress. *Galvan v. Press*, 347 U.S. 522, 531 (1954). Through the enactment of and amendments to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*., Congress has established an extensive statutory scheme governing the admission and exclusion of aliens. Where Congress has delegated authority to the Executive, that authority remains constrained by the parameters of the INA. Defendants have exceeded the scope of their delegated authority because their actions are contrary to the INA.

281.    Specifically, INA § 212(a) establishes, in detail, the classes of aliens who are ineligible for visas or admission into the United States, including under "Security and related

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

grounds," § 212(a)(3), 8 U.S.C. § 1182(a)(3). INA § 212(a)(3)(C)(iii) prohibits ideological exclusions like those embodied in Defendants' Orders. Namely, an alien may not be excludable or subject to restrictions or conditions on entry "because of the alien's past, current, or expected beliefs, statements, or associations." 8 U.S.C. § 1182(a)(3)(C)(iii).

282.    In enacting this provision of the INA, Congress specifically sought to end a practice of excluding or denying entry to aliens based on their beliefs.

283.    Defendants, in issuing the Orders, have directly contradicted the expressed will of Congress and violated the INA. To the extent that the delegation of authority in INA § 212(f) is viewed as encompassing the authority to violate the expressed will of Congress, it is an unconstitutional delegation of authority.

## COUNT EIGHT
## ADMINISTRATIVE PROCEDURE ACT— PROCEDURAL VIOLATION
### (Against all Defendants except Defendant Trump, Asserted by All Plaintiffs)

284.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

285.    Defendants U.S. Department of State, U.S. Department of Homeland Security, and U.S. Customs and Border Protection are "agencies" under the APA. *See* 5 U. S. C. § 551(1).

286.    Sections 553 and 706 of the Administrative Procedure Act, 5 U. S. C. §§ 553 and 706 (2), require that federal agencies conduct formal rule making before engaging in action that impacts substantive rights.

287.    The APA further requires courts to hold unlawful and set aside any agency action taken "without observance of procedure required by law." 5 U. S. C. § 706(2)(D).

288.    The creation of the administrative rules contained in Sections 2, 3, and 6 of the Revised Executive Order was an agency action subject to the APA.

289.    Additionally, in implementing Sections 2, 3, and 6 of the Revised Executive Order, Defendants federal agencies and Defendant secretaries and/or directors of those agencies

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

have taken an agency action subject to the APA because they have changed the substantive criteria by which individuals from the Designated Countries may enter the United States, which impacts substantive rights.

290.    Such Defendants did not follow the procedures required by the Administrative Procedure Act before taking action impacting the substantive rights of the Plaintiffs.

291.    By failing to follow the rulemaking procedures required of them prior to changing the substantive criteria by which individuals from the Designated Countries may enter the United States, Defendants federal agencies and Defendant secretaries and/or directors of those agencies violated the Administrative Procedure Act.

292.    These violations continue to cause ongoing harm to Plaintiffs.

## COUNT NINE
## ADMINISTRATIVE PROCEDURE ACT—SUBSTANTIVE VIOLATION
### (Against all Defendants except Defendant Trump, Asserted by all Plaintiffs)

293.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

294.    Defendants U.S. Department of State, U.S. Department of Homeland Security. and U.S. Customs and Border Protection are "agencies" under the APA. *See* 5 U. S. C. § 551(1).

295.    The Administrative Procedure Act prohibits federal agency action that is "contrary to constitutional right, power, privilege, or immunity," 5 U. S. C. § 706(2)(B), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U. S. C. § 706(2)(C), or "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U. S. C. § 706(2)(A).

296.    The creation of the administrative rules contained in Sections 2, 3, and 6 of the Revised Executive Order was an agency action subject to the APA.

297.    Additionally, in implementing Sections 2, 3, and 6 of the Revised Executive Order, Defendants federal agencies and Defendant secretaries and/or directors of those agencies

FIRST AMENDED CLASS
ACTION COMPLAINT
PAGE 70

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (´206) 623-3384

have taken unconstitutional and unlawful action, as alleged in this Complaint, in violation of the Administrative Procedure Act.

