The Honorable James L. Robart

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

8

9  John Doe, Jack Doe, Jason Doe, Joseph Doe,
   James Doe, Jeffrey Doe, individually, and on
   behalf of all others similarly situated; the
10  Episcopal Diocese of Olympia; and the
   Council on American-Islamic Relations-
11  Washington,

12                              Plaintiffs,

13                       v.

14  Donald Trump, in his official capacity as
   President of the United States; U.S.
15  Department of State; Rex Tillerson, in his
   official capacity as Secretary of State; U.S.
16  Department of Homeland Security; Elaine
   Duke, in her official capacity as Acting
17  Secretary of Homeland Security; U.S. Customs
   and Border Protection; Kevin McAleenan, in
18  his official capacity as Acting Commissioner
   of U.S. Customs and Border Protection;
19  Michele James, in her official capacity as Field
   Director of the Seattle Field Office of U.S.
20  Customs and Border Protection; Office of the
   Director of National Intelligence; and Daniel
21  Coats, in his official capacity as Director of
   National Intelligence,

22                              Defendants.

23

24

25

26

No. 2:17-cv-00178 (JLR)

**DEFENDANTS' OPPOSITION
TO PLAINTIFF JOSEPH DOE'S
MOTION FOR PRELIMINARY
INJUNCTION**

Noted For Consideration:
November 22, 2017

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1

## TABLE OF CONTENTS

2   INTRODUCTION .................................................................................................. 1

3   BACKGROUND .................................................................................................. 2

4   I.    LEGAL FRAMEWORK ............................................................................ 2

5   II.   THE JOINT MEMORANDUM ................................................................. 3

6   III.  PLAINTIFF'S MOTION .......................................................................... 6

7   STANDARD OF REVIEW .................................................................................. 6

8   ARGUMENT ....................................................................................................... 6

9   I.    PLAINTIFF'S CHALLENGES ARE NOT JUSTICIABLE .................... 6

10        A.    Plaintiff Lacks Standing ................................................................. 7

11        B.    Plaintiff's Claims Are Barred By Principles Of Nonreviewability ..... 8

12              1.    Plaintiff's Statutory Claims Are Not Reviewable ................ 8

13              2.    Plaintiff's Constitutional Claim Is Not Reviewable ........... 10

14        C.    Plaintiff Has Not Identified Any Final Agency Action .................. 11

15   II.   PLAINTIFF'S CLAIMS ARE NOT LIKELY TO SUCCEED ON THE MERITS ..... 12

16        A.    Plaintiff's Section 1157(c)(2)(A) Claim Lacks Merit ..................... 12

17        B.    The Joint Memorandum's Implementation Period Does Not Violate The
18              Due Process Clause ...................................................................... 14

19        C.    The Joint Memorandum's Implementation Period Does Not Violate the
              APA ............................................................................................. 16

20              1.    Notice-And-Comment Rulemaking Was Not Required Because
21                    The Implementation Period Is A Procedural Rule ................ 16

22              2.    The Implementation Period Is Neither Arbitrary Nor Capricious ......... 18

23   III.  THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH
24        AGAINST RELIEF ........................................................................... 21

25   IV.   ANY INJUNCTION SHOULD BE NARROWLY TAILORED TO ADDRESS
        ONLY PLAINTIFF JOSEPH DOE'S ALLEGED INJURY ......................... 22

26   CONCLUSION ................................................................................................... 23

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - i
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

# INTRODUCTION

Plaintiff Joseph Doe asks the Court to preliminarily enjoin a provision of a Joint Memorandum issued by multiple Cabinet Secretaries regarding the operation of the U.S. Refugee Admissions Program.[1]   The Joint Memorandum explains that most following-to-join refugee applicants are not currently subject to the same screening and vetting procedures as other refugees. The Secretaries of State and Homeland Security and the Director of National Intelligence determined that this disparity must be remedied to ensure the security and welfare of the United States.   The Joint Memorandum thus directs the relevant agencies to implement screening mechanisms for following-to-join refugees that are similar to those already employed for principal refugees.   During this "implementation period," following-to-join refugees processed at most locations will not be admitted to the United States.   But the relevant agencies are working as expeditiously as possible to implement the additional screening procedures.   Once those procedures are in place, admissions will resume, as the Joint Memorandum explains.

Plaintiff previously was admitted to the United States as a refugee and seeks to bring his wife and three children here as following-to-join refugees.   He asserts that the Joint Memorandum's implementation period is unlawful and should be enjoined.   His claims, however, are all premised on his erroneous belief that the Joint Memorandum indefinitely bars the admission of all following-to-join refugees, thereby depriving him (and his family) of what he asserts are vested statutory rights.   But the Joint Memorandum merely provides for a pause in admissions while the agencies align their screening and vetting procedures for following-to-join refugee applicants with those applied to other refugees; it is a pause to allow for updated procedures to be implemented, not an indefinite suspension of the program.   Therefore, the Joint Memorandum does not affect any substantive rights.   Even assuming Plaintiff had any "entitlement" to the admission of family members (and he does not), the Joint Memorandum would not deprive him of it.   At most, the Joint Memorandum will result in some delay in the

---

[1] *See* Joint Memorandum to the President from the Secretary of State, Acting Secretary of Homeland Security, and Director of National Intelligence (Oct. 23, 2017) (ECF No. 46-2) [hereafter "Joint Mem."].

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 1
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

processing of following-to-join refugees, but no refugee applicant is entitled to have his or her application processed at any particular pace or within a specified timeframe. And Plaintiff certainly has no right to have his family members screened under diminished procedures. For this reason, and others explained below, Plaintiff's claims under 8 U.S.C. § 1157(c)(2)(A) and the Fifth Amendment's Due Process Clause fail.

Similarly, because the Joint Memorandum's implementation period does not change the substantive criteria for determining whether Plaintiff's family members qualify for following-to-join status and are otherwise admissible as immigrants, the implementation period is a procedural rule that is exempt from the Administrative Procedure Act's (APA) notice-and-comment requirements. Moreover, the Cabinet Secretaries' decision to implement additional screening procedures for following-to-join refugees, in order to protect national security and so that similarly situated refugees are treated alike, is neither arbitrary nor capricious.

