The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

John Doe, Jack Doe, Jason Doe, Joseph Doe, James Doe, Jeffrey Doe, individually, and on behalf of all others similarly situated; the Episcopal Diocese of Olympia; and the Council on American-Islamic Relations-Washington,

Plaintiffs,

v.

Donald Trump, in his official capacity as President of the United States; U.S. Department of State; Rex Tillerson, in his official capacity as Secretary of State; U.S. Department of Homeland Security; Elaine Duke, in her official capacity as Acting Secretary of Homeland Security; U.S. Customs and Border Protection; Kevin McAleenan, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection; Michele James, in her official capacity as Field Director of the Seattle Field Office of U.S. Customs and Border Protection; Office of the Director of National Intelligence; and Daniel Coats, in his official capacity as Director of National Intelligence,

Defendants.

No. 2:17-cv-00178 (JLR)

DECLARATION OF JENNIFER B. HIGGINS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF JOSEPH DOE'S MOTION FOR PRELIMINARY INJUNCTION

I, Jennifer B. Higgins, for my declaration pursuant to 28 U.S.C. § 1746, hereby state and depose as follows:

DECLARATION OF JENNIFER B. HIGGINS - 1
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

1.   I am the Associate Director of the Refugee, Asylum and International Operations (RAIO) Directorate, within the United States Department of Homeland Security (DHS). I have held this position since 2017. In my current position, I oversee RAIO operations, which includes conducting refugee processing activities in more than 67 international locations; processing requests for asylum at eight Asylum offices domestically; and providing immigration services at U.S. Citizenship and Immigration Services (USCIS) offices in 21 countries abroad. I submit this declaration in support of Defendants' Opposition to Plaintiff Joseph Doe's Motion for Preliminary Injunction. The statements made herein are based on my personal knowledge and information made available to me in the course of carrying out my duties and responsibilities as Associate Director.

2.   There are two ways for spouses and unmarried children of refugees to come to the United States as derivative refugees: 1) as derivatives processed with the principal refugee through the U.S. Refugee Admissions Program (USRAP) ("accompanying derivative refugees"); or 2) as beneficiaries of approved Forms I-730, Refugee/Asylee Relative Petitions (Form I-730), filed by principal refugees already admitted to the United States as refugees ("following-to-join derivative refugees"). In either case, the spouse or unmarried child is admitted as a refugee and counts against the annual refugee ceiling.

3.   While the substantive criteria for admission as a derivative refugee are the same regardless of whether the qualified family member is processed with the principal refugee through the USRAP or as a following-to-join refugee through the Form I-730 process, the operational processes and responsible parties processing these types of cases differ. As a result, the vetting associated with these two processes has somewhat diverged over the years, particularly as the DHS, the Department of State (DOS) and our vetting partners have enhanced screening for refugees coming through the USRAP. Subject to age or nationality requirements,[1]

---

[1] Individuals of certain age and nationality (and previously gender) may be subject to additional checks, such as the Security Advisory Opinions (SAOs). If the principal refugee is from a country for which an SAO check is required, but the derivative refugee spouse is from a non-SAO country, the spouse would not receive the exact same screening as the principal refugee.

DECLARATION OF JENNIFER B. HIGGINS - 2
John Doe, et al. v. Trump, et al., No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

a spouse or child listed as a derivative on the principal applicant's Form I-590 who is also processed at the same time as the principal refugee applicant receives the same vetting as the principal refugee applicant. However, if that same spouse or child were to come to the United States as a following-to-join refugee through the Form I-730 process, in most cases, he or she would currently not receive the same screening.

4. Pursuant to Section 6(a) of Executive Order 13780, *Protecting the Nation from Foreign Terrorist Entry into the United States*, a 120-day review was conducted of the USRAP. Based on this review, the Secretaries of State and Homeland Security and the Director of National Intelligence made a joint determination that certain additional procedures were necessary to enhance the refugee application and adjudication processes. This joint determination included instituting procedures to more closely align the vetting for Form I-730 refugee beneficiaries with that of refugees admitted under the USRAP.

