The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>DONALD TRUMP, et al.,<br><br>    Defendants. | **Civil Action No. 2:17-cv-00178JLR** |
| JEWISH FAMILY SERVICE OF SEATTLE, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>DONALD TRUMP, et al.,<br><br>    Defendants. | **Civil Action No. 2:17-cv-01707JLR**<br><br>**DEFENDANTS' EMERGENCY MOTION FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>**(RELATING TO BOTH CASES)**<br><br>NOTE ON MOTION CALENDAR:<br>December 29, 2017 |

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

## INTRODUCTION

Defendants hereby move the Court to stay its preliminary injunction barring enforcement of two provisions of the October 23, 2017, Memorandum to the President (cited in the Court's opinion as the "Agency Memorandum" and cited herein and in Defendants' prior submissions as the "Joint Memorandum") pending a decision from the Ninth Circuit on Defendants' forthcoming appeal. Defendants also request that the Court enter an order staying its injunction during the interim period while the Court considers this motion.[1]

As explained more fully below, the balance of harms weighs strongly in favor of a stay, and the Government is likely to prevail on the merits of its appeal. The Supreme Court recently stayed in full injunctions that district courts had entered against enforcement of the entry restrictions in Presidential Proclamation No. 9645, 82 Fed. Reg. 45,161 (Sept. 24, 2017), based in part on a balancing of harms and interests that are similar to those at issue here. The same result is warranted in this case.

## STANDARD OF REVIEW

In deciding a motion to stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). A stay is appropriate if the movant demonstrates that it has raised serious questions going to the merits on appeal and the balance of hardships tips sharply in its favor. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

---

[1] Defendants have reviewed the Court's Local Civil Rules and have determined that this emergency stay motion is analogous to a motion for a temporary restraining order. Accordingly, Defendants have adhered to the noting date and page count rules associated with such motions.

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 1
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

# ARGUMENT

## I. THE BALANCE OF HARMS WEIGHS STRONGLY IN FAVOR OF A STAY

The serious and irreparable harms to the Government and the public from this Court's preliminary injunction outweigh any harm Plaintiffs might suffer if the injunction is stayed. The Supreme Court reached this conclusion when it stayed in full the injunctions issued by district courts in *Trump v. Hawaii*, No. 17A550, 2017 WL 5987406 (U.S. Dec. 4, 2017), and *Trump v. Int'l Refugee Assistance Project* (*IRAP*), No. 17A560, 2017 WL 5987435 (U.S. Dec. 4, 2017). The Supreme Court necessarily determined that the Government's national-security and foreign-policy interests outweighed the plaintiffs' interests in those cases. *See Nken*, 556 U.S. at 434. The Government's national-security interests here, which also relate to risks from the admission of aliens from abroad, are just as weighty. And Plaintiffs interests' and alleged harms are significantly weaker than those of the plaintiffs in *IRAP* and *Hawaii* because the provisions of the Joint Memorandum that Plaintiffs challenge are temporary (and due to expire in the near future). Thus, the Supreme Court's orders in *IRAP* and *Hawaii* counsel in favor of this Court staying its preliminary injunction against the Joint Memorandum pending appellate review.

### A. THE PRELIMINARY INJUNCTION IMPOSES SERIOUS, IRREPARABLE HARM ON THE GOVERNMENT AND THE PUBLIC

This Court's preliminary injunction undermines the Executive Branch's constitutional and statutory authority to safeguard the Nation's security by conducting appropriate screening of aliens seeking admission to the United States, and it intrudes on the political branches' constitutional prerogatives. "[N]o governmental interest is more compelling than the security of the Nation," *Haig v. Agee*, 453 U.S. 280, 307 (1981), and "the Government's interest in combating terrorism is an urgent objective of the highest order," *Holder v. Humanitarian Law Project* (*HLP*), 561 U.S. 1, 28 (2010). The Executive Branch's protection of these interests warrants the utmost deference, particularly where, as here, it acts based on "[p]redictive judgment[s]" regarding specific national-security risks. *Dep't of the Navy v. Egan*, 484 U.S. 518, 529 (1988); *see HLP*,

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 2
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

561 U.S. at 33-35. Rules "concerning the admissibility of aliens" also "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950).

