UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE, et al.,<br>　　　　　　　Plaintiffs,<br>　v.<br>DONALD TRUMP, et al.,<br>　　　　　　　Defendants. | CASE NO. C17-0178JLR<br><br>ORDER DENYING MOTION<br>FOR STAY PENDING APPEAL<br><br>(RELATING TO BOTH CASES) |
| JEWISH FAMILY SERVICES, et al.,<br>　　　　　　　Plaintiffs,<br>　v.<br>DONALD TRUMP, et al.,<br>　　　　　　　Defendants. | CASE NO. C17-1707JLR |

## I.   INTRODUCTION

Before the court is Defendants Donald Trump, United States Department of State, Rex Tillerson, United States Department of Homeland Security ("DHS"), United States Customs and Border Protection, Kevin McAleenan, Michele James, Office of the

Director of National Intelligence, Elaine Duke, and Daniel Coats's (collectively, "Defendants" or "the Government") emergency motion for a stay pending the appeal of the court's December 23, 2017, order granting Plaintiffs' motions for preliminary injunctions in the consolidated cases. (MFS (Dkt. # 95); *see also* PI Order (Dkt. # 92).) The court directed Plaintiffs in the two consolidated cases[1] to file separate responses to Defendants' motion. (12/30/17 Order (Dkt. # 97).) The court has considered the motion, Plaintiffs' responses (JFS Resp. (Dkt. # 100); Doe Resp. (Dkt. # 101)), the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES the motion.

## II.  BACKGROUND

On December 23, 2017, the court issued a preliminary injunction in the consolidated cases against certain aspects of Executive Order No. 13,815 ("EO-4"), 82 Fed. Reg. 50,055 (Oct. 27, 2017), and its accompanying memorandum to President Trump, from Secretary of State Tillerson, Acting Secretary of DHS Duke, and Director of National Intelligence ("DNI") Coats. (*See generally* PI Order; *see also* Lin Decl. (Dkt. # 46) ¶ 3, Ex. B (attaching a copy of the memorandum) (hereinafter, "Agency Memo").)

//

---

[1] Plaintiffs in *Doe, et al. v. Trump, et al.*, No. C17-0178JLR (W.D. Wash.), include John Doe, Joseph Doe, James Doe, Jack Doe, Jason Doe, Jeffrey Doe, Episcopal Diocese of Olympia, and Council on American Islamic Relations–Washington (collectively, "Doe Plaintiffs"). Plaintiffs in *Jewish Family Services, et al. v. Trump, et al.*, No. C17-1707JLR (W.D. Wash.), include Afkab Mohamed Hussein, Allen Vaught, John Does 1-3, Jane Does 4-6, John Doe 7, Jewish Family Service of Seattle ("JFS-S"), and Jewish Family Services of Silicon Valley ("JFS-SV") (collectively, "JFS Plaintiffs"). On November 29, 2017, the court consolidated these two cases under Case No. C17-0178JLR. (Min. Order (Dkt. #61).) Notations of docket entries in this order that are preceded by "17-1707" are docket entries in Case No. C17-1707JLR. Otherwise, docket entry notations refer to entries in Case No. C17-0178JLR.

1   The preliminary injunction enjoins Defendants[2] "from enforcing those provisions of the
2   Agency Memo that suspend the processing of [following-to-join ("FTJ")] refugee
3   applications or suspend the admission of FTJ refugees into the United States" and "those
4   provisions of the Agency Memo that suspend or inhibit, including through the diversion
5   of resources, the processing of refugee applications or the admission into the United
6   States of refugees from [Security Advisory Opinion ("SAO") list] countries." (PI Order
7   at 64-65.)

8       On December 27, 2017, Defendants filed a motion asking the court to reconsider
9   certain aspects of the preliminary injunction related to SAO countries. (MTR (Dkt.
10   # 93).) Defendants' motion asked the court to reconsider its ruling that a bona fide
11   relationship with an American organization includes refugee applicants covered by a
12   formal assurance from a refugee resettlement agency. (*See generally id.*; *see also* PI
13   Order at 63 n.31.) At the request of the court, Plaintiffs filed a consolidated response.
14   (MTR Resp. (Dkt. # 98); 12/29/17 Order (Dkt. # 94).) On January 5, 2018, the court
15   denied Defendants' motion for reconsideration. (1/5/18 Order (Dkt. # 103).)

