The Honorable James L. Robart

1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9

10   JOHN DOE, et al.,                          Civil Action No. 2:17-cv-00178JLR

11                Plaintiffs,

12       v.

13   DONALD TRUMP, et al.,

14                Defendants.

15   JEWISH FAMILY SERVICE OF            Civil Action No. 2:17-cv-01707JLR
     SEATTLE, et al.,
16
                                         **DEFENDANTS' MOTION TO DISMISS**
17                Plaintiffs,            **AND DISSOLVE PRELIMINARY**
                                         **INJUNCTION AS MOOT**
18       v.
                                         **(RELATING TO BOTH CASES)**
19   DONALD TRUMP, et al.,

20                Defendants.

21

22

23

24

25

26

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - i
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

1

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………… 1

PROCEDURAL HISTORY…………………………………………………………… 2

STANDARD OF REVIEW…………………………………………………………… 6

ARGUMENT…………………………………………………………………….. 7

    I.      THE CHALLENGED POLICIES HAVE LONG SINCE EXPIRED, SO
           PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF AS WELL AS THE
           PRELIMINARY INJUNCTION ARE MOOT…………................................. 7

          A.  The 90-Day SAO Review Period Expired by Its Terms on January 22,
             2018………………………………………………………………… 8

          B.  The FTJ Implementation Period Concluded on February 1, 2018…........ 10

    II.     PLAINTIFFS' VAGUE AND UNSUPPORTED INSINUATIONS ABOUT
           DEFENDANTS' INJUNCTION COMPLIANCE DO NOT SATISFY
           THEIR BURDEN TO SHOW THAT THE CONTROVERSY REMAINS
           LIVE…………………………………………………………………….. 11

CONCLUSION………………………………………………………………… 14

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - ii

*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)

*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Burke v. Barnes,*
    479 U.S. 361 (1987)……………………………………..……………………………5, 8

*Clausen Law Firm, PLLC v. Nat'l Academy of Continuing Legal Educ.,*
    827 F. Supp. 2d 1262 (W.D. Wash. 2010)…………………………………………… 6

*Connolly v. PBGC,*
    673 F.2d 1110 (9th Cir. 1982)…………………………………………………... 8

*Doe v. Trump,*
    288 F. Supp. 3d 1045 (W.D. Wash. 2017)……...…………………………………1, 3-4, 14

*Foster v. Carson,*
    347 F.3d 742 (9th Cir. 2003)…………………………………………………… 5

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992)…………………………………………………………… 14

*Hawaii v. Trump,*
    878 F.3d 662 (9th Cir. 2017)…………………………………...…………………… 6

*Leite v. Crane Co.,*
    749 F.3d 1117 (9th Cir. 2014)…………………………………………………… 7

*Log Cabin Republicans v. United States,*
    658 F.3d 1162 (9th Cir. 2011)…...……………………………………………………7

*Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1867)…………………………………………………… 14

*Ozinga v. Price,*
    855 F.3d 730 (7th Cir. 2017)…………………………………………………… 7

*Porter v. Jones,*
    319 F.3d 483 (9th Cir. 2003)……………………………….…………………… 5

*Protectmarriage.com-Yes on 8 v. Bowen,*
    752 F.3d 827 (9th Cir. 2014)…………………………………………………… 5

*Pub. Utils. Comm'n v. FERC,*
    100 F.3d 1451 (9th Cir. 1996)………………………………………………… 6

*Renee v. Duncan,*
    686 F.3d 1002 (9th Cir. 2012)………………………………………………… 7

*Rosemere Neighborhood Ass'n v. EPA,*
    581 F.3d 1169 (9th Cir. 2000)………………………………………………… 6

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - iii
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

*St. Pierre v. United States,*
 319 U.S. 41 (1943)……………….………. …………………………………………… 8

*Tiwari v. Mattis,*
 No. C17-242 TSZ, 2017 WL 6492682 (W.D. Wash. Dec. 19, 2017)………………….……….. 7

*Trump v. Hawaii,*
 138 S. Ct. 377 (2017)…………………..…………………………………………………8

*United States v. Munsingwear, Inc.,*
 340 U.S. 36 (1950)……………………………………………………………………....... 2

*Worth v. Jackson,*
 451 F.3d 845 (D.C. Cir. 2006)……………………………………………………….……... 7

**Statutes**

U.S. Const. Article III, Section 2…………………………………….……………………………. 14

**Executive Material**

E.O. 13,780, 82 Fed. Reg. 13,209 (Mar. 6, 2017) …………………………………………….…… 8-9

E.O. 13,815, 82 Fed. Reg. 50,055 (Oct. 24, 2014)………………………………………………. 2

Proclamation No. 9645, 82 Fed. Reg. 45,161 (Sept. 24, 2017)………………………………. 6

**Rules**

Federal Rule of Civil Procedure 12(b)(1)………………………………………….…….. 6-7

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - iv
*Doe, et al. v. Trump, et al.,* No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.,* No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

