*Doe v. Trump*, No. 2:17-cv-00178JLR (W.D. Wash.)

*Jewish Family Service of Seattle v. Trump*, No. 2:17-cv-01707JLR (W.D. Wash.)

# Exhibit A

MEMORANDUM TO THE PRESIDENT

OCT 23 2017

FROM:    Rex W. Tillerson
Secretary
Department of State

Elaine Duke
Acting Secretary
Department of Homeland Security

Daniel Coats
Director
Office of the Director of National Intelligence

RESUMING THE UNITED STATES REFUGEE ADMISSIONS
PROGRAM WITH ENHANCED VETTING CAPABILITIES

    In section 6(a) of Executive Order 13780 of March 6, 2017 (Protecting the Nation from Foreign Terrorist Entry into the United States), you directed a review to strengthen the vetting process for the U.S. Refugee Admissions Program (USRAP). You instructed the Secretary of State to suspend the travel of refugees into the United States under that program, and the Secretary of Homeland Security to suspend decisions on applications for refugee status, for a temporary, 120-day period, subject to certain exceptions. During the 120-day suspension period, Section 6(a) required the Secretary of State, in conjunction with the Secretary of Homeland Security and in consultation with the Director of National Intelligence, to review the USRAP application and adjudication processes to determine what additional procedures should be used to ensure that individuals seeking admission as refugees do not pose a threat to the security and welfare of the United States, and to implement such additional procedures.

    The Secretary of State convened a working group to implement the review process under section 6(a) of Executive Order 13780, which proceeded in parallel with the development of the uniform baseline of screening and vetting standards and procedures for all travelers under section 5 of that Executive Order. The section 6(a) working group then compared the refugee screening and vetting process with the uniform baseline standards and procedures established by the section 5 working group. This helped to inform the section 6(a) working group's identification of a number of additional ways to enhance the refugee screening and vetting processes. The Secretary of State and the Secretary of Homeland Security have begun implementing those improvements.

    Pursuant to section 6(a), this memorandum reflects our joint determination that the improvements to the USRAP vetting process identified by the 6(a) working group are generally adequate to ensure the security and welfare of the United States, and therefore that the Secretary

of State may resume travel of refugees into the United States and that the Secretary of Homeland Security may resume making decisions on applications for refugee status for stateless persons and foreign nationals, subject to the conditions described below.

Notwithstanding the additional procedures identified or implemented during the last 120 days, we continue to have concerns regarding the admission of nationals of, and stateless persons who last habitually resided in, 11 particular countries previously identified as posing a higher risk to the United States through their designation on the Security Advisory Opinion (SAO) list. The SAO list for refugees was established following the September 11th terrorist attacks and has evolved over the years through interagency consultations. The current list of countries was established in 2015. To address these concerns, we will conduct a detailed threat analysis and review for nationals of these high risk countries and stateless persons who last habitually resided in those countries, including a threat assessment of each country, pursuant to section 207(c) and applicable portions of section 212(a) of the Immigration and Nationality Act (INA), 8 U.S.C. 1157(c) and 1182(a), section 402(4) of the Homeland Security Act of 2002, 6 U.S.C. 202(4), and other applicable authorities. During this review, the Secretary of State and the Secretary of Homeland Security will temporarily prioritize refugee applications from other non-SAO countries. DHS and DOS will work together to take resources that may have been dedicated to processing nationals of, or stateless persons who last habitually resided in, SAO countries and, during the temporary review period, reallocate them to process applicants from non-SAO countries for whom the processing may not be as resource intensive.

While the temporary review is underway, the Secretaries of Homeland Security and State will cooperate to carefully scrutinize the applications of nationals of countries on the SAO list, or of stateless persons who last habitually resided in those countries, and will consider individuals for potential admission whose resettlement in the United States would fulfill critical foreign policy interests, without compromising national security and the welfare of the United States. As such, the Secretary of Homeland Security will admit on a case-by-case basis only refugees whose admission is deemed to be in the national interest and poses no threat to the security or welfare of the United States. We will direct our staff to work jointly and with law enforcement agencies to complete the additional review of the SAO countries no later than 90 days from the date of this memorandum, and to determine what additional safeguards, if any, are necessary to ensure that the admission of refugees from these countries of concern does not pose a threat to the security and welfare of the United States.

Further, it is our joint determination that additional security measures must be implemented promptly for derivative refugees—those who are "following-to-join" principal refugees that have already been resettled in the United States—regardless of nationality.[1] At present, the majority of following-to-join refugees, unlike principal refugees, do not undergo enhanced DHS review, which includes soliciting information from the refugee applicant earlier

---

[1] When a refugee is processed for admission to the United States, eligible family members located in the same place as the refugee (spouses and/or unmarried children under 21 years of age) typically are also processed at the same time, and they receive the same screening as the principal refugee. Each year, however, resettled principal refugees also petition, through a separate process, for approximately 2,500 family members to be admitted to the United States as following-to-join refugees. The family member may be residing and processed in a different country than where the principal refugee was processed, and while most following-to-join refugees share the nationality of the principal, some may be of a different nationality.

