The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN DOE, et al.,

               Plaintiffs,

     v.

DONALD TRUMP, et al.,

               Defendants.

CASE NO. C17-0178JLR

JEWISH FAMILY SERVICES, et al.,

               Plaintiffs,

     v.

DONALD TRUMP, et al.,

               Defendants.

CASE NO. C17-1707JLR

**(RELATING TO CASE NO. C17-0178JLR)**

***DOE* PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND DISSOLVE PRELIMINARY INJUNCTION AS MOOT**

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

III.    ARGUMENT ....................................................................................................... 6

        A.      The Preliminary Injunction Is Not Moot Because Questions
                Remain as to Whether Defendants Have Restored the Status Quo
                Ordered by the Court. ........................................................................... 7

        B.      This Case Falls Within Two Exceptions to the Mootness Doctrine. .................. 14

                1.      Defendants Cannot Evade Review by Voluntary Cessation
                        of Unlawful Conduct............................................................ 14

                        a.      The Voluntary-Cessation Exception Applies
                                Because the Unlawful FTJ-Related Provisions of
                                the Agency Memo Did Not Expire and Were Not
                                Superseded. ................................................................ 15

                                (i)     The Agency Memo as written indefinitely
                                        suspends FTJ refugee admissions. ................................... 15

                                (ii)    The Nielsen Memo does not negate the FTJ
                                        provisions of the Agency Memo..................................... 16

                        b.      Defendants' Actions Can Reasonably Be Expected
                                to Recur........................................................................ 17

                2.      Defendants' Suspension of Follow-to-Join Procedures Is
                        Capable of Repetition yet Evading Review. ........................................... 20

IV.     CONCLUSION.................................................................................................. 22

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - i
(2:17-cv-00178-JLR)

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)..................................................................................14

*America Cargo Transport, Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010) ................................................................18

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't
  of Transp.*, 713 F.3d 1187 (9th Cir. 2013) ............................................18

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ...............................................................6, 7

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) ...........................................................18, 20

*Chafin v. Chafin*,
  568 U.S. 165 (2013).........................................................................1, 6, 14

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982)..................................................................................14

*Doe v. Trump*,
  284 F. Supp. 3d 1172 (W.D. Wash. 2018)................................... *passim*

*Doe v. Trump*,
  288 F. Supp. 3d 1045 (W.D. Wash. 2017)...................................5, 9, 16

*Doe v. Trump*,
  Nos. 18-35015, 18-35026, 2018 WL 1774089 (9th Cir. Mar. 29, 2018)............................5, 6

*FEC v. Wis. Right To Life, Inc.*,
  551 U.S. 449 (2007)............................................................................18, 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)............................................................................14, 17

*Hajro v. U.S. Citizenship & Immigration Servs.*,
  811 F.3d 1086 (9th Cir. 2016) ..............................................................7, 8

*Halet v. Wend Inv. Co.*,
  672 F.2d 1305 (9th Cir. 1982) ............................................................7, 13

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

*Hawaii v. Trump*,
859 F.3d 741 (9th Cir. 2017), *vacated as moot*, 137 S. Ct. 377 (2017)..................................3

*Karuk Tribe v. U.S. Forest Serv.*,
681 F.3d 1006 (9th Cir. 2012) ...............................................................................7

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
567 U.S. 298 (2012)....................................................................................14, 16, 18

*Laub v. U.S. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003) .............................................................................13

*Los Angeles Cty. v. Davis*,
440 U.S. 625 (1979) ..............................................................................................7

*McCormack v. Herzog*,
788 F.3d 1017 (9th Cir. 2015) ............................................................................20

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993)..............................................................................................18

*Olagues v. Russoniello*,
770 F.2d 791 (9th Cir. 1985) .........................................................................14, 19

*Renee v. Duncan*,
686 F.3d 1002 (9th Cir. 2012) ............................................................................19

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014) ..............................................................................17

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017)........................................................................................17

*Trump v. Hawaii*,
138 S. Ct. 1 (2017)..........................................................................................3, 15

*Trump v. IRAP*,
137 S. Ct. 2080 (2017)..........................................................................................3

*TRW, Inc. v. FTC*,
647 F.2d 942 (9th Cir. 1981) ..............................................................................22

*United States v. Brandau*,
578 F.3d 1064 (9th Cir. 2009) ..............................................................................7

*United States v. Or. State Med. Soc'y*,
343 U.S. 326 (1952)..............................................................................................19

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

*United States v. Strong*,
   489 F.3d 1055 (9th Cir. 2007) ........................................................................2, 7

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) ...............................................................................7, 18, 22

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) ..............................................................................3

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ............................................................................18

*Worth v. Jackson*,
   451 F.3d 854 (D.C. Cir. 2006) ...........................................................................20

**Regulations**

Executive Order 13769, "Protecting the Nation From Foreign Terrorist Entry Into
   the United States," 82 Fed. Reg. 8,977 (Jan. 27, 2017) .......................................3

Executive Order 13780, "Protecting the Nation From Foreign Terrorist Entry Into
   the United Sates," 82 Fed. Reg. 13,209 (Mar. 6, 2017) ..................................3, 15

Executive Order 13815, "Resuming the United States Refugee Admissions
   Program With Enhanced Vetting Capabilities," 82 Fed. Reg. 50,055 (Oct. 24,
   2017) .............................................................................................................3, 21

Proclamation 9645, "Enhancing Vetting Capabilities and Processes for Detecting
   Attempted Entry Into the United States by Terrorists or Other Public-Safety
   Threats," 82 Fed. Reg. 45,161 (Sept. 24, 2017)..............................................3, 12

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - iv
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

# I.    INTRODUCTION[1]

Although the title of Defendant Trump's Executive Order 13815, "Resuming the United States Refugee Admissions Program with Enhanced Vetting Capabilities" ("EO-4"), implied an end to the refugee ban—that is not what transpired. Instead, an internal memorandum of the same title (herein, the "Agency Memo"), dated one day prior to the issuance of EO-4,[2] indefinitely suspended the admission of "follow-to-join" ("FTJ") refugees.[3] This Court appropriately enjoined that suspension. *Doe v. Trump*, 288 F. Supp. 3d 1045, 1086 (W.D. Wash. 2017) ("PIO"). But not only did this Court require Defendants to resume the processing and admissions of refugees and their family members, it also ordered Defendants to take affirmative actions to undo the enjoined portions of the Agency Memo and "to restore the status quo prior to the issuance of the Agency Memo." *Doe v. Trump*, 284 F. Supp. 3d 1172, 1177 (W.D. Wash. 2018) ("Stay Order"). Despite having provided the Court with no material evidence that they are actually in compliance with the preliminary injunction—and in the face of mounting evidence that they are not—Defendants now move to dismiss this action. The Court should reject their latest attempt to evade judicial review.[4]

"'[O]nly when it is impossible for a court to grant any effectual relief whatever to the prevailing party'" is a case moot. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). Defendants bear the heavy burden to establish that there is *absolutely no* effective relief

