THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE, et al., | CASE NO. C17-0178JLR |
| Plaintiffs, | |
| v. | **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO COMPEL** |
| DONALD TRUMP, et al., | |
| Defendants. | |
| JEWISH FAMILY SERVICE, et al., | CASE NO. C17-1707JLR |
| Plaintiffs, | |
| v. | (RELATING TO BOTH CASES) |
| DONALD TRUMP, et al., | |
| Defendants. | |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000

At issue in Plaintiffs' Joint Motion to Compel (hereinafter, "Motion" or "Mot."), ECF No. 166, is whether the discovery Plaintiffs seek is relevant to questions of jurisdictional fact and proportional to the needs of the case. *Id.* at 2-3. Defendants' Opposition ("Op."), ECF No. 169, scarcely engages with that standard, and instead seeks to distract from the mounting evidence that the government failed to heed this Court's order to take those steps necessary to undo the unlawful suspensions. Beyond baseless process complaints, Defendants try to explain away the inconsistencies in the documents and data they previously deemed more than adequate to evaluate their injunction compliance through the submission of *four* new fact declarations. In so doing, Defendants both concede that the written discovery thus far raises legitimate questions and continue to expose even more concerns, further underscoring why the four depositions and six interrogatories that Plaintiffs have requested are necessary. To the extent Defendants engage with the discovery standard, their arguments about burden are belied by the record. Finally, Defendants fail to meet the requirements for their privilege claim, and their reasons for withholding "non-responsive" information are counter-factual. The Court should grant Plaintiffs' Joint Motion.

1.   Defendants' argument that Plaintiffs did not satisfy their meet-and-confer obligations, Op. at 2-5, is supported by neither the record nor legal authority. The parties have been in continual contact over the course of the compressed discovery period, and specifically have discussed Defendants' objections to the discovery on which Plaintiffs moved to compel. *See* Exs. 27, 31-37, 39, & K; Keaney Decl. ¶ 62.[1] As to the depositions, Plaintiffs asked for Defendants' position well before filing the Motion, Ex. 32; Defendants replied that they "doubt[ed]" that they would be amenable to producing deponents and would "likely need to seek guidance from the Court." Ex. 33. When Plaintiffs requested that Defendants specify their objections to the depositions, Ex. 34, Defendants did not do so, but represented that the parties' disagreements regarding depositions and other issues were "sufficiently defined" to bring to the Court, Ex. K. The next day, the parties worked out an agreement to brief the issues addressed in the Motion, including the four depositions, *see* Ex. 39, and the parties' meet-and-confer obligations were satisfied. *See, e.g.,*

---

[1] For the Court's reference, Exhibits numbered 1 through 38 are at ECF No. 167-2; Exhibits lettered A through O are at ECF No. 169-1 through ECF No. 169-15; and Exhibits numbered 39 and 40 are attached to the instant filing.

PLS.' REPLY ISO JOINT MOTION TO COMPEL
(No. 17-cv-0178-JLR; No. 17-cv-1707-JLR) – 1
142103459.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000

1    *Rosario v. Starbucks Corp.*, 2017 WL 5999634, at *2 (W.D. Wash. Dec. 4, 2017); *Signatours*

2    *Corp. v. Hartford*, 2016 WL 2930435, at *2 n.1 (W.D. Wash. May 19, 2016).

3         Even after that briefing agreement was in place, Plaintiffs' counsel requested a phone call

4    "to take one more shot at narrowing the issues on which we presently disagree." Ex. 39. During

5    that call, Defendants stated they would oppose any pure fact depositions on proportionality

6    grounds, *see* Ex. 36, but requested that Plaintiffs serve Rule 30(b)(6) notices so they could further

7    consider their position, and Plaintiffs did so, *see* Keaney Decl. ¶ 42; Ex. 2. Defendants responded

8    on October 19, to demand that Plaintiffs articulate the "specific questions" they want to ask in the

9    Rule 30(b)(6) depositions, so that Defendants could "try to determine" whether they would be

10   willing to offer a compromise. Ex. 35. Rule 30(b)(6) requires parties to identify the "the matters

11   for examination," not provide a deposition outline, and Defendants have never claimed the notices

12   fall short of that standard. Plaintiffs therefore declined to accede to Defendants' demand but did

13   explain further why they believed depositions of agency personnel are necessary. Ex 36. That the

14   parties again reached an impasse on this issue does not suggest that Plaintiffs were playing

15   "games," as Defendants accuse, but that the parties have a disagreement that is ripe for review.

