1          UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____

4
    JOHN DOES, et al.,              ) C17-0178-JLR
5                                   )
                   Plaintiffs,      ) SEATTLE, WASHINGTON
6                                   )
    v.                              ) February 20, 2019
7                                   )
    DONALD TRUMP, et al.,           ) Telephonic
8                                   ) Discovery
                   Defendants.      ) Conference
9   ---------------------------     )
                                    )
10                                  )
    JEWISH FAMILY SERVICES, et      )
11  al.,                            )
                                    )
12                 Plaintiffs,      )
                                    )
13  v.                              )
                                    )
14  DONALD TRUMP, et al.,           )
                                    )
15                 Defendants.      )

16

17  _____

18          VERBATIM REPORT OF PROCEEDINGS
          BEFORE THE HONORABLE JAMES L. ROBART
19           UNITED STATES DISTRICT JUDGE
    _____

20

21  APPEARANCES:

22

23   For the Plaintiffs:    Justin B. Cox
                            International Refugee Assistance
24                          Project
                            PO Box 170208
25                          Atlanta, GA  30317

    Stenographically reported - Transcript produced with computer-aided technology

```
 1     For the Defendants:      Joseph C. Dugan
                                U.S. Department of Justice
 2                              Civil Division, Federal Programs
                                Branch
 3                              1100 L. Street, NW
                                Room 11212
 4                              Washington, DC  20005

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        THE COURT:  Good morning, counsel, this is Judge

2   Robart.  May I have appearances by the two lawyers who are

3   going to be speaking?

4        MR. COX:  Good morning, Your Honor.  This is Justin

5   Cox, I'll be speaking for the plaintiffs in these

6   consolidated cases.

7        THE COURT:  Thank you.

8        MR. DUGAN:  Good morning, Your Honor.  Joseph Dugan,

9   with the Department of Justice Civil Division, on behalf of

10  the defendants.

11       THE COURT:  Thank you, counsel.  Good morning.

12   Thank you for participating in the letter briefing,

13  Western District procedure.  We find many times we can

14  resolve these matters more expeditiously.  And so we tend to

15  do this.

16   I want to do this a bit differently, in that I'm going to

17  give you some tentative conclusions that we've reached, and

18  then I'm going to ask each side some questions.  And my

19  thought is that you'll have a better idea how to answer the

20  questions and what are the court's real concerns if I do

21  that.

22   First, in regards to the depositions, it seems to me that

23  the government is contending that the deliberative-process

24  privilege protects the questions that are being asked in the

25  depositions.  That's subject to that four-part test.  And we

1    have two depositions in this.  In regards to Ms. Gauger, that

2    appears to us to not be subject to the privilege; and

3    consequently, we probably would allow those questions.

4        In regards to Ms. Higgins, I don't think that the

5    plaintiffs have put forth a sufficient showing, at least at

6    this point.  And so we would be inclined to allow or credit

7    those objections.

8        And then you also raised this question in regards to this

9    one issue in which the law enforcement privilege is alleged.

10   And, frankly, I don't think we have enough knowledge about

11   that to be able to rule.  But having read the plaintiffs'

12   letter, it's not clear to me that they're asking the court to

13   do anything in regards to it.  So, if you are, I need to know

14   that.  And then, secondly, it may be that we just need to

15   send it out here and let me take a look at it and see how it

16   relates to the claimed privilege.

17       So, with that as some basis for where I am, I'm going to

18   start, Mr. Cox, with you.  Will you explain to me, with some

19   detail and precision, how your questions to Ms. Higgins

20   relate to either mootness or jurisdiction?

21           MR. COX:  Yes, Your Honor.  So the questions to

22   Ms. Higgins are -- well, backing up slightly.  So with

23   regards to the agency memo, the defendants and their counsel

24   have represented repeatedly that the SAO distinction was a

25   product of this working group's review and report.

1          The NPR article on which Barbara Strack, who reported

2    directly to Ms. Higgins, demonstrates that those

3    representations were, at best, misleading.  And that, in

4    fact, the SAO suspension was dictated by the White House on

5    its concerns relating specifically to Somali refugees.

6          Now, one question we have is whether or not -- essentially

7    how far those instructions went.  We don't know, for example,

8    if these instructions are why our Somali refugee clients, why

9    their cases are not moving.  We don't know if there are other

10   such instructions that were effectively laundered through

11   this agency-memo process.