298.    In implementing Sections 3(c) and 6(c), Defendants federal agencies have arbitrarily and capriciously exercised their discretion.

299.    In implementing Sections 2 and 3 of the Revised Executive Order, Defendants federal agencies and Defendant secretaries and/or directors of those agencies their statutory authority and engaged in nationality and religion-based discrimination in violation of RFRA.

300.    Finally, in implementing Sections 2, 3, and 6 of the Revised Executive Order, Defendants' actions as set forth above were arbitrary, capricious, or discriminatory. Defendants have offered no satisfactory explanation for the countries that are or are not included within the scope of the Revised Order while banning millions of people with no connection whatsoever to terrorism and causing harm to Plaintiffs. Accordingly, Defendants have violated the substantive requirements of the Administrative Procedure Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners pray that this Court grant the following relief:

1.    A determination that the Individual Plaintiffs' claims may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2);

2.    A declaration that the Revised Executive Order and the manner in which it will be implemented are in violation of the rights of all Plaintiffs as well as members of the Non-Immigration Visa Class and the Refugee Class for the reasons set forth above.

3.    An injunction that the Revised Executive Order may not be enforced as against Plaintiffs or members of members of the Non-Immigration Visa Class or the Refugee Class in connection with their entry or re-entry into the United States;

4.    A permanent injunction of the Revised Executive Order as contrary to the Constitution;

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

5.      An award to the Plaintiffs as well as members of the Non-Immigration Visa Class and the Refugee Class of reasonable costs and attorneys' fees; and,

6.      Such other and further relief that this Court may deem fit and proper.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
TELEPHONE: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (`206) 623-3384

1   DATED this 14th day of March, 2017.

2   AMERICAN CIVIL LIBERTIES UNION          KELLER ROHRBACK L.L.P.
    OF WASHINGTON FOUNDATION
3
    By: /s/ Emily Chiang _____        By: /s/ Lynn Lincoln Sarko _____
4                                           By: /s/ Tana Lin _____
        Emily Chiang, WSBA # 50517          By: /s/ Amy Williams-Derry _____
5       La Rond Baker, WSBA # 43610         By: /s/ Derek W. Loeser _____
        901 Fifth Avenue, Suite 630         By: /s/ Alison S. Gaffney _____
6       Seattle, Washington 98164
        Telephone: (206) 624-2184               Lynn Lincoln Sarko, WSBA # 16569
7       Email: echiang@aclu-wa.org              Tana Lin, WSBA # 35271
                                                Amy Williams-Derry, WSBA #28711
8       **Attorney for Plaintiffs**             Derek W. Loeser, WSBA # 24274
                                                Alison S. Gaffney, WSBA # 45565
9                                               1201 Third Avenue, Suite 3200
                                                Seattle, WA 98101
10                                              Telephone: (206) 623-1900
                                                Facsimile: (206) 623-3384
11                                              Email: lsarko@kellerrohrback.com
                                                        tlin@kellerrohrback.com
12                                                      awilliams-derry@kellerrohrback.com
                                                        dloeser@kellerrohrback.com
13                                                      agaffney@kellerrohrback.com

14                                          By: /s/ Laurie B. Ashton _____
15
                                                Laurie B. Ashton (*Pro Hac Vice*)
16                                              3101 North Central Avenue, Suite 1400
                                                Phoenix, Arizona 85012-2600
17                                              Telephone: (602) 248-0088
                                                Facsimile: (602) 248-2822
18                                              Email: lashton@kellerrohrback.com

19                                          By: /s/ Alison Chase _____
20
                                                Alison Chase (*Pro Hac Vice*)
21                                              1129 State Street, Suite 8
                                                Santa Barbara, CA 93101
22                                              Telephone: (805) 456-1496
                                                Facsimile: (805) 456-1497
23                                              Email: achase@kellerrohrback.com

24                                              **Attorneys for Plaintiffs/Cooperating**
                                                **Attorneys for the American Civil Liberties**
25                                              **Union Of Washington Foundation**

26