The Court need not even reach the merits, though, because Plaintiff's claims are not justiciable at all. Plaintiff lacks standing because he has not shown that his family is even affected by the provision of the Joint Memorandum that he challenges: it appears that Plaintiff's family members are located in Kenya, which is one location where enhanced vetting procedures for following-to-join refugees are already in place, and so the Government is admitting following-to-join refugees who have been processed in Kenya (subject to other applicable restrictions on refugee admissions). Congress, moreover, has not authorized review of Plaintiff's statutory claims, and Plaintiff has not shown that he himself has been deprived of any entitlement without adequate process. Finally, even if Plaintiff could overcome these jurisdictional hurdles, the Joint Memorandum's implementation period is not final agency action subject to judicial review.

## BACKGROUND

## I.    LEGAL FRAMEWORK

Subject to numerical limits set annually by the President, the Secretary of Homeland Security has discretion to admit "any refugee who is not firmly resettled in any foreign country,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 2
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

is determined to be of special humanitarian concern to the United States, and is admissible (except as otherwise provided under [8 U.S.C. § 1157(c)(3)]) as an immigrant" under the Immigration and Nationality Act (INA).  8 U.S.C. § 1157(c)(1); *see also* 8 U.S.C. § 1182(a) (setting forth general inadmissibility grounds).  Refugees admitted in accordance with this provision are sometimes referred to as "principal" refugees.

In addition, certain individuals who are not otherwise admissible as a refugee under Section 1157(c)(1) may nonetheless be entitled to refugee status if they are accompanying or following to join a principal refugee.  *See* 8 U.S.C. § 1157(c)(2)(A); 8 C.F.R. § 207.7(a).  To obtain this so-called derivative refugee status, an applicant must be the spouse or unmarried child under the age of 21 of a principal refugee and also must be admissible (except as otherwise provided under 8 U.S.C. § 1157(c)(3)) as an immigrant under the INA.  8 U.S.C. § 1157(c)(2)(A).  Derivative refugees who are either in the physical company of the principal refugee when he or she is admitted to the United States or admitted within four months after the principal refugee are called "accompanying" refugees.  8 C.F.R. § 207.7(a).  Derivative refugees who seek admission more than four months after the principal refugee are called "following-to-join" refugees.  *Id*.

## II.    THE JOINT MEMORANDUM

Section 6(a) of Executive Order No. 13,780 (EO-2) directed the Secretaries of State and Homeland Security to suspend travel of refugees and decisions on refugee applications under the U.S. Refugee Admissions Program (USRAP), pending a review of existing refugee procedures. *See* 82 Fed. Reg. 13,209 (Mar. 6, 2017).  This suspension was necessary to allow the Secretaries, in consultation with the Director of National Intelligence, to "determine what additional procedures should be used to ensure that individuals seeking admission as refugees do not pose a threat to the security and welfare of the United States."  EO-2 § 6(a).  During this period, the relevant agencies identified multiple ways to enhance the refugee vetting process, and began implementing some of those improvements.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 3
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

Section 6(a) of EO-2 provided that, at the conclusion of this review period, refugee travel and USRAP adjudications would resume for stateless persons and nationals of countries for which the officials "determined that the additional procedures implemented . . . are adequate to ensure the security and welfare of the United States."  On October 23, 2017, the officials advised the President, through a Joint Memorandum, that the improvements to the USRAP vetting process are sufficient to allow the general resumption of that program, subject to certain conditions.

One of those conditions (which Plaintiff challenges here) addresses the different screening procedures that are currently applied to most following-to-join refugee applicants as compared to other refugee applicants.  *See* Joint Mem. at 2-3.  As the Joint Memorandum explains, most following-to-join refugee applicants do not currently undergo the same security and vetting procedures as principal refugees or accompanying derivative refugees (who are typically processed at the same time and location as the principal).  *See id.* at 2 & n.1.  For example, information is typically solicited earlier in the application process for principal refugees and their accompanying derivatives than for following-to-join refugee applicants, which allows for a more comprehensive and thorough screening process.  *See id.* at 2-3.  And most following-to-join refugee applicants are not currently vetted against classified databases under the same circumstances that would trigger such vetting for principal and accompanying derivative refugee applicants.  *See id.*; *see also* Joint Mem. Addendum at 4 ("The majority of following-to-join refugees do not receive the same, full baseline interagency checks that principal refugees receive."); Higgins Decl. ¶¶ 3, 12 (Nov. 16, 2017), attached hereto.

Given these differences, the Secretaries of State and Homeland Security and the Director of National Intelligence determined that, in their judgment, it is necessary to "implement adequate screening mechanisms for following-to-join refugees that are similar to the processes employed for principal refugees, in order to ensure the security and welfare of the United States."  Joint Mem. at 3; *see also* Joint Mem. Addendum at 4 (describing some of the additional security measures to be implemented); Higgins Decl. ¶¶ 13-16 (same).  These officials further determined

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 4
*John Doe, et al. v. Trump, et al.,* No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1    that following-to-join refugees should not be admitted to the United States until these additional

2    screening procedures are in place.  Joint Mem. at 3.

3           The  screening  procedures  currently  applied  to  following-to-join  refugee  applications

4    processed  in  two  locations—Kenya  and  Thailand—already  are  aligned  with  the  procedures

5    employed for principal refugees and accompanying derivative refugees.  *See* Higgins Decl. ¶ 11.