5. Under the Form I-730 process, a principal refugee may file a Form I-730 with USCIS within two years following admission as a refugee to request that a spouse or unmarried child follow-to-join him or her in the United States. As in the case of a spouse or child accompanying the principal refugee processed through the USRAP, the Form I-730 petitioner must establish the existence of the qualifying relationship and that the beneficiary is admissible. Unlike the principal refugee, however, a Form I-730 refugee beneficiary does not need to establish past persecution or a well-founded fear of persecution based on a protected ground.

6. To initiate the Form I-730 process, the U.S.-based principal refugee (petitioner) files a Form I-730 with USCIS Service Center Operations (SCOPS). SCOPS reviews the Form I-730, supporting documentation, and the Alien File for the petitioner and beneficiary, if available. SCOPS evaluates whether the petition is timely, whether the requisite relationship exists, and whether there is any evidence indicating that the beneficiary may be inadmissible.

7. If SCOPS finds that the petitioner is ineligible to file or is unable to establish eligibility of the beneficiary, SCOPS will deny the Form I-730 and notify the petitioner. If SCOPS finds

DECLARATION OF JENNIFER B. HIGGINS - 3
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

that the beneficiary is eligible, SCOPS will take one of two actions, depending on whether a USCIS officer or DOS consular officer will process the beneficiary abroad.

8. If the beneficiary is located abroad in a country where USCIS does not have an international office, SCOPS will approve the Form I-730 and send it via the Department of State National Visa Center (NVC) to the appropriate U.S. Embassy or Consulate for a consular officer to make a travel eligibility determination. After collection of biometrics, interview, security vetting, and medical examination, a consular officer is responsible for confirming the validity of the relationship and determining whether the beneficiary is subject to any applicable inadmissibility grounds. If the consular officer finds that the relationship is bona fide and no inadmissibility grounds apply, DOS will coordinate with the Refugee Processing Center (RPC), which is operated by the Bureau of Population, Refugees and Migration (PRM) at the Department of State and which supports the USRAP, to obtain an assurance for the beneficiary, meaning that a resettlement agency in the United States will be prepared to receive the beneficiary upon arrival and reunite the beneficiary with the principal refugee.

9. If the beneficiary is located abroad in one of the 21 countries where USCIS has an international field office, SCOPS sends the Form I-730 to the NVC where it is then forwarded to the proper USCIS international field office for final adjudication after collection of biometrics, interview, security vetting, and medical examination. A USCIS adjudications officer stationed abroad will make the final determination on whether to approve or deny the Form I-730 and, if approved, will coordinate with the RPC for the beneficiary's sponsorship assurance.

10. Once assurance is obtained in either situation, and the medical examination and security vetting are successfully completed, DOS or USCIS will issue travel authorization documents in the form of a boarding document. This boarding document allows an eligible beneficiary to travel to the United States to request admission as a refugee. Customs and Border Protection

DECLARATION OF JENNIFER B. HIGGINS - 4
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

determines admissibility at the port of entry and, if admissible, the beneficiary is admitted to the United States as a refugee.

11. In two countries only—Thailand and Kenya—USCIS processes Forms I-730 with the support of DOS-funded Resettlement Support Centers (RSCs) particularly to help facilitate processing in refugee camps in those locations where neither USCIS nor DOS consular staff have a presence.[2] The RSC carries out administrative and processing functions for Form I-730 refugee beneficiaries in these two countries pursuant to cooperative agreements between PRM of DOS and non-governmental organizations. This RSC support enables USCIS to process Form I-730 refugee beneficiaries in these countries using the same processes as used for principal refugee applicants, including intake, data collection, and use of the USRAP case management system for communicating information with vetting partners. As such, in these locations only, subject to age and nationality requirements, the security vetting received for a Form I-730 beneficiary is the same as the screening received for principal refugee applicants. Because the screening for principal and following-to-join refugee applicants is already aligned in these locations, no changes were needed to address the concerns identified in the joint determination in these locations. Therefore, the Government is continuing to issue travel authorization to following-to-join refugees with approved Forms I-730 who have had their Forms I-730 processed by an RSC in Thailand or Kenya, subject to other restrictions on refugee admissions.