After conducting a review of the refugee program as required by Executive Order No. 13,780 (EO-2), and "[n]otwithstanding the additional procedures identified or implemented during [that period]," the Secretaries of State and Homeland Security and the Director of National Intelligence "continue to have concerns" about the admission of refugees from Security Advisory Opinion (SAO) countries, which were "previously identified as posing a higher risk to the United States." Joint Mem. at 2. The officials thus concluded it was necessary to conduct a "tailored" and "in-depth threat assessment" of each SAO country before continuing admissions and making further eligibility determinations as to refugee applicants from the affected countries. Joint Mem. Addendum at 3; *see id*. (explaining that the review "will include input and analysis from the intelligence and law enforcement communities, as well as all relevant information related to ongoing or completed investigations and national security risks and mitigation strategies"). The review of the refugee program called for by EO-2 also highlighted that "[t]he majority of following-to-join refugees do not [currently] receive the same, full baseline interagency checks that principal refugees receive." Joint Mem. Addendum at 4. The Cabinet Secretaries thus made a joint determination that, in order "to ensure the security and welfare of the United States," it is necessary to "implement adequate screening mechanisms for following-to-join refugees that are similar to the process employed for principal refugees" before continuing admissions and making further eligibility determinations as to following-to-join refugees.

The Court's Order enjoining enforcement of these two challenged provisions necessarily imposes irreparable harm on the Government and the public interest. Even a single State "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see, e.g.*, *O Centro Espirita Beneficiente Uniao de Vegetal v. Ashcroft*, 314 F.3d 463, 467 (10th Cir. 2002). *A fortiori*, this Court's injunction imposes

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 3
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

irreparable injury on the Executive Branch and the public given that the Joint Memorandum rests on the national-security judgment of three Cabinet Secretaries, officials charged with determining what screening steps are needed to evaluate requests for admission.  These Secretaries jointly determined that the SAO and following-to-join refugee populations may presently pose an elevated risk due to inadequate screening and vetting and that additional procedures were needed before further favorable eligibility determinations could be made.  The problem is all the greater given the Court's extension of the preliminary injunction not only to refugee applicants and organizations before the Court, or even to applicants nationwide who have close familial or institutional ties to the United States, but also to an additional pool of applicants whose only domestic link is through the attenuated resettlement assurance process.  Defendants address this latter concern in their pending motion for reconsideration, *see* ECF No. 93.[2]

These national-security and institutional harms exist notwithstanding the Government's understanding that the preliminary injunction does not impact any new screening or vetting processes adopted as a result of the Government's 120-day review pursuant to section 6(a) of Executive Order 13,780, and that the injunction operates prospectively only—*i.e.*, prohibiting enforcement of the Joint Memorandum's specified provisions beginning on the date of the preliminary injunction's issuance (December 23, 2017).  Defendants do not understand the preliminary injunction to require affirmative action to undo any of the steps that were taken to implement the Joint Memorandum prior to December 23, including decisions made before December 23 about how to allocate resources consistent with the Joint Memorandum.  For

---

[2] In the litigation regarding the Proclamation, the Ninth Circuit recently determined that the balance of equities and the public interest tilt in favor of the plaintiffs.  *See Hawaii v. Trump*, No. 17-17168, — F.3d —, —, 2017 WL 6554184, at *22-23 (9th Cir. Dec. 22, 2017).  Defendants respectfully disagree with that decision and intend to petition for a writ of certiorari.  Moreover, that court's analysis was based on the purported inadequacy of the President's national-security findings, *see id.*, whereas here the Court did not hold the Joint Memorandum invalid on that basis.  Also, as noted above, the underlying injunction in that case is stayed pending disposition of the Government's forthcoming petition for a writ of certiorari, *see Trump v. Hawaii*, 2017 WL 5987406, at *1.