16       Meanwhile, on December 29, 2017, Defendants filed a second motion, which they
17   denominated as an "emergency motion" for a stay of the preliminary injunction pending
18   an appeal. (*See* MFS.) The court again directed Plaintiffs to file a response to
19   Defendants' motion, but this time allowed Doe Plaintiffs and JFS Plaintiffs to file
20   separately. (*See* 12/30/17 Order (Dkt. # 97).) Doe Plaintiffs and JFS Plaintiffs filed their

21

22     [2] The preliminary injunction applies to all Defendants except for President Trump. (*See* PI Order at 64 n.32.)

responses on January 4, 2018.  (*See* JFS Resp.; Doe Resp.)  On the same day, Defendants filed a notice of appeal of the court's preliminary injunction.  (Notice of Appeal (Dkt. # 99).)  Finally, on January 5, 2018, Defendants filed a "notice," which asked the court to stay that portion of the preliminary injunction that Defendants unsuccessfully challenged in their motion for reconsideration.  (Notice re: MFS (Dkt. # 104).)  The court now considers Defendants' emergency motion for a stay.

## III.   ANALYSIS

In analyzing Defendants' motion, the court first considers its own jurisdiction to decide the motion.  Next, the court considers certain statements in Defendants' motion, which impliedly modify the court's preliminary injunction unilaterally.  Finally, the court considers the merits of Defendants' motion to stay.

**A.   Jurisdiction**

Because Defendants filed a notice of appeal (*see* Notice of Appeal), the court first considers its own jurisdiction to decide Defendants' emergency motion for a stay pending appeal.  "While a preliminary injunction is pending on appeal, a district court lacks jurisdiction to modify the injunction in such a manner as to 'finally adjudicate substantial rights directly involved in the appeal.'"  *A & M Records v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002) (quoting *Newton v. Consolidated Gas Co.*, 285 U.S. 165, 177 (1992)).  Nevertheless, Federal Rule of Civil Procedure 62(c) allows the court to issue further orders with respect to an injunction, even during an appeal, in order to preserve the status quo or ensure compliance with its earlier orders.  *See Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).  Indeed, "[t]he plain

language of Rule 62(c) allows the district court to 'suspend, modify, restore, or grant an injunction' during the pendency of [an] interlocutory appeal, and such action can inure to the benefit of plaintiffs or defendants." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (quoting Fed. R. Civ. P. 62(c)); *see also* Fed. R. App. P. 8(a)(1) ("A party must ordinarily move first in the district court for the following relief:  (A) a stay of the . . . order of a district court pending appeal; . . . or (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."). Based on these authorities, the court concludes that it has jurisdiction to consider Defendants' emergency motion to stay the preliminary injunction despite the pending appeal. The court's exercise of jurisdiction, however, may "not 'materially alter the status of the case on appeal.'" *Mayweathers*, 258 F.3d at 935 (quoting *Nat. Res. Def. Council, Inc.*, 242 F.3d at 1166).

**B.      Defendants' Attempts to Unilaterally Modify the Preliminary Injunction**

Defendants declare in their motion they "do not understand the preliminary injunction to require affirmative action to undo any of the steps that were taken to implement the Joint Memorandum prior to December 23." (MFS at 4; *see also id.* at 6 ("Defendants do not understand the preliminary injunction to require them to take affirmative steps to undo decisions that were made consistent with the [Agency Memo] prior to the preliminary injunction's issuance.").) To the extent that this declaration is an attempt to unilaterally modify the preliminary injunction, the court rejects it.[3]

---

[3] At this point, the court declines to consider the possibility that Defendants' declaration is an improper attempt to excuse noncompliance with the court's order. The court simply notes

The court's preliminary injunction requires Defendants to take actions that are necessary to undo those portions of the Agency Memo that are enjoined. For example, if Defendants sent guidance suspending the admission of FTJ refugees or refugees from SAO countries, they must rescind that guidance. If they issued instructions to de-prioritize the processing of applications from SAO countries, they must reverse those instructions. Defendants are required to restore the status quo prior to the issuance of the Agency Memo with respect to the processing of applications from FTJ refugees and refugees from SAO countries. Contrary to Defendants' assertions (*see* MFS at 5), this requirement does not transform the preliminary injunction into a mandatory one, *see Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014) (holding that an injunction that prohibits the enforcement of a new law or policy is prohibitory, not mandatory, even where the policy has already taken effect prior to filing the lawsuit).