**INTRODUCTION**

On December 23, 2017, this Court entered a preliminary injunction barring enforcement of two discrete provisions of an October 23, 2017, Memorandum to the President from the Secretary of State, the Acting Secretary of Homeland Security, and the Director of National Intelligence, titled "Resuming the United States Refugee Admissions Program with Enhanced Vetting Capabilities" ("Agency Memo," elsewhere described as "Joint Memorandum" and attached hereto as Exhibit A).  The Court first enjoined Defendants from "enforcing those provisions of the Agency Memo that suspend the processing of [Form I-730 'following to join' ('FTJ')] refugee applications or suspend the admission of FTJ refugees into the United States," though the Court clarified that the injunction "does not apply to Defendants' efforts to implement 'additional security measures' or align 'the screening mechanisms for [FTJ] refugees' with 'processes employed for principal refugees' as described in the Agency Memo." *Doe v. Trump*, 288 F. Supp. 3d 1045, 1086 (W.D. Wash. 2017).  The Court next enjoined Defendants from "enforcing those provisions of the Agency Memo that suspend or inhibit, including through the diversion of resources, the processing of refugee applications or the admission into the United States of refugees from [Security Advisory Opinion ('SAO')] countries," though the Court again clarified that the injunction "does not apply to Defendants' efforts to conduct a detailed threat assessment for each SAO country" to "determine what additional safeguards the agencies believe are necessary with respect to the admission of refugees from those countries." *Id.* at 1072-73, 1086.

Defendants immediately took steps to comply with this Court's Order, including by terminating the SAO processing deprioritization and FTJ admissions pause that the Court had enjoined.  Consistent with this Court's Order, Defendants also continued their efforts to (1) assess the threats presented by SAO countries and (2) align screening protocols for FTJ and principal refugees.  Those efforts concluded in January and February 2018, respectively.  At that point, the

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 1
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

1    temporary provisions of the Agency Memo that the Court had enjoined expired by their terms,

2    and the subject matter of Plaintiffs' claims ceased to exist.

3         Because the challenged provisions expired during the pendency of the cross-appeals of

4    this Court's Order, Defendants argued before the U.S. Court of Appeals for the Ninth Circuit that

5    the case was moot and that this Court's underlying judgment should be vacated pursuant to *United*

6    *States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).  The Ninth Circuit did not opine on Defendants'

7    mootness argument, remanding instead for this Court to "address mootness in the first instance,"

8    Order at 2, ECF No. 126.[1]    Pursuant to that remand Order, this Court should dissolve the

9    preliminary injunction and dismiss as moot Plaintiffs' underlying claims.  Neither in their briefing

10   before the Ninth Circuit nor in their ancillary discovery-related briefing in this Court have

11   Plaintiffs shown that there is any legal basis for the Court to retain jurisdiction over a dispute

12   concerning policies that no longer exist.  As discussed below, it would be a profound waste of the

13   Court's resources and the parties' time to continue litigating about the propriety of these former,

14   temporary policies that have (1) expired by their terms and (2) been superseded by the Secretary

15   of Homeland Security's determinations as set forth in a January 29, 2018, memorandum that does

16   not suspend admission of any class of refugees.  To the extent Plaintiffs believe in good faith that

17   some aspect of the current U.S. Refugee Admissions Program ("USRAP") harms them, they must

18   bring a new action or seek to amend their complaints.  But *this* injunction and the claims in *these*

19   consolidated cases are about refugee-related policies that have long since expired, and the only

20   appropriate dispositions—the *only* dispositions permitted under Article III—are dissolution and

21   dismissal.

22                                **PROCEDURAL HISTORY**

23        This litigation began shortly after issuance of the Agency Memo and the accompanying

24   Executive Order Resuming the United States Refugee Admissions Program with Enhanced

25   Vetting Capabilities, *see* E.O. 13,815, 82 Fed. Reg. 50,055 (Oct. 24, 2017).  On November 6,

26

---

[1] Unless otherwise specified, all ECF references are to the *Doe* docket, No. 17-178.