2

in the process to provide for a more thorough screening process, as well as vetting certain nationals or stateless persons against classified databases. We have jointly determined that additional security measures must be implemented before admission of following-to-join refugees can resume. Based on an assessment of current systems checks, as well as requirements for uniformity identified by Section 5, we will direct our staffs to work jointly to implement adequate screening mechanisms for following-to-join refugees that are similar to the processes employed for principal refugees, in order to ensure the security and welfare of the United States. We will resume admission of following-to-join refugees once those enhancements have been implemented.

Rex W. Tillerson
Secretary
Department of State

Elaine Duke
Acting Secretary
Department of
Homeland Security

Dan Coats
Director
National Intelligence

## Addendum to Section 6(a) Memorandum

## Executive Order 13780, *Protecting the Nation from Foreign Terrorist Entry into the United States*

Section 6(a) of Executive Order 13780 of March 6, 2017 (Protecting the Nation from Foreign Terrorist Entry into the United States), required a review of the United States Refugee Admissions Program (USRAP) application and adjudication process during a 120-day period to determine what additional procedures should be used to ensure that individuals seeking admission as refugees do not pose a threat to the security and welfare of the United States. The Secretary of State (State), in conjunction with the Secretary of Homeland Security (DHS) and in consultation with the Director of National Intelligence (ODNI) established an interagency working group (the Section 6(a) Working Group) to undertake this review.

This addendum provides a summary of the additional procedures that have been and will be implemented. A classified report provides further detail of this review and enhancements. The interagency working group has recommended and implemented enhanced vetting procedures in three areas: *application, interviews and adjudications, and system checks*.

### Interagency Approach to the Review

To conduct the review, the Section 6(a) Working Group conducted a baseline assessment of USRAP application and adjudication processes and developed additional procedures to further enhance the security and welfare of the United States. The Section 6(a) Working Group ensured alignment with other concurrent and relevant reviews undertaken under the Executive Order, such as the review under Section 5, which established uniform baseline screening standards for all travelers to the United States.

All individuals admitted through the USRAP already receive a baseline of extensive security checks. The USRAP also requires additional screening and procedures for certain individuals from 11 specific countries that have been assessed by the U.S. government to pose elevated potential risks to national security; these individuals are subject to additional vetting through Security Advisory Opinions (SAOs)[1]. The SAO list for refugees was established following the September 11th terrorist attacks and has evolved over the years through interagency consultations. The most recent list was updated in 2015. The Section 6(a) Working Group agreed to continue to follow this tiered approach to assessing risk and agreed that these nationalities continued to require additional vetting based on current elevated potential for risk. Each additional procedure identified during the 120-day review was evaluated to determine whether it should apply to stateless persons and refugees of all nationalities or only certain nationalities.[2]

---

[1] The SAO is a DOS-initiated biographic check conducted by the Federal Bureau of Investigation and intelligence community partners. SAO name checks are initiated for the groups and nationalities designated by the U.S. government as requiring this higher level check.

[2] Stateless persons in this regard means persons without nationality who last habitually resided in one of these countries.

## Additional Procedures for Refugee Applicants Seeking Resettlement in the United States

Application Process:

> - **Increased Data Collection:** Additional data are being collected from all applicants in order to enhance the effectiveness of biographic security checks. These changes will improve the ability to determine whether an applicant is being truthful about his or her claims, has engaged in criminal or terrorist activity, has terrorist ties, or is otherwise connected to nefarious actors.
>
> - **Enhanced Identity Management:** The electronic refugee case management system has been improved to better detect potential fraud by strengthening the ability to identify duplicate identities or identity documents. Any such matches are subject to further investigation prior to an applicant being allowed to travel. These changes will make it harder for applicants to use deceptive tactics to enter our country.

Interview and Adjudication Process:

> - **Fraud Detection and National Security:** DHS's U.S. Citizenship and Immigration Services (USCIS) will forward-deploy specially trained Fraud Detection and National Security (FDNS) officers at refugee processing locations to help identify potential fraud, national security, and public safety issues on certain circuit rides to advise and assist interviewing officers. With FDNS officers on the ground, the United States will be better positioned to detect and disrupt fraud and identify potential national security and public safety threats.
>
> - **New Guidance and Training:** USCIS is strengthening its guidance on how to assess the credibility and admissibility of refugee applicants. This new guidance clarifies how officers should identify and analyze grounds of inadmissibility related to drug offenses, drug trafficking, prostitution, alien smuggling, torture, membership in totalitarian parties, fraud and misrepresentation, certain immigration violations, and other criminal activity. USCIS has also updated guidance for refugee adjudicators to give them greater flexibility in assessing the credibility of refugee applicants, including expanding factors that may be considered in making a credibility determination consistent with the REAL ID Act. This enhanced guidance supplements the robust credibility guidance and training USCIS officers already receive prior to adjudicating refugee cases. Additionally, the updated guidance equips officers with tactics to identify inadequate or improper interpretation.
>
> - **Expanded Information-Sharing:** State and USCIS are exchanging more in-depth information to link related cases so that interviewing officers are able to develop more tailored lines of questioning that will help catch potential fraud, national security threats, or public safety concerns.