---

[1] Defendants' Motion to Dismiss and Dissolve Preliminary Injunction as Moot ("Motion to Dismiss" or "MTD"), Dkt. # 145, addresses the preliminary injunction entered by the Court on December 23, 2017, Dkt. # 92, relating to two consolidated cases: *Doe v. Trump*, No. C17-0178JLR (W.D. Wash.) (challenging the indefinite suspension of FTJ processing and admissions) and *Jewish Family Services v. Trump*, No. C17-1707JLR (W.D. Wash.) (challenging suspension of refugees from countries on the Security Advisory Opinion ("SAO") list). *Doe* Plaintiffs will address Defendants' Motion to Dismiss with regard to the FTJ provisions of the Agency Memo but join in the *JFS* Plaintiffs' response with regard to the SAO provisions of the Agency Memo. *JFS* Plaintiffs' Opposition to Defendants' Motion to Dismiss and Dissolve Preliminary Injunction as Moot ("JFS Opp."), Dkt. # 146.

[2] The Agency Memo is attached as Exhibit A to Defendants' Motion to Dismiss, Dkt. # 145-1.

[3] Follow-to-join refugees are the spouses and children of refugees already admitted to and living in the United States.

[4] The *Doe* case also asserts claims related to the indefinite ban on entry of non-immigrants from Muslim-majority countries, which are not a subject of this particular injunction. Therefore, regardless of the decision on Defendants' Motion to Dismiss, dismissal of the *Doe* complaint in its entirety would be inappropriate.

*DOE* PLS.' OPP'N TO DEFS.' MOT. TO DISMISS AND DISSOLVE PRELIM. INJ. AS MOOT - 1 (2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

remaining for the Court to provide. *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007). Instead of providing any evidence that FTJ processing and admissions have been adequately restored to the status quo prior to the issuance of the Agency Memo, Defendants submit only conclusory statements and vague assertions of compliance. Meanwhile, Plaintiffs have uncovered evidence of non-compliance, including evidence that some refugee FTJ families are newly required to cross international borders they cannot cross in order to have their applications processed. *See infra* Section III.A. Defendants may dispute that evidence, but the proper venue to do so is in further proceedings before this Court, after discovery has taken place. Dismissal of this case before then would be premature.

Should the Court find it appropriate to rule on mootness on the present record, two exceptions to mootness doctrine apply: (1) any asserted mootness is the result of voluntary cessation, and (2) Defendants' indefinite suspension of FTJ processing is capable of repetition but evading review. This Court has already rejected Defendants continued mischaracterization of the FTJ suspension as a temporary measure. And despite ample opportunity, Defendants have not rescinded the Agency Memo that indefinitely suspended FTJ admissions, provided any evidence that the Agency Memo is no longer in effect, or guaranteed that they will not invoke the Agency Memo (or some subsequent version of it) in the future. Nor have they acknowledged their continuing obligation under the Court's injunction to ensure that those injured by their actions are made whole, an obligation made even more critical by the Administration's dramatic slowdown of refugee admissions. Defendants intentionally sought to moot the case and evade judicial review, and the public maintains a strong interest in the judicial determination of the legality of Defendants' conduct.

## II.     BACKGROUND

On January 27, 2017, one week after taking office, President Trump signed Executive Order 13769 ("EO-1") which suspended entry into the United States for 90 days for nationals of

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 2
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

seven Muslim-majority countries, suspended the U.S. Refugee Admissions Program (USRAP) for 120 days, and indefinitely barred Syrian refugees.[5] Following court orders striking down EO-1, *see, e.g.*, *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017), Defendants rescinded EO-1, replacing it with Executive Order 13780 ("EO-2").[6] EO-2, described by Defendant Trump as a "watered-down version" of EO-1, Third Am. Compl. ("TAC") ¶¶ 5, 176, 291, Dkt. # 42, suspended for another 90 days the entry of nationals of six Muslim-majority countries and again suspended all refugee admissions for 120 days. EO-2 §§ 2(c), 6(a), 82 Fed. Reg. 13,209, at 13,213, 13,215. The Ninth Circuit enjoined EO-2 before it could take effect, *Hawaii v. Trump*, 859 F.3d 741, 757, 760 (9th Cir. 2017) (per curiam), *vacated as moot*, 137 S. Ct. 377 (2017), but the Supreme Court allowed Defendants to implement their suspension of USRAP for those refugees without a "bona fide relationship" with individuals or entities in United States. *Trump v. IRAP*, 137 S. Ct. 2080, 2089 (2017).[7] When EO-2's 90-day travel ban expired on September 24, 2017, Defendant Trump issued a Proclamation ("EO-3") that, among other things, imposes an indefinite ban on nationals of six Muslim-majority countries.[8]

On October 24, 2017, when EO-2's 120-day refugee ban expired, Defendant Trump issued Executive Order 13815 ("EO-4"), "Resuming the United States Refugee Admissions Program with Enhanced Vetting Capabilities."[9] Although EO-4 purported to resume refugee admissions, the Agency Memo imposed yet another 90-day ban on refugees from eleven SAO countries (nine of them Muslim-majority), and indefinitely suspended the processing and admission of all FTJ refugees. The Agency Memo provided for lifting of the FTJ suspension only

---

[5] Executive Order 13769, "Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 8,977 (Jan. 27, 2017).

[6] Executive Order 13780, "Protecting the Nation From Foreign Terrorist Entry Into the United Sates," 82 Fed. Reg. 13,209 (Mar. 6, 2017).

[7] The Supreme Court also stayed the Ninth Circuit's mandate with respect to refugees with a formal assurance from a resettlement agency. *Trump v. Hawaii*, 138 S. Ct. 1 (2017).

[8] Proclamation 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats," 82 Fed. Reg. 45,161 (Sept. 24, 2017).

[9] Executive Order 13815, "Resuming the United States Refugee Admissions Program With Enhanced Vetting Capabilities," 82 Fed. Reg. 50,055 (Oct. 24, 2017).

after implementation of "additional security measures," without any temporal limitation. Agency Memo at 3.

The Agency Memo is another manifestation of Defendants' animus against Muslims and refugees. The President has long demonstrated an irrational prejudice against refugees, and a particular concern that the previous refugee admission system favored Muslims over Christians. TAC ¶¶ 160, 161, 177, 188, 268. Not one to be deterred by facts, Defendant Trump has asserted that a proposal to accept 200,000 refugees could amount to accepting a "200,000-man army," which "could be one of the great tactical ploys of all time." *Id.* But 72% of the Syrian refugees admitted since 2011 are women and children under age fourteen, *id.*, and almost 80% of dependent refugee arrivals in fiscal year 2014 and 2015 were children under age sixteen or female spouses. Decl. of Lisa Nowlin in Supp. of Mot. for Prelim. Inj. ¶ 5, Dkt. # 57.