16        Defendants' suggestion that they may not have been on notice of Plaintiffs' concerns

17   regarding their injunction compliance, Op. at 2-3, is difficult to credit. The factual and legal bases

18   for Plaintiffs' narrow jurisdictional discovery requests have been extensively ventilated over

19   multiple rounds of briefing over the last ten months. Plaintiffs were not obligated to explain to

20   Defendants' counsel the documents Defendants produced about their own actions, and Defendants

21   do not cite any authority to the contrary. Moreover, Plaintiffs did alert Defendants' counsel to the

22   fact that the documents were not fully consistent with Defendants' prior representations, and

23   explained that the deposition notices and interrogatories reflect areas that raised concerns for

24   Plaintiffs after their review of the written discovery. *See* Exs. 32, 34, 36.

25        Defendants' attacks on the Keaney Declaration, Op. at 1-2, are also meritless. The issues

26   the Declaration describes—the parties' prior correspondence and discussion, and the information

27   Defendants have produced—are ones of fact. Defendants assert that it is "replete with improper

28   argument," but do not cite a single example. A review of the declaration demonstrates that its

PLS.' REPLY ISO JOINT MOTION TO COMPEL
(No. 17-cv-0178-JLR; No. 17-cv-1707-JLR) – 2

assertions are factual, and generally both explain and authenticate the underlying documents substantiating the factual assertions. Defendants do cite examples in support of their characterization of the Declaration as "misleading," but those citations show the opposite.[2]

2.   Defendants do not substantiate the claim that Plaintiffs' Fourth Set of Interrogatories impose an undue burden. The third Gauger Declaration (Ex. A) details the time PRM/A spent responding to *past* interrogatories,[3] but conspicuously absent is any estimate of the time needed to respond to the six in the Fourth Set.[4] While Plaintiffs are sympathetic to USRAP being under-resourced, *see* Ex. A ¶¶ 3 & 6, that self-inflicted injury is not a legitimate basis for an undue burden objection. *See, e.g.*, *Costantino v. City of Atlantic City*, 152 F. Supp. 3d 311, 328 (D.N.J. 2015) (explaining at length how and why a governmental defendant "cannot shirk its responsibilities by failing to dedicate sufficient resources to respond to appropriate and necessary discovery").

Defendants' burden objection to the Rule 30(b)(6) depositions is premised on their assertion that the depositions would be duplicative of the written discovery, Op. at 5, but as Plaintiffs have explained, the opposite is true—the depositions are needed to resolve inconsistencies and address gaps in the written discovery Defendants have produced thus far.[5] *See* Mot. at 3-8; Ex. 36. Defendants' attempt to explain away those issues is remarkable, and demonstrates why the depositions are needed. Defendants represented to Plaintiffs that the written discovery they produced was more than adequate to assess mootness, Ex. 31, *see also* Ex. 30 at 2 (making the same representation in *advance* of producing anything); and claimed the documents

---

[2]  Defendants assert, for example, that the declaration misleads by stating that Defendants, in a letter dated August 7, "'altogether refus[ed] to respond' to RFP No. 3." Op. at 2 (quoting Keaney Decl. ¶ 6). Defendants' letter stated: "we **do not intend to respond to 'Request for Production No. 3' as written.**" Ex. 21 at 2 (emphases in original).

[3]  Defendants' complaints about the amount of time spent responding to those past interrogatories ignore both that those requests represented a narrowed version of Plaintiffs' third document request, served *at Defendants' request* and in lieu of Defendants responding to the third document request, *see* Keaney Decl. ¶¶ 7, 21-26; and that Plaintiffs relied on Defendants' counsel's representation that Defendants could respond to those interrogatories "without undue burden." Ex. 30; *see also* Ex. 36. While Defendants were seemingly mistaken in that assessment, Plaintiffs can hardly be faulted for relying on Defendants' representation.

[4]  There is reason to believe that they would not impose a significant burden; Defendants' new declarations reveal, for example, that they did not grant a *single* waiver to the Agency Memo's suspensions, Ex. C ¶ 5; Ex. D ¶ 6, which would mean the answer to Interrogatory No. 36 (Ex. 1 at 7) simply "None."