12         And so we think that the fact that the defendants have --

13   we think defendants have put this at issue by making these

14   factual representations to the court about the role of the

15   working group's review.  And so we think they've put it at

16   issue.  And so it seems a little odd to us that they're now

17   claiming that they can't test with the very factual

18   representations they made to this court, when here there's

19   clear evidence that those factual representations were at

20   least incomplete.

21              THE COURT:  It seems to me that you're well off into

22   "merits land" here, counsel.

23              MR. COX:  Well, Your Honor, there's certainly the

24   case that the nature of the legal violation is going to have

25   a bearing on the relief that's necessary to remedy it.  At

 1   some point it's certainly true that the two inquiries are

 2   somewhat related.  But the standard of relevance here -- and

 3   to be clear, defendants are not claiming this is not

 4   relevant, they were quite explicit in the deposition that

 5   they were not making a relevance objection.  And given that

 6   they've put it at issue, we think it's not privileged.

 7          THE COURT:  You state in your letter, "Plaintiffs

 8   need to understand why the agency memo suspended refugee

 9   processing, to understand whether defendants fully complied

10   with the preliminary injunction."

11      Try me one more time here.  Explain that statement to me.

12          MR. COX:  Sure.  So if the SAO suspension, if the

13   real purpose of the SAO suspension was to target Somali

14   refugees -- and as, you know, the public reporting

15   demonstrates that Somalia is on the list of eleven countries

16   that have to get this extra security check, if the purpose of

17   the SAO suspension was really to target Somalis, then we --

18   knowing that is going to inform us, the way that we look at

19   the way they implemented the injunction and what's been

20   happening to the Somali refugee clients since then.  That's

21   why we think that it's relevant, Your Honor.

22          THE COURT:  All right.  Let me give you one more

23   chance to boost your record here.  If your questions

24   concerning why the agency suspended refugees process in the

25   first place go to your underlying claims, then it seems to me

1    that that's really the question of the government's

2    implementation of the preliminary injunction.  And that

3    throws me back into merits.  Why am I wrong on that?  Other

4    than I've probably just confused you with what I said.

5              MR. COX:  I do confess a little confusion, Your

6    Honor.  But I think -- well, what I'll say --

7              THE COURT:  Let me try this:  It seems to me that why

8    the agency suspended the refugee process, that question goes

9    to your underlying claims and not to the government's

10   implementation of the preliminary injunction.  Why am I wrong

11   with that?

12             MR. COX:  I think that Your Honor is -- I would not

13   disagree -- I guess what I'll say is this, Your Honor:

14   Whether or not the case is moot depends on a few factors.

15   One of them is whether or not the effects of the suspension

16   are continuing.  And the effects can be continuing because

17   defendants violated the preliminary injunction.  And I think

18   that we'll be briefing that at some point in the future.  But

19   that's not the only reason that the case can -- the effects

20   of the suspension could be continuing.

21       And it's concerning to us that the government and counsel

22   represented something to the court and to the world about why

23   the suspension was taking place, that it doesn't look like is

24   true.  And so this isn't a long line of questioning that we

25   want to ask.  We just simply want to ask Ms. Higgins, like,

1    isn't it true that the White House directed this?  What else

2    did they direct?  Because we think that it is relevant to the

3    question of whether or not the suspension, the SAO suspension

4    in particular, whether or not the effects of it are

5    continuing to this day, such that this case is not moot,

6    regardless of whether or not it relates specifically to the

7    implementation of the preliminary injunction.

8         THE COURT:  All right.  Let's move on to the document

9    for a moment.  Are you moving to compel production?  You

10   don't say that in your letter.

11        MR. COX:  Yeah, we got sandbagged on this one a

12   little bit, Your Honor.  On Sunday we e-mailed with opposing

13   counsel, and we all seemed to agree that the issues that were

14   going to be addressed were the privilege issues that we

15   addressed in our memo.  And the first time that we knew that

16   defendants wanted to brief this issue is when we saw it in

17   the letter brief -- in their letter brief.

18        So the document they're talking about is a spreadsheet

19   that was first produced, I don't know, six months ago, maybe.

20   And the columns that they have redacted, they have never --

21   the very first time they claimed that that column was

22   privileged was in the letter brief to Your Honor.  It had

23   never appeared on any of defendants' privilege logs.  And so

24   we think that is -- and so on February 4th when defendants

25   produced the documents that this court ordered them to

1    produce, following the grant of the motion to compel, they

2    reproduced that spreadsheet and listed some redactions, but

3    not that column.