6    Accordingly, the agencies have resumed admissions of following-to-join refugees processed at

7    those two locations, subject to other restrictions set forth in the Joint Memorandum.  *See id*.  The

8    agencies  are  working  "as  expeditiously  as  possible"  to  implement  the  additional  screening

9    procedures  for  all  other  processing  locations.  *Id*. ¶ 16; *see also* Joint Mem. Addendum at 4

10    (explaining that the agencies are working "expeditiously").  Once the additional security measures

11    are in place, admissions of following-to-join refugees will resume worldwide.  *See* Joint Mem. at

12    3.[2]

13           Following receipt of the Joint Memorandum, on October 24, 2017, the President issued

14    Executive Order No. 13,815 (Refugee Order).  *See* 82 Fed. Reg. 50,055 (Oct. 24, 2017).  The

15    President acknowledged the Cabinet Secretaries' joint determination that the USRAP may resume

16    and that they will apply "special measures" to certain categories of refugee applicants, and

17    therefore the worldwide suspension directed by EO-2 is no longer needed.  *See* Refugee Order

18    §§ 2(a), (c).  Going forward, the President directed the Secretaries of State and Homeland Security

19    to exercise their statutory authority to "continue to assess and address any risks posed by particular

20    refugees," *id*. § 3(a), including by modifying or terminating actions taken to address these risks

21    when appropriate, *id*. § 3(a)(ii).

---

[2] The Joint Memorandum also describes a review the agencies are undertaking of eleven countries whose refugee applicants are currently subject to Security Advisory Opinions (SAOs) because those countries were determined, as of 2015, to pose a higher national-security risk to the United States.  *See* Joint Mem. at 2; Joint Mem. Addendum at 3-4.  During this review period (scheduled to last 90 days), the agencies will "temporarily prioritize refugee applications from other non-SAO countries," for whom processing may not require as many resources.  Joint Mem. at 2; Joint Mem. Addendum at 3-4.  Plaintiff does not challenge these measures, which apply to both principal and derivative refugee applicants.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 5
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

### III.     PLAINTIFFF'S MOTION

Plaintiff Joseph Doe has moved for a preliminary injunction against the Joint Memorandum's implementation period for following-to-join refugees.   He claims the implementation period violates 8 U.S.C. § 1157(c)(2)(A), the procedural component of the Due Process Clause, and the APA.

### STANDARD OF REVIEW

Plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### ARGUMENT

### I.     PLAINTIFF'S CHALLENGES ARE NOT JUSTICIABLE

Plaintiff's claims are nonjusticiable for at least three reasons.  First, Plaintiff has not satisfied the threshold standing requirements of Article III because he has not identified an injury to himself that is fairly traceable to the Joint Memorandum's following-to-join provisions. Second, review of Plaintiff's statutory claims is barred by the fundamental separation-of-powers principle that the political branches' decisions about admissibility and entry of aliens abroad are not judicially reviewable absent express authorization by Congress, which does not exist here. While Plaintiff also purports to bring a due process claim, he has not alleged, and certainly cannot prove, that *he himself* has been deprived of any entitlement without adequate process; thus, that claim is likewise not reviewable.  Third, the Joint Memorandum's following-to-join provisions simply prescribe an implementation period to improve following-to-join refugee vetting and do not constitute final agency action.  Plaintiff, therefore, cannot satisfy this prerequisite for APA review.

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

### A.   PLAINTIFF LACKS STANDING

Plaintiff lacks standing to challenge the Joint Memorandum's implementation period.  To satisfy Article III's standing requirements, "a plaintiff must show (1) it has suffered an 'injury in fact'[;] . . . (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citation omitted).

Here, even accepting that Plaintiff's separation from his family could constitute a cognizable injury in fact, Plaintiff has not shown that the following-to-join implementation period caused or will exacerbate any such injury.  Plaintiff's wife and children apparently are in Kenya, *see* Doe Decl. ¶ 9 (ECF No. 47), and Kenya is one of two countries in which screening procedures are already in place to ensure that following-to-join and principal refugees receive comparable scrutiny.  *See* Higgins Decl. ¶ 11 (explaining that in Kenya and Thailand, "the security vetting received for a Form I-730 beneficiary is the same as the screening received for principal refugee applicants," and thus the Government is continuing to issue travel authorization to approved following-to-join refugees who have been processed in these locations, subject to other restrictions on refugee admissions).  Accordingly, following-to-join applicants located in Kenya (such as Plaintiff's family) are unaffected by the Joint Memorandum's implementation period.

The Complaint further alleges that Plaintiff's children "are considered Somali nationals" and that Somalia is among those countries subject to an SAO requirement.  Third Am. Compl. ¶¶ 62, 215 (ECF No. 42).  If Plaintiff's family members are nationals of an SAO country, then they are subject to another provision of the Joint Memorandum that temporarily prioritizes refugee applicants from non-SAO countries while officials determine what additional safeguards, if any, may be needed to ensure that applicants from SAO countries do not threaten domestic security. *See* Joint Mem. at 2; note 2, *supra*.  But Plaintiff does not challenge the SAO-related provision of the Joint Memorandum.  Because Plaintiff has not carried his burden of showing that his

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 7
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1    separation from his family is fairly traceable to the provision of the Joint Memorandum he

2    challenges, he lacks Article III standing.

3    **B.**     **PLAINTIFF'S CLAIMS ARE BARRED BY PRINCIPLES OF NONREVIEWABILITY**

4            **1.     Plaintiff's Statutory Claims Are Not Reviewable**

5            The Supreme Court has long recognized that "the power to . . . exclude aliens" is a

6    "fundamental sovereign attribute exercised by the Government's political departments largely

7    immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). "[I]t

8    is not within the province of any court, *unless expressly authorized by law*, to review the

9    determination of the political branch of the Government to exclude a given alien." *United States*

10   *ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (emphasis added)).

11           Courts have distilled from these longstanding principles that the denial or revocation of a

12   visa for an alien abroad "is not subject to judicial review . . . unless Congress says otherwise."

13   *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999); *see also Doan v. INS*, 160

14   F.3d 508, 509 (8th Cir. 1998) ("Administrative decisions excluding aliens are not subject to

15   judicial review unless there is a clear grant of authority by statute."). Courts refer to this rule as

16   the "doctrine of consular nonreviewability," *Saavedra Bruno*, 197 F.3d at 1159, but the short-hand

17   label merely reflects the context in which the principle most often arises—challenges to decisions

18   by consular officials adjudicating visa applications. The principle underlying that doctrine applies

19   regardless of the manner in which the Executive Branch denies entry to an alien abroad, including

20   a refugee applicant. *See Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1506 (11th Cir. 1992)

21   (per curiam). It would make no sense to bar review of a consular or immigration officer's case-

22   specific determination while permitting review of determinations by Cabinet Secretaries that are

23   grounded in sensitive national-security judgments and that are applied by lower-level officials in

24   reviewing individual visa or refugee applications.