12. As noted in paragraph 3, the vetting protocols for principal refugee applicants and their accompanying family members have been enhanced over time and diverged from the vetting protocols for Form I-730 refugee following-to-join family members, which are handled through different processes and by different parties. As such, when a USCIS international field office (without the assistance of an RSC), as described in paragraph 9, or a DOS consular officer, as

---

[2] RSCs provide support in Kenya and Thailand because a number of Form I-730 refugee beneficiaries reside in refugee camps in those countries, making it difficult for applicants to independently arrange for travel to the U.S. Embassy for interview.

DECLARATION OF JENNIFER B. HIGGINS - 5
John Doe, et al. v. Trump, et al., No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

described in paragraph 8, processes the Form I-730, the beneficiary does not receive the same Inter-Agency Check (IAC) as a principal refugee applicant. The check differs both in terms of the information sent to vetting partners for review and which vetting partners conduct the review. The systems used to initiate checks for Form I-730 following-to-join derivative refugee applicants do not contain the same amount of biographic information as the system used to initiate checks for accompanying derivative refugee applicants, nor do the systems communicate with all the same vetting partners.

13. Pursuant to the October 23, 2017 Joint Memorandum to the President, titled *Resuming the United States Refugee Admissions Program with Enhanced Vetting Capabilities*, and in order to more closely align the Form I-730 vetting processes for following-to-join refugee applicants with that of principal refugee applicants (and other accompanying derivative refugee applicants processed with the principal refugee applicant), USCIS and DOS will make changes to their procedures and vetting protocols. Aligning Form I-730 screening processes for following-to-join derivatives with that of principal refugee applicants will require modifications both to the processes carried out by posts abroad and to the technical platforms which support those processes.

14. Additionally, USCIS and DOS must put into place procedures to institute Enhanced Fraud Detection and Nationality Security Review (EFR) for Form I-730 beneficiaries who are nationals of countries subject to Security Advisory Opinions (SAOs), as is currently conducted for principal refugee applicants and accompanying derivative family members who receive SAOs.

15. To make the changes noted above in paragraphs 13 and 14 and more closely align screening for all refugee applicants, USCIS is in the process of implementing procedures to request that Form I-730 beneficiaries submit completed Forms I-590 earlier in the process, as opposed to requesting that a beneficiary bring the Form I-590 to the interview as is currently done. This change will enable USCIS to initiate certain checks earlier in the process and

DECLARATION OF JENNIFER B. HIGGINS - 6
*John Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

provide any resulting information to the USCIS or DOS officer prior to the interview. Having information from certain checks prior to the interview strengthens the value of the interview by leading to more informed lines of questioning and also allows USCIS and DOS to input necessary information into systems to enable screening partners to conduct more complete checks.

16. Alignment of vetting requires systems changes, as well as development of notices and new procedural guidance for implementing staff. It also requires working with DOS to institute procedures to ensure that in all locations abroad, regardless of whether USCIS or DOS processes the case, the full IAC is completed, as well as EFR where required. DOS is currently analyzing the procedures with interagency partners to determine the magnitude of the modifications that will be required. USCIS and DOS will continue working in earnest to make necessary changes and are committed to instituting new procedures as expeditiously as possible.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 16, 2017.

Jennifer B. Higgins

DECLARATION OF JENNIFER B. HIGGINS - 7
John Doe, et al. v. Trump, et al., No. 2:17-cv-00178 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902