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 4
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

example, prior to the injunction's issuance and consistent with the Joint Memorandum's terms, the State Department's Bureau of Population, Refugees, and Migration (PRM) scheduled federal fiscal year Quarter 2 "circuit rides" for U.S. Citizenship and Immigration Services (USCIS) officers to interview refugee applicants in different locations, and also scheduled almost all of the refugee applicant interviews for those locations.  Those interviewees (selected before the injunction was issued, consistent with the Joint Memorandum's terms) have already been notified of their upcoming interviews.  Defendants do not understand the preliminary injunction to require affirmative actions to undo these types of decisions that were made during the approximately two-month period while the Joint Memorandum was in effect.  *Cf. Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (noting that "[m]andatory injunctions" are "subject to a higher standard than prohibitory injunctions"); Fed. R. Civ. P. 65(d)(1).

Compelling Defendants to undo these prior decisions would likely redound to the detriment of innocent third parties who have no connection to this lawsuit.  For instance, if USCIS were required to modify the universe of refugees to be interviewed during upcoming circuit rides (despite those circuit rides and interviews being scheduled prior to the injunction's issuance), USCIS might then need to cancel some of the existing interviews, including for refugee applicants who have already been notified of their anticipated interview.  Such cancellations would not be consistent with the public interest.  *Cf. Richland Park Homeowners Ass'n, Inc. v. Pierce*, 671 F.2d 935, 943 (5th Cir. 1982) ("The injury to the public interest that would be caused by the uprooting of . . . 44 innocent families . . . weigh[s] heavily against the plaintiffs in the judicial consideration of their demand for relief . . . .").  Moreover, there is significant doubt about whether it would even be possible for Defendants to undo some of their prior decisions.  While Defendants may be able to adjust the interview schedule slightly, it is not feasible on short notice either to shift these already-scheduled circuit rides to different countries or substantially revise the existing interview schedules to substitute different refugee applicants.  That is because almost all of the necessary preparatory work—including completion of pre-screening interviews, security checks, and

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 5
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

notification to refugee applicants—has already occurred. Furthermore, the USCIS officers conducting these interviews have been working to complete necessary pre-travel requirements—including obtaining visas, making travel arrangements, obtaining or verifying necessary vaccinations, and scheduling participation in location-specific pre-departure trainings—so redeploying to other locations is not feasible in the near term.[3]

In light of the above, Defendants do not understand the preliminary injunction to require them to take affirmative steps to undo the decisions that were made consistent with the Joint Memorandum prior to the preliminary injunction's issuance. In the event that Plaintiffs or the Court have a different understanding of the preliminary injunction, further proceedings would be necessary to help inform the Court's analysis of these potential burdens and harms. Even under the present injunction, however, the Government suffers significant national-security and institutional injuries warranting a stay.

### B.   A BRIEF STAY PENDING EXPEDITED APPEAL WOULD NOT IMPOSE ANY SUBSTANTIAL HARM ON PLAINTIFFS

As the Government argued in its opposition briefs and at the December 21, 2017, hearing, the individual Plaintiffs—perhaps excepting Joseph Doe—have not established that they have been injured or, indeed, affected at all by the challenged provisions of the Joint Memorandum. Plaintiffs have not adequately demonstrated that they are on the brink of travel such that, but for the SAO provision or the following-to-join implementation period, they would have arrived in the United States during the short time before those provisions expire. Rather, Plaintiffs' own declarations and allegations show that other circumstances may be delaying their travel. Accordingly, these Plaintiffs both lack standing to challenge the Joint Memorandum and have

---

[3] Because most of the interviewees were selected prior to the injunction and consistent with the Joint Memorandum, some refugee applicants from SAO countries were scheduled for interviews because they met the Joint Memorandum's criteria for continued, case-by-case processing during the 90-day review period. If additional, urgent requests from SAO nationalities are identified, PRM and USCIS will work together to try to add them to the scheduled circuit rides.