In any event, Defendants' arguments that they should be excused from taking any "affirmative actions" to comply with the preliminary injunction are conclusory and unsupported by any evidence. (*See, e.g.*, MFS at 5 (asserting without evidence that there "is significant doubt about whether it would even be possible for Defendants to undo some of their prior decisions").) Indeed, the only concrete example that Defendants provide to support their argument relates to certain "circuit rides" that Defendants scheduled for the second quarter of fiscal year 2018 pursuant to the Agency Memo's directive to divert resources away from processing SAO refugee applications. (*See id.* at

---

that, in the absence of a stay, Defendants' failure to comply with the preliminary injunction could result in a possible finding of contempt and the possible imposition of sanctions.

4-5.) Defendants posit that they "might" have to cancel the presently scheduled "circuit rides" and refugee applicant interviews if they are required to comply with the preliminary injunction. (*See id.* at 4-5 (asserting this possibility without evidentiary support).) First, contrary to Defendants' assertions, nothing in the preliminary injunction requires Defendants to cancel any already-scheduled circuit rides or refugee interviews. Complying with the preliminary injunction, however, does require Defendants to restore any circuit rides that they would have scheduled absent the Agency Memo. Second, Defendants have submitted no evidence that such interviews could not be restored without cancelling previously scheduled interviews. (*See* MFS; *see generally* Dkt.) Indeed, the time to submit such evidence, to the extent it exists, would have been when the court was considering Plaintiffs' motions for preliminary injunction. Thus, the court rejects Defendants' apparent attempts to unilaterally modify the preliminary injunction and again orders Defendants to comply with the preliminary injunction as written.

**C.     Motion to Stay**

In the Ninth Circuit, "[t]he standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). Granting a stay is within the court's discretion, and the party seeking the stay bears the burden of demonstrating "that the circumstances justify the exercise of that discretion." *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). The court's discretion is guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (internal quotation marks omitted).

### 1. Defendants Fail to Make a Strong Showing that They Are Likely to Succeed on the Merits

Defendants fail to make the necessary "strong showing" that they are likely to succeed on the merits. *See id.* Defendants offer no new arguments or analysis concerning their likelihood of success on the merits. (*See* MFS at 10-12.) Instead, Defendants simply rehash arguments this court has already rejected. (*See id.*) The court has previously explained why (1) the suspension of the FTJ refugee program is inconsistent with 8 U.S.C. § 1157(c)(2)(A) (PI Order at 48-51), (2) the suspension of refugees from SAO countries is inconsistent with the Refugee Act of 1980 (*id.* at 51-56), and (3) promulgation of the Agency Memo required notice and comment rulemaking under the Administrative Procedures Act ("APA") (*id.* at 39-46).[4] Nothing in Defendants' motion for a stay causes the court to reevaluate those rulings.

//
//
//

---

[4] Defendants assert that the court's ruling that Plaintiffs are likely to succeed on their APA rulemaking claim would "threaten agencies' abilities to take important actions . . . on a timely basis" or to "quickly and continually revise screening procedures" during national emergencies. (*See* MFS at 12.) However, the court's ruling does not throw open the door to rulemaking in every instance. For example, the APA contains a "good cause" exception to rulemaking, *see* 5 U.S.C. § 553(b)(B), which Defendants chose not to invoke here.

2. <u>Defendants Fail to Show Irreparable Harm Absent a Stay or that the Public Interest Favors a Stay</u>