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 2
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

2017, Plaintiffs in *Doe v. Trump*, No. 17-178, whose earlier challenge to a different executive order had been stayed, filed a Third Amended Class Action Complaint for Declaratory and Injunctive Relief ("*Doe* Complaint") challenging, as relevant here, what Plaintiffs characterized as a "ban" on refugees from eleven SAO countries and all FTJ refugees.  *Doe* Complaint ¶ 11, ECF No. 42.  One week later, Plaintiffs in *Jewish Family Service of Seattle v. Trump*, No. 17-1707, brought a similar challenge, alleging that the Agency Memo "continues the suspension of the USRAP" by "suspend[ing] all entry of refugees from 11 countries, 9 of which are majority Muslim, for a minimum of 90 days," and "indefinitely suspend[ing] the process known as 'follow-to-join,' which allows refugees who have already been admitted to the country to reunite with their spouses and children who remain abroad."  Class Action Compl. for Decl. & Inj. Relief ¶ 5, No. 17-1707, ECF No. 1.

Both sets of Plaintiffs sought preliminary injunctive relief, and the actions were administratively consolidated.  Following a December 21, 2017, hearing, the Court on December 23, 2017, enjoined those aspects of the Agency Memo that had temporarily deprioritized processing of refugee applicants from the eleven SAO countries and had temporarily paused admissions of FTJ refugees.  In its Memorandum Opinion accompanying its preliminary injunction Order, the Court emphasized the narrow scope of Plaintiffs' claims and the injunction:

> The court . . . clarifies what Plaintiffs in both cases do not seek.  Plaintiffs do not seek to enjoin the agencies' efforts to implement screening mechanisms for FTJ refugees that are similar to or aligned with the processes employed for principal refugees.  Plaintiffs do not seek to enjoin the agencies from conducting their 90–day 'detailed threat analysis and review' of the SAO countries to determine what additional safeguards the agencies believe are necessary with respect to the admission of refugees from those countries.  And finally, Plaintiffs do not seek a guarantee of immediate admission into the United States for the refugees at issue. . . . Rather . . . they seek an order preliminarily enjoining those provisions of the Agency Memo that (1) prohibit the admission of refugees from SAO countries and impede the processing of their refugee applications for 90–days, and (2) indefinitely prohibit the admission of FTJ refugees and indefinitely suspend the processing of their refugee applications.

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 3
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

*Doe*, 288 F. Supp. 3d at 1072-73.  Following the Court's denial of Defendants' Motion for Reconsideration Concerning the Scope of the Preliminary Injunction, ECF No. 93, and Defendants' Emergency Motion for Stay of Preliminary Injunction Pending Appeal, ECF No. 95, Defendants filed a Notice of Appeal to the Ninth Circuit, ECF No. 99.

While that appeal remained pending, Defendants complied scrupulously with the preliminary injunction Order.  Defendants resumed processing refugee applications in the categories that the Agency Memo had temporarily deprioritized or paused.  In addition, although not required by the terms of this Court's Order, Defendants undertook steps to increase the number of third-quarter interviews of SAO nationals.  Defendants also continued their efforts to assess the risks posed by refugee applicants from the SAO countries and to align the screening mechanisms for FTJ and principal refugees, as the Court's Order had expressly allowed them to do.  By the time Defendants made their first substantive filing in the Ninth Circuit, both the 90-day SAO review period and the FTJ implementation period had concluded, and the prior, temporary guidance that was the subject of the injunction had been superseded by a January 29, 2018, memorandum from Secretary of Homeland Security Kirstjen M. Nielsen to L. Francis Cissna, Director of U.S. Citizenship and Immigration Services ("Nielsen Memorandum," attached hereto as Exhibit B).  The Nielsen Memorandum set forth revised screening and vetting requirements for USRAP admissions and specified that the USRAP should continue to be administered in a risk-based manner and that the SAO list should be periodically reviewed and updated.  Ex. B at 2.  The Nielsen Memorandum did not continue either the deprioritization of SAO refugee applicants or the pause on FTJ refugee admissions that the enjoined Agency Memo had prescribed, nor did the Nielsen Memorandum call for any other suspension or deprioritization of any classes of refugee applicants.  On the contrary, the memorandum stated that the "90-day review of SAO countries . . . is no longer in effect by its terms, and the prioritization set forth in the Memorandum is not hereby renewed."  *Id.* at 3.