System Checks:

- > **Updating Security Checks:** Measures have been put in place to ensure that if applicants change or update key data points, including new or altered biographic information, that such data is then subject to renewed scrutiny and security checks. This will add an additional layer of protection to identify fraud and national security issues.

- > **Security Advisory Opinions (SAOs):** Departments and agencies have agreed to expand the classes of refugee applicants that are subject to SAOs, thereby ensuring that more refugees receive deeper vetting.

    - USCIS' Fraud Detection and National Security Directorate is also expanding its "enhanced review" process for applicants who meet SAO criteria. This includes checks against certain social media and classified databases.

## Additional Review Process for Certain Categories of Refugee Applicants

The Department of Homeland Security continues to have concerns regarding the admission of nationals of, and stateless persons who last habitually resided in, 11 particular countries previously identified as posing a higher risk to the United States through their designation on the SAO list. The SAO list for refugees was established following the September 11th terrorist attacks and has evolved over the years through interagency consultations. The current list of countries was established in 2015.

As such, for countries subject to SAOs, the Secretary of State and the Secretary of Homeland Security, in consultation with the Director of National Intelligence and the Attorney General, will coordinate a review and analysis of each country, pursuant to existing USRAP authorities. This review will include an in-depth threat assessment of each country, to be completed within 90 days. Moreover, it will include input and analysis from the intelligence and law enforcement communities, as well as all relevant information related to ongoing or completed investigations and national security risks and mitigation strategies.

This review will be tailored to each SAO country, and decisions may be made for each country independently. While the temporary review is underway, the Secretaries of Homeland Security and State will cooperate to carefully scrutinize the applications of nationals of, and stateless persons who last habitually resided in, countries on the SAO list and will consider individuals for potential admission whose resettlement in the United States would fulfill critical foreign policy interests, without compromising national security and the welfare of the United States. As such, the Secretary of Homeland Security may admit on a case-by-case basis only refugees whose admission is deemed to be in the national interest and poses no threat to the security or welfare of the United States.

In addition, during this review period, the Secretary of State and the Secretary of Homeland Security will temporarily prioritize refugee applications from non-SAO countries. DHS and DOS will work together to take resources that may have been dedicated to processing nationals of, or stateless persons who last habitually resided in, SAO countries and, during the temporary

review period, reallocate them to process applicants from non-SAO countries for whom the processing may not be as resource intensive. This means that refugee admissions for nationals of, and stateless persons who last habitually resided in, SAO countries will occur at a slower pace, at least during the temporary review period and likely further into the fiscal year, as the deployment of additional screening and integrity measures have historically led to lengthier processing times. While DHS prioritizes its resources in this manner until the additional analysis is completed, DHS will interview refugee applicants as appropriate from SAO countries on a discretionary basis.

### Form I-730 Refugee Following-to-Join Processing

A principal refugee applicant may include his or her spouse and unmarried children under 21 years of age as derivative refugee applicants on his or her Form I-590, Registration for Classification as a Refugee. When these family members are co-located with the principal, the derivative applicants generally are processed through the USRAP and, if approved, travel to the United States with the principal refugee applicant. These family members receive the same baseline security checks as the principal refugee and, if found eligible, are admitted as refugees. Alternatively, a principal refugee admitted to the United States may file a Form I-730, Refugee/Asylee Relative Petition, for his or her spouse and unmarried children under 21 years of age, to follow-to-join the principal refugee in the United States. If DHS grants the petition after interview and vetting, the approved spouse or unmarried child is admitted as a refugee and counted toward the annual refugee ceiling. While the vast majority of eligible refugee family members admitted to the United States each year accompany, and are screened with, the principal refugee, principal refugees admitted to the United States file petitions for approximately 2,500 family members to join them in the United States through the following-to-join process. Following-to-join family members may be residing and processed in a different country than where the principal refugee was processed, and while most share the nationality of the principal refugee, some may be of a different nationality. In any given year, DHS receives petitions for beneficiaries representing over 60 different nationalities. In recent years, the nationalities most represented were Iraqi, Somali, Burmese, Congolese, Ethiopian and Eritrean.

The majority of following-to-join refugees do not receive the same, full baseline interagency checks that principal refugees receive. Nor do following-to-join refugees currently undergo enhanced DHS review, which includes soliciting information from the refugee earlier in the process to provide for more thorough screening and vetting of certain nationals or stateless persons against classified databases. DHS and State are expeditiously taking measures to better align the vetting regime for following-to-join refugees with that for principal refugees by 1) ensuring that all following-to-join refugees receive the full baseline interagency checks that principal refugees receive; 2) requesting submission of the beneficiary's I-590 application in support of the Form I-730 petition earlier in the process to provide for more thorough screening; 3) vetting certain nationals or stateless persons against classified databases; and 4) expanding SAO requirements for this population in keeping with the agreed-to expansion for I-590 refugee applicants. These additional security measures must be implemented before admission of following-to-join refugees—regardless of nationality—can resume. Once the security enhancements are in place, admission of following-to-join refugees can resume.