Defendants' actions have had real-world impact. The number of admitted refugees in fiscal year 2018 has plummeted:

- The United States admitted 25,671 refugees during the first quarter of fiscal year 2017 versus 5,323 in the first quarter of fiscal year 2018 or a 79% decrease.[10]

- During the second quarter of fiscal year 2017, the United States admitted 13,427 refugees versus 5,227 in the second quarter of fiscal year 2018 or a 61% decrease.[11]

- During the months of April and May of fiscal year 2017, the United States admitted 7,305 refugees versus 3,781 during the months of April and May of fiscal year 2018 or a 48% decrease.[12]

The International Rescue Committee anticipates admissions of less than half of the

---

[10] Refugee Processing Center, *PRM Admissions Graph May 31, 2018*, http://www.wrapsnet.org/s/Graph-Refugee-Admissions-FY2018_05_31.xls. The Refugee Processing Center is operated by the U.S Department of State Bureau of Population, Refugees, and Migration.

[11] *Id.*

[12] *Id.*

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 4
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

Administration's 45,000 refugee cap.[13]

*Doe* Plaintiffs filed a motion for preliminary injunction challenging the indefinite suspension of FTJ processing and admissions, Dkt. # 45, and *JFS* Plaintiffs filed a motion for preliminary injunction challenging the 90-day suspension of refugees from countries on the SAO list, 17-1707 Dkt. # 42.[14] On December 23, 2017, the Court issued a nationwide preliminary injunction, ordering Defendants to immediately resume FTJ processing and admissions. PIO, 288 F. Supp. 3d at 1086. The Court held that Plaintiffs were likely to succeed on their claims that the FTJ suspension violated both the Immigration and Nationality Act ("INA"), which entitles refugees in the United States to reunite with their families, and the Administrative Procedure Act ("APA"), which requires notice-and-comment rulemaking for substantive changes to the FTJ program. *Id.* at 1079. The Court also held that "[t]he Agency Memo indefinitely suspends the entire FTJ refugee program." *Id.* at 1075. On January 4, 2018, Defendants filed a notice of appeal of the Court's preliminary injunction order. Notice of Appeal, Dkt. # 99. Defendants have also since conceded that "[t]he Agency Memo indefinitely suspended entry into the United States of FTJ refugees." Defs.' Mot. to Dismiss the Appeal, and to Vacate the J. and Remand for Dismissal, on Grounds of Mootness ("Defs.' Appeal Mot.") at 4, Nos. 18-35015, 18-35026 (9th Cir. Feb. 6, 2018), Appeal Dkt. # 24-1.[15]

In response to Defendants' Emergency Motion for Stay of Preliminary Injunction Pending Appeal ("Defs.' Emergency Mot. for Stay"), Dkt. # 95, the Court issued an Order on January 9, 2018, clarifying that Defendants were required to take affirmative actions necessary to undo their implementation of the suspension. Stay Order, 284 F. Supp. 3d at 1177. The Court

---

[13] Press Release, *IRC: Trump Administration on Track to Miss Own Target for Refugee Admissions*, Int'l Rescue Committee (Jan. 25, 2018), https://www.rescue.org/press-release/irc-trump-administration-track-miss-own-target-refugee-admissions.

[14] Docket numbers preceded by "17-1707" refer to entries in the *JFS* case.

[15] Defendants' Appeal Motion is attached as Exhibit D to the Declaration of AJ de Vries in Support of Doe Plaintiffs' Opposition to Defendants' Motion to Dismiss and Dissolve Preliminary Injunction as Moot ("De Vries Decl."), filed concurrently herewith.

ordered Defendants to "restore the status quo to prior to the issuance of the Agency Memo with respect to the processing of applications from FTJ refugees and refugees from SAO countries." *Id.*

Defendants filed a Notice of Compliance, Dkt. # 114, on January 19, 2018, that referenced steps they had taken as a result of the Court's Order but did not include documentary evidence of any of those efforts. Defendants filed an additional notice on January 31, 2018, asserting (without any accompanying declarations or other evidence) that "the implementation of the additional procedures for following-to-join refugees set forth in the Joint Memorandum is expected to be completed on or about February 1, 2018." Defs.' Notice Following Conclusion of 90-Day SAO Refugee Review ("Defs.' Notice") at 2, Dkt. # 119. On January 29, 2018, Secretary of U.S. Department of Homeland Security Kirstjen Nielsen issued a memorandum entitled "90-Day Refugee Review" with the results of the department's review of additional safeguards related to the admission of SAO nationals ("Nielsen Memo").[16]

On February 6, 2018, Defendants filed a motion to dismiss the appeal, and vacate the injunction below and remand with instructions to dismiss the underlying claims, on grounds of mootness. De Vries Decl. Ex. D (Defs.' Appeal Mot.). On March 29, 2018, the Ninth Circuit denied Defendants' motion without prejudice and granted the request to remand to this Court to address mootness in the first instance. *Doe v. Trump*, Nos. 18-35015, 18-35026, 2018 WL 1774089 (9th Cir. Mar. 29, 2018).

### III.   ARGUMENT

A case becomes moot "'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin*, 568 U.S. at 172 (citation omitted). "The question is not whether the precise relief sought at the time the case was filed is still available, but whether there can be *any* effective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th

---

[16] The Nielsen Memo is attached as Exhibit B to Defendants' Motion to Dismiss, Dkt. # 145-2.

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 6
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

Cir. 2017) (emphasis added) (citation omitted). "[S]o long as there is some present harm left to enjoin," a "request for injunctive relief remains live." *Id.* at 864 (citation omitted). In fact, "a case is not moot if *any* effective relief may be granted." *Karuk Tribe v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012).

Defendants, as the party asserting that the case has become moot, bear the "heavy burden of establishing that there is no effective relief remaining for a court to provide." *Strong*, 489 F.3d at 1059 (citation omitted). Defendants must prove not only "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" but also that it is "absolutely clear" that "that the alleged violation will [not] recur." *United States v. Brandau*, 578 F.3d 1064, 1068 (9th Cir. 2009) (citation omitted). Only "[w]hen *both* conditions are satisfied it may be said that [a] case is moot." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (emphasis added). And Defendants' "profession[s] do[] not suffice to make a case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). *See also Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1308 (9th Cir. 1982) (a court "cannot rely on [Defendants'] statement[s] alone" in determining mootness). Defendants cannot meet their burden here.

## A.     The Preliminary Injunction Is Not Moot Because Questions Remain as to Whether Defendants Have Restored the Status Quo Ordered by the Court.

A court's power to grant injunctive relief survives discontinuance of the illegal conduct because the purpose of an injunction is to prevent future violations. *W.T. Grant Co.*, 345 U.S. at 633. Among the considerations a court should examine are "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Id.*; *see also Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1098 n.5 (9th Cir. 2016).