[5]  Defendants similarly object to the two proposed fact depositions as duplicative, Op. at 5, but ignore that Plaintiffs want to depose these witnesses specifically about their declarations that Defendants have submitted, which now total six. *See* Mot. at 10 & n.16. Additionally, while the Middle District of Alabama case Defendants cite, Op. at 5, is plainly inapposite, Plaintiffs have no objection to taking the 30(b)(6) depositions first and cancelling the fact depositions of Associate Director Higgins and Acting Director Gauger if the earlier depositions obviate their need.

PLS.' REPLY ISO JOINT MOTION TO COMPEL
(No. 17-cv-0178-JLR; No. 17-cv-1707-JLR) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000

they produced "show unequivocally that we complied with the injunction and no longer maintain any semblance of a 'ban' on processing/admissions of SAO and FTJ refugee applicants," Ex. 26 at 1. Yet, Defendants felt compelled to submit *four* new fact declarations, spanning nearly 30 pages, to try to address issues evident in those documents. Further demonstrating the inadequacy of Defendants' written discovery, the Ruppel Declaration (Ex. E) references at least three emails (including two in it its second paragraph) that Defendants have not produced to Plaintiffs.

Moreover, the new declarations make clear that additional discovery is necessary. The Ruppel Declaration, for example, clarifies that RSCs did not begin putting forward SAO cases for digital stamping until nearly three weeks post-injunction, Ex. E ¶ 3, which is consistent with Plaintiffs' concern that RSCs were not immediately instructed to stop following Defendants' pre-injunction guidance, *see* Mot. at 3. The same day that RSCs began putting forward SAO refugee cases for stamping, Defendants issued new instructions to USCIS officers to "hold off on stamping" SAO cases, an instruction that remained in place until February 2018. *Id.* ¶¶ 7-8. As a result, only 29 SAO cases near the end of processing were approved and stamped after the injunction but before the Nielsen Memo, *id.* ¶ 4—which caused, by ordering what became the Pipeline DHS Review ("PDR"), a new de facto suspension on all post-interview SAO cases that had not yet been approved,[6] *see id.* ¶¶ 9-13. Currently, more than 6,000 SAO cases in late stages of processing are completely stalled by the PDR. *See id.* ¶ 15.

Defendants' actions matter. John Doe 1 is an Iraqi refugee whose life is in danger because he served as an interpreter for the U.S. military. He was approved for resettlement and Ready For Departure ("RFD") when the Agency Memo was issued. *See JFS*, ECF No. 52. He has not traveled and inexplicably appears to be caught in the PDR, *see* Ex. 40, even though the PDR applies only to SAO nationals whose cases were not approved before January 29, 2018, Ex. E ¶ 10, and Defendants claimed his specific case was "processed" the first business day after the injunction, ECF No. 142 at 4. John Doe 1 and many others who were RFD on October 24, 2017 (including

---

[6] Defendants do not dispute that the PDR called for by the Nielsen Memo resulted in a new *de facto* suspension on SAO refugee processing. *Compare* Mot. at 4 (asserting as much); *with* Op. at 10-11 (responding only that the PDR is "beyond this lawsuit"); *but see* ECF No. 145 at 4 ("The Nielsen Memorandum did not . . . call for any other suspension or deprioritization of any classes of refugee applicants.").

PLS.' REPLY ISO JOINT MOTION TO COMPEL
(No. 17-cv-0178-JLR; No. 17-cv-1707-JLR) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000

many non-SAO nationals) should have benefited from this Court's injunction, but have yet to travel, and the reason(s) remain exceedingly unclear.[7]

3. Defendants' timeliness objection to the interrogatories and depositions, Op. at 6-7, ignores the relevant inquiry, which is whether there is good cause to modify the scheduling order to accommodate the requests. *See* Mot. at 9 (citing *Wealth by Health, Inc. v. Ericson*, No. C09-1444JLR, 2010 WL 11566111, at *3 (W.D. Wash. July 12, 2010)). As Plaintiffs have explained, *see id.*, they worked to process Defendants' discovery productions—virtually all of which represented new information to Plaintiffs—expeditiously, while also engaging Defendants about their search and claims of privilege. Given the uncontested record evidence of Plaintiffs' diligence, Defendants' timeliness objection is unjustified and good cause exists to modify the schedule.