4        And so we brought it to their attention on February 5th

5    that that document -- we don't understand why that document

6    continued to have redactions.  On Sunday we exchanged e-mails

7    with opposing counsel, and we were informed that defendants

8    were still working on their position as to that document.

9    And the very first time that they articulated that position,

10   again, was in the letter briefing.

11       And so we certainly think that the document should be

12   produced.  We'd like it to be produced immediately so that we

13   can question the witness that we have here today, if need be,

14   about it.  But, that said, Your Honor, I certainly appreciate

15   what Your Honor said about not having sufficient information

16   to rule on this.  So if the court is not inclined to order it

17   to be produced immediately because of the failure for six

18   months to claim privilege, then we would certainly request

19   the opportunity to brief the issue.

20            THE COURT:  All right.  Mr. Dugan, I'd like you to

21   address the document for a moment, then I'll give you a

22   chance to talk about the deposition question.  What's the

23   government's position on the document?

24            MR. DUGAN:  We have a slightly different view of the

25   chronology from the plaintiff.  The reason why we included

1   this very short discussion in our letter brief was because we

2   were under the impression that plaintiffs were going to bring

3   this matter to the court's attention in their letter brief.

4   And the reason we were under that impression is because in

5   the e-mail exchange that Mr. Cox mentioned, I understood the

6   plaintiffs to be saying if we did not list the redaction,

7   they were going to bring the documents to the court's

8   attention.

9       It is possible that I misread or misunderstood Mr. Cox's

10  e-mail.  But since this call was set up and since the letter

11  brief was set up, we inferred, on the defense side, that if

12  we didn't get the redaction off the document in time, this

13  would end up in plaintiffs' letter.  So we just wanted to

14  make sure we included a discussion, albeit a fairly

15  abbreviated discussion of the issue in our letter.

16      The government's position is that if the plaintiffs are

17  open to a further meet-and-confer type discussion about dates

18  and redactions, we can do that.  If the plaintiffs would like

19  to submit the documents for the court's inspection, I don't

20  think we would have any problem with that.  But the redacted

21  column is sensitive for the reasons that I briefly discussed

22  in the letter.  But I appreciate that it's difficult for the

23  court to assess, I guess the fulsomeness of our concerns, if

24  the court doesn't have the document in front of the court.

25      But from the government's perspective, it doesn't -- we're

1  not asking the court to rule on this.  This is essentially a

2  protective insertion in our brief.

3        THE COURT:  All right.  Counsel, I'm going to ask you

4  to do the following:  I'm going to deny, if there was a

5  motion to compel, which seems to be uncertain, and order you

6  to go back to meet-and-confer.  If you are unable to reach an

7  agreement, then I would ask you to file a written motion, and

8  as part of that produce the document in camera for the court.

9     Excuse me, I have a cold these days.  That's the best

10  resolution I can come up with out of that question.

11     Mr. Dugan, I'd like to hear you on the depositions now,

12  please.

13        MR. DUGAN:  Yes, Your Honor.  Would you like me to

14  discuss the Higgins or the Gauger deposition first?

15        THE COURT:  Well, give me your reason why I'm not

16  correct in the question of Ms. Gauger -- I assume it's

17  Ms. Gauger -- then talk about Higgins.

18        MR. DUGAN:  Yes, Your Honor.  So with respect to

19  Ms. Gauger, there were one or possibly two questions where we

20  asserted deliberative-process privilege.  One question where

21  we clearly did, and the second question it was a little

22  muddled.  The question where we clearly asserted

23  deliberative-process privilege was, "Was there any discussion

24  of whether PRM needed to add a certain number of interviews

25  in order to comply with the injunction?"

1    Now, we, I think, would concede that the scheduling of

2  circuits rides and interviews is highly relevant to

3  plaintiffs' theory of the case as we understand it, and as

4  well the court's preliminary injunction order and order of

5  January 9th denying our motion to stay.  So we wouldn't

6  dispute that testimony about circuit rides, where they

7  occurred, maybe details about coming for interviews.  That

8  would all be fair game.

9    This specific question seems to us to implicate core

10  deliberative material, in the sense that, as I understand the

11  question, plaintiffs are asking about internal conversations,

12  about whether the injunction required, again, a certain

13  number of interviews.

14    Not only did that question strike the government as

15  seeking an improper legal conclusion from a non-lawyer

16  witness, it likely would have implicated attorney-client

17  privilege, to the extent that either agency counsel or DOJ

18  litigation counsel weighed in on that question.  And it

19  certainly implicates the deliberative-process privilege.