25           Plaintiff has identified no statute that authorizes judicial review. Plaintiff cites 8 U.S.C.

26   § 1157(c) and the APA, but neither statute overrides the default presumption of nonreviewability.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 8
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

First, Section 1157(c) says nothing about judicial review:  it simply provides, in relevant part, that a spouse or child of a principal refugee is entitled to the same admission status as the principal, assuming that family member is otherwise admissible as an immigrant.  *See Haitian Refugee Ctr.*, 953 F.2d at 1506 ("Contrary to the extensive procedures provided for with regard to aliens within the United States, 8 U.S.C. § 1157, which applies to refugees seeking admission from outside the United States, makes no provision for judicial review.").  Nor does any other provision of the INA authorize judicial review under the circumstances Plaintiff alleges here.

Second, the APA does not apply "to the extent that . . . statutes preclude judicial review," 5 U.S.C. § 701(a)(1), a determination that turns not only on the statute's express language but also on the "structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved," *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).  Moreover, Section 702 of the APA includes a proviso that preserves "other limitations on judicial review" that predated the APA.  *See Saavedra Bruno*, 197 F.3d at 1158.  Here, the conclusion is "unmistakable" from history that "the immigration laws 'preclude judicial review' of [] consular visa decisions," *id.* at 1160 (citation omitted), and the same is true of refugee determinations, *see Haitian Refugee Ctr.*, 953 F.2d at 1506.  At a minimum, the general rule of "nonreviewability . . . represents one of the 'limitations on judicial review' unaffected by § 702's opening clause." *Saavedra Bruno*, 197 F.3d at 1158.

Indeed, when the Supreme Court held that aliens physically present in the United States—but not aliens abroad—could seek review of their exclusion orders under the APA, *see Brownell v. Tom We Shung*, 352 U.S. 180, 184-86 (1956), Congress responded by abrogating that ruling.  *See* Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651-53; *Saavedra Bruno*, 197 F.3d at 1157-62 (recounting history).  The House Report accompanying the abrogating statute explained that APA suits would "give recognition to a fallacious doctrine that an alien has a 'right' to enter this country which he may litigate in the courts of the United States against the U.S. Government as a defendant."  H.R. Rep. No. 87-1086, at 33 (1961), *as reprinted in* 1961

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 9
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

U.S.C.C.A.N. 2950, 2976.  Because an alien present in the United States cannot invoke the APA to obtain review of an exclusion order, then *a fortiori* neither can aliens abroad or U.S. persons acting on their behalf.  And given that Congress has generally foreclosed judicial review of visa revocations, *see* 8 U.S.C. § 1201(i), it is implausible that Congress would permit review of Executive decisions to restrict entry in the first instance.

### 2.    Plaintiff's Constitutional Claim Is Not Reviewable

The Supreme Court has twice engaged in limited judicial review of constitutional claims, but only when a U.S. citizen contended that the exclusion of an alien abroad violated the citizen's own constitutional rights.  In *Kleindienst v. Mandel*, the Court reviewed a claim that the denial of a discretionary waiver of visa-ineligibility to a Belgian national violated U.S. citizens' own First Amendment rights to receive information.  408 U.S. 753, 756-59, 762-70 (1972).  As the Court explained, the alien himself could not seek review because he "had no constitutional right of entry to this country."  *Id*. at 762.  The Court addressed (and rejected on the merits) only the claim of U.S. citizens that the alien's exclusion violated their own constitutional rights.  *Id*. at 770. Similarly, in *Kerry v. Din*, the Court rejected a claim by a U.S. citizen that the refusal of a visa to her husband violated her own due process rights.  135 S. Ct. 2128, 2131 (2015) (opinion of Scalia, J.); *id*. at 2139 (Kennedy, J., concurring in the judgment).  Limited review was available in each case only because the plaintiffs asserted violations of their own constitutional rights as U.S. citizens.[3]

Here, Plaintiff cannot assert that the Joint Memorandum violates his *own* procedural due process rights.  Plaintiff relies solely on the alleged "entitlement" created by 8 U.S.C. § 1157(c)(2)(A), but that statute extends no rights to a principal refugee like Plaintiff.  Instead, it provides that a *derivative* refugee (*i.e.*, the principal refugee's spouse or child) shall, subject to

---

[3] In *Washington v. Trump*, the Ninth Circuit suggested in dicta, without any analysis, that states might have standing to assert "potential claims regarding possible due process rights" of various groups, including refugees and persons who "have a relationship with a U.S. resident."  847 F.3d 1151, 1166 (9th Cir. 2017) (per curiam).  This passing observation, however, cannot be squared with *Mandel*'s demarcation between a constitutional claim by an alien abroad (unreviewable) and a constitutional claim by a U.S. person (potentially reviewable, provided the person alleges a violation of his/her individual rights).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 10
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

1  certain conditions, "be entitled to the same admission status" as the principal.  This conditional

2  entitlement to refugee status, in other words, belongs not to Plaintiff but to certain of his otherwise

3  admissible family members.  Plaintiff therefore is not asserting his own due process rights, and

4  his family members, as aliens abroad, of course have no constitutional right of entry to this

5  country.  *See Knauff*, 338 U.S. at 542.

6  **C.  PLAINTIFF HAS NOT IDENTIFIED ANY FINAL AGENCY ACTION**

7  Finality is a prerequisite to judicial review of agency actions.  *See* 5 U.S.C. § 704.  Two

8  conditions must generally be satisfied before agency action will be deemed final:  "First, the action

9  must mark the consummation of the agency's decisionmaking process—it must not be of a merely

10 tentative or interlocutory nature.  And second, the action must be one by which rights or

11 obligations have been determined, or from which legal consequences will flow."  *Fairbanks N.*

12 *Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (quoting *Bennett*

13 *v. Spear*, 520 U.S. 154, 177-78 (1997)).