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 6
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

failed to carry their burden of demonstrating irreparable harm sufficient to warrant a preliminary injunction.

With respect to the following-to-join implementation period, only three individual Plaintiffs purport to challenge that provision. However, the challenges brought by two of these Plaintiffs (Joseph Doe and Afkab Hussein) fail at the outset because their family members are apparently located in Kenya, where the following-to-join vetting protocols are already generally aligned with the protocols for principal refugees. Therefore, following-to-join refugees from non-SAO countries processed in those locations were not impacted by the suspension related to alignment of vetting protocols. *Compare* Decl. of Afkab Mohamed Hussein in Support of Pls.' Mot. ¶¶ 3, 10-11, *Jewish Family Service of Seattle, et al. v. Trump, et al.* (*JFS*), No. 2:17-cv-01707, ECF No. 48 ("Hussein Decl."), *with* Decl. of Joseph Doe in Supp. of Mot. for Prelim. Inj. ¶ 9, ECF No. 47; *see also* Decl. of Jennifer B. Higgins in Supp. of Defs.' Opp'n to Pl. Joseph Doe's Mot. for Prelim. Inj. ¶ 11, ECF No. 51–1. John Doe 7 also challenges the following-to-join provision; unlike the families of Joseph Doe and Afkab Hussein, John Doe 7's son is located in a country (Iraq) where following-to-join processing was suspended pending institution of new vetting protocols. However, as discussed below, John Doe 7's son has been waiting to travel since November 2016, and there is no basis from which the Court could conclude that the following-to-join implementation period is the cause of his delay.

With respect to the SAO provision, a recurring theme across Plaintiffs' allegations and declarations is that they have been waiting to travel for a long time—months, even years. It is wholly speculative to presume that they would have arrived during the short period affected by the challenged provisions of the Joint Memorandum:

- Jeffrey Doe alleges that his parents and siblings applied for refugee status in 2005, received an approval letter in 2006, and were assured by a resettlement agency in 2015. But he also alleges that their medical checks have expired. Third Am. Compl. ¶ 89, ECF

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 7
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

No. 42. Taking those allegations as true, the Court has no basis to conclude that Jeffrey' Doe's family is on the brink of travel.

- Afkab Hussein's declaration states that Forms I-730 for his wife and son were approved in June 2016 and that his wife and son have "completed several stages of the follow-to-join screening process." Hussein Decl. ¶¶ 16-17. The reference to "several" stages (rather than "all" stages) itself suggests that these family members must still complete additional steps before being approved to travel.

- John Doe 1 (who is also the subject of Allen Vaught's concerns) was conditionally approved for resettlement in or around December 2016 and was told in October 2017 to "get ready to travel," but he has been delayed due to problems with his passport. Decl. of John Doe # 1 in Supp. of Pls.' Mot. ¶¶ 15-16, *JFS*, ECF No. 52.

- John Doe 2 (who is also the subject of John Doe 3's concerns) was conditionally approved for resettlement in or around March 2016, and his sponsor was told to expect his arrival by August 2016, yet in January 2017 he was still awaiting security checks. Decl. of John Doe #2 in Supp. of Pls.' Mot. ¶ 9, *JFS*, ECF No. 53. Given that well over a year has elapsed since John Doe 2 was expected to travel, it would be speculative to infer that the SAO provision is the cause of his delay.

- Jane Doe 4 was referred for resettlement in June 2017 and had a pre-screening interview with the International Organization for Migration in September 2017. It is unclear whether she has completed her medical checks. Decl. of Jane Doe #4 in Supp. of Pls.' Mot. ¶ 5, *JFS*, ECF No. 55.

- Jane Doe 5 (who is also the subject of Jane Doe 6's concerns) has been awaiting security checks since 2016. Decl. of Jane Doe #5 in Supp. of Pls.' Mot. ¶ 7, *JFS*, ECF No. 56. Irrespective of the Joint Memorandum, Jane Doe 5 must complete those security checks before she can qualify for refugee admission.