Defendants fail to show that they will be irreparably injured absent a stay or that the public interest favors a stay.[5]  First, Defendants assert that "[e]ven a single State 'suffers a form of irreparable injury' '[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people.'" (MFS at 3 (alterations in original) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012)).)  Here, however, it is Defendants who—based on the Agency Memo—seek to override statutes enacted by Congress.  As the court explained in its preliminary injunction, the enjoined Agency Memo provisions concerning FTJ refugees run roughshod over the nondiscriminatory family reunification provision of 8 U.S.C. § 1157(c)(2)(A). (PI Order at 48-51.)  In addition, the Agency Memo's SAO provisions (1) seek to evade the "permanent and systemic procedure" for refugee admission and resettlement that Congress established in the Refugee Act of 1980, (2) rework the Act's definition of "refugee" under 8 U.S.C. 1101(a)(42), and (3) impermissibly alter the admissibility standards set by Congress in 8 U.S.C. § 1182(a).  (*Id.* at 51-56.)  Where the Government's actions thwart Congressional intent and undermine Congressionally-enacted statutes, the public interest is best served by curtailing those actions. *See Hawaii v. Trump*, --- F.3d ----, 2017 WL 6554184, at *23 (9th Cir. 2017) ("*Hawaii III*") ("It is axiomatic that the President must exercise his

//

---

[5] As the court noted when ruling on Plaintiffs' preliminary injunction motions, when the Government is a party, analysis of the public interest element tends to overlap with other elements central to the court's analysis. (*See* PI Order at 59.)  Accordingly, although the public interest and irreparable harm to Defendants in the absence of a stay are separate factors, the court considers them together here.

executive powers lawfully.  When there are serious concerns that the President has not done so, the public interest is best served by 'curtailing unlawful executive action.'") (quoting *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd by an equally divided court*, --- U.S. ---, 136 S. Ct. 2271 (2016)).

Further, although the Government has a "compelling" interest in national security, *see Haig v. Agee*, 453 U.S. 280, 307 (1981),[6] Defendants cannot simply rely on unspecified security concerns, *see Ziglar v. Abbasi*, --- U.S. ---, 137 S. Ct. 1843, 1862 (2017) (explaining that "national-security concerns must not become a talisman used to ward off inconvenient claims—a 'label' used to 'cover a multitude of sins'").[7]  Here, although the Agency Memo states that the Secretaries who authored it continue to have indeterminate, general "concerns" regarding the admission of nationals, and stateless persons who last habitually resided in, SAO list countries (Agency Memo (Dkt. # 46-2) at 2), Defendants offer no evidence in support of their assertion that the preliminary injunction poses national security harms (*see generally* Dkt.).  Indeed, there is no

//

//

---

[6] *See also Hawaii v. Trump*, 859 F.3d 741, 784 (9th Cir.), *cert. granted sub nom. Trump v. Int'l Refugee Assistance Project*, --- U.S. ---, 137 S. Ct. 2080 (2017), *and cert. granted, judgment vacated on other grounds as moot*, --- U.S. ---, 138 S. Ct. 377 (2017), *and vacated on other grounds as moot*, 874 F.3d 1112 (9th Cir. 2017) ("*Hawaii I*") ("National security is undoubtedly a paramount public interest.").

[7] *See also Hawaii III*, 2017 WL 6554184, at *22 (holding that in the absence of "sufficient findings that the 'entry of certain classes of aliens would be detrimental to the national interest,'" national security interests did not outweigh harm to plaintiffs); *Washington*, 847 F.3d at 1168 (similarly holding that the Government's general interest in combatting terrorism, without more, was insufficient to outweigh likely harm to the plaintiffs).

1  evidence in the record that either SAO or FTJ refugees pose a security threat.[8]

2  Countering Defendants' general and unspecified concerns, Plaintiffs offer detailed

3  testimony from numerous former national security officials concretely describing how the

4  Agency Memo will harm our national security and foreign policy interests.  (*See* Joint

5  Decl. Former Nat'l Sec. Officers.)  Based on the record before it, the court cannot

6  conclude that Defendants have met their burden of establishing that the public interest

7  favors a stay.

8  In addition, Defendants' own actions undermine their position that they or the

9  public interest will be harmed absent a stay.  Defendants assert that they have tracked

10  down Joseph Doe's family and that a "[p]roposed interim guidance" of the U.S.

11  Citizenship and Immigration Services ("USCIS") would allow travel to the United States

12  of Joseph's family and all other FTJ refugee applicants who obtained valid travel

13  documents on or before October 24, 2017—the day that Defendants issued EO-4 and the

14  Agency Memo.[9]  (MFS at 9; Smith Decl. ¶¶ 2-4.)  Indeed, Defendants state that they

15  //

---

[8] "During the four decades from 1975 to the end of 2015, over three million refugees have been admitted to the United States.  Despite this number, only three refugees have killed people in terrorist attacks on U.S. soil during this period.  None of these refugees were from the 11 listed countries in the [Agency Memo]."  (Joint Decl. Former Nat'l Sec. Officers (17-1707 Dkt. # 46) ¶ 12.)