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 4
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

Because the challenged SAO and FTJ provisions had expired, and because Plaintiffs'

lawsuits plainly do not encompass challenges to the new FTJ screening measures or the Nielsen

Memorandum and the policies outlined therein, Defendants moved the Ninth Circuit to vacate

this Court's judgment and dismiss the appeal as moot.  *See* Defs.' Mot. to Dismiss the Appeal,

No. 18-35015, ECF No. 24–1 (9th Cir.).  Plaintiffs opposed that motion on the basis of their

unadorned conjecture that Defendants may not have complied with the injunction as they construe

it (a frequent theme across Plaintiffs' pleadings since the injunction entered) and by invoking two

inapposite mootness exceptions, the voluntary cessation doctrine and the exception for

controversies capable of repetition yet evading review.[2]  *See* Doe Pls.' Opp'n to Defs.' Mot. to

Dismiss ("*Doe* Opp'n"), No. 18-35015, ECF No. 26–1; *JFS* Pls.' Opp'n to Defs.' Mot. to Dismiss

("*JFS* Opp'n"), No. 18-35015, ECF No. 25–1.  The Ninth Circuit did not decide the mootness

question, instead remanding to this Court to "address mootness in the first instance" and denying

---

[2] The voluntary cessation doctrine prevents a party from engaging in gamesmanship by
ceasing challenged conduct strictly in response to litigation and then seeking dismissal on
jurisdictional grounds.  The doctrine has no bearing here, where the challenged provisions of the
Agency Memo were intended *from the outset* to expire after a finite period and have since been
superseded by Secretary Nielsen's determinations and memorandum.  *See* Ex. A at 2 (explaining
that SAO de-prioritization will occur "during the temporary review period" and that "[w]e will
direct our staff to work jointly and with law enforcement agencies to complete the additional
review of the SAO countries no later than 90 days from the date of this memorandum"); *id.* at 3
("We will resume admission of following-to-join refugees once th[e] enhancements have been
implemented."); *see also Burke v. Barnes*, 479 U.S. 361, 363 (1987) (a challenge to a legal
provision is moot when the provision expires by its own terms).

The exception for controversies capable of repetition yet evading review applies in cases
where challenged conduct impacts individual litigants for a finite period, such as in cases
involving elections, *see Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003).  The exception "is
concerned not with particular lawsuits, but with classes of cases that, absent an exception, would
*always* evade judicial review."  *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th
Cir. 2014).  The claims in the cases at bar fall well outside the ambit of this mootness exception,
since the operative Nielsen Memorandum calls for no suspensions or deprioritizations, and
Plaintiffs can only speculate that some hypothetical future suspension might affect them.  Plaintiffs'
conjecture is insufficient to carry their burden under Article III.  *See Foster v. Carson*,
347 F.3d 742, 748 (9th Cir. 2003) ("We have held that a mere possibility that something *might*
happen is too remote to keep alive a case as an active controversy.").

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 5
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

1    Defendants' motion "without prejudice to renewing the arguments concerning mootness
2    following their presentation to the district court."  Order at 2, ECF No. 126.

3         Consistent with the Ninth Circuit's instructions, Defendants now bring this motion to
4    dismiss under Rule 12(b)(1).  Because Plaintiffs' claims are moot, the Court lacks subject-matter
5    jurisdiction over them.  The Court should dissolve the preliminary injunction and dismiss the
6    underlying claims.[3]

7                                      **STANDARD OF REVIEW**

8         "Federal courts generally lack subject matter jurisdiction to consider moot claims.  A case
9    becomes moot when it no longer satisfies the case-or-controversy requirement of Article III,
10   Section 2, of the U.S. Constitution."  *Clausen Law Firm, PLLC v. Nat'l Academy of Continuing*
11   *Legal Educ.*, 827 F. Supp. 2d 1262, 1267 (W.D. Wash. 2010) (citing *Rosemere Neighborhood*
12   *Ass'n v. EPA*, 581 F.3d 1169, 1172-73 (9th Cir. 2009)); *see also Pub. Utils. Comm'n v. FERC*,
13   100 F.3d 1451, 1458 (9th Cir. 1996) ("In general a case becomes moot when the issues presented
14   are no longer live or the parties lack a legally cognizable interest in the outcome.  The court must
15   be able to grant effective relief, or it lacks jurisdiction and must dismiss the [case]." (citations and
16   internal quotation marks omitted)).  Under Federal Rule of Civil Procedure 12(b)(1), a defendant
17   may argue that claims should be dismissed on mootness grounds.  Such a challenge may be facial
18   or factual.  When the challenge is facial, the court proceeds as it would with a motion to dismiss

19

20   _____
     [3] Defendants decline to present any merits-related arguments at this stage because the
21   Court lacks jurisdiction to do anything other than dissolve the injunction and dismiss Plaintiffs'
     claims concerning the USRAP.  In the event the Court disagrees and finds that it retains
22   jurisdiction, Defendants anticipate raising merits-related arguments at an appropriate time.