This Court's preliminary injunction enjoined Defendants from enforcing the provisions of the Agency Memo that suspended the processing of FTJ applications or admissions of FTJ admissions into the United States. Stay Order, 284 F. Supp. 3d at 1177-78. The Court also

*DOE* PLS.' OPP'N TO DEFS.' MOT. TO DISMISS AND DISSOLVE PRELIM. INJ. AS MOOT - 7 (2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION 901 Fifth Avenue, Suite 630 Seattle, WA  98164 Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P. 1201 Third Avenue, Suite 3200 Seattle, WA  98101-3052 Tel.: (206) 623-1900 Fax: (206) 623-3384

required Defendants to "take actions that are necessary to undo those portions of the Agency Memo that are enjoined." *Id.* at 1177. The Court specifically rejected Defendants' argument that they should be excused from taking any "affirmative actions" to comply with the preliminary injunction and ordered Defendants to "restore the status quo prior to the issuance of the Agency Memo." *Id.* The parties continue to dispute the existence and effectiveness of the steps Defendants have taken to discontinue the enjoined policy, undo the harm caused by the Agency Memo, and restore the status quo as ordered by this Court. Until that dispute is resolved with the help of discovery, dismissal for mootness would be inappropriate.

Plaintiffs have recently uncovered evidence that Defendants' implemented at least one change in their screening processes—not mentioned anywhere in the Agency Memo or subsequent pleadings—that may act as a de facto ban on FTJ refugee admissions: the requirement that certain FTJ refugees travel to another country to receive their travel papers for the United States. This new requirement, which was imposed sometime between December January 31, 2018, and February 5, 2018,[17] singles out FTJ refugees specifically: "the change **only** impacts follow-to-join refugees. Follow-to-join asylees can still be processed at locations offering just NIV services."[18]

Defendants' actions have already denied at least one refugee his right to reunited with his family. Mr. Sophonie Bizimana, who was admitted to the United States as a refugee in 2014 and is now a lawful permanent resident, has been waiting to be reunited with his wife and children for years. Declaration of Sophonie Bizimana in Support of *Doe* Plaintiffs' Opposition to Defendants' Motion to Dismiss and Dissolve Preliminary Injunction as Moot ¶¶ 1-3, filed concurrently herewith. His family is "on the brink of travel," having completed their interviews, security clearances, medical examinations, and vaccines. *Id.* ¶ 4. They were assured with a

---

[17] *See* De Vries Decl. ¶¶ 2-8.

[18] *Id.* Ex. C at 3; *Follow-to-Join Refugees and Asylees*, U.S. Dep't of State (Feb. 5, 2018), https://web.archive.org/web/20180205151345/https://travel.state.gov/content/travel/en/us-visas/immigrate/follow-to-join-refugees-and-asylees.html (emphasis in original).

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

resettlement agency in February 2018 and only await travel papers. *Id.* ¶¶ 6, 10. But the family lives in Uganda, and as a result of Defendants' new restriction on FTJ refugee processing, is now required to travel to Kenya to obtain their travel papers and depart for the United States. *Id.* ¶¶ 7-9. Even if they were able to plan and pay for the more than 400-mile overland trip between the two countries, the family cannot procure documentation to cross the Uganda-Kenya border. *Id.* ¶ 8. In the meantime, the clock on the validity of Mr. Bizimana's family's medical clearances has already run, and they will need to undergo medical examinations again. *Id.* ¶ 11.

Defendants' new requirement exceeds their purported goal of aligning the FTJ process with the principal refugee process and inexplicably adds an insurmountable hurdle for the admission of at least some FTJ refugees. *Cf.* MTD at 10 (quoting the Agency Memo at 3, purporting only to "'implement adequate screening mechanisms for [FTJ] refugees that are similar to the processes employed for principal refugees.'") (alteration in original). This Court should also reject any effort by Defendants to portray the new requirement as a security measure: the United States cannot be made more secure by blocking the travel of individuals it has already screened and cleared for travel.

Furthermore, because FTJ applications were suspended while other refugee applications proceeded, even FTJ refugees not affected by Defendants' new travel requirements have been set back respectively—and any delays in the process are compounded because medical clearances expire and are not easy to obtain. PIO, 288 F. Supp. 3d at 1059; Second Suppl. Decl. of Joseph Doe in Supp. of Mot. for Prelim. Inj. ¶ 2, Dkt. # 91 (describing the need to travel over 500 miles to medical examination site). Without proactive steps to undo the harm caused by the FTJ suspension, family reunifications to which Plaintiffs are statutorily entitled will be delayed by many more months, if not years. On the present record, it is unclear whether Defendants have actually implemented all necessary steps to "restore the status quo prior to the issuance of the Agency Memo with respect to the processing of applications from FTJ refugees"—and,

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 9
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

therefore, whether there is an ongoing need for the injunction. Stay Order, 284 F. Supp. 3d at
1177.

Defendants admit that even as they implemented new procedures, they were required to
"resume processing as they would have done absent the Agency Memo." MTD at 12. They
represent through previously filed declarations that the refugee program resumed as ordered by
the Court via guidances, instructions, and a cable issued on December 23, 2017, December 24,
2017, and January 4, 2018. Id. at 11-12. Yet, they have not provided the Court with copies of any
of those guidances, instructions, or cable or, at a minimum, the portions evidencing compliance
with the Court's orders. Instead, Defendants claim that Plaintiffs have repeatedly "speculated"
and made "vague and unsupported insinuations" that the Government may not have complied
with the preliminary injunction. Id. at 11. But Plaintiffs have submitted concrete evidence that
contradicts Defendants' assertions:

- On December 28, 2017, Jay Garrison wrote to the State Department's IV Unit in Abu
  Dhabi as well as the USCIS Athens District office specifically stating that a
  nationwide injunction had been entered enjoining the government from suspending
  the entry of FTJ refugees and requesting that his client's I-730 application (which had
  previously been approved by the U.S. Embassy in Ankara) be promptly adjudicated
  and issued. Decl. of Jay Garrison in Supp. of Doe Pls.' Notice[19] ("Garrison Decl.") ¶
  13, Dkt. # 138; Ex. F to Garrison Decl. at 1, Dkt. # 138-6. On April 16, 2018, Mr.
  Garrison re-forwarded his December 28th inquiry and again asked the State
  Department's IV Unit in Abu Dhabi for an update. Garrison Decl. ¶ 14; Ex. G to
  Garrison Decl. at 1, Dkt. # 138-7. Mr. Garrison received no response to his inquiries.
  Garrison Decl. ¶ 15.

- On January 12, 2018, the State Department Congressional Liaison wrote to
  Congresswoman Pramila Jayapal's staff that the processing of a refugee application
  that had previously been conditionally approved was now "on temporary hold
  following the issuance of an Executive Order on October 24, 2017 that directed the
  State Department and DHS to review the refugee processing procedures for nationals
  for nationals of 11 countries, which includes this case." Ex. A to Decl. of Hamdi
  Mohamed in Supp. of Doe Pls.' Notice at 1, Dkt. # 139-1.