4. Defendants fail to meet two procedural requirements for claiming the "law enforcement" privilege to withhold information about the 11 countries on the SAO list.[8] First, the privilege (assuming it exists) must be formally asserted "by the head of the department having control over the requested information." Mot. at 11 n.17 (citation omitted); *accord Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). Defendants instead proffer a declaration from J. Neal Latta, relying on authority purportedly delegated to him, *see* Ex. B ¶ 2, while providing no authority holding this delegation is permissible. Where courts allow this privilege to be claimed through delegation, they require it be accompanied by a delegation order and often guidelines for its use as well. *See generally Chao v. Westside Drywall, Inc.*, 254 F.R.D. 651, 656-58 (D. Or. 2009). "'These are not merely technical requirements,'" and the failure to fulfill them here means the privilege "does not apply." *Id.* at 658 (citation omitted).

Second, the Latta Declaration fails to explain why, when the information is in the public

---

[7] Only 4 FTJs who were RFD when the Agency Memo issued have been admitted since this Court's order, *see* Ex. F at 111-17, and those four are presumably Joseph Doe and his family members, who Defendants may have admitted in an attempt to moot his claims by creating an exception for them. *See* ECF No. 106 at 11-12 nn.9 & 10.

[8] Defendants wrongly claim this Court "previously indicated" they "need not reveal this information to litigate this matter," Op. at 7, as their own citation reveals. Defendants also misrepresent the protective order discussion. On October 4, Plaintiffs explained at length how *none* of Defendants' "law enforcement" privilege claims were adequate (including numerous covering non-SAO information), asked Defendants to re-evaluate them, and expressed a willingness to entertain an "appropriate protective order" covering anything legitimately privileged. Ex. 27 at 5-6. Defendants did not respond to that query for nearly *four weeks*—until more than a week after the Motion was filed— and even then, offered only the SAO information, and under an "attorneys' eyes only" protective order. *See* Ex. O.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000

domain, it nonetheless falls within the scope of the privilege. *See* Mot. at 11 n.17. It recites repeatedly that the government "publicly acknowledging" this information would be problematic, but these conclusory assertions are insufficient. *See, e.g.*, *Wagafe v. Trump*, 2017 WL 5990134, at *2 (W.D. Wash. Oct. 19, 2017); *see also Wagafe v. Trump*, 2017 WL 5989162, at *1 (W.D. Wash. Nov. 28, 2017) ("The Government may not merely say those magic words—'national security threat'—and automatically have its requests granted in this forum."). Moreover, the record reflects that the government *does* routinely and publicly reveal "information from which th[e] identities [of SAO countries] may be inferred," Latta Decl. ¶ 11—*see* ECF No. 132-1 at 2 (State Department email revealing that Iraq is on the SAO list), ECF No. 139-1 at 2 (same as to Somalia).

5.   Defendants' justification for redacting and withholding information they deem "nonresponsive" is based on their own "interpretation" of Plaintiffs' document request (over Plaintiffs' sustained objections), Op. at 9-10, and is contrary to its explicit text, *see* Mot. at 11-12. Defendants cannot rewrite Plaintiffs' request and then deem the information they withhold as "nonresponsive." Defendants cite no authority supporting their Kafkaesque approach.[9]

Defendants' assertion that "Plaintiffs demand a fishing expedition that invades individuals' privacy," Op. at 10, is counter-factual. *The information at issue here is limited*: literally all of it is contained within, attached to, or expressly referenced in already-produced documents that, per Defendants, reflect "final, formal guidance documents concerning the processing of SAO or [FTJ] refugee applicants." *Id.* at 9 (citation omitted, alteration in original). Nor do Defendants contest that a protective order would address the privacy concerns. *See* Mot. at 12; *see also* Ex. O (by way of compromise, offering a protective order covering both personally-identifiable information of refugees and the SAO information Defendants claim is privileged).[10]

Plaintiffs respectfully request that the Court grant their Joint Motion to Compel and issue their Proposed Order, ECF No. 166-1.

---

[9]  Defendants assert that "many courts" have held that "nonresponsive text included in or appended to a potentially responsive document" need not be produced, but they cite only out-of-Circuit cases holding that, in certain circumstances, *irrelevant* information may be redacted. Op. at 9-10 & n.9.  Relevance and responsiveness are not the same thing, and Defendants have never asserted that the withheld information is irrelevant.

[10]  Plaintiffs seek to correct an error in footnote 7 of page 6 of their Motion, which mistakenly said no SAO checks were "requested" for FTJ refugees outside of two RSCs, when it should have said "completed."