20    Now, I'm aware of the *F.T.C.* -- the *Warner* factors

21  plaintiffs cited in their discovery letter.  So I think the

22  question then becomes, all right, if it's core deliberative

23  material, have the plaintiffs nevertheless made a showing

24  that they, I guess, need it, or that it's highly relevant to

25  their analysis of the mootness issue.

1      Frankly, I just don't see how it is.  And this brings me

2  back into Your Honor's discussion with Mr. Cox.  I think the

3  salient question generally in these depositions is, what does

4  the government do?  Not, what are the different internal

5  conversations, perhaps with counsel, or perhaps among

6  policymakers or operators.  The question is, what do we do?

7  Not, what did we contemplate or what did we discuss?  Because

8  ultimately, regardless of what the conversations were, this

9  court is going to assess the government's compliance in what

10  I understand to be plaintiffs' future motion practice, or

11  anticipated motion practice, based on what we did.

12      We could have had a conversation about having circuit

13  rides all over the world.  But it wouldn't make any

14  difference.  What matters is where did they actually go and

15  what does the court understand about our obligations under

16  the court's two orders of December and January?

17      The other question for Ms.  Gauger, again, it was a little

18  unclear whether this was really an invocation of privilege,

19  the question was, "Did you consider adding other countries

20  besides the ones listed?"  And I objected and said, "I would

21  instruct the witness not to answer.  That being said, if the

22  question is just what the witness considered, she can

23  answer."  And then plaintiffs' counsel said, the question is,

24  just:  Did you personally consider adding other countries?

25      So I think the witness answered that question.  But if the

1    plaintiffs were trying to get the witness to answer what PRM

2    considered, or what other state departments considered, I

3    would say that question is improper for the same reasons that

4    I just described.  Internal deliberations and considerations

5    are not what matters for the mootness inquiry; however, they

6    might be for some hypothetical merits claim.  What matters is

7    what we did.

8         THE COURT:  Well, would you agree with me that under

9    at least the *Warner* case, the burden is on you to show me why

10   disclosure would hinder frank and independent discussion

11   regarding the contemplated policies and decisions?  And

12   specifically I'm warned, you know, don't listen to the

13   generalities, listen to the specifics.  And I don't see in

14   your letter any discussion of that particular question -- you

15   know, that factor of the *Warner* test.

16        MR. DUGAN:  I agree with Your Honor that as I

17   understand the case law in the Ninth Circuit, the burden is

18   on the government to perfect its privilege.  And I understand

19   the chilling effect that I think Your Honor is referring to,

20   and is one aspect of the deliberative-process privilege, and

21   perhaps the -- one of the key impetus -- I don't know the

22   plural for impetus -- impetuses for the deliberative-process

23   privilege.  But I think the *Warner* test requires a more

24   comprehensive balancing.

25        And it seems to me that if the information sought is core

1    deliberative, which I don't think plaintiffs are challenging,

2    or at least I haven't heard that yet, if it's irrelevant, if

3    there is other more relevant evidence available -- and here

4    we would say the actual, the actual circuit rides that

5    occurred, or the circuit rides that were finally planned,

6    would be more relevant to determining whether we complied

7    with the injunction, then I tend to think that those

8    considerations should outweigh -- or, rather, those

9    considerations are the most relevant and important

10   considerations.

11       As far as the chilling piece, I don't have a really

12   specific explanation for the court.  But it seems to me that

13   if agency decisionmakers are aware that their preliminary

14   discussions or their not-final discussions about how to

15   comply with the court order are going to become part of the

16   public domain, people are going to be much less willing to

17   speak.  Because that's a big deal, right?  The government

18   takes seriously, as I had represented in prior filings, our

19   obligation to comply with Your Honor's orders.  So I would

20   think that -- whether it's Ms. Gauger or anyone else -- it

21   would be difficult and chilling for those individuals, for

22   those career civil servants to know that their preliminary

23   understanding or assessment of a court order, particularly

24   for non-lawyers, would become something that would be part of

25   public discourse.  So, I agree with Your Honor that we have

1    the obligation or burden to prove it, or to satisfy Your

2    Honor that we have perfected the privilege, I do think there

3    is a risk of chill here, but I think the greater

4    consideration is the utter irrelevance of this line of

5    questioning, given the other evidence that we've allowed or

6    the other questions we've allowed our witness to answer.