14 Even if Plaintiff could show that the Joint Memorandum's implementation period satisfies

15 the first requirement for finality, he cannot establish the second requirement because the

16 implementation period does not determine any rights or obligations or prescribe any legal

17 consequences.  The implementation period does not deprive Plaintiff's family of the opportunity

18 to obtain refugee status.  Assuming *arguendo* that the implementation period affects Plaintiff's

19 family at all (and for the reasons set forth above, *see* Part I.A., *supra*, it apparently does not), at

20 most it delays their admission if they are otherwise eligible.

21 A processing delay by itself does not alter the family's "legal situation," and thus the

22 following-to-join implementation period is not final agency action subject to judicial review.  *See*

23 *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 952 (9th Cir. 2017) (issuance of

24 pilot program report was not final agency action; though it was the "final step in completing the

25 pilot program, clearing the way for the permitting of [certain] carriers," it "did not change the

26 legal situation," as the agency retained discretion over whether and when to issue permits).  The

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 11
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1  delay in receipt of a potential future benefit is not, by itself, final agency action warranting review

2  under the APA.

3  **II.    PLAINTIFF'S CLAIMS ARE NOT LIKELY TO SUCCEED ON THE MERITS**

4      **A.    PLAINTIFF'S SECTION 1157(c)(2)(A) CLAIM LACKS MERIT**

5        Even if Plaintiff could surmount the jurisdictional and reviewability hurdles above (and

6  he cannot), his claims nevertheless fail on the merits.   Plaintiff first argues that 8 U.S.C.

7  § 1157(c)(2)(A) "create[s] an entitlement allowing refugees to bring their immediate families" to

8  the United States, and that the Joint Memorandum's implementation period for following-to-join

9  refugees "rescind[s] that entitlement."  Mot. for Prelim. Inj. at 10 (ECF No. 45) [hereafter "Pl.'s

10  Mem."].  But this claim lacks merit both because the implementation period does not rescind any

11  substantive rights and because § 1157(c)(2)(A) does not guarantee admission to the United States.

12      *First*, contrary to Plaintiff's assertion, the Joint Memorandum's implementation period

13  does not "rescind" anything.   It does not address any substantive rights of following-to-join

14  refugee applicants.   Instead, it merely provides a period of time for the agencies to implement

15  additional screening procedures "for following-to-join refugees that are similar to the processes

16  employed for principal refugees."    Joint Mem. at 3.    Once those procedures are in place,

17  admissions of following-to-join refugees will resume under the same substantive criteria as

18  before.  *Id*. at 3.  Thus, the agencies' standardization of their screening procedures does not take

19  away any substantive, pre-existing right or benefit Plaintiff's family members may have.

20  Whatever benefits Plaintiff's family members could qualify for prior to the implementation period

21  will be available to them after admissions resume if they continue to qualify.  Plaintiff has no right

22  in the statute or otherwise to diminished screening and vetting procedures for his family members.

23      *Second*, Plaintiff's claim misinterprets Section 1157(c)(2)(A).  That provision states, in

24  relevant part, that a principal refugee's spouse or unmarried child under the age of 21 "shall . . . be

25  entitled to the same admission status" as that refugee "if the spouse or child is admissible . . . as

26  an immigrant under this chapter."  8 U.S.C. § 1157(c)(2)(A).  The statute provides for a "status,"

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 12
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

not guaranteed admission to the United States, let alone admission on any specific timeframe. *Accord* 8 C.F.R. § 207.7(a) (qualifying individuals "shall be granted refugee status if accompanying or following-to-join the principal alien"); *id.* § 207.7(f) (explaining that, "[f]or a derivative . . . arriving in the United States, USCIS will issue a document reflecting the derivative's current status as a refugee to demonstrate employment authorization"); Office of Refugee Resettlement, *Status and Documentation Requirements for the ORR Refugee Resettlement Program* (Oct. 2, 2015), https://www.acf.hhs.gov/orr/resource/status-and-documentation-requirements-for-the-orr-refugee-resettlement-program (providing guidance as to statuses that confer eligibility for Refugee Resettlement Program benefits). Plaintiff's argument that Section 1157(c)(2)(A) requires the Government to admit his family members now, without further delay, finds no support in the plain text of the provision.

Moreover, Section 1157(c)(2)(A) conditions status on admissibility, a finding that requires the Government to exercise its judgment in determining whether numerous inadmissibility grounds apply. *See, e.g.*, 8 U.S.C. § 1182(a)(3)(A)(ii) (stating that any alien is inadmissible who "a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter" to engage in unlawful activity); *id.* § 1182(a)(3)(B)(i)(II) (same, for alien who "a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity"); *id.* § 1157(c)(3) (granting Attorney General discretion to waive certain inadmissibility determinations "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest"). Plaintiff suggests that his family is admissible such that Section 1157(c)(2)(A) requires their admission now. *See* Pl.'s Mem. at 12-13. But the Government is entitled to time to make that determination itself—using adequate procedures—and that is all that the implementation period does here, thereby creating what is at most a slight delay in processing as the Government improves its procedures.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 13
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

In addition, admissibility is not ultimately adjudicated until an individual appears at a port to seek entry into the United States. *See* 8 U.S.C. § 1201(h) ("Nothing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to be admitted [to] the United States, if, upon arrival at a port of entry in the United States, he is found to be inadmissible under this chapter, or any other provision of law."); 8 C.F.R. § 207.7(d) (explaining that approval of I-730 Petition can be "revoked" prior to entry); Higgins Decl. ¶ 10; *cf. Kanu v. Lynch*, 652 F. App'x 390, 396-97 (6th Cir. 2016) (rejecting argument that Section 1157(c)(2)(A) "entitles [daughter] to the same refugee status as her mother" and terminating derivative refugee status because daughter "was in fact inadmissible under the INA at the time of her admission to the United States"). Thus, Plaintiff cannot demonstrate that his family members are in fact currently eligible for refugee status, as he surely must before he could even bring a claim seeking to compel their immediate admission.