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 8
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

- John Doe 7's son was assured by a resettlement agency in November 2016. Decl. of John Doe #7 ¶ 4, *JFS*, ECF No. 58. Given that his application apparently has not progressed in the thirteen months since he received his assurance, Plaintiffs offer no basis from which the Court could presume that, but for the SAO provision, John Doe 7's son would be scheduled to travel before that provision expires.[4]

That leaves Joseph Doe. As Government counsel acknowledged at the December 21 hearing, Joseph Doe's family members do appear to be on the brink of travel. However, as set forth in the Declaration of Jennifer L. Smith, attached hereto as Exhibit A, Joseph Doe's family falls within an exception under "[p]roposed interim guidance . . . which was in the process of being reviewed for clearance before the Preliminary Injunction was issued." Smith Decl. ¶ 2. Pursuant to that proposed guidance, on December 21, 2017, PRM's overseas staff requested that the Resettlement Support Center in Kenya provide the family with travel documents and begin planning their travel. *Id.* ¶ 3. At this point, the family is expected to travel in mid-to-late January, and the State Department anticipates that it will know the date of the travel booking by January 2, 2018. *Id.* ¶¶ 3-4. Accordingly, even if the Court stays its injunction, Joseph Doe's family will be processed for travel, subject to admissions and admissibility requirements not affected by the Joint Memorandum.

None of the individual plaintiffs therefore would suffer any concrete harm based on a stay of the preliminary injunction. Nor will any of the organizations, who may continue "serv[ing]

---

[4] The Court wrote that "[w]hether Doe 7's son's application has other hurdles to cross . . . does not diminish the fact that the SAO and FTJ provisions of the Agency Memo add two more." *Doe v. Trump*, Nos. C17-0178JLR & C17-1707JLR, 2017 WL 6551491, at *9 (W.D. Wash. Dec. 23, 2017). The Court likewise wrote that, regardless whether Plaintiffs are on the brink of travel, "their separation from their family members will be prolonged as a result of the SAO provisions," since resources have been diverted to non-SAO countries during the 90-day review period. *Id.* at *10. However, Plaintiffs bear the burden at all stages in litigation to show that they have properly invoked the Court's subject-matter jurisdiction. As the Government has argued, the refugee admissions process is complicated and time-consuming—and Plaintiffs have not adequately shown that the short delay in processing and admissions attributable to the SAO provision will have any material impact on them.

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 9
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

Muslim and Arabic-speaking refugees," *Doe*, 2017 WL 6551491, at *23, regardless whether the Joint Memorandum is implemented. Thus, the balance of equities strongly favors a stay.

## II. THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS

The Government respectfully submits that, notwithstanding this Court's preliminary-injunction decision, the Government also is likely to succeed on the merits of its appeal.[5] There are serious flaws in the Court's reasoning with respect to Plaintiffs' statutory claims. The Court concluded, for instance, that the following-to-join implementation period likely violates 8 U.S.C. § 1157(c)(2)(A) because that statute provides that following-to-join refugees "shall" be entitled the same admission status as the principal refugee. *Doe*, 2017 WL 6551491, at *19. Yet as the Government previously argued, the brief implementation period does not alter in any respect the substantive rights of following-to-join refugees, so to whatever extent § 1157(c)(2)(A) confers a benefit, the Government has not rescinded it. Further, the Government is entitled to make eligibility determinations for each refugee; there is no mandatory timeframe for making such determinations; and, as the Joint Memorandum explains, these new procedures are needed in order to make such determinations.

The Court also held that the SAO provision likely conflicts with the Immigration and Nationality Act (INA) by adding criteria to the Act's definition of "refugee" and to the admissibility requirements for refugees. *Id.* at *22. But neither Plaintiffs nor the Court have identified any INA provision that would bar the agencies charged with administering the statute from exercising their discretion to review or enhance screening and vetting measures to promote national security and welfare, and that is all the Joint Memorandum does. Congress could not have been clearer in 8 U.S.C. § 1157(c)(1): "the Attorney General *may*, in the Attorney General's

---

[5] The Government preserves and incorporates by reference its arguments concerning the nonjusticiability of Plaintiffs' claims (including the application of the doctrine of consular nonreviewability).