[9] Defendants state that the proposed interim guidance "was in the process of being reviewed for clearance before the Preliminary Injunction was issued." (Smith Decl. (Dkt. # 95-1) ¶ 2.)  But Defendants did not so inform the court while it was considering the preliminary injunction.  Further, the declaration describes the interim guidance as merely "[p]roposed."  (*Id*. ¶ 2.)  Thus, although USCIS may have processed Joseph Doe's wife and children "[b]ased on the proposed USCIS guidance," it is unclear if USCIS has generally adopted the interim guidance with respect to processing all FTJ refugee applicants who had received valid travel documents prior to October 24, 2017. (*See id*. ¶ 3.)

expect to know the date of travel booking for Joseph's family by January 2, 2018.[10] (Smith Decl. ¶ 4.) Thus, Defendants have decided to admit certain FTJ refugees, including those from SAO countries, prior to implementation of the additional screening procedures for FTJ refugees or completion of the additional threat analysis of SAO countries that the Agency Memo prescribes. This decision undermines Defendants' position that the preliminary injunction impairs national security or that Defendants will be irreparably harmed absent a stay. Defendants' decision to permit Joseph Doe's family, as well as other FTJ and SAO refugees, to travel to the United States so long as they received their travel papers prior to October 24, 2017, confirms that the government will suffer no irreparable harm by allowing such refugee admissions during the pendency of their appeal.

Finally, Defendants again rely on the Supreme Court's December 4, 2017, stay orders in *Trump v. Hawaii*, No. 17A550, 2017 WL 5987406 (U.S. Dec. 4 2017), and

//

---

[10] Defendants may be attempting to moot Joseph Doe's claims by creating an exception for him. (*See* MFS at 9; *see also* Doe Resp. at 8-10 (asserting that such attempts are unavailing).) Although the court need not rule on this issue for purposes of determining the present motion to stay, the court notes that Joseph seeks to represent a class. (*See* Mot. for Class Cert. (Dkt. # 19).) Mootness of a named plaintiff's claim after class certification does not moot the action. *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (citing *Sosna v. Iowa*, 419 U.S. 393, 401 (1975)). Further, where the named plaintiff's claim is transitory such that the trial court does not have sufficient time to rule on a motion for class certification before the proposed representative's individual claim expires, the 'relation back' doctrine preserves the merits of the case for judicial resolution. *See id.*; *see also Pitts v. Herbst, Inc.*, 653 F.3d 1081, 1090-91 (9th Cir. 2011) ("[A]lthough [the plaintiff's] claims are not inherently transitory as a result of being time sensitive, they are acutely susceptible to mootness in light of the defendant's tactic of picking off lead plaintiff's with a Rule 68 offer to avoid a class action. . . . The result is the same: a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review." (internal quotation marks, citations, and alterations omitted)).


*Trump v. Hawaii*, No. 17A560, 2017 WL 5987435 (U.S. Dec. 2017), to argue that their national security interests outweigh Plaintiffs' interests and that the court should impose a stay here as well.  (MFS at 2.)  Defendants' reliance on these two stay orders is misplaced.  First, the court has already declined to speculate on the reasons for the Supreme Court's December 4, 2017, stay orders, which involved preliminary injunctions against portions of Presidential Proclamation No. 9,645, 82 Fed. Reg. 45,161 (Sept. 27, 2017) ("EO-3"), and were devoid of any analysis.  (*See* PI Order at 61-62 n.30.)