23        As the Court is aware, the *Doe* Plaintiffs' operative complaint also challenges aspects of
     a Presidential Proclamation titled "Enhancing Vetting Capabilities and Processes for Detecting
24   Attempted Entry into the United States by Terrorists or Other Public-Safety Threats,"
     Proclamation No. 9645, 82 Fed. Reg. 45,161 (Sept. 24, 2017), though proceedings with respect
25   to that challenge are in abeyance due to developments in other courts.  The Supreme Court granted
     certiorari in a similar challenge in *Hawaii v. Trump*, 878 F.3d 662 (9th Cir. 2017), and heard oral
26   argument last month.  This Court should continue to stay any proceedings with respect to the *Doe*
     Plaintiffs' challenge to Proclamation No. 9645 pending Supreme Court guidance.

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 6
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

on the merits pursuant to Rule 12(b)(6); that is, it "'[a]ccept[s] the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor,' and then determin[es] whether they are legally sufficient to invoke jurisdiction.  Comparatively, a factual attack challenges the facts that serve as the basis for subject matter jurisdiction." *Tiwari v. Mattis*, No. C17-242 TSZ, 2017 WL 6492682, at \*3 (W.D. Wash. Dec. 19, 2017) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

Here, the Court need not look beyond the allegations in Plaintiffs' operative complaints and materials in the public record (including in particular the Agency Memo and the Nielsen Memorandum) to conclude that this case is moot and that, accordingly, the Court lacks subject-matter jurisdiction over Plaintiffs' claims.  If the Court finds it necessary to probe further, declarations previously submitted in these proceedings and excerpted below establish conclusively that the challenged policies are no longer in effect and that Plaintiffs' claims must therefore be dismissed.

## ARGUMENT

## I.     The Challenged Policies Have Long Since Expired, so Plaintiffs' Claims for Equitable Relief as Well as the Preliminary Injunction Are Moot.

The Supreme Court and intermediate appellate courts have repeatedly held that a "case can be moot when a challenged statute or regulation 'is repealed, expires, or is amended to remove the challenged language.'" *Renee v. Duncan*, 686 F.3d 1002, 1016 (9th Cir. 2012) (quoting *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011) (per curiam)); *see also Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) ("When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect."); *Worth v. Jackson*, 451 F.3d 854 (D.C. Cir. 2006) (dismissing as moot plaintiff's challenge to agency's affirmative employment plan, where plan expired after plaintiff filed suit and agency declined to renew plan given intervening change in EEOC management directive).  That longstanding doctrine controls the outcome here, as the policies that Plaintiffs

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 7
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

1    challenge—the 90-day SAO review and the FTJ implementation period—have expired by their

2    terms.  From the very outset, these challenged provisions were to last only a short period of time,

3    after which they would expire and be replaced by more permanent guidance.  That is exactly what

4    has happened.  Even if Plaintiffs believe in good faith that some aspect of the operative USRAP

5    policy has harmed them in a legally cognizable way, they have not sought leave to amend their

6    complaints, nor have they filed new lawsuits.  That is their prerogative, but as for *this* action, the

7    challenged policies have expired, and the Court is obligated to dismiss Plaintiffs' claims for lack

8    of subject-matter jurisdiction.

9           In conducting its analysis, the Court need not write on a blank slate.  The Supreme Court

10   has already recognized that this kind of situation—where a finite security review period naturally

11   concludes—moots out claims associated with that review period, *see Trump v. Hawaii*, 138 S. Ct.

12   377 (2017) (mem.).  In *Trump v. Hawaii*, the Supreme Court vacated the underlying judgment

13   and remanded for the Ninth Circuit to dismiss as moot plaintiffs' challenge to aspects of E.O.

14   13,780.  Because the challenged provisions of that executive order had "expired by [their] own

15   terms," the appeal no longer presented a "live case or controversy," *id.* at 377 (quoting *Burke v.*

16   *Barnes*, 479 U.S. 361, 363 (1987) (alteration in original)).

17          While the policies at issue in *Trump v. Hawaii* and the case at bar are different, the

18   jurisdictional analysis should be the same.  Once these review or implementation periods have

19   expired, there is nothing left for courts to do but dismiss any pending challenges as moot.  Any

20   other ruling would exceed the scope of federal courts' authority under Article III.  *See St. Pierre*

21   *v. United States*, 319 U.S. 41, 42 (1943) (per curiam) ("A federal court is without power to decide

22   moot questions or to give advisory opinions which cannot affect the rights of the litigants in the

23   case before it."); *Connolly v. PBGC*, 673 F.2d 1110, 1113 (9th Cir. 1982) ("A case is moot if it

24   has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid

25   advisory opinions on abstract propositions of law.'" (citations omitted)).