---

[19] Doe Pls.' Unopposed Mot. to Join JFS Pls.' Mot. to Reinstate Their Cross-Mot. for Limited Expedited Disc. on
Compliance with Prelim. Inj. Mot., ("Doe Pls.' Notice"), Dkt. # 136.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

- On April 4, 2018, the same Congressional Liaison for the State Department[20] wrote to Congressman Mark Veasey's staff that even though the refugee the staff member inquired about had been finally approved in September 2017, "USRAP was unable to complete final processing of the case prior to the Oct. 24, 2017 Executive Order directing the temporary suspension of the movement of the nationals from eleven countries." "This suspension ended on Jan. 22, 2018." Ex. A to Decl. of John Doe 1 in Supp. of JFS Pls.' Mot. to Reinstate[21] at 1, Dkt. # 132-1.

- Defendants have implemented a requirement targeted only at FTJ refugees that certain FTJ refugees travel to another country to receive their travel papers for the United States which is acting as a de facto ban on the reunification of Mr. Bizimana with his wife and children.

Those who had been approved for travel should have been provided their papers and been traveling while Defendants put the updated system into place. But the emails provided by Plaintiffs provide evidence that they have not. In their response to the JFS Plaintiffs' Motion to Reinstate, Defendants claim that the Congressional Liaison simply "erred" when "suggest[ing] that the suspension of processing of refugee cases continued until the expiration of the memo." Defs.' Reinst. Resp. at 2. But the responses were not mere "suggestions" that the suspension of refugee processing continued. The State Department Congressional Liaison made two very specific statements indisputably informing Congressional staffers that: (1) refugee processing was still on hold as of January 12, 2018, over twenty days after Defendants' issued their guidance regarding the preliminary injunction; and (2) the suspension of refugee processing did not end until January 22, 2018, thirty days after the Court issued its order. It strains credulity that one month after Defendants purportedly informed their agencies about the preliminary injunction, the Congressional Liaison— the State Department employee charged with responding to inquiries from Congressional offices who was senior enough that his or her responses "were not reviewed by anyone else before they were sent," *id.* at 2—simply "erred." And the Liaison

---

[20] According to Defendants, the January 12, 2018 and April 4, 2018 emails were authored by the same State Department employee. Defs.' Resp. to *JFS* Pls.' Mot. for Reinstatement and *Doe* Pls.' Mot. to Join ("Defs.' Reinst. Resp.") at 4, Dkt. # 142.

[21] JFS Pls.' Mot. to Reinstate Their Cross-Mot. for Limited Expedited Disc. on Compliance with Prelim. Inj. ("JFS Plaintiffs' Motion to Reinstate"), Dkt. # 131.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

"erred" not once but at least twice in response to separate inquiries from different Congressional offices on an issue that has widely been covered in the media for the past year.[22] Neither have Defendants provided any evidence of guidance issued to this Congressional Liaison or others to ensure that similar errors are corrected going forward.[23]

There is no publicly available data on FTJ admissions, but it has been reported that fewer than 25 such individuals arrived in the first five weeks after the issuance of the preliminary injunction while, in comparison, about 200 such individuals typically arrived each month under the Obama Administration.[24] While Defendants specifically detail all they could *not* do to restore the status quo (*e.g.*, cancel already-scheduled circuit rides and conclusively determine which second-quarter circuit rides might have been conducted absent the Agency Memo), their descriptions of affirmative actions they have taken to restore the status quo are notably vague. MTD at 12-13. Defendants' representation that they added interviews for SAO nationals during second-quarter circuit rides, *id.* at 12, could mean, for example, that Defendants added just two

---

[22] Defendants also claim that the applications for related to the inquiries were processed the next business day but, again, submitted no conclusive documentation of such. *See* Defs.' Reinst. Resp. at 4.

[23] Evidence in other cases to which Plaintiff does not have access also appear to contain evidence that the government's actions do not support what they claim to be doing with regard to the travel ban. For example, EO-3 purports to allow for waivers for the entry of otherwise banned immigrants and non-immigrants "in the[] discretion" of consular officers. EO-3 § 3(c), 82 Fed. Reg. 45,161, at 45,168. However, a June 15, 2018 *Slate* article reports that Christopher Richardson, the former American Citizens Service Chief in Madrid for the United States Embassy in Madrid, submitted a declaration in *Alharbi v. Miller*, No. 18-02435 (E.D.N.Y.), stating that the waiver process is applied as follows:

> (a) They gave us a list of things and we would go down the list one by one until we were able to determine at all possible cost that the person was not eligible to even apply for the waiver. My understanding was no one is to be eligible to apply.

> (b) If for some reason an applicant made it through the list and we had no choice but to determine we could find an applicant eligible to apply, regardless of the [Presidential Proclamation] instructions that we had "discretion to grant the waiver," we were not allowed to exercise that discretion. We were mandated to send to Washington that we found this applicant eligible to apply and Washington would then make the decision to grant or deny the waiver.

Jeremy Stahl, *The Waiver Process is Fraud,* Slate (June 15, 2018), https://slate.com/news-and-politics/2018/06/trump-travel-ban-waiver-process-is-a-sham-two-consular-officers-say.html (alteration in original).

[24] Meredith Hoffman, *Trump Has Slowed Refugee Admissions to a Crawl*, Politico Mag. (Feb. 26, 2018), https://www.politico.com/magazine/story/2018/02/26/refugee-resettlement-confusion-executive-orders-217038.

*DOE* PLS.' OPP'N TO DEFS.' MOT. TO DISMISS AND DISSOLVE PRELIM. INJ. AS MOOT - 12 (2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

interviews, which certainly would not restore the status quo. Defendants' assertion that they "are maintaining their efforts to boost SAO admissions by interviewing significantly more SAO nationals during third-quarter circuit rides," *id*. at 13, is wholly without content and detail. For all their attestations that refugee admissions have resumed, their complete silence on whether they have successfully restored the status quo and eradicated the effects of the unlawful suspension they imposed speaks the loudest.

A court "cannot rely on [Defendants'] statement[s] alone" in determining mootness. *Halet*, 672 F.2d at 1308. But that is what Defendants ask this Court to do. The existing record provides neither the Court nor Plaintiffs with any reassurance that Defendants are in compliance. And the assertions of compliance involve guidances, instructions, and cables that Defendants issued prior to the Court's January 9, 2018 Stay Order, at a time when Defendants claimed that the injunction did *not* require them to undo any actions taken and when they expressed "significant doubt" about whether they could even undo some of their prior decisions. *See* Defs.' Emergency Mot. for Stay at 4-6, Dkt. # 95.