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | _/s/ Justin B. Cox_ |
| 3 | Linda Evarts, *Pro Hac Vice* |
| 4 | Mariko Hirose, *Pro Hac Vice* |
| 5 | Kathryn C. Meyer, *Pro Hac Vice* |

1   Respectfully submitted,

2   _/s/ Justin B. Cox_
    Linda Evarts, *Pro Hac Vice*
3   Mariko Hirose, *Pro Hac Vice*
    Kathryn C. Meyer, *Pro Hac Vice*
4   Deepa Alagesan, *Pro Hac Vice*
    International Refugee Assistance Project
5   40 Rector Street, 9th Floor
    New York, NY 10006
6   Tel: (646) 459-3044
    levarts@refugeerights.org
7   mhirose@refugeerights.org
    kmeyer@refugeerights.org
8   dalagesan@refugeerights.org

9   David Burman, WSBA No. 10611
    Lauren Watts Staniar, WSBA No. 48741
10  Tyler Roberts, WSBA No. 52688
    Perkins Coie LLP
11  1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
12  Telephone: 206.359.8000
    Facsimile: 206.359.9000
13  dburman@perkinscoie.com
    lstaniar@perkinscoie.com
14  troberts@perkinscoie.com

15  Elizabeth Sweet, *Pro Hac Vice*
    Mark Hetfield, *Pro Hac Vice*
16  HIAS, Inc.
    1300 Spring Street, Suite 500
17  Silver Spring, MD 20910
    Tel: 301-844-7300
18  liz.sweet@hias.org
    mark.hetfield@hias.org

19

20

21

22

23

24

25

26

27

28

DATED: November 9, 2018

Justin B. Cox, *Pro Hac Vice*
International Refugee Assistance Project
PO Box 170208
Atlanta, GA 30317
Tel: (678) 404-9119
jcox@refugeerights.org

Melissa S. Keaney, *Pro Hac Vice*
Esther H. Sung, *Pro Hac Vice*
National Immigration Law Center
3450 Wilshire Blvd, #108-62
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911
tumlin@nilc.org
keaney@nilc.org
sung@nilc.org

Lauren E. Aguiar, *Pro Hac Vice*
Mollie M. Kornreich, *Pro Hac Vice*
Abigail E. Davis, *Pro Hac Vice*
Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (212) 735-2000
lauren.aguiar@probonolaw.com
mollie.kornreich@probonolaw.com
abigail.sheehan@probonolaw.com

*Counsel for Plaintiffs Jewish Family Service, et al.*

PLS.' REPLY ISO JOINT MOTION TO COMPEL
(No. 17-cv-0178-JLR; No. 17-cv-1707-JLR) – 7
142103459.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000

| | | |
|---|---|---|
| 1 | AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION | KELLER ROHRBACK L.L.P. |

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION

By: /s/ Emily Chiang
   /s/ Lisa Nowlin
Emily Chiang, WSBA # 50517
Lisa Nowlin, WSBA # 51512
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Telephone: (206) 624-2184
Email:  echiang@aclu-wa.org
       lnowlin@aclu-wa.org

*Counsel for Plaintiffs Doe, et al.*

KELLER ROHRBACK L.L.P.

By: /s/ Lynn Lincoln Sarko
By: /s/ Tana Lin
By: /s/ Amy Williams-Derry
By: /s/ Derek W. Loeser
By: /s/ Alison S. Gaffney
Lynn Lincoln Sarko, WSBA # 16569
Tana Lin, WSBA # 35271
Amy Williams-Derry, WSBA # 28711
Derek W. Loeser, WSBA # 24274
Alison S. Gaffney, WSBA # 45565
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email:  lsarko@kellerrohrback.com
       tlin@kellerrohrback.com
       awilliams-derry@kellerrohrback.com
       dloeser@kellerrohrback.com
       agaffney@kellerrohrback.com

By: /s/ Laurie B. Ashton
Laurie B. Ashton (admitted pro hac vice)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012-2600
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
Email:  lashton@kellerrohrback.com

By: /s/ Alison Chase
Alison Chase (admitted pro hac vice)
1129 State Street, Suite 8
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497
Email:  achase@kellerrohrback.com

*Attorneys for Plaintiffs Doe, et al./Cooperating Attorneys for the American Civil Liberties Union of Washington Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, I caused to be electronically filed the foregoing document and all attachments and exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all of the registered CM/ECF users for this case.

DATED this 9th day of November, 2018.

*/s/ Tyler Roberts*

CERTIFICATE OF SERVICE
(No. 17-cv-0178-JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
T: 206.359.8000 / F: 206.359.9000