7           THE COURT:  Well, counsel, here's my problem with

8    that, which is, you've put in portions of the questions and

9    answers, and you certainly put in your objections, but I

10   don't see relevance as an objection in connection with this

11   particular issue.  Are you making a relevance objection?

12          MR. DUGAN:  Well, Your Honor, in terms of -- so, Your

13   Honor is correct that I didn't include relevancy as a stated

14   objection during the deposition.  In all candor, I don't

15   typically impose or interpose a relevancy objection, because

16   my understanding is that generally the scope of depositions

17   is pretty broad.  And I understand, although I can't cite a

18   case for Your Honor, that relevancy is never waived in the

19   deposition, it's something that can be litigated later.

20      I do think that the point of our letter to Your Honor --

21   Your Honor noted we spent a good chunk of the letter talking

22   about the history of the case.  The purpose of that

23   discussion was to illustrate that we think that the

24   challenged question both concerning the --

25          THE COURT:  Counsel, stop.  Will you start over about

1    two sentences ago, because you drifted off there.  I'm not

2    sure if you got away from the phone, or what.

3            MR. DUGAN:  I apologize, Your Honor.  I'll stand

4    closer to the microphone.

5            THE COURT:  Okay.  And go slower.

6            MR. DUGAN:  Yes, Your Honor.

7            THE COURT:  Okay.

8            MR. DUGAN:  What I was trying to convey is that the

9    letter that we submitted, the first couple of paragraphs, in

10   discussing the history of the case, the point we were trying

11   to convey, perhaps inartfully, was that all of the challenged

12   questions, both those from the Higgins deposition and those

13   from the Gauger deposition, correspond, in our view, to the

14   plaintiffs' merits theory of the case, or perhaps what we

15   think their merits theory of the case might be.  So they are

16   patently irrelevant, because they do not go to the question

17   of, is the case moot?  They do not go to the question of, did

18   the government comply with the court's preliminary injunction

19   order?

20       So there is a relevancy, kind of an overarching relevancy

21   concern that I think is animating the government's position

22   in all of these discussions.

23           THE COURT:  Mr. Dugan, it's my morning to beat up on

24   you.  I mean, I'm referring to the *Warner* test, *F.T.C. v.*

25   *Warner*, Ninth Circuit, 1984.  What is the first factor listed

1    in the four-factor test?

2            MR. DUGAN:  Relevance, Your Honor.

3            THE COURT:  So it seems to me that you have a burden

4    in regards to this, if you want me to find in your favor, in

5    favor of the non-disclosure, to make that argument.  And to

6    sort of say:  Well, it's not my usual practice to do so.  I

7    mean, lots of things are not my usual practice.  But that

8    doesn't get you out of the four-factor test.  The Ninth

9    Circuit loves multiple-factor tests, as you'll probably find

10   out.

11           MR. DUGAN:  Yes, Your Honor.

12       I appreciate Your Honor's point.  And I guess I would

13   reiterate that the whole purpose of our letter -- and

14   perhaps, again, it could have been worded better -- was to

15   convey to the court that we don't understand the challenged

16   questions and answers, in both the Higgins and the Gauger

17   depositions, to have anything to do with the mootness

18   question before the court, to have anything to do with the

19   limited jurisdictional discovery that the court authorized.

20       In other words, the questions are completely irrelevant.

21   They're not just irrelevant in sort of the normal civil

22   litigation sense where lawyers might disagree about how

23   useful a fact is.  They're irrelevant because they don't

24   answer the question that is going to be presented to the

25   court in the forthcoming motion practice -- I assume there

1  will be motion practice from both sides -- which is going to

2  be, do the plaintiffs' claims continue to exist?  And then

3  kind of this related claim or concern about whether the

4  government complied with the injunction.

5      I just don't see how what the agency decisionmakers might

6  have contemplated that, you know, bears on that question.

7  What is relevant -- the only thing that is relevant, I think,

8  is what the agency did.  And the same point holds back for

9  the line of questioning about the history of the agency memo.

10  I do not understand what that has to do with the mootness

11  question before the court.  It could be perhaps germane.

12      And if we find ourselves in six months or a year back at

13  the table, if the court ultimately decides the case is going

14  to be in some trajectory, we would have to have a further

15  conversation then about which privilege should attach and

16  why.  But here, today, for the limited purpose for which the

17  court has authorized discovery, I do not understand how any

18  of these questions are remotely relevant to the issue that

19  the court has signaled as the basis for jurisdictional

20  discovery.