For these reasons, Plaintiff is not likely to succeed on his Section 1157(c)(2)(A) claim.

## B.  THE JOINT MEMORANDUM'S IMPLEMENTATION PERIOD DOES NOT VIOLATE THE DUE PROCESS CLAUSE

Plaintiff next claims that the Joint Memorandum violates his procedural due process rights because it allegedly took away his "legitimate claim of entitlement to his family's admission" and, in doing so, "provided no process at all." Pl.'s Mem. at 13-14 (internal quotation marks omitted). Analysis under the Due Process Clause typically "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). Plaintiff's claim fails at both steps.

*First*, Section 1157(c)(2)(A) does not create a liberty or property interest in admission to the United States. As explained above, the provision entitles certain individuals to refugee status only if they are determined to be admissible and otherwise satisfy the relevant criteria. *See* Part II.A, *supra*. Moreover, even if Section 1157(c)(2)(A) did confer some interest in admission, it would do so only as to derivative refugee applicants, not principal refugees. *See* Part I.B.2, *supra*.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 14
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

Plaintiff, therefore, would at most be an incidental beneficiary of Section 1157(c)(2)(A).  But "[o]ver a century ago [the Supreme] Court recognized the principle that the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980).  Thus, Plaintiff cannot claim a due process violation here.  *See id.* (holding residents could not bring due process challenge against the government's decision to disqualify nursing home from Medicaid and Medicare payments that covered patients' bills); *Castaneda v. U.S. Dep't of Agric.*, 807 F.2d 1478, 1480 (9th Cir. 1987); *cf. Fiallo*, 430 U.S. at 795 n.6 (rejecting the premise that "the families of putative immigrants . . . have an interest in their admission").

*Second*, even if Plaintiff could somehow show that Section 1157(c)(2)(A) provides him with a constitutionally protected interest, the Joint Memorandum's implementation period does not deprive him of that interest.  The Joint Memorandum addresses only screening procedures and timing for following-to-join refugee admissions; it does not change the substantive criteria for determining whether an individual qualifies as a derivative refugee.  Thus, whatever interests Plaintiff's family members had prior to the implementation period still exist.

*Third,* even if Plaintiff had been deprived of a liberty or property interest, his claim still fails because the Government is not required to provide notice or individualized hearings where, as here, it acts through categorical judgments rather than individual adjudications.  *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 446 (1915); *Yassini v. Crosland*, 618 F.2d 1356, 1363 (9th Cir. 1980) (per curiam).  And even if the Government were required to provide some explanation justifying not admitting following-to-join refugees until after the additional screening procedures are in place, the Joint Memorandum's findings amply satisfy the *Mandel* standard of "facially legitimate and bona fide."  *See Din*, 135 S. Ct. at 2140 (Kennedy, J, concurring in the judgment) (applying the *Mandel* standard to reject a procedural due process claim).  In particular, the Secretaries of State and Homeland Security and the Director of National Intelligence determined that implementation of "adequate screening mechanisms for following-

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 15
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

to-join refugees that are similar to the processes employed for principal refugees" is necessary "to ensure the security and welfare of the United States." Joint Mem. at 3. Plaintiff's due process claim thus lacks merit.

### C. THE JOINT MEMORANDUM'S IMPLEMENTATION PERIOD DOES NOT VIOLATE THE APA

Plaintiff also erroneously claims that the implementation period for aligning the screening procedures for following-to-join refugees with those applied to other refugees violates the procedural and substantive components of the APA. *See* Pl.'s Mem. at 14-18. The implementation period is a procedural rule, and thus, it is exempt from the APA's notice-and-comment requirements. Moreover, the agencies' decision to standardize their screening procedures so that similar individuals are treated alike is neither arbitrary nor capricious. And the judgment of the Cabinet Secretaries that following-to-join refugees should not be admitted until the additional security measures are in place "to ensure the security and welfare of the United States" is entitled to the utmost deference and is reasonable. Joint Mem. at 3.

### 1. Notice-And-Comment Rulemaking Was Not Required Because The Implementation Period Is A Procedural Rule

The notice-and-comment procedures of the APA do not apply to every agency pronouncement. As relevant here, the APA explicitly exempts "rules of agency organization, procedure, or practice" from its procedural requirements. 5 U.S.C. § 553(b)(3)(A). Unlike legislative (or substantive) rules, which "create law" by, for example, establishing or altering substantive standards, procedural rules involve "technical regulation of the form of agency action and proceedings." *S. Cal. Edison Co. v. FERC*, 770 F.2d 779, 783 (9th Cir. 1985). The procedural rule exemption "covers agency actions that do not themselves alter the rights or interests of parties, although [they] may alter the manner in which the parties present themselves or their viewpoints to the agency." *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994). In addition, "[a] procedural rule does not become substantive merely because it has a substantive impact," such as "by denying parties the opportunity to appeal if they fail to comply with certain

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 16
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

procedures." *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1084 (N.D. Cal. 2010) (citing *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 757 (9th Cir. 1992)).  As long as a rule does not change substantive standards, it may qualify as procedural. *See, e.g.*, *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 317 (D.C. Cir. 2000) (concluding rule was procedural where it "did not alter the substantive criteria by which [the agency] would approve or deny proposed labels," but rather, "simply changed the procedures [the agency] would follow in applying those substantive standards"); *Gonzales*, 728 F. Supp. 2d at 1084 ("[C]hanges in the timing, requirements or manner in which an application or petition is made are generally considered procedural changes.").

The Joint Memorandum's implementation period for following-to-join refugees is a procedural rule.  It does not change the substantive criteria for determining whether an applicant can be admitted to the United States as a derivative refugee.  Instead, it merely suspends the admission of following-to-join refugees while the agencies align screening procedures for such refugees with the procedures already applied to principal and accompanying derivative refugee applicants.  Once the additional procedures are in place, the agencies will resume admissions under the same substantive criteria that applied before the suspension.  *See* 8 U.S.C. §§ 1157(c)(2)(A), 1182(a); 8 C.F.R. § 207.7.