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 10
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

*discretion* and pursuant to such regulations as the Attorney General *may* prescribe, admit any refugee" (emphasis added).

Likewise problematic, especially from a functional standpoint, is the Court's preliminary determination that the Joint Memorandum was not properly promulgated pursuant to the Administrative Procedure Act (APA). The agencies' Joint Memorandum "did not alter the substantive criteria by which it would approve or deny" refugee applications; "it simply changed the procedures it would follow in applying those substantive standards." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 281 (D.C. Cir. 2000). For that reason, the Joint Memorandum is consistent with the underlying refugee statutes (and 6 U.S.C. § 202(4)) and is not a legislative rule requiring notice-and-comment rulemaking under the APA. *See id.*; *see also Kessler v. FCC*, 326 F.2d 673, 681 (D.C. Cir. 1963). The Cabinet Secretaries merely determined that favorable eligibility determinations could not be made in most cases—subject to case-by-case exceptions for those from SAO countries—until the screening procedures are further reviewed, and, as necessary, upgraded.

At the December 21 hearing, the Court expressed concern that accepting this argument would allow agency heads to suspend the refugee program indefinitely or even permanently. *See also Doe*, 2017 WL 6551491, at *21. But that hypothetical is simply not before the Court. The Joint Memorandum's provisions are expressly temporary and were expected to last for less time than it would have taken to conduct a full round of notice-and-comment rulemaking. The Joint Memorandum has not impaired any substantive rights, and refugee applicants remain eligible to be processed for refugee status and admitted as refugees if they are found eligible and admissible at the conclusion of the Joint Memorandum's brief review and implementation periods.

Indeed, the Court's reasoning enjoining enforcement of the Joint Memorandum on that basis leads to an even more problematic result: any change in procedure that delays a prospective refugee's arrival in the United States, or makes it less likely for someone to be granted refugee status, would suddenly become a substantive rule that would be invalid without notice-and-

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 11
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

comment. That is not only contrary to decades of practice and Ninth Circuit case law, *see In re Hill*, 811 F.2d 484, 487 (9th Cir. 1987) ("The application of virtually any procedural rule can result in the denial of a 'substantive' right, yet this does not transform the procedural rule into a substantive rule."), it would also threaten agencies' abilities to take important actions (such as improving their screening procedures) on a timely basis. For that matter, under this Court's reasoning, the agencies could not have created an SAO procedure after the 9/11 attacks to ensure that proper screening was employed before making eligibility determinations (at least without first conducting a time-consuming and unwieldy notice-and-comment rulemaking process). As discussed at the hearing, even Plaintiffs appear to agree that agencies must have the discretion to quickly and continually revise their screening procedures. *See also* Joint Decl. of Former Nat'l Sec. Officials ¶ 4, *JFS*, ECF No. 46. Thus, a stay is also warranted because the Government has demonstrated a likelihood of success on the merits of its appeal.

## CONCLUSION

For these reasons, Defendants respectfully request that, pending final disposition of their appeal, this Court stay its preliminary injunction. In addition, Defendants request that the Court stay its injunction pending its ruling on this emergency motion for a stay pending appeal.

DATED:  December 29, 2017            Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*/s/ Joseph C. Dugan*
MICHELLE R. BENNETT
DANIEL SCHWEI
KEVIN SNELL
JOSEPH C. DUGAN

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 12
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 514-3259
Fax: (202) 616-8470
Email: joseph.dugan@usdoj.gov

*Attorneys for Defendants*

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 13
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

## CERTIFICATE OF SERVICE

I certify that on December 29, 2017, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATED this 29th day of December, 2017.

                                                     */s/ Joseph C. Dugan*
                                                    JOSEPH C. DUGAN

DEFS.' EMERGENCY MOT. FOR STAY OF PRELIM. INJ. PENDING APPEAL - 14
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**