Second, the balancing of the equities here is necessarily different here than in the cases challenging EO-3.  This case involves refugees—individuals "who are fleeing danger" and "who have been persecuted by actual terrorists"—and their families or other individuals or organizations in the United States with whom those refugees have a bona fide relationship.  (*See* Joint Decl. Former Nat'l Sec. Officers ¶ 14.f; *see also id.* ¶ 17.)  The two cases stayed by the Supreme Court on December 4, 2017, challenged EO-3 and did not involve refugees or those here in the United States with a bona fide relationship to refugees.  Further, in this case, Defendants have acknowledged that they will process the applications of FTJ refugees and refugees from SAO countries so long as the refugees received their travel papers prior to October 24, 2017.  As discussed above, this acknowledgement undermines Defendants' assertion of national security concerns regarding the admission of FTJ and SAO refugees pending Defendants' appeal and necessarily affects the balancing of equities in this case in a manner not applicable to the cases challenging EO-3.

//

Moreover, the EO-3 cases before the Supreme Court involved entry prohibitions by the President and specific authorities that Congress granted the President in 8 U.S.C. §§ 1182(f) and 1185(a)(1). Those authorities and the unique role the President may play based on those authorities is not at issue here. (*See* PI Order at 51 (discussing statutory authorities invoked in this case).) Indeed, the restrictions at issue here were put into place by agency officials after the President found that his suspension of entry of refugees was no longer necessary. (*Compare* EO-4 § 3(a) ("Presidential action to suspend the entry of refugees under [United States Refugee Assistance Program ("USRAP")] is not needed at this time to protect the security and interests of the United States and its people."), *with* Agency Memo at 2-3 (suspending the processing of applications and entry of refugees from SAO countries for 90 days and FTJ refugees indefinitely).)

Third, Defendants again ignore the Supreme Court's earlier, reasoned opinion denying a stay in relevant part in *Trump v. International Refugee Assistance Project*, --- U.S. ---, 137 S. Ct. 2080, 2089 (2017) ("*IRAP*"). *IRAP*, like this case, involved a purportedly temporary ban on refugees contained in Executive Order No. 13,780, 82 Fed. Reg. 13,209 (Mar. 9, 2017) ("EO-2"), which the Government justified by indicating its desire to study and upgrade vetting procedures. *IRAP*, 137 S. Ct. at 2084. Nevertheless, the Supreme Court denied a stay of the injunctions on EO-2 as to the same refugees protected by the preliminary injunction here—those with a bona fide relationship to Untied States persons or entities. *Id.* at 2089. Thus, for all of the foregoing reasons, the court again rejects Defendants' argument that the Supreme Court's December 4, 2017,

//

1 stay orders concerning EO-3 require this court to balance the equities in Defendants'
2 favor or to impose a stay on the preliminary injunction in this litigation as well.
3     Based on the foregoing analysis, the court concludes that Defendants have failed
4 to demonstrate that they will be irreparably injured absent a stay or that the public interest
5 favors a stay.
6     3. <u>Issuance of the Stay Will Substantially Injure the Other Interested Parties</u>
7     Defendants' contentions concerning a lack of injury to individual Plaintiffs in the
8 event of a stay pending appeal again reiterate arguments that this court has already
9 rejected. (*Compare* Mot. at 6-10 *with* PI Order at 12-16, 20-25, 56-57.) Defendants
10 provide the court with no basis to reevaluate its prior rulings that Plaintiffs will be
11 irreparably harmed in the absence of a preliminary injunction. Further, Defendants
12 ignore the harm to organizational Plaintiffs, such as JFS-S and JFS-SV, in their motion
13 seeking a stay. (*See generally* MFS.) These organizational Plaintiffs would also suffer
14 substantial harm in the event of a stay. (*See* PI order at 25-28.) The court concludes that
15 Defendants failed to demonstrate that this factor favors a stay.
16     Having evaluated all the factors that guide its exercise of discretion, the court
17 denies Defendants' motion for a stay. In addition, for the same reasons as stated herein
18 and in its order denying Defendants' motion for reconsideration (*see* 1/5/18 Order), the
19 court also denies Defendants' request in their January 5, 2018, notice for a more limited
20 stay concerning those refugees who have a bona fide relationship with an entity in the
21 United States through a resettlement assurance agency (*see* Notice re: MFS).
22 //

## IV.   CONCLUSION

Based on the analysis and authority cited above, the court DENIES Defendants' motion to stay the court's preliminary injunction order pending appeal (Dkt. # 95) and their request for a more limited in stay contained in their January 5, 2018, notice (Dkt. # 104).

Dated this 9th day of January, 2018.

JAMES L. ROBART
United States District Judge

ORDER - 16