26

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 8
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

**A.      The 90-Day SAO Review Period Expired by Its Terms on January 22, 2018.**

The Agency Memo makes plain that the de-prioritization of SAO refugees was to occur only "during the temporary review period" and that the authoring Secretaries would "direct [their] staff to work jointly and with law enforcement agencies to complete the additional review of the SAO countries no later than 90 days from" October 23, 2017.  Ex. A at 2.  Thus, by its express terms, the 90-day SAO review period concluded on January 22, 2018.  One week later, Secretary of Homeland Security Kirstjen Nielsen issued a Memorandum to L. Francis Cissna, Director of U.S. Citizenship and Immigration Services ("USCIS"), setting forth the Secretary's determinations following that 90-day review.  In her memorandum, Secretary Nielsen listed, among other things, "certain screening and vetting enhancements" that USCIS would implement "to more effectively prevent fraud and to identify potential national security risks, criminals, and other nefarious actors," and further directed that "USCIS will interview and adjudicate cases of SAO nationals under these new procedures."  Ex. B. at 2-3.  The Secretary added that "the prioritization set forth in the [Agency Memo] is not hereby renewed."  *Id.* at 3.  Thus, any suggestion that the preliminary injunction remains necessary to halt those challenged policies would be quite plainly mistaken.

Secretary Nielsen recognized that, "[a]s with other new screening and vetting enhancements implemented by the Department [of Homeland Security] and interagency partners in the past, these modifications may lengthen processing times and will take time to implement."  Ex. B at 3.  But the Secretary concluded that these enhancements "are critical to strengthening the security and integrity of the USRAP and should be put in place as expeditiously as possible."  *Id.*  Plaintiffs' operative complaints do not challenge the new security measures flowing out of the 90-day review period (or, for that matter, those measures that stem from the earlier 120-day review period prescribed by E.O. 13,780), perhaps because Plaintiffs have no plausible claim that such reasonable and evidence-based security measures are unlawful.

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 9
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**B.     The FTJ Implementation Period Concluded on February 1, 2018.**

The FTJ implementation period concluded on February 1, 2018.  At that time, "USCIS and the Department of State implemented new procedures to ensure that all individuals admitted as refugees receive similar, thorough vetting—whether they are principal refugees, accompanying family members, or following-to-join refugees."  *I-730, Refugee/Asylee Relative Petition*, U.S. Citizenship & Immigration Servs., https://www.uscis.gov/i-730 (last updated Feb. 8, 2018).  The *Doe* Plaintiffs acknowledged these newly implemented screening measures with their most recent submission in this Court, *see* Decl. of Lisa Nowlin Exs. A & B, ECF Nos. 137–1 & 137–2.  As the Agency Memo explains, Defendants sought to "implement adequate screening mechanisms for [FTJ] refugees that are similar to the processes employed for principal refugees, in order to ensure the security and welfare of the United States," and then to "resume admission of [FTJ] refugees once those enhancements have been implemented."  Ex. A at 3.  As it happened, Defendants resumed FTJ admissions as soon as this Court entered its injunction.  But the enhanced screening mechanisms are now in place, and accordingly FTJ admissions would have resumed on February 1, 2018, even absent this Court's Order.  It would be utterly baffling if Plaintiffs were to continue to argue (as they did before the Ninth Circuit) that there is no evidence Defendants have resumed processing FTJ applications or that the Agency Memo's pause on admissions of such applicants remains in place.  *See Doe* Opp'n at 9; *see also JFS* Opp'n at 11 n.7.  Nor can Plaintiffs feign surprise at this development, since the February 1, 2018, date is consistent with Defendants' projection as early as mid-December, before the injunction even issued, *see* Defs.' Suppl. Br. Concerning Supreme Court Stay Orders at 2, ECF No. 78.

Thus, there is no serious dispute at this point that the FTJ implementation period has concluded and that, accordingly, FTJ admissions have resumed, even apart from the preliminary injunction.  Any lingering doubt should be conclusively resolved by the second declaration of Jennifer Higgins, Associate Director of the Refugee, Asylum and International Operations ("RAIO") Directorate at USCIS, ECF No. 142-2 ("Second Higgins Decl.").  The Associate

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 10
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

Director explained that, as of February 1, 2018, "USCIS and [State] have implemented new measures to more closely align the vetting" for FTJ beneficiaries, and thus the agencies have "implemented the additional security measures for FTJ derivative refugee beneficiaries called for in the October 23, 2017 memorandum." Second Higgins Decl. ¶ 8. Because the Agency Memo makes plain that "[w]e will resume admission of following-to-join refugees once those enhancements have been implemented," Ex. A at 3, any assertion by Plaintiffs that the pause on FTJ admissions continues is baseless and faulty. The Court should dismiss Plaintiffs' challenge to the Agency Memo's FTJ implementation period as moot.