Defendants may have ample evidence of compliance but this Court and Plaintiffs are entitled to see that evidence—precisely what the discovery process provided for by the Federal Rules of Civil Procedure contemplates and requires. The Ninth Circuit has held that "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (*quoting Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

Not only is the question of whether Defendants have restored the status quo contested, but also the question of whether the illegal conduct can recur. Defendants have not rescinded the Agency Memo, renounced it, or even offered a pro forma assurance that they will not revert to an unlawful suspension with any future reviews. *See infra* Sections III.B.1.a-b., III.B.2. Until and

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 13
(2:17-cv-00178-JLR)

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel.: (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

unless they produce evidence both that they have eradicated the effects of the suspension that resulted from the Agency Memo and it is "absolutely clear" that the "violation will not recur," Defendants' Motion to Dismiss should be denied as premature because they have failed to demonstrate that "'it is impossible for a court to grant any effectual relief whatever to [Plaintiffs].'" *Chafin*, 568 U.S. at 172 (citation omitted).

**B.     This Case Falls Within Two Exceptions to the Mootness Doctrine.**

Even if Plaintiffs' claims were moot, two well-established exceptions to mootness doctrine apply: (1) voluntary cessation and (2) capable of repetition yet evading review. Moreover, the existence of "a public interest in having the legality of the practices settled . . . militates *against* a mootness conclusion." *Olagues v. Russoniello*, 770 F.2d 791, 795 (9th Cir. 1985) (alteration in original) (quoting *W.T. Grant*, 345 U.S. at 632).

**1.     Defendants Cannot Evade Review by Voluntary Cessation of Unlawful Conduct.**

"[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Otherwise, "the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways,'" *id.* at 289 n.10 (alterations in original) (citation omitted)—meaning that "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). *See also Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."). Therefore, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

528 U.S. 167, 190 (2000).

**a.    The Voluntary-Cessation Exception Applies Because the Unlawful FTJ-Related Provisions of the Agency Memo Did Not Expire and Were Not Superseded.**

Defendants attempt to evade the voluntary-cessation exception—and judicial review—by asserting that the FTJ provisions (1) "expired by their terms" and (2) have been superseded by the Nielsen Memo. MTD at 2. Neither of these is true.

**(i)    The Agency Memo as written indefinitely suspends FTJ refugee admissions.**

Throughout this litigation, Defendants have repeatedly tried to recast the FTJ provision of the Agency Memo as a "temporary polic[y]" that would only affect individuals "for a finite period," *id.* at 2, 5 n.2, a "pause in admissions," Defs.' Opp'n to Pl. Doe's Mot. for Prelim. Inj. at 1, Dkt. # 51; or merely an "implementation period" that concluded in February 2018. *Id.* But the Agency Memo—*as Defendants chose to write it*—did not set any time limits on the FTJ provisions. This fact alone completely distinguishes this matter from *Trump v. Hawaii*, where the Supreme Court found that the challenged provisions of EO-2 had "expired by [their] own terms." 138 S. Ct. 377 (2017) (mem.) (alteration in original) (citation omitted). EO-2 specifically ordered that the Secretaries of State and Homeland Security "shall suspend travel of refugees . . . and [] decisions on applications for refugee status, for 120 days." EO-2 § 6(a), 82 Fed. Reg. 13,209, at 13,215. And although Defendants included in the Agency Memo a specific, 90-day time period for the SAO review,[25] no such end date—conclusive or even estimated—was provided with regard to the FTJ suspension.

Not until *Doe* Plaintiff Joseph Doe filed his motion for preliminary injunction did Defendants raise the possibility that FTJ suspension might end at a not-too-distant date. But even as late as January 31, 2018, Defendants would not commit to when that date might be, asserting

---

[25] While the SAO *review* was to last no more than 90 days, the Agency Memo was silent on how long the SAO *suspension* would last. *See* JFS Opp. at 2-3, 16-17.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

that "the implementation of the additional procedures for following-to-join refugees set forth in the Joint Memorandum *is expected to be completed on or about February 1, 2018*." Defs.' Notice at 2 (emphasis added). Post-litigation "maneuvers designed to insulate a decision from review by [a] [c]ourt must be viewed with a critical eye." *Knox*, 567 U.S. at 307.

Even Defendants' own briefing has acknowledged that "the Agency Memo indefinitely suspended processing of FTJ refugee applications." De Vries Decl. Ex. D (Defs.' Appeal Mot.) at 4. And the Court has already rejected Defendants' after-the-fact re-casting of the FTJ suspension, holding that "[t]he Agency Memo indefinitely suspends the entire FTJ refugee program." *Doe v. Trump*, 288 F. Supp. 3d at 1075. Choosing to craft the Agency Memo as they did, Defendants are stuck with the Agency Memo as written—because neither have they rescinded or officially modified the Agency Memo. The Court should once reject both Defendants' post-hoc attempt to write in term limitations to the FTJ program suspension as well as their claim that the FTJ suspension simply expired on its own terms.

### (ii)   The Nielsen Memo does not negate the FTJ provisions of the Agency Memo.

The Nielsen Memo does not save the day for Defendants. They assert that the Nielsen Memo does not continue the pause on FTJ refugee admissions that the enjoined Agency Memo had prescribed, pointing out that "the [Nielsen Memo] stated that the '90-day review of SAO countries . . . is no longer in effect by its terms, and the prioritization set forth in the [Agency Memo] is not hereby renewed." MTD at 4 (first alteration in original) (quoting Nielsen Memo at 3). That Defendants specifically included language in the Nielsen Memo making it clear that they were not renewing the SAO-review-related provisions[26] only highlights that Defendants have, once again, chosen *not* to affirmatively disavow the mechanism of indefinite suspension of FTJ processing. Just as they easily could have chosen to write the Agency Memo with a defined term limit for the FTJ program suspension (but did not), they easily could have included in the

---

[26] *See supra* n.25.

Nielsen Memo what they did for the SAO review, *e.g.* "the FTJ suspension set forth in the Agency Memo is not hereby renewed." Nielsen Memo at 3. But they did not. In fact, the Nielsen Memo makes no mention at all of the FTJ provisions. The Nielsen Memo lends nothing to the FTJ analysis.

Defendants assert that "[t]he FTJ implementation period concluded on February 1, 2018." MTD at 10. To the extent the FTJ program suspension has been lifted or the implementation period concluded, it is only because Defendants voluntarily chose to conclude it, not because the terms of the Agency Memo expired or were superseded. Even if this Court were to find that discovery is unnecessary because Defendants have resumed FTJ admissions, the case would still not be moot.

### b.  Defendants' Actions Can Reasonably Be Expected to Recur.

Defendants bear a "formidable burden" to show that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190. Far from satisfying their formidable burden to demonstrate that their unlawful conduct will not recur, Defendants simply repeat that "[t]he FTJ implementation period concluded on February 1, 2018." MTD at 10. Recitation of this mantra is not enough. Again, what Defendants do *not* say speaks louder than what they do repeatedly say: their refusal to affirmatively rescind the Agency Memo or represent to the Court that they will not implement any FTJ suspension under similar circumstances in the future speaks volumes. They continue to leave open the possibility that they can abandon their current approach or revert to their prior policy at any time and, thus, this case is not moot. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (holding that the State of Missouri's change to the challenged policy did not moot the case where the State faced no barrier to reverting to its prior policy); *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) ("[W]e are less inclined to find mootness where the 'new policy . . . could be easily abandoned or altered in

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 17
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

1   the future.'") (alteration in original) (citation omitted).