21          THE COURT:  Well, how about her declaration that you

22  submitted saying that these are attempts to comply with the

23  court's preliminary injunction?  It seems to me, sir,

24  basically you've got your sword in one hand and your shield

25  in the other, and you're using one or the other to argue in

 1  favor of your litigation position.  And I'm specifically

 2  forbidden to justify that.

 3          MR. DUGAN:  So I appreciate Your Honor's point.  I

 4  guess what I would say in response that is, if Your Honor

 5  looks at the Gauger declaration, paragraph 6 is the relevant

 6  paragraph, what it says is, and I'm quoting, "In furtherance

 7  of its compliance with the court's injunction, the State

 8  Department currently plans to add locations to its request

 9  for its third quarter circuit rides where large populations

10  of SAO nationals are ready for interviews," and then it goes

11  on to list some countries.

12      In other words, that is a decision, right?  At least it

13  was at the time this document was signed.  That was a

14  representation from the agency saying, this is what we were

15  going to do.  It is fair game for the plaintiffs to ask the

16  witness questions about that.  I think the plaintiffs could

17  ask a question about why those countries were chosen.  And if

18  the question went further about, were other countries

19  considered, who talked about it, who said what to who.

20      But I don't think the fact that we told the court, this is

21  what we are going to do to comply with the injunction,

22  somehow exposes the full, underlying deliberative process.

23  And if that were the case, then I would think any time an

24  agency revealed a decision, whether in the declaration or in

25  a memorandum, or in some other kind of document promulgated

1    to the public, that would somehow eviscerate the underlying

2    deliberations.  But we know that's not the case, right?  No

3    case I'm aware of stands for the proposition that the

4    privilege is eviscerated once a decision is reached.  On the

5    contrary, the whole point of the deliberative-process

6    privilege is that it protects the predecisional deliberative

7    communications, but not the final decision, or any actions

8    taken pursuant to the final decision.

9          And, again, I would just suggest that the relevant and

10   salient question here should be:  What did the government do,

11   and where did the circuit rides occur?  And I think that's

12   what the declaration is getting at.  And I imagine there are

13   other questions they could ask along those lines that would

14   actually be relevant to their case at this posture.

15             THE COURT:  All right.  Well, let me summarize the

16   court's rulings, then.

17         I've ordered you to go back and meet-and-confer in regards

18   to the document.  And if need be, if you're unable to reach

19   an accommodation, to then file a motion under your protective

20   order or a motion to compel.  And I need to see the document,

21   I need to see the heading, because I don't feel like I have

22   enough information to rule on that as is.

23         In regards to Higgins, I'm going to stand by my earlier

24   statements, particularly as -- I won't say "modified," but

25   apparently you've reached some greater clarity on that.

1    She's obviously required to testify concerning her personal

2    knowledge or her personal opinion in regards to matters.  I

3    think the deliberative privilege can potentially -- and I

4    stress "potentially" -- exist, if the question is what were

5    the factors that the decision was ultimately made on?

6    Something like that.

7         In regards to Gauger, I'm going to basically send you back

8    to a meet-and-confer and to talk about the question of

9    relevance.  You know, I chide the government to some extent,

10   Mr. Dugan, because it seems to me that since the first *Warner*

11   factor is relevance, I'm hearing more about relevance today

12   than really is in the letters.  And given my rulings in

13   regards to Higgins, I would think that you could probably

14   work out acceptable questions that would resolve this matter

15   and not require the court to further intervene in it.

16        So, any questions that I can answer for you before I tell

17   you to go forth and do good?

18        Mr. Cox?

19            MR. COX:  Nothing further from plaintiffs, Your

20   Honor.

21            THE COURT:  All right, Mr. Dugan?

22            MR. DUGAN:  No, Your Honor.  Thank you for your time.

23   Nothing further.

24            THE COURT:  All right.  Then, counsel, we'll be in

25   recess.  And I urge you all to be cooperative and recognize

1    that it's easy to get very involved in these discovery

2    questions.  And when you come back to see me, you'll get a

3    decision that's using a hatchet as opposed to a scalpel,

4    which is never in the parties' interests.  Take care and have

5    a good day.  We're in recess.

6                        (Recess.)

7

8                  C E R T I F I C A T E

9

10

11       I certify that the foregoing is a correct transcript from

12   the record of proceedings in the above-entitled matter.

13

14

15

16   */s/ Debbie Zurn*

17   DEBBIE ZURN
     COURT REPORTER
18

19

20

21

22

23

24

25