Courts have held that similar decisions to suspend the processing of applications while an agency considers or implements changes to its rules or processes are procedural in nature and thus exempt from notice-and-comment rulemaking.  For example, in *Waste Management, Inc. v. EPA*, 669 F. Supp. 536, 538-40 (D.D.C. 1987), the court held that the agency issued a procedural rule when it decided to defer consideration of applications for ocean incineration permits until the agency promulgated new rules on the topic.  And in *Neighborhood TV Co. v. FCC*, 742 F.2d 629, 636-38 (D.C. Cir. 1984), the court determined that an agency's decision to "freeze" processing of certain applications for television translator licenses was a procedural rule.  In both cases, the court relied on the fact that the agency's decision to suspend the processing of certain applications

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 17
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

did not change the substantive criteria by which those applications would ultimately be assessed or alter the plaintiffs' rights or interest in a permit or license. Rather, the agency had merely "altered its method of operations; it ha[d] changed its procedures." *Waste Mgmt.*, 669 F. Supp. at 540; *see also Buckeye Cablevision, Inc. v. United States*, 438 F.2d 948, 953 (6th Cir. 1971) (upholding processing freeze adopted without notice and comment as a procedural rule); *Kessler v. FCC*, 326 F.2d 673, 681-82 (D.C. Cir. 1963) (same). The same reasoning applies here.

Because the implementation period is a procedural rule exempt from notice-and-comment rulemaking, Plaintiff's procedural APA claim fails.[4]

### 2.     The Implementation Period Is Neither Arbitrary Nor Capricious

Review under the APA's arbitrary and capricious standard is "narrow," *Arrington v. Daniels*, 516 F.3d 1106, 1112-13 (9th Cir. 2008), and "highly deferential," *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009). A court must "presum[e] the agency action to be valid and affirm[] . . . if a reasonable basis exists for [the agency's] decision." *Id*. A reasonable basis exists so long as "the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Id*. The agency's decision "need only be reasonable, not the best or most reasonable, decision." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010). A court, moreover, may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The agencies' decision to standardize their screening and vetting procedures for all refugees and not to admit following-to-join refugees until the additional security measures are in place readily satisfies the arbitrary-and-capricious standard. As the Joint Memorandum explains,

---

[4] Plaintiff does not appear to challenge, on procedural APA grounds, the agencies' decision to use similar screening procedures for following-to-join applicants and other refugee applicants. Even if he did, however, that claim would also fail for the reasons explained above. The agencies are merely adjusting the procedures they use in processing applications, not the substantive criteria for obtaining derivative refugee status, which are set forth in existing statutes and regulations. *See, e.g.*, *Erringer v. Thompson*, 371 F.3d 625, 633 n.15 (9th Cir. 2004) ("'[P]rocedural' rules are those that are 'legitimate means of structuring [the agency's] enforcement authority.'" (citation omitted)).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 18
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

"[t]he majority of following-to-join refugees do not [currently] receive the same, full baseline interagency checks that principal refugees receive." Joint Mem. Addendum at 4. And "implement[ing] adequate screening mechanisms for following-to-join refugees that are similar to the process employed for principal refugees" is necessary, in the judgment of the Secretaries of State and Homeland Security and the Director of National Intelligence, "to ensure the security and welfare of the United States." Joint Mem. at 3.

It is not arbitrary or capricious for agencies to treat similarly situated individuals alike. Indeed, the typical rule is just the opposite. When an agency fails to "treat similar cases in a similar manner," a court may determine that the agency acted arbitrarily and capriciously "unless [the agency] can provide a legitimate reason" for the different treatment. *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996); *see, e.g.*, *Kort v. Burwell*, 209 F. Supp. 3d 98, 111-12 (D.D.C. 2016); *Hansen v. Salazar*, No. C08-0717-JCC, 2013 WL 1192607, at *7 (W.D. Wash. Mar. 22, 2013) ("The APA requires an agency to treat similarly-situated parties alike or provide an adequate explanation to justify treating them differently."). It was certainly rational for the Cabinet Secretaries to conclude that following-to-join refugees should be screened in the same manner as principal refugees.

Plaintiff asserts that the agencies did not provide an adequate explanation for suspending the admission of following-to-join refugees while the additional screening procedures are implemented. *See* Pl.'s Mem. at 16-18. But the Joint Memorandum makes clear that the Secretaries of State and Homeland Security and the Director of National Intelligence determined that admitting following-to-join refugee applicants who had undergone only the current procedures would not "ensure the security and welfare of the United States." Joint Mem. at 3. Instead, in those officials' judgment, admissions should resume only after the necessary screening and vetting procedures are implemented, so that those procedures can be applied to refugee applicants before they are admitted. This national security judgment is entitled to extreme deference. *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 19
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

(judicial review "in an area at the intersection of national security, foreign policy, and administrative law[] is extremely deferential").  Accordingly, the agencies' decision not to admit following-to-join refugees for a brief period while they "expeditiously" implement the additional procedures is neither arbitrary nor capricious.  Joint Mem. Addendum at 4; *see Neighborhood TV Co.*, 742 F.2d at 639 (concluding agency's decision to "freeze" processing of certain applications for licenses while it engaged in rulemaking was reasonable because it "ensure[d] that . . . interim licensing did not frustrate the ends of the rules ultimately adopted"); *Waste Mgmt.*, 669 F. Supp. at 542-43 ("An agency in the process of writing new regulations on a topic as sensitive as ocean incineration of hazardous waste cannot be faulted for maintaining the *status quo* [by not issuing new operating permits] until it is satisfied that the incineration can proceed as safely as possible.").

Plaintiff also argues that statements made by the President during his campaign and shortly after he took office show that the Joint Memorandum was motivated by animus toward refugees and/or Muslims.  *See* Pl.'s Mem. at 1-5, 17.  Such extra-record material, however, cannot be considered in adjudicating Plaintiff's APA claim.  "When a party challenges agency action as arbitrary and capricious[,] the reasonableness of the agency's action is judged in accordance with its *stated* reasons."  *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) (emphasis added).