## II. Plaintiffs' Vague and Unsupported Insinuations About Defendants' Injunction Compliance Do Not Satisfy Their Burden to Show That The Controversy Remains Live.

Throughout these proceedings, before both this Court and the Ninth Circuit, Plaintiffs have repeatedly speculated that the Government may be out of compliance with the preliminary injunction. But Plaintiffs' baseless accusations cannot revive the expired policies to save their moot claims from dismissal.

Defendants have gone to some lengths to show this Court that Defendants have obeyed not only the preliminary injunction Order enjoining the SAO deprioritization and FTJ admissions pause but also the Court's supplemental guidance in its Order of January 9, 2018, ECF No. 106. In agency declarations appended to Defendants' January 19, 2018, Notice of Compliance with Preliminary Injunction, ECF No. 114, Defendants described their comprehensive compliance efforts. Decl. of Kelly A. Gauger in Supp. of Defs.' Notice of Compliance with Prelim. Inj., ECF No. 114–1 ("First Gauger Decl."); Decl. of Jennifer B. Higgins in Supp. of Defs.' Notice of Compliance with Prelim. Inj. ("First Higgins Decl."), ECF No. 114–2. These efforts included:

- Guidance issued on December 23, 2017, by the Bureau of Consular Affairs to consular posts overseas (First Gauger Decl. ¶ 3);

- Guidance issued on December 24, 2017, by the Office of Admissions at the Bureau of Population, Refugees, and Migration ("PRM") to implementing partners at Resettlement Support Centers ("RSCs") overseas (id. ¶ 2);

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 11
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

- Instructions issued on December 24, 2017, by the RAIO Directorate to RAIO officers ordering them to release all FTJ cases previously on hold and process those cases under procedures in effect prior to issuance of the Agency Memo (First Higgins Decl. ¶ 2);

- An inquiry on December 26, 2017, from the Office of Admissions at PRM to the RSCs, which led to additional interviews of SAO nationals during second-quarter circuit rides (*id.* ¶ 5; First Gauger Decl. ¶ 5);

- A State Department cable with guidance on FTJ refugees sent to all diplomatic and consular posts on January 4, 2018 (First Gauger Decl. ¶ 3); and

- Plans to add locations to third-quarter circuit rides where large SAO populations are ready for interviews (*id.* ¶ 7; First Higgins Decl. ¶ 7).

Further, Defendants responded to *JFS* Plaintiffs' concerns about SAO refugee admissions numbers that were lower than Plaintiffs had expected by proffering a declaration from PRM's Director of the Refugee Processing Center ("RPC"), who explained that the Government had undertaken certain technical changes to the Worldwide Refugee Admissions Processing System ("WRAPS") following the 120-day review and that, although the WRAPS system was not immediately available for SAO processing following the Court's injunction, Defendants complied with the injunction by manually processing SAO requests until the automated system was functional.  Decl. of Hilary E. Ingraham Supporting Defs.' Reply in Supp. of Mot. to Stay Proceedings ¶¶ 2-5, ECF No. 120–1.  The RPC Director further explained that, given the lengthy time it often takes to complete an SAO, "the number of completed SAOs [would] not significantly increase immediately upon completion and successful testing of the technical upgrades in WRAPS."  *Id.* ¶ 12.  But the injunction did not require Defendants to generate a particular volume of SAOs, it required Defendants to resume processing as they would have done absent the Agency Memo.  Defendants did so.

Far from violating the preliminary injunction, as Plaintiffs speculate, Defendants complied immediately and took multiple steps to ensure that both SAO and FTJ refugee processing would immediately resume.  As the Court directed in its supplemental guidance of January 9, 2018,

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 12
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

1 Defendants "rescind[ed]" and "reverse[d]" prior instructions issued after the Agency Memo took

2 effect.  Order at 6, ECF No. 106.  They "restore[d] the status quo prior to the issuance of the

3 Agency Memo with respect to the processing of applications from FTJ refugees and refugees from

4 SAO countries."  *Id.*  They declined to cancel already-scheduled circuit rides, consistent with the

5 Court's directions, *see id.* at 7; they explained that they could not conclusively determine which

6 second-quarter circuit rides they might have conducted absent the Agency Memo, but adjusted

7 for this inability by scheduling third-quarter circuit rides in areas with heavy SAO populations,

8 *compare id.*, *with* First Higgins Decl. ¶¶ 5-7.  Plaintiffs have never rebutted any of this testimony

9 or introduced any other evidence that might cast doubt on Defendants' compliance.  Instead,

10 Plaintiffs continue to complain that SAO admission numbers are lower than they might have

11 expected.  But Plaintiffs' failure of expectations does not show that Defendants violated the

12 preliminary injunction, nor that Plaintiffs' challenge to defunct policies is somehow still

13 justiciable.