2       For Defendants to meet their burden through a policy change, they must show that the

3   change is "entrenched" and "permanent." *See Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir.

4   2013) (citing *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)). In *Bell*, the Ninth Circuit

5   distinguished prior precedent in which a policy change was found to meet this standard "based

6   on the broad scope and unequivocal tone of the new policy." *Id.* (discussing *White*, 227 F.3d

7   1214). The new policy in *White* had been renewed annually for over five years and addressed all

8   of the plaintiffs' objections. *Id.* Similarly, in *America Cargo Transport, Inc. v. United States*, 625

9   F.3d 1176, 1179 (9th Cir. 2010), the government adopted the plaintiff's position. Defendants

10  have done none of these things.

11      Furthermore, when determining whether "there exists some cognizable danger of

12  recurrent violation," a court should consider "the bona fides of the expressed intent to comply,

13  the effectiveness of the discontinuance and, in some cases, the character of the past violations."

14  *W.T. Grant Co.*, 345 U.S. at 633. Each of these factors weighs against mootness.

15      Defendants have no bona fides when it comes to refugee admissions; indeed, they

16  continue to defend the legitimacy of the FTJ suspension. From the inception of the Agency

17  Memo and throughout this litigation, Defendants have had numerous chances to rescind or

18  renounce the indefinite nature of the FTJ provisions of the Agency Memo. They have not done

19  so. As the Supreme Court has observed, where a party continues to defend the legality of a

20  challenged policy, it is not clear why the party would necessarily refrain from taking similar

21  action in the future.[27] *See Knox*, 567 U.S. at 307.

22

23  ──────────────
    [27] As the Supreme Court has explained, the mootness exception's "repetition" prong does not require "the
24  possibility that the *selfsame* statute will be enacted" in identical form. *Ne. Fla. Chapter of Associated Gen.
    Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). "[I]f that were the rule, a defendant could
    moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant
25  respect." *Id. See also FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 463 (2007) (doctrine does not require
    "repetition of every 'legally relevant' characteristic" of the case). The Ninth Circuit has found sufficient repetition
26  in, for example, "a substantially similar preference program . . . alleged to disadvantage [the plaintiffs] 'in the
    same fundamental way' as the previous program." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v.*

    ──────────────
    *DOE* PLS.' OPP'N TO DEFS.'          AMERICAN CIVIL LIBERTIES UNION          KELLER ROHRBACK L.L.P.
    MOT. TO DISMISS AND                  OF WASHINGTON FOUNDATION               1201 Third Avenue, Suite 3200
    DISSOLVE PRELIM. INJ. AS             901 Fifth Avenue, Suite 630            Seattle, WA 98101-3052
    MOOT - 18                            Seattle, WA 98164                      Tel.: (206) 623-1900
    (2:17-cv-00178-JLR)                  Tel.: (206) 624-2184                   Fax: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants' assertions that their unlawful conduct has ceased is insufficient to satisfy

their burden of demonstrating that the conduct will not recur, particularly since EO-1, EO-2, EO-

3, and the Agency Memo demonstrate Defendants' practice of imposing serial blanket bans

against refugees any time they review vetting procedures, without evidence of the necessity or

efficacy of such a ban. "It is the duty of the courts to beware of efforts to defeat injunctive relief

by protestations of repentance and reform, especially when abandonment seems timed to

anticipate suit, and there is probability of resumption." *United States v. Or. State Med. Soc'y*,

343 U.S. 326, 333 (1952). Here, Defendants have failed even to offer protestations of repentance

and reform.

The situation here parallels that in *Olagues*, an appeal involving a United States

Attorney's investigation of foreign-born, naturalized citizens requesting bilingual ballots,

allegedly in violation of the Voting Rights Act. Although the investigation had ceased by the

time of the appeal, the Ninth Circuit ruled that the exception to mootness applied. First, the

defendant "at all times continued to argue vigorously that his actions were lawful." 770 F.2d at

795. Second, there was no showing that a similar investigation against the same groups would

not recur, and the defendant was empowered to conduct such future investigations. *Id.* Finally,

other factors weighed against mootness, including the fear engendered by the investigation, the

possibility of a chilling effect on the plaintiff organizations without a determination of the

legality of the investigation, and the "significant public interest" in addressing the separation-of-

powers questions raised. *Id.*

Defendants cite *Renee v. Duncan* for the proposition that appellate courts have "held that

a case can be moot when a challenged statute or regulation is repealed, expires, or is amended to

remove the challenged language." MTD at 7 (quoting *Renee v. Duncan*, 686 F.3d 1002, 1016

(9th Cir. 2012) (citation omitted). But this case involves neither a statute nor regulation, and the

---

*Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (quoting *City of Jacksonville*, 508 U.S. at 662). A "recurrent violation" is not limited to an exact repeat of provisions of the Agency Memo.

policy in question here has not been repealed, expired or amended to remove the offending

language. Defendants' reliance on other cases involving statutory changes is similarly misplaced.

*See* MTD at 7-8 (citing *Burke v. Barnes*, 479 U.S. 361 (1987), and *Log Cabin Republicans v.*

*United States*, 658 F.3d 1162 (9th Cir. 2011)). "[W]hile a statutory change 'is usually enough to

render a case moot,' an executive action that is not governed by any clear or codified procedures

cannot moot a claim." *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) (quoting *Bell*,

709 F.3d at 898-900). In *Bell*, the Ninth Circuit explained that an internal policy of a local

government agency "is not a formal written enactment of a legislative body and thus was not

subject to any procedures that would typically accompany the enactment of a law." 709 F.3d at

900. Thus, even assuming a lack of intent to resume the challenged conduct, "the ease with

which the [defendant] could do so counsels against a finding of mootness," in contrast to cases in

which a statute (which went through an appropriate process, unlike the Agency Memo here) was

repealed or expired. *Id.*

Finally, Defendants' reliance on *Worth v. Jackson*, MTD at 7, is worth little: that case

involved an unchallenged agency affidavit where the government explicitly stated the agency

would not renew the challenged policy. 451 F.3d 854, 861 (D.C. Cir. 2006). In contrast,

Defendants have continued to defend the lawfulness of their actions and have never explicitly

stated they would not renew the challenged policy. Nothing in Defendants' actions suggests an

"entrenched" and "permanent" policy change. Given this, combined with the significant public

interest in the legality of the government's actions, Defendants cannot meet their formidable

burden, and Plaintiffs' claims are not moot.