Although a court may consider extra-record material when a plaintiff makes a strong "showing of *agency* bad faith," *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (emphasis added), Plaintiff has not made that showing here.  The Joint Memorandum was issued by the Secretaries of State and Homeland Security and the Director of National Intelligence, not the President.  As the relevant decisionmakers, therefore, it is those officials' actions that should inform the Court's determination of whether the administrative record may be supplemented (and, if so, that should likewise inform the ultimate merits assessment).  *See Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (a plaintiff must show "bad faith *on the part of the agency*" before a court can consider

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 20
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

extra-record material (emphasis added)); *cf. Modrovich v. Allegheny Cty.*, 385 F.3d 397, 411-12 (3d Cir. 2004) (concluding that "statements made by other County officials" who were not "the decision-maker for the County with respect to the Plaque" were not relevant to the Establishment Clause purpose analysis).   Plaintiff has never alleged, let alone made the necessary "strong showing," that these Cabinet Secretaries were motivated by animus toward refugees or Muslims. *United States v. Wash. Dep't of Transp.*, 450 F. Supp. 2d 1207, 1213 (W.D. Wash. 2006).   Plaintiff thus cannot prevail on his APA claim.

## III.   THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH AGAINST RELIEF

Apart from Plaintiff's inability to demonstrate a likelihood of success on the merits, he has not shown that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted).   He has not established that the implementation period has caused or will cause him an injury *at all*, let alone an irreparable one.   As previously discussed, Plaintiff has not shown that the Joint Memorandum's implementation period even applies to his family members, because their applications apparently have been processed in Kenya.   *See* Part I.A., *supra*.   Moreover, the Joint Memorandum simply prescribes an implementation period to bring screening procedures for following-to-join and principal refugees into parity that would at most delay the entry of Plaintiff's family members.   Such delay alone does not amount to irreparable harm, as processing times for refugees can vary widely and on average are quite lengthy.   *See* U.S.      Dep't      of      State,      *U.S.      Refugee      Admissions      Program*, https://www.state.gov/j/prm/ra/admissions/index.htm.   Because Plaintiff has not shown that the implementation period will irreparably harm him, he is not entitled to the "extraordinary remedy" of preliminary injunctive relief.   *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation omitted).

Conversely, an injunction would cause direct, irreparable harm to the Government and the public interest.   "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 21
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

1, 3 (2012) (Roberts, C.J., in chambers) (citation omitted).  This principle applies with at least equal force to the national-security judgments of the Secretaries of State and Homeland Security and the Director of National Intelligence on behalf of the Nation as a whole.  "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (citations omitted).  These Cabinet Secretaries have determined that admitting following-to-join refugee applicants who have not received the same screening that principal refugees receive would not "ensure the security and welfare of the United States," and thus "additional security measures must be implemented before admission of following-to-join refugees can resume."  Joint Mem. at 3.  This Court should not second-guess the Secretaries' considered judgment.

## IV.   ANY INJUNCTION SHOULD BE NARROWLY TAILORED TO ADDRESS ONLY PLAINITFF JOSEPH DOE'S ALLEGED INJURY

Even if some injunctive relief were appropriate (and it is not), the Court should reject Plaintiff's request for injunctive relief "on behalf of himself and the I-730 Refugee Class," Proposed Order at 2 (ECF No. 45–1), and instead tailor any remedy to address only Plaintiff's alleged injury.

Constitutional and equitable principles require that any injunctive relief be limited to redressing a plaintiff's own cognizable injuries.  Article III requires that "a plaintiff must demonstrate standing . . . for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).  The remedy sought therefore must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  Equitable principles also require that injunctions "be no more burdensome to the defendant than necessary to provide compete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).

In addition, this Court has not certified a class, and binding precedent recognizes that classwide preliminary injunctive relief absent class certification is improper. *See, e.g.*, *Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984) (holding that, in the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 22
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

1  absence of class certification, preliminary injunctive relief may cover only the named plaintiffs);

2  *M.R. v. Dreyfus*, 697 F.3d 706, 738-39 (9th Cir. 2012) (same); *Zepeda v. INS*, 753 F.2d 719, 727

3  (9th Cir. 1983) (same); *cf. L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011)

4  (The rule that "'injunctive relief should be no more burdensome to the defendant than necessary

5  to provide complete relief to the plaintiffs' before the court . . . applies with special force where

6  there is no class certification." (citations omitted)).

7      In light of these principles and this binding precedent, any injunction the Court enters

8  should be limited to relieving whatever irreparable injury the Court concludes Plaintiff has

9  suffered or imminently will suffer as a consequence of the following-to-join implementation

10 period.  The injunction should not extend beyond Plaintiff and his family members.  Nor should

11 it apply to provisions of the Joint Memorandum that Plaintiff does not challenge here.

## CONCLUSION

13     The Court should deny Plaintiff's motion for a preliminary injunction.

14 DATED: November 16, 2017                Respectfully submitted,
                                          CHAD A. READLER
15                                        Acting Assistant Attorney General

16                                        JENNIFER D. RICKETTS
                                          Director, Federal Programs Branch
17
                                          JOHN R. TYLER
18                                        Assistant Director, Federal Programs Branch

19                                        */s/ Michelle R. Bennett*
                                          MICHELLE R. BENNETT
20                                        DANIEL SCHWEI
                                          KEVIN SNELL
21                                        JOSEPH C. DUGAN
                                          Senior Trial Counsel / Trial Attorneys
22                                        U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
23                                        20 Massachusetts Avenue, NW
                                          Washington, DC 20530
24                                        Tel: (202) 305-8902
                                          Fax: (202) 616-8470
25                                        Email: michelle.bennett@usdoj.gov

26                                        *Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 23
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1

## **CERTIFICATE OF SERVICE**

2

    I hereby certify that, on November 16, 2017, a copy of the foregoing document was

3

electronically filed with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to all counsel of record.

5

DATED this 16th day of November, 2017.

6

7

                                            /s/ Michelle R. Bennett
                                            MICHELLE R. BENNETT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 24
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902