14 　　　　Further, Defendants are maintaining their efforts to boost SAO admissions by interviewing

15 significantly more SAO nationals during third-quarter circuit rides, just as Defendants anticipated

16 they would do.  *See* Second Higgins Decl. ¶ 4 & Ex. 1; ECF No. 142-2.  The Second Higgins

17 Declaration acknowledges that aspects of the operative USRAP guidance (including additional

18 data collections) may lengthen refugee processing.  *See* Second Higgins Decl. ¶¶ 5-7.  A practical

19 consequence may be slower admissions for SAO and other refugee applicants, but this Court's

20 preliminary injunction Order did not require Defendants to process particular refugee applicants

21 at the speed of Plaintiffs' choosing.  Nor would it would be appropriate for Plaintiffs or this Court

22 to substitute their judgment for that of the Executive agencies charged with administering the

23 USRAP.  Consistent with Secretary Nielsen's determinations, those agencies are taking the

24 necessary steps to ensure that refugee admissions are conducted in a manner consistent with the

25 national security and welfare of the United States.

26

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 13
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

1    Plaintiffs cannot establish jurisdiction under Article III because their claims are moot; their

2    speculation that Defendants may somehow have fallen out of compliance with the preliminary

3    injunction does not alter this conclusion.  And Plaintiffs are not entitled to take discovery to decide

4    for themselves whether the Government has followed this Court's Orders.  In the absence of any

5    evidence to the contrary, the Court should credit the Government's good faith compliance efforts

6    and put an end to this moot litigation.

7                                                   **<u>CONCLUSION</u>**

8            As Defendants have shown, Plaintiffs' challenges to the Agency Memo have reached their

9    natural endpoint.  Indeed, their claims were bound from the outset to be short-lived given the

10   finite nature of the agency actions that Plaintiffs challenged.  Whatever concerns Plaintiffs

11   continue to harbor about the USRAP must be developed, if at all, in some other proceeding or

12   forum, because the provisions that they challenged here have expired by their own terms.

13   Plaintiffs' attempt to keep this litigation on life support so they can probe the Government in

14   discovery for information about moot claims or hypothetical future claims is forbidden by the

15   fundamental tenet that federal courts exist to adjudicate "Cases" and "Controversies," U.S. Const.

16   art. III, § 2, cl. 1.  This Court should enforce that constitutional line, decline Plaintiffs' implicit

17   invitation for the Court to permanently supervise the Government's administration of the USRAP,

18   and dismiss Plaintiffs' claims for lack of subject-matter jurisdiction.[4]

19

20   DATED:  May 25, 2018                          Respectfully submitted,

21                                                 CHAD A. READLER
                                                   Acting Assistant Attorney General
22

---

23          [4] In the event the Court disagrees with Defendants and allows these actions to proceed to
     discovery, the Court should at minimum dismiss President Trump as a named Defendant.  It is
24   well-settled that courts lack subject-matter jurisdiction to enjoin the President in the performance
     of his official duties, as this Court recognized in its preliminary injunction Order.  *See Doe*, 288
25   F. Supp. 3d at 1086 n. 32; *see also Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992)
     (plurality opinion); *id.* at 827 (Scalia, J., concurring in part and concurring in the judgment);
26   *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867).  That being so, the President should
     not be required to respond to discovery or otherwise participate in further proceedings in this case.

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 14
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**

AUGUST E. FLENTJE
Special Counsel

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*/s/ Joseph C. Dugan*
MICHELLE R. BENNETT
DANIEL SCHWEI
KEVIN SNELL
JOSEPH C. DUGAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 514-3259
Fax: (202) 616-8470
Email: joseph.dugan@usdoj.gov

*Attorneys for Defendants*

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 15
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 514-3259

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 25, 2018, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATED this 25th day of May, 2018.

*/s/ Joseph C. Dugan*
JOSEPH C. DUGAN

DEFS.' MOT. TO DISMISS & DISSOLVE PRELIM. INJ. AS MOOT - 16
*Doe, et al. v. Trump, et al.*, No. 2:17-cv-00178 (JLR)
*Jewish Family Service of Seattle, et al. v. Trump, et al.*, No. 2:17-cv-01707 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-3259**