### 2.   Defendants' Suspension of Follow-to-Join Procedures Is Capable of Repetition yet Evading Review.

Defendants' actions also fall into the well-established exception to mootness for

circumstances capable of repetition yet evading review, which "applies where '(1) the challenged

action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there

1   is a reasonable expectation that the same complaining party will be subject to the same action

2   again.'" *FEC*, 551 U.S. at 462 (citation omitted).

3         Although the FTJ suspension at issue was indefinite (as opposed to expiring on its own

4   terms), Defendants' own pleadings demonstrate that they have structured the suspension and this

5   litigation to be capable of repetition but evading review. The suspension is indefinite on its face

6   but implemented as a short-term suspension even more ill-defined than the term-limited

7   suspensions Defendants favor elsewhere. That this structure gives Defendants more flexibility to

8   evade review is confirmed precisely by the instant motion: Defendants lifted the suspension in

9   response to the Court's preliminary injunction and argue the injunction is therefore moot before

10  completion of judicial review.

11        Plaintiffs here can also demonstrate a reasonable expectation that FTJ refugees will be

12  subject to the same action again. Not only have Plaintiffs proffered evidence of non-compliance

13  with the injunction, Defendants are likely to re-suspend the FTJ program during review periods

14  because they have done exactly that over these past eighteen months. And in EO-4, Defendant

15  Trump ordered an annual review of actions taken to address security risks. EO-4 § 3(a)(ii), 82

16  Fed. Reg. 50,055, at 50,057. Defendant Trump has not only long made his irrational prejudice

17  against refugees amply clear but also openly discussed his disdain for Court precedents regarding

18  the travel ban. *See supra* Section II; TAC ¶¶ 191-95, 209 -21, 255, 261, 266-73, 276-94. The

19  other Defendants have made it clear they will implement his instructions. TAC ¶¶ 140-49, 273.

20  And the Nielsen Memo directs continued review to "[i]dentify whether there are additional

21  indicators that would trigger a 'deep dive' review by vetting agencies" in addition to a

22  continuing, indefinite review of the SAO list—making it likely that this same situation will arise

23  again. Nielsen Memo at 3-4.

24        Not once during this entire litigation have Defendants ever said that they would not

25  suspend the FTJ program during future reviews or in any way indicated that they would not

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 21
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

renew the provisions of the Agency Memo regarding FTJ admissions. Even where a party has promised to refrain from future violations, such a profession alone is wholly insufficient to demonstrate mootness. *See, e.g.*, *TRW, Inc. v. FTC*, 647 F.2d 942, 953 (9th Cir. 1981) ("promises to refrain from future violations, no matter how well meant, are not sufficient to establish mootness"); *W.T. Grant Co.*, 345 U.S. at 633 ("Here the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot[.]"). Here, Defendants neglect even to offer a pro forma assurance, much less rescinded or renounced the Agency Memo. They are free to repeat the suspension contemplated by the Agency Memo, free to lift the suspension upon being sued, and free again to argue mootness before judicial review can be completed.

## IV.   CONCLUSION

Defendants have failed to establish evidence sufficient to demonstrate that the restoration of the status quo ordered by the Court has been accomplished. The Court should order the discovery necessary to make this determination. In addition, the Court should deny Defendants' Motion to Dismiss as premature until they can meet their heavy burden to demonstrate that it is impossible for the Court to grant any effective relief whatsoever to Plaintiffs.

Should the Court reach the question of mootness, the Court should deny Defendants' Motion to Dismiss because any asserted mootness is the result of voluntary cessation, and Defendants have not satisfied their formidable burden to show that there will be no recurrent violation. The Court should also hold that Defendants' actions are particularly capable of repetition in light of their stated intention to conduct future periodic reviews, coupled with their repeated use of "temporary" suspensions and bans accompanying "reviews" of USRAP.

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 22
(2:17-cv-00178-JLR)

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

DATED this 19th day of June, 2018.

KELLER ROHRBACK L.L.P.

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION

By: /s/ Lynn Lincoln Sarko _____
By: /s/ Tana Lin _____
By: /s/ Amy Williams-Derry _____
By: /s/ Derek W. Loeser _____
By: /s/ Alison S. Gaffney _____

By: /s/ Emily Chiang _____
    /s/ Lisa Nowlin _____
    Emily Chiang, WSBA # 50517
    Lisa Nowlin, WSBA # 51512
    901 Fifth Avenue, Suite 630
    Seattle, WA  98164
    Tel.: (206) 624-2184
    Email: echiang@aclu-wa.org
            lnowlin@aclu-wa.org

    **Attorneys for Plaintiffs**

    Lynn Lincoln Sarko, WSBA # 16569
    Tana Lin, WSBA # 35271
    Amy Williams-Derry, WSBA # 28711
    Derek W. Loeser, WSBA # 24274
    Alison S. Gaffney, WSBA # 45565
    1201 Third Avenue, Suite 3200
    Seattle, WA  98101
    Tel.: (206) 623-1900
    Fax: (206) 623-3384
    Email: lsarko@kellerrohrback.com
            tlin@kellerrohrback.com
            awilliams-derry@kellerrohrback.com
            dloeser@kellerrohrback.com
            agaffney@kellerrohrback.com

By: /s/ Laurie B. Ashton _____
    Laurie B. Ashton (admitted *pro hac vice*)
    3101 North Central Avenue, Suite 1400
    Phoenix, AZ  85012-2600
    Tel.: (602) 248-0088
    Fax: (602) 248-2822
    Email: lashton@kellerrohrback.com

By: /s/ Alison Chase _____
    Alison Chase (admitted *pro hac vice*)
    1129 State Street, Suite 8
    Santa Barbara, CA  93101
    Tel.: (805) 456-1496
    Fax: (805) 456-1497
    Email: achase@kellerrohrback.com

    **Attorneys for Plaintiffs/Cooperating
    Attorneys for the American Civil Liberties
    Union of Washington Foundation**

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 23
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

1
2

## CERTIFICATE OF SERVICE

3          I hereby certify that on June 19th, 2018, I electronically filed the attached document with

4    the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

5    the email addresses on the Court's Electronic Mail Notice List.

6    DATED this 19th day of June, 2018.

7
                                          KELLER ROHRBACK L.L.P.
8
9
10                                     By: /s/ Tana Lin
                                          Tana Lin, WSBA # 35271
11                                        1201 Third Avenue, Suite 3200
                                          Seattle, WA  98101
12                                        Tel.: (206) 623-1900
                                          Fax: (206) 623-3384
13                                        Email: tlin@kellerrohrback.com

14                                        *Attorney for Plaintiffs/Cooperating*
                                          *Attorney for the American Civil*
15                                        *Liberties Union of Washington*
                                          *Foundation*
16
17
18
19
20
21
22
23
24
25
26

*DOE* PLS.' OPP'N TO DEFS.'
MOT. TO DISMISS AND
DISSOLVE PRELIM. INJ. AS
MOOT - 24
(2:17-cv-00178-JLR)

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA  98164
Tel.: (206